Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**Mills + Woods Law pllc**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Sandra Daussin (AZ Bar #037274)
**Gillespie, Shields, Goldfarb & Taylor**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Kahraman, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>State of Arizona, et *al.*,<br><br>        Defendants. | Case No.: 2:22-cv-00375-PHX-SRB<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>(Hon. Susan R. Bolton) |

Plaintiffs Jessica Kahraman, D.K., and K.K., by and through their counsel, hereby respond to The State of Arizona, Arizona Department of Child Safety ("DCS"), Madison Bell and John Doe Bell, Sarah Kramer and John Doe Kramer, Sarah Mendez and John Doe Mendez, Greg McKay and Jane Doe McKay, Mecca Temple and John Doe Temple ("State Defendants") *State Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* [Doc. 21], filed on 6 June 2022 for the above referenced matter. The following Memorandum of Points and Authority and attached Exhibits are provided as grounds for Plaintiffs' response.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

# MEMORANDUM OF POINTS AND AUTHORITY

## I.    INTRODUCTION

Jessica Kahraman is the mother of the twin boys, D.K. and K.K. (D.O.B. 27 September 2012). FAC ¶ 24. Ahmet Kahraman is D.K. and K.K.'s father. *Id*. Jessica, D.K., and K.K., ("Plaintiffs") assert sixteen claims in the First Amended Complaint ("FAC") against State Defendants. Claims arising under 42 U.S.C. § 1983 are: **Claim 1** (Freedom of Association / Unlawful Seizure) against Defendants Kramer and Mendez; **Claim 2** (Unlawfully Detaining K.K. and D.K. in the State's custody), **Claim 3** (Due Process / Judicial Deception), **Claim 4** (Conspiracy to Violate Due Process), **Claim 5** (Due Process / Reasonable Efforts to Preserve Family), **Claim 6** (Due Process / Medical Decisions), and **Claim 7** (Due Process / Medical Treatment), all against Defendants Kramer, Mendez, Bell, and Temple; **Claim 13** (Unconstitutional Acts of its Employees Pursuant to a Policy and/or Practice of DCS) against Defendant DCS. **Claim 18** (Unconstitutionally Vague Statutes A.R.S. §§ 8-201and 8-821(B)) is another federal law claim, and is against Defendants State of Arizona, McKay, Bell, Kramer, and Mendez. [1]

Plaintiffs assert the following state-law claims against Defendants Kramer, Mendez, Bell and Temple: **Claim 8** (Gross Negligence / Duty to Protect the Legal Rights of children and families); **Claim 9** (Gross Negligence / Duty to Make Reasonable Efforts to Preserve Family); **Claim 10** (Negligence Per Se for Violating A.R.S §§ 8-456(A) and 8-802 (D)(1), 8-456(C)(1), and 8-533(B)(8)); **Claim 12** (Abuse of Process); **Claim 14** (Defamation); **Claim 15** (Intentional Infliction of Emotional Distress ("IIED")). **Claim 11** is a state-law claim against McKay for Negligence Per Se (Violating A.R.S. §§ 8-451 and 8-453).

State Defendants have moved to dismiss all claims against them on the basis of: (1) failure to state a claim; (2) failure to comply with the Notice of Claims ("NOC") statute for the state law claims; (3) statute of limitations for federal claims; (4) immunity; (5) this

---

[1] The FAC has been corrected to now include Mr. Michael Faust as the current director of DCS. All claims against Mr. McKay (former director until 29 August 2019) now are also asserted against Mr. Faust (current director from 30 August 2019).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

lawsuit is an impermissible appeal of a state court judgments; and, (6) DCS is a non-jural entity. *See* Mot. at 2:17-27; 3:1-3.[2] As detailed within, State Defendants motion must be denied in its entirety as none of these arguments have any merit.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

The Complaint was filed in the Maricopa County Superior Court, Arizona, on 21 November 2021. State Defendants filed their notice of removal to federal court on 10 March 2022 [Doc. 1]. The FAC was filed on 23 May 2022. FAC [Doc. 17]. On 6 June 2022, Defendants Southwest Human Development ("SWHD"), Drue Kaplan-Siekman, Banner Children's at Desert ("Banner"), Ryan M. Stewart, M.D., and Maria Chico, N.P. ("Joined Defendants") filed a *Joint Motion for More Definite Statement and Motion to Strike Redundant, Immaterial and Impertinent Matter from First Amended Complaint* ("Motion to Strike") [Doc. 20]. On this same day, State Defendants filed a *Joinder in Co-Defendant's Motion to Strike Redundant, Immaterial and Impertinent Matter from First Amended Complaint* ("Motion to Join") [Doc. 22] along with the *State Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* ("Motion to Dismiss") [Doc. 21].

Plaintiffs acknowledge that there are errors in the original complaint that were inadvertently carried over into the FAC. For example, Plaintiffs inadvertently did not include DCS Director Faust as a defendant. These errors are corrected in the Second Amended Complaint ("SAC"), which is attached here as **Exhibit A.** Plaintiffs believe that the corrections of these errors remedy most of the deficiencies complained of in the Motion to Strike [Doc. 20]. Plaintiffs today filed a Response to the Motion to Strike. *See* Doc. 32.

Plaintiffs filed a motion for leave to amend the FAC on 22 July 2022 [Doc. 30]. However, on 3 August 2022, the Court denied Plaintiffs' motion for failure to attach a proposed amended complaint pursuant to LRCiv 15.1(a) and ordered Plaintiffs to respond to the Motion to Strike by 10 August 2022 [Doc. 31]. Contemporaneously with this

---

[2] The page numbers referenced in the Motion ("Mot.") correspond to the Court filing page numbers of the PDF as filed, i.e., the page numbers at the top of the page, not the bottom.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Response, Plaintiffs are also filing a second motion to amend based on an amended complaint in the form attached here as **Exhibit A**.

The **Factual Background**, provided in *Plaintiffs' Response to Joint Motion for More Definite Statement and Motion to Strike Redundant, Immaterial and Impertinent Matter From First Amended Complaint*, filed earlier today [*see* Doc. 32], is incorporated by reference. In brief, D.K. and K.K. were removed from their parents' care on 28 December 2018, based on false accusations of neglect and abuse as Munchausen Syndrome by Proxy ("MSBP"); then, in January 2020 Ahmet filed for divorce and joined forces with DCS in accusing Jessica of MSBP. FAC ¶¶ 52-65, 109, 113. As a direct result of DCS's negligence and malicious motive to cover up their incompetence, Ahmet gained sole custody of D.K. and K.K. during the divorce proceedings while Jessica still suffered through severely limited supervised visits. *Id*. ¶¶ 114-117, 124-126. Dr. Newberger, a MSBP expert psychologist, was hired by Jessica's counsel to review the file and he concluded the acts by DCS during this dependency were "punitive." FAC ¶ 98. On 4 November 2021, the couple divorced, and Jessica finally gained unrestricted joint custodial rights. *Id*. ¶ 125. Because of DCS's involvement in this family, Jessica was wrongfully and even maliciously deprived of access to her boys for almost three years (28 December 2018 to 4 November 2021), except for the severely limited supervised visits. FAC ¶¶ 126.

## III.    APPLICABLE LAW

### A.    Motion to Dismiss

Rule 12(b)(6), Fed. R. Civ. P. ("FRCP"), provides that a party can move the court to dismiss a complaint if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal citations omitted). "A claim has *facial plausibility* when the plaintiff pleads factual content that allows the court to draw the *reasonable inference*

4

that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Facts pled are assumed to be true, as "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* Furthermore, Ninth Circuit courts have held that "[i]n deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141 (N.D. Cal. 2020) (internal citation omitted). Thus, a motion to dismiss should be granted only if there is no cognizable factual or legal basis for the claim.

## IV. ANALYSIS

State Defendants six arguments relate to the following issues: (1) failure to state a claim; (2) failure to comply with the NOC statute for the state law claims; (3) statute of limitations for federal claims; (4) immunity; (5) this lawsuit is an impermissible appeal of state court judgments; and, (6) DCS is a non-jural entity. *See* Mot. at 2:17-27; 3:1-3. In addition, State Defendants set forth an irrelevant legal standard for the claims arising under §1983. As detailed herein, none of State Defendants' arguments has any legal or factual foundation and their motion must be denied.

### A. State Defendants Provided an Irrelevant Standard of Review for the Claims Arising from Due Process Violations

State Defendants assert that due process claims are only for "egregious arbitrary conduct" and that the Fourteenth Amendment is not a "font of tort law" to be used for any general negligence claim. *See* Mot. at 3:19-27. The cases relied upon by State Defendants to support their pithy argument show the lack of depth and relevance to the argument in relation to the harms alleged here. *See id.* citing *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2975–76, 41 L. Ed. 2d 935 (1974) (the Supreme Court evaluated what

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

processes are due in the administrative of a prison); *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 116, 112 S. Ct. 1061, 1064, 117 L. Ed. 2d 261 (1992) (a city's failure to train its employees about certain dangers in a workplace was not a constitutional violation); *Paul v. Davis*, 424 U.S. 693, 694, 96 S. Ct. 1155, 1157, 47 L. Ed. 2d 405 (1976) (defamation alone, apart from any other governmental act, did not support a claim for relief under §1983.); and *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (at summary judgment, holding: a high-speed chase by police resulting in the death of the fleeing suspect was not a constitutional violation). However, none of these cases are instructive as arbitrariness and general negligence are not at issue here.

Here, Plaintiffs allege acts by State Defendants which are appropriately characterized as "punitive" by Dr. Newberger (Parent's expert psychologist) and that resulted in multiple violations of Plaintiffs' fundamental constitutional rights. *See* FAC ¶ 98 and **Claims 1** to **7**. Furthermore, as discussed below, Plaintiffs allege facts in the FAC, which must be taken as true, that show State Defendants' conduct was not merely negligent; rather, State Defendants' conduct was knowing, wrongful, intentional, and malicious. Thus, the "font of tort law" legal standard set forth by State Defendants has no bearing on the instant matter.

## B. State Defendant's Assertion that Plaintiffs Failed to State a Claim and to Comply with Fed. R. Civ. P. 8 Is Meritless

Rule 8(a)(2) provides: "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Under well-established federal law, "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. at 41, 47, 78 S. Ct. 99, 102-10, 2 L. Ed.2d 80 (1957), citing *Maty v. Grasselli Chem. Co.*, 303 U.S. 197, 200, 58 S. Ct. 507, 509, 82 L. Ed. 745 (1938)).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

State Defendants assert that the complaint does not comply with Rule 8 and should be dismissed because, allegedly, (1) the individual defendants do not have notice of the claims against them because they are "grouped" or "lumped together;" (2) the FAC "fails to name the specific defendant connected to a specific act, error or omission," and this somehow renders the FAC "deficient on its face;" and, (3) the FAC purportedly does not sufficiently "describe" the "integral participation" required to support the § 1983 claims. *See* Mot. at 5:23-24; 6:14-28; 7:2-5. State Defendants argue the FAC must provide allegations against each defendant. *See* Mot. at 5:25-27, citing *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996). In *McHenry*, the Court granted a motion for more definitive statement because the claims "vaguely refer[red] to 'defendants' or 'other responsible authorities'" and because the plaintiffs there made "sweeping allegations against the city and various government employees … [without] … clear connections between specific allegations and individual defendants." *Id.* at 1175. Here, Plaintiffs have, in fact, alleged the specific wrongful conduct by each State Defendant, the role they held at DCS at the relevant time, and how this conduct led to the deprivation of Plaintiffs Constitutional and state law rights, as detailed below.

***First***, in the **Factual Allegations** section of the FAC, specific acts by State Defendants Kramer, Mendez, and Bell are listed. FAC ¶¶ 58, 64, 66, 96, 105-107, 110, 117, 119, 126. To ensure that the allegations against State Defendant Temple are clear, the following statement has been added to all paragraphs where Bell's acts are alleged in the SAC: "Defendant Temple, Bell's supervisor, directed, approved of, or ratified Bell's wrongful acts." *See* **Ex. A**, ¶¶ 100, 109-111, 114, 121, 123, 130.

***Second,*** the facts alleged in the FAC show each State Defendants' "integral participation" in the depravation of Plaintiffs' Constitutional rights. In brief, Plaintiffs have alleged that State Defendants Kramer and Mendez, without a proper investigation, unconstitutionally seized D.K. and K.K. on 28 December 2018, accusing Jessica and Ahmet of neglect and MSBP. FAC ¶¶ 52-65. None of the boys' treating doctors, who are mandatory reporters, ever accused Jessica or Ahmet of neglect or MSBP. *Id*. ¶¶ 52, 58, 62.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Jessica even provided Kramer with a list of the boys' medical providers and their contact information, but Kramer ignored the positive reports and stopped calling the providers. *Id.* ¶ 58. After the unlawful seizure, State Defendant Mendez immediately prohibited Jessica from seeing her children and subsequently restricted her interaction with them to two hours per week at SWHD. *Id.* at ¶ 66, 67. The children were in DCS custody until November 2020. *Id.* at ¶ 124. Thus, the FAC alleges facts that show Kramer's and Mendez's unlawful seizure and detention of K.K. and D.K. was the actual and proximate cause of Plaintiffs' harm.

Furthermore, Plaintiffs allege that the violation of rights continued throughout the dependency, when DCS Case Manager Bell, along with her supervisor Temple, continued to insist on the Department's false narrative that Jessica was delusional and unfit to parent her boys despite the overwhelming evidence to the contrary. FAC ¶¶ 96, 105-107, 110, 117, 119, 126. As above, Temple is liable as she directed, approved of, or ratified all of Bell's wrongful acts. *See* **Ex. A** ¶¶ 100, 109-111, 114, 121, 123, 130. Without repeating all of the facts here, some of the wrongful acts by Case Manager Bell include: (1) ignoring three positive psychological evaluations by DCS service providers (Dr. Oakley's reports dated 16 April 2019 and February 20, 2022; Dr. Shroeckenstein, report dated 28 August 2020); (2) prohibiting testing the boys for mold toxicity when toxic mold was discovered in the home, and refusing to consider the mold was a plausible explanation for the boys' poor health; and, (3) ignoring Carla White, the parent supervisor at SWHD, who unequivocally stated that it was not in the boys' best interest to be severed from Jessica. FAC ¶¶ 69, 71-81, 88, 91, 105, 107, 120-123. In addition, Bell, under Temple's supervision, sought to increase her chance of success in the wrongful termination of Jessica's parental rights by withholding material information from the juvenile court, including the positive evaluations of Jessica. *Id.* at ¶ 110.

Thus, the FAC alleges specific facts to show that Kramer, Mendez, Bell, and Temple were, each one, key players in the deprivation of Plaintiffs' Constitutional rights.

8

Furthermore, the FAC alleges that Dr. Newberger, an expert in MSBP, characterized State Defendants acts at "punitive." FAC ¶ 98. Therefore, State Defendants' claim that the FAC does not comport with Rule 8 has no merit.

*Third*, under Arizona law, "[w]hen the tortious conduct of more than one defendant contributes to one indivisible injury," as it does here, "the rule of indivisible injury" holds, meaning, the plaintiff is relieved "'of apportioning damage according to causal contribution." *Piner v. Superior Ct. In & For Cnty. of Maricopa*, 192 Ariz. 182, 188–89, 962 P.2d 909, 915–16 (1998); *see also Cramer v. Starr*, 240 Ariz. 4, 8, 375 P.3d 69, 73 (2016) (in case of successive tortfeasors and indivisible injury, "the jurors must be instructed to allocate fault in accordance with § 12–2506"). Thus, there is no requirement for Plaintiff to assert individual claims against individual defendants in the Complaint. To do so here, where the events that gave rise to the indivisible harm occurred over a period of three years and involved multiple tortfeasors, would unnecessarily inflate the Complaint such that it would no longer comply with the "short plain statement" requirement of Rule 8.

### C.    Plaintiffs Have or Will Comply with the NOC Statute

*First*, all statute of limitations are tolled for D.K. and K.K. due to their minority, including the requirement to serve the NOC pursuant to A.R.S. § 12-821.01(A).

*Second*, the accrual date for all claims in this action is 4 November 2021, as discussed below. *See* FAC ¶ 127. The NOC was due 180 days later, on 3 May 2022. *See* A.R.S. § 12-821.01(A). The NOC was served on Defendants DCS, the State of Arizona, Faust, Bell, and Temple on 26 – 27 April 2022. *See* **Ex. B**. Thus, service of the NOC on these State Defendants was timely.

*Third*, Plaintiffs have been unable to date to achieve service on State Defendants McKay, Mendez, and Kramer as they apparently are no longer employed by DCS. Plaintiff Jessica Kahraman acknowledges that the service of the NOC to State Defendants McKay, Mendez, and Kramer is not timely as to her claims. Nevertheless, Plaintiffs will continue

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

to attempt service of the NOC on State Defendants McKay, Mendez, and Kramer as to the minor Plaintiffs' claims.

### D.   No State Law or Federal Law Claims Are Time Barred

No claim is time barred because the accrual date for all claims in this action is 04 November 2021, and the Complaint was filed on 21 November 2021, which well within any state or federal law statutes of limitations. FAC ¶127. In addition, as above, all statute of limitations are tolled for D.K. and K.K. due to their minority.

#### 1.   Applicable law for accrual date and the statute of limitations affirmative defense

***First***, the parties do not dispute that A.R.S. §12-821 provides a one-year statute of limitations for state-law actions against any public entities or public employees, and that for the federal law claims, the statute of limitations is two years. *See* A.R.S. §12-821; *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (held: courts look to the law of the state in which the cause of action arose to determine the length of the statute of limitation for § 1983 claims); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (held: "[i]n Arizona, the courts apply a two-year statute of limitations to § 1983 claims").

***Second***, a statute of limitations is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003) ("yet it is well-settled that statutes of limitations are affirmative defenses, not pleading requirements"), *overruled on other grounds*, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)). "[Federal Rule of Civil Procedure] 8 does not require plaintiffs to plead around affirmative defenses." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). Further, "[o]rdinarily, affirmative defenses ... may not be raised on a motion to dismiss." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss"). Thus, the initial burden of persuasion is on State Defendants. *Tovar v. U.S.P.S.,* 3 F.3d 1271, 1284 (9th Cir. 1993) ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense."). A "[d]efendant[] bear[s] the burden of

persuasion on [a] motion to dismiss." *Lesher v. City of Anderson*, 221CV00386WBSDMC, 2021 WL 2682161, *slip op.* at 6 (E.D. Cal. June 30, 2021); *see also Rabago v. Deutsche Bank Nat. Tr. Co.*, 5:10-CV-01917-JST, 2011 WL 2173811, *slip op.* at 2 (C.D. Cal. June 1, 2011).

**Third**, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quotation omitted). However, Federal courts have held that "it is hornbook law that limitation periods are customarily subject to equitable tolling," and Arizona courts have applied the doctrine of equitable tolling (internal quotations omitted). *Young v. United States*, 535 U.S. 43, 48, 122 S. Ct. 1036, 1039, 152 L. Ed.2d 79 (2002). Under Arizona law, a defendant can be equitably estopped from asserting a claim against him is time barred if the court finds that the defendant's act or omissions actually and reasonably induced the plaintiff to refrain from timely filing suit. *Viniegra v. Town of Parker Mun. Prop. Corp.*, 241 Ariz. 22, 26, 383 P.3d 665, 669 (App. 2016).

**Fourth**, under Arizona law, the doctrine of continuing torts applies when there is a series of related or multiple wrongful acts or omissions; in these matters "accrual begins at the termination of the wrongdoing, rather than at the beginning." *Cruz v. City of Tucson*, 243 Ariz. 69, 74, 401 P.3d 1018, 1023 (App. 2017) (internal citations omitted). That is, "the limitations period begins to run on this collected malfeasance only when the defendant ceases its improper conduct." *Id*. The 7th Circuit has held that the reason for the continuing torts doctrine is "to allow a plaintiff [to] reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir.2001). For example, in a malicious prosecution matter, it is well established Arizona law that the cause of action does not accrue until the underlying prosecution has terminated in favor of the plaintiff. *Glaze v. Larsen*, 207 Ariz. 26, 32, 83 P.3d 26, 32 (2004). The criminal proceedings are considered

terminated only after the direct appeal is completed as well as any other proceedings "involving petitions under Rule 32 and any retrials, appeals from judgments in retrials, or post-conviction proceedings following retrials." *Id.* Similarly, a legal malpractice action in a civil matter will not accrue "until all proceedings in the underlying civil case, including appeals, are terminated." *Id.*

## 2. The state law claims are not time barred

Here, State Defendants argue that a statute of limitations typically begins to run when a plaintiff becomes aware of his or her injury, and that for the state law claims, Jessica became aware of her injury on 9 November 2020 so this must be the accrual date. *See* Mot. at 8:8-28; 9:1-6. This argument makes no sense.

***First***, there is no factual support to hold that 9 November 2020 was the first date Jessica became aware of her injuries and that is therefore the accrual date. That is the day DCS dismissed the dependency, on the condition that Ahmet was awarded full custody and Jessica's visits remained severely restricted. *See* Mot., **Ex. 1** at 2; *see also* FAC ¶ 124.

***Second***, it could be argued that Jessica first became aware of her injuries on 28 December 2018, when DCS unlawfully seized her children. FAC ¶ 64. As discussed further below, the wrongful acts by State Defendants are the reason Jessica did not regain her full parental rights until 4 November 2021. *Id.* ¶ 125. Every single day between 28 December 2018 and 4 November 2021, Plaintiffs were painfully aware of their injuries. However, it would have been impractical for Plaintiffs to have filed a lawsuit every time they were injured during that period, as this would have resulted in multiple lawsuits. In addition, Jessica was reasonably and understandably deterred from suing DCS during that time – at first when they held her children in custody, and then afterwards, when Ahmet and DCS were aligned in ensuring her parental rights were denied (see below).

***Third***, when Ahmet was awarded custody on 9 November 2020, DCS knew that (1) Ahmet had not met his treatment goals, (2) Ahmet had abused Jessica, and (3) Jessica's service providers had given only positive reports of her parenting ability. *Id.* ¶¶ 72-75, 88, 90, 98, 99, 107, 114, 116, 117, 120. Emboldened by DCS's outrageous support of his

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

malicious intent to gain custody of the children during the divorce proceedings, Ahmet repeatedly violated the family court's orders, which would have granted Jessica some access to her children. *Id*. ¶ 125. As a result, Jessica's parental rights remained severely restricted until the divorce was final on 4 November 2021. *Id*. That is, but for State Defendants' wrongful and unlawful interference, Ahmet would not have been granted full custody over the boys or been able to keep them from Jessica.

Therefore, under the doctrine of continuing torts and equitable estoppel, the accrual date here is 4 November 2021 for all claims. The lawsuit was filed on 21 November 2021, only 17 days later, which is well within any statute of limitations for either the state or federal law claims. Furthermore, for the State law claims, State Defendants have failed to meet their burden to support their affirmative defense that all state law claims accrued on 4 November 2020.

### 3. Claims 1 and 2 are not time barred

State Defendants assert that **Claim 1** (Freedom of Association / Unlawful Seizure) and **Claim 2** (Unlawfully Detaining K.K. and D.K. in the State's custody) allegedly accrued on 3 January 2019 because this is the date the "legal process began" when the dependency was filed. *See* Mot. at 10:4-6. State Defendants argue the Court should consider false arrest and false imprisonment instead of the doctrine of continuing torts to determine the accrual date here. *See* Mot. at 9:11-12, citing *Wallace v. Kato*, 549 U.S. 384 (2007). However, *Wallace* concerns a criminal matter, where the false imprisonment ended at the time the criminal suspect was arraigned or bound over by a magistrate. *See* Mot. at 9:19-27, citing *Wallace*, 549 U.S. at 389. Here, two boys were unlawfully seized, and they were not released from State's custody for three years. There is no similarity here to the *Wallace* false imprisonment case. In addition, State Defendants cite another criminal case concerning an unlawful search and seizure of a college student's ID. *See* Mot. at 10:1-14, citing *Bonelli v. Grand Canyon University*, CV-00143-SMB, WL 729277 (9th Cir. 2022). Again, this has no bearing on the instant matter where two human children were seized,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

not personal property, and kept away from the loving care of their mother for years. Furthermore, as above, all claims accrued on 4 November 2021 and the filing date was 17 days later; thus, **Claims 1** and **2** are not time barred.

### E. State Defendants Are Not Entitled to Absolute Immunity

The U.S. Supreme Court has held that a public official is immune from liability arising under 42 U.S.C. § 1983 "unless they have violated a statutory or constitutional right *that was clearly established* at the time of the challenged conduct," and "the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it." *City & Cnty. of San Francisco, Calif. v. Sheehan,* 575 U.S. 600, 611, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856 (2015) (emphasis added). Furthermore, under federal law, *"[t]he burden is on the official* claiming absolute immunity to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity." *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (emphasis added).

Here, State Defendants claim they are shielded by absolute immunity for **Claims 1** and **2** because social workers are allegedly absolute immune when making decisions regarding removal and the institution of a dependency. *See* Mot. at 11:15-21, citing *Beltran v. Santa Clara Cty*. 514 F.3d 906, 908 (9th Cir. 2008) and *Wallace*, 549 U.S. at 389. However, *Wallace* is not even remotely relevant to the instant matter, as discussed above. In addition, *Beltran* concerns a matter at summary judgment where the court held that social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition ..." *Beltran*, 514 F.3d at 908–09.

Plaintiffs allege that Defendant Kramer and Mendez falsely attributed K.K.'s illnesses to neglect and MSBP and failed to investigate the actual causes, such as toxic mold. *See* FAC ¶¶ 52-65. Furthermore, Plaintiffs allege that Jessica provided the boys' medical providers' contact information to State Defendant Kramer, and after the first three providers gave positive reports on Jessica, Kramer stopped calling and DCS pursued a

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

juvenile court order to remove the children anyway. *Id*. ¶¶ 58, 63. That is, in spite of the clear and convincing evidence to the contrary, DCS, through Kramer and Mendez, presented a false MSBP narrative to the juvenile court in order to remove the children. This is judicial deception and destroys absolute immunity. In addition, Plaintiffs allege that Bell, under Temple's supervision, also withheld material information from the juvenile court, including positive provider evaluations of Jessica, when she sought to permanently sever Jessica's parental rights. *Id*. ¶ 110. This too is judicial deception that destroys immunity.

Notwithstanding these allegations, State Defendants falsely assert that Plaintiffs have not alleged facts to support the allegation of judicial deception. *See* Mot. at 12:1-14, citing FAC ¶¶ 149-162. However, paragraphs 149-162 of the FAC are simply where the elements of **Claims 3** (judicial deception) and **4** (conspiracy) are asserted. The first paragraph in each of these Claims states, "Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the paragraphs above", which is where the factual allegations are laid out in sufficient detail to put State Defendants on notice of their judicial deception and conspiracy. *See* FAC ¶¶ 149, 155. Had State Defendants read the factual allegations in paragraphs 24-127, in the section labeled "<u>FACTUAL ALLEGATIONS</u>", they would have found specific facts alleged showing how State Defendants engaged in judicial deception and conspiracy. What is also troubling here is State Defendants' mendacity in even making this argument when represented by seasoned counsel who are familiar with this common pleading convention (and likely employ it themselves). Simply put, this argument has no merit and must be ignored.

State Defendants also provide a confusing argument that they are immune because **Claim 4** is allegedly conclusory. *See* Mot. at 12:16-28, 13:1-3. State Defendants' position is that the conspiracy claim is conclusory because the allegation at FAC ¶ 159 is that State Defendants did not thoroughly review K.K. and D.K.'s medical records. *See* Mot. at 12:16-22. State Defendants argue that this is just matter of opinion. *Id*. Nevertheless, as above, State Defendant failed to read the preceding paragraphs in the <u>FACTUAL ALLEGATIONS</u> section of the FAC, where it alleges that State Defendants refused to

evaluate any medical information that would refute the allegation that Jessica had MSBP. *See* FAC ¶¶ 51, 58, 62, 63, 76-81, 96, 118 (Kramer and Mendez ignoring the fact that D.K. and K.K.'s normal providers, all mandatory reporters, found no need to report Jessica; Bell and Temple refusing to consider mold toxicity as an explanation for the boys' failing health, and even refusing to test the boys for toxic mold exposure when it was discovered in the home).

State Defendants also assert the conspiracy claim fails for no allegation as to "how" the conspiracy was achieved, *see* Mot. at 12:26-28; yet this is not required under the law nor is it the standard at a motion to dismiss. Evidence of the agreement can be inferred by the defendants' actions when their acts would have been unlikely to occur without the agreement. *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010); *Kunik v. Racine County*, 946 F.2d 1574, 1580-81 (7th Cir. 1991). Here, it is a reasonable inference from the facts as pled that State Defendants conspired because no reasonable person would engage in the willful or reckless violation of Plaintiffs' constitutional rights without such an agreement. Thus, State Defendants' contention that their absolute immunity is still intact because **Claim 4** was not properly pled has no merit.

In a(nother) throw-away argument, citing no case law and two irrelevant statutes, State Defendants list **Claims 2**, **5**, **6**, and **7** and assert that these are "all statutory duties that were performed under the supervision of the juvenile court;" therefore, the argument goes, State Defendants are immune. *See* Mot. at 13:4-12, citing A.R.S. §§ 8-829 and 8-846. However, these statutes have no bearing on absolute immunity. Section 8-829 concerns the timing and documentation required for the judicial determinations in a dependency, and section 8-846 concerns the required services that must be provided to the child and family. *See* A.R.S. §§ 8-829 and 8-846.

Thus, State Defendants tacit assertion that absolute immunity is boundless is false. The Supreme Court and Ninth Circuit have repeatedly held that those "who knowingly violate the law" or who are "plainly incompetent" are not entitled to any immunity;

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

absolute or otherwise. *Hernandez v. City of San Jose,* 897 F.3d 1125, 1132 (9th Cir. 2018); and *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017).

### F. <u>State Defendants Are Not Entitled to Qualified Immunity</u>

State Defendants make the erroneous claim that they are entitled to qualified immunity for **Claims 1** to **7** because the roles they played are similar in kind to *Daurio. See* Mot. at 13:26-28; 14:1-13, citing *Daurio v. Arizona Department of Child Safety*, V-18-03299-PHX-GMS, 2020 WL 6940812. However, State Defendant's reliance on *Daurio* is misplaced. First, the issue in *Duario* was a review of summary judgment; not a motion to dismiss. *Daurio*, V-18-03299-PHX-GMS, 2020 WL 6940812. Second, the holding in *Duario* is very narrow, in that qualified immunity relates only when DCS (1) excludes an accused parent from a Team Decision Meeting; (2) does not provide an accused parent of notice letters; and, (3) disregards exculpatory information furnished by the accused. *Id*. at \*3. Here, Plaintiffs do not make any of those allegations. As discussed above, the gravamen of Plaintiffs' complaint is that State Defendants willfully ignored or suppressed exculpatory information that was readily available from neutral third parties (e.g., the boys treating physicians and various psychologist experts), in order to maliciously violate Plaintiffs' rights.

The test for qualified immunity under federal law is whether or not the official violated a known statutory or constitutional right; if the official knowingly violated the law, they are not immune. *Sheehan*, 575 U.S. at 611, 135 S. Ct. at 1774. State officials are not immune if they violate a statutory or constitutional right that was firmly established at the time of the violation. *Id*. In addition, federal law provides that at the motion to dismiss state of litigation, "[i]f the operative complaint contains *even one allegation of a harmful act that would constitute a violation* of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims." *Keates v. Koile,* 883 F.3d 1228, 1234–35 (9th Cir. 2018) (emphasis added).

Here, Plaintiffs allege in **Claims 1** to **7** that State Defendants violated Plaintiffs' clearly established Constitutional rights. In addition, Plaintiffs allege in **Claims 10** and **11**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

that State Defendants violated Plaintiffs' statutory rights provided in A.R.S §§ 8-456(A), 8-802 (D)(1), 8-456(C)(1), 8-533(B)(8), 8-451, and 8-453, and are liable for negligence per se as a result**.** Thus, State Defendants knew or should have known they were in violating Plaintiffs' rights. Therefore, under *Sheehan*, State Defendants are not immune, and under *Keates,* the FAC cannot be dismissed. *Sheehan*, 575 U.S. at 611, 135 S. Ct. at 1774; *Keates,* 883 F.3d at 1234–35.

Therefore, State Defendants' motion to dismiss on the basis of absolute or qualified immunity must be denied.

### G.     Plaintiffs' Lawsuit Is Not an Impermissible Attack on State Court Judgments

State Defendants cite a U.S. Supreme Court case, out of context, in an attempt to support their spurious argument that Plaintiffs make an "impermissible appeal" here and that the state court "decisions" should be "afforded the required preclusive effect." *See* Mot. at 14:15-24, citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). *Migra* has little or no similarity to instant matter. In *Migra*, a petitioner filed a civil rights action in federal court after receiving *unfavorable judgements* on the underlying issue (regarding employment), first in an Ohio trial court, then in Ohio's appellate court, and finally in the Ohio Supreme Court. *Id*. at 75. The holding, quoted by State Defendants', is that the federal court there "must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *See* Mot. at 14:19-23; *see also Migra* at 81. Simply put, the holding in *Migra* was that state law must be applied in the federal court when (1) there is an unfavorable judgement in the highest state court, and (2) a preclusion issue is before a federal district court.

Here, there is no unfavorable state court judgement, no appeal, and no issue of preclusion before this Court. There were interim decisions made by a juvenile court, and after two years, the juvenile court dismissed the dependency, on the condition that Jessica's visits remain supervised. *See* Mot. at 14:28; 15:1; *see also* FAC ¶ 124. Once the dissolution

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

of the marriage was final, Jessica's parental rights were reinstated. FAC ¶ 125. That was the end. Plaintiffs prevailed and there was no appeal. In addition, Plaintiffs did not file the instant matter in federal court. Plaintiffs filed this case in state court – Maricopa County Superior Court, in the State of Arizona. State Defendants removed the case to federal court on 10 March 2022. Furthermore, under *Migra*, even if this was an appeal, which it is not, the federal court would need to apply Arizona state law to determine what, if any, preclusive effect any so-called interim decisions by the juvenile court would have on Plaintiffs' civil rights claims. *Migra* at 81. Thus, there is no "required" preclusion, as State Defendants' assert, and their argument has no legal veracity.

Finally, State Defendants make the argument that the *Rooker-Feldman* doctrine applies here because "de facto appeals" of state court judgements to federal courts are prohibited. *See* Mot. at 16:1-12. This assertion is frivolous. Plaintiffs ultimately had a favorable decision; DCS dismissed the dependency and Jessica's parental rights were re-instated when her divorce was finalized. FAC ¶ 125. It is the events which led to Plaintiffs involvement with the juvenile court to begin with which gave rise to the Constitutional violations claimed here. Plaintiffs are not seeking a reversal of the juvenile court's orders and there is no de facto appeal. *Rooker-Feldman* simply does not apply. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (*Rooker–Feldman* doctrine only applies when the federal plaintiff asserts (1) errors by the state court as the injury and (2) relief from the state court judgment as the remedy); *see also Benavidez v. County of San Diego*, 993 F.3d 1134, 1143 (9th Cir. 2021) (plaintiffs claimed constitutional rights violations arising from a dependency proceeding, holding *Rooker-Feldman* doctrine did not apply).

**H.**     <u>**Under Federal Law, DCS is a "Person" Liable Under § 1983; Thus, DCS Can be Sued under § 1983 and for *Monell* Liability**</u>

Under federal law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,

> or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress… .

42 U.S.C.A. § 1983.

The United States Supreme Court has held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*.

DCS is a local governing body, which, as alleged in the FAC, implemented or executed a policy, regulation, or decision which was the moving force behind one or more constitutional violations committed by its employees. *See* **Claim 13** at FAC ¶¶ 227-236. As made clear by the United States Supreme Court, a claim exists "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694. The execution of policy or custom of DCS inflicted the injury alleged in the FAC. Thus, DCS, "as an entity is responsible under § 1983." Under federal law, DCS is liable and may be sued under § 1983.

In claiming that DCS may not be sued under § 1983, State Defendants rely on Arizona state law. *See* Mot. at 16:14-22. This argument is unavailing. Although state law does not provide that DCS is an entity that is liable for suit under state law, *see* A.R.S. §§ 8-451 – 8-892, state law cannot and does not overrule DCS's liability under § 1983 — liability which is established by federal law. The United States Supreme Court has made it clear: "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." *Martinez v. California*, 444 U.S. 277, 284 n. 8, (1980) (state immunity doctrines may not limit or defeat liability in § 1983 actions); *see also Felder v. Casey*, 487 U.S. 131, 139 (1988) ("[A] state law that

20

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy, which of course already provides certain immunities for state officials." (citation omitted)). DCS's liability is established under federal law, not state law. *See Monell*, *supra*. State law cannot undo that federal liability.

DCS is in essentials a municipal entity; it operates and functions as a municipality does. DCS creates its own policies, procedures, training manuals, training programs, and employment procedures. It has a yearly operating budget of approximately $1,000,000,000.00 – One Billion Dollars. Approximately $600,000,000 of DCS's monies come from federal programs and federal funds including: General Fund[3]; Federal Child Care and Development Fund Block Grant; Federal Temporary Assistance for Needy Families Block Grant (TANF); Adoption and Safe Families Act (ASFA); and the Client Trust Fund which is derived from monies collected from Social Security and Veterans' Administration Benefits among others. It's believed these federal funds are given directly to DCS and the State of Arizona does not act as an intermediary. If it walks and talks like a municipal entity, it should be treated the same as a municipal entity.

Making DCS incapable of suit under § 1983 gives it carte blanche to use jaw dropping amounts of federal funds to violate individuals' constitutional rights through its employees' implementation of DCS policies and procedures regarding which those employees are trained by DCS for many months before being put to work. *Parents have the fundamental right to bear and raise their children without governmental oversight or interference*. The Constitution of the United States of America, the Arizona State Constitution, Statues, and Rules protect the Due Process rights of parents and families. The State of Arizona and its agencies are required to follow laws, rules, and procedures to

---

[3] 90% of Arizona's General Fund goes to eight agencies, including the Department of Child Safety. 43% of the General Fund comes from federal funds in Arizona. Of the remaining 57%, most of the funds, 86%, come from income/sales tax in Arizona.

protect these fundamental Constitutional Rights. DCS violated Plaintiffs' rights and must be held accountable. Refusing to do so will embolden the Department to continue it unlawful actions without fear of consequences. It will continue its money grab without fear of retribution. DCS is a person and must be amenable to suit under § 1983.

It is well established that a government entity is liable for the constitutional violations of its employees when its employees commit a constitutional violation and, at the time of the constitutional violation, the government entity has an established custom that inflicts an injury of constitutional magnitude. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). Such liability may be premised on account of deliberate acts as well as omissions "when such omissions amount to the local government's own official policy." *Id*. Thus, "a failure to train or supervise can amount to a 'policy or custom' sufficient to impose liability," on the government entity, *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006), where it amounts to "deliberate indifference to the rights of persons with whom the officers come into contact," *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (internal alterations omitted). To establish liability of a government entity, or "*Monell* liability", a plaintiff must show: (1) she was deprived of a constitutional right; (2) the government entity had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-1111 (9th Cir. 2001) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).

A plaintiff can generally establish that a policy exists in three ways. **First**, they can identify an explicit policy promulgated by the entity that employees followed and that led to the deprivation of an individual's constitutional rights. *Monell*, 436 U.S. at 690. The failure to promulgate an explicit policy or failure to appropriately train employees has also resulted in liability where the failure was the result of the entity's "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Where the need for a policy is so obvious in light of the risk of constitutional

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

violations, this conscious or deliberate choice can be inferred. *Id*. at 390 n.10 ("[T]he need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" (citation omitted).).

**Second**, Plaintiffs can show that even though no explicit policy can be identified, a permanent, widespread, and settled custom existed that employees followed and that led to the deprivation of constitutional rights. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

**Third**, Plaintiffs can show that the constitutional deprivation occurred pursuant to a directive by a decisionmaker with final authority to make binding policy. *See, e.g., Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

Finally, the United States Supreme Court has flatly rejected any "heightened pleading standard" for *Monell* claims, as such a standard would be "impossible to square ... with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant City Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Here, Plaintiffs have sufficiently alleged facts which would support a finding of liability against DCS. Therefore, Plaintiffs' claims against DCS should not be dismissed.

## V.  **CONCLUSION**

A motion to dismiss should be granted only if, when drawing all reasonable inferences in favor of the plaintiff, there is no cognizable factual or legal basis for the claim. *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949, 173 L. Ed. 2d 868; *Bell Atl. Corp.*, 550 U.S. at 556, 127 S. Ct. at 1965, 167 L. Ed. 2d 929; *Earth Island Inst.*, 464 F. Supp. 3d at 1141. State Defendants have failed to meet this standard.

WHEREFORE, Plaintiffs request this Court to deny State Defendants' Motion to Dismiss in its entirety.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

RESPECTFULLY SUBMITTED this 10th day of August 2022.

MILLS + WOODS LAW PLLC

By____/s/ Thomas A. Connelly____
      Thomas A. Connelly
      Robert T. Mills
      Sean A. Woods
      5055 North 12th Street, Suite 101
      Phoenix, AZ 85014

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
      DeeAn Gillespie Strub
      Sandra T. Daussin
      7319 North 16th Street
      Phoenix, AZ 85020

      *Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, I electronically transmitted the foregoing document to be filed electronically with the Clerk's Office through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to be served on all counsel of record via the Court's CM/ECF system.

_____/s/ Thomas A. Connelly_____

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556