**GRASSO**
—Law Firm—

2250 East Germann Road, Suite 10
Chandler, Arizona 85286
(480) 739-1200

Robert Grasso, Jr., Bar No. 015087
Pari K. Scroggin, Bar No. 015288
Pamela L. Judd, Bar No. 022109
rgrasso@grassolawfirm.com
pscroggin@grassolawfirm.com
pjudd@grassolawfirm.com
    Attorneys for Defendants Southwest
    Human Development and Gwynetth Kelly

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Kahraman, an individual; D.K., a minor, through his parent and guardian Jessica Kahraman; and K.K., a minor, through his parent and guardian Jessica Kahraman,<br><br>                              Plaintiffs,<br><br>    vs.<br><br>The State of Arizona, a governmental entity; Arizona Department of Child Safety ("DCS"), a governmental entity; Sarah Kramer, individually and as an employee with DCS, and John Doe Kramer, her spouse; Sarah Mendez, individually and as an employee with DCS, and John Doe Mendez, her spouse; Madison Bell, individually and as an employee with DCS, and John Doe Bell, her spouse; Mecca Temple, individually and as an employee with DCS, and John Doe Temple, her spouse; Gregory McKay, individually and as an employee with the State of Arizona as the former Director of DCS, and Jane Doe McKay, his spouse; Michael Faust, individually and as an employee with the State of Arizona as the current Director of DCS, and Jane Doe Faust, his spouse; Banner Children's at Desert, formerly Cardon Children Medical Center ("Banner"), an Arizona nonprofit organization; Ryan M. Stewart, M.D., individually and as an employee with Banner, and Jane Doe Stewart, his spouse; Maria | Case No. 2:22-cv-00375-SRB<br><br>**DEFENDANT GWYNETTH KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Chico, individually and as an employee with Banner, and John Doe Chico, her spouse; Southwest Human Development ("SWHD"), an Arizona nonprofit organization, individually and as a service provider for the State of Arizona; Drue Kaplan-Siekman, individually and as an employee with SWHD, and John Doe Siekman, her spouse; Gwyneth Kelly, individually and as an employee with SWHD, and John Kelly, her spouse; Michael Kelly, M.D. an individual, and Jane Doe Kelly, his spouse; John and Jane Does 1-5; and Black Entities 1-5,

                                            Defendants.

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Gwynetth Kelly ("Kelly") hereby moves for judgment on the pleadings on the claims asserted in Plaintiffs' Second Amended Complaint ("SAC") (Doc. 74) against Kelly as follows:

1. Plaintiff Jessica Kahraman's Claims Two (unlawful detention) and Four (conspiracy to seize and detain) based on the running of the statute of limitations;

2. Claim Five (failure to preserve the family relationship) because Plaintiff Jessica Kahraman's parental rights were not terminated and Plaintiffs' theory of liability against Kelly lacks a legal basis;

3. Claim Six (violating right to make medical decisions for minor children) based on a lack of sufficient allegations against Kelly;

4. Plaintiffs' § 1983 (Claims Two, Four, Five, and Six) based on insufficient allegations to support that Kelly was acting "under the color of law;

5. Claims Eight, Nine, and Ten based on the legal basis cited by Plaintiffs failing to create a duty owed by Kelly; and

6. Claim Thirteen (intentional infliction of emotional distress ("IIED")) based on Kelly's alleged conducting not rising to the level of conduct necessary to support an IIED claim.

The foregoing resolves all claims against Kelly, and she should be dismissed as a Defendant in the matter. This motion is supported by the following Memorandum of Points and Authorities, as well as the entire records in this matter. Pursuant to Local Rule 12.1(c),

prior to filing this motion undersigned counsel certifies she notified counsel for Plaintiffs of the issues asserted in this motion and the parties were unable to agree that the SAC was curable in any part by a permissible amendment.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Factual background.

In this lawsuit, Plaintiffs Jessica Kahraman ("Mother"), D.K. and K.K. (collectively "Minor Children") assert claims against numerous Defendants related to the removal of the Minor Children from Mother's custody by the Arizona Department of Child Safety ("DCS") and the dependency proceedings that followed. (*See generally* SAC). The Minor Children were removed from Mother's custody by DCS on December 28, 2018. (SAC ¶ 71). Defendant Southwest Human Development, Inc. ("SWHD"), including Kelly as a SWHD employee, facilitated, and supervised therapeutic visitations between Mother and the Minor Children from February 2019 through November 2020. (SAC at ¶¶ 18, 76, 79-80).

On November 9, 2020, the dependency proceedings were terminated, thereby concluding DCS's involvement, as well as the family preservation and reunification services SWHD provided to Plaintiffs. (SAC at ¶ 144). Plaintiffs filed their initial complaint in this matter on November 16, 2021. (Complaint filed with the Maricopa County Superior Court on Nov. 16, 2021).

### II.  Kelly is entitled to judgment on the pleadings.

#### a. Mother's § 1983 Claim Two and Claim Four are barred by the statute of limitations.

Mother asserts against Kelly 42 U.S.C. § 1983 claims for violations of Federal Constitutional Amendment rights based on (1) the purported unlawful detention of her Minor Children (Claim Two) and (2) an alleged conspiracy to seize and detain her Minor Children (Claim Four). These claims are untimely.

A federal court applies the state statute of limitation for § 1983 claims. *Norco. Const., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986). In Arizona, a two-year statute of limitations applies to § 1983 claims. *Wesbrock v. Ledford*, 464 F. Supp. 3d 1094,

1098 (D. Ariz. 2020) (citing *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)). "The general common law principle is that a cause of action accrues when 'the plaintiff knows or has reason to know of the injury.'" *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (quoting *TwoRivers*, 174 F.3d at 991).

As the Court previously ruled, "[Mother's] familial association claims accrued on or around December 28, 2018, or the date that Ms. Mendez and Ms. Kramer [with DCS] removed the Boys from [Mother's] custody." (Doc. 145 at 6:19-7:10). The Court therefore, dismissed Claims One and Two against DCS, Madison Bell, Sarah Kramer, Sarah Mendez, Mecca Temple, Dr. Ryan Stewart and Maria Chico.

Based on the foregoing, Mother's § 1983 Claim Two and Claim Four against Kelly were not asserted within two years of the removal of the Minor Children. Mother's Claim Two and Claim Four are untimely and Kelly is entitled to judgment on these claims.

> **b. Plaintiffs' Claim Five (failure to preserve the family relationship) fails as a matter of law because Mother's parental rights were not terminated, and Plaintiffs' theory of liability lacks legal support with respect to Kelly.**

Plaintiffs' Claim Five alleges a § 1983 claim for failure to use reasonable efforts to preserve the family relationship. Specifically, the SAC alleges, Kelly and other Defendants failed to preserve the family relationship when they, "fail[ed] to complete a thorough investigation, as required by A.R.S. § 8-456(C)(1) and [relied] on false information provided by Defendants Stewart, Chico, and/or Dr. Kelly [a former Defendant, Michael Kell, M.D.]" and "unreasonably and unlawfully limiting [Mother's] supervised visits with her boys to two hours twice per week." (SAC at ¶¶ 200, 203).

The Court previously addressed the legal sufficiency of Plaintiffs' Claim Five allegations.

> … A.R.S. § 8-533(B) enumerates the grounds the juvenile court must consider before terminating a parent-child relationship, one of which is whether DCS made diligent efforts to provide reunification services for a specified statutory period. A.R.S. § 8-533(B)(8); *see Donald W. v. Dep't of Child Safety*, 444 P.3d 258, 271 (Ariz. Ct. App. 2019*); Jordan C. v. Arizona Dep't of Econ. Sec.*, 219 P.3d 296, 303 (Ariz. Ct. App. 2009); *Mary Ellen C. v. Arizona Dep't of Economic Sec.*, 971 P.2d 1046, 1051–52 (Ariz. Ct. App. 1999) (recognizing constitutional rights are at stake when the court

4

severs the parent-child relationship). Plaintiffs do not allege that the juvenile court ever needed to make any such determination because the court did not terminate [Mother's] parental rights. The Court dismisses Count 5 [with respect to DCS, Madison Bell, Sarah Kramer, Sarah Mendez, Mecca Temple].

(Doc. 145 at 10, fn.16). Claim Five for failure to preserve the familial relationship against Kelly fails because the juvenile court did not terminate Mother's parental rights.

Additionally, Plaintiffs base Claim Five on A.R.S. §§ 8-456 and 8-514(B). A.R.S. §§ 8-456 applies to DCS "investigators"[1], which Kelly was not. Kelly was not a DCS investigator. And A.R.S. § 8-514(B) applies to the residential placement of children by DCS and provides an order of placement preference list. Kelly worked for SWHD, which supervised visits between Plaintiffs. A.R.S. § 8-514(B) does not apply to Kelly. Therefore, Kelly is also entitled to judgment on Claim Five based on a lack of legal basis for Plaintiffs' Claim Five against Kelly.

### c. Plaintiffs' Claim Six (violating right to make medical decisions for minor children) is deficient because Plaintiffs do not allege Kelly personally participated in the Minor Children's medical care.

Plaintiffs' Claim Six alleges a § 1983 claim for the alleged violation of due process in failing to allow the parents to make medical decisions for their Minor Children. (SAC at ¶ 212). A defendant violates a parent's right to make medical decisions for her children when it conducts an examination without notifying the parents and fails to obtain either parent's consent or judicial authorization for the examination. *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1161 (9th Cir. 2018).

---

[1] Ariz. Rev. Stat. Ann. § 8-456(A) provides:
The department shall train all **investigators** in forensic interviewing and processes and the protocols established pursuant to § 8-817. The training must include:
1. An evidence-informed safety assessment model to assess the safety of a child.
2. The duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure.
3. Instruction on a child's rights as a crime victim and instruction on the legal rights of parents.
4. A checklist or other mechanism to assist the investigator in giving consideration to the relevant factors in each investigation.
(emphasis added).

5

The SAC contains no allegations that Kelly was personally involved in the Minor Children's medical care, which is far beyond Kelly's limited role of supervising visitations between the Plaintiffs. Therefore, Kelly is entitled to judgment on Claim Six based on a lack of any allegations to support a claim against her for failing to allow the parents to make medical decisions for their Minor Children.

> **d. Plaintiffs' § 1983 Claims (Claims Two, Four, Five, and Six) fail to demonstrate a conspiracy between Kelly and the State to render her actions "under color of law."**

"A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor" to be deemed acting "under the color of law." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 271 (2d Cir. 1999). To prove a conspiracy for § 1983 liability, the plaintiff "must show an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)(internal quotation omitted). "To be liable, … each participant must at least share the common objective of the conspiracy." *Id.*

Kelly was acting as a SWHD employee, not a DCS employee. Plaintiffs are required to demonstrate that Kelly was acting with a common objective with the State to violate Plaintiffs' constitutional rights. Plaintiffs fail to allege a plausible conspiracy between Kelly and the State to support their § 1983. Plaintiffs' allegations are insufficient. For example, Plaintiffs allege Kelly and other Defendants "intentionally presented misleading information and/or withheld information from the juvenile court in an effort to present [Mother] as an MSBP, mentally ill, and unfit parent to her sons in order to keep K.K. and D.K. in State's continuing custody." (SAC ¶ 174). Yet, Plaintiffs fail to allege any purported information Kelly presented or failed to present to the juvenile court based on an agreement or meeting of the minds with the State to violate Plaintiffs' constitutional rights. In fact, Plaintiffs do not and cannot allege Kelly present any evidence in the juvenile court dependency proceedings.

In a similar hollow fashion, Plaintiffs generally allege Kelly and numerous other Defendants violated Plaintiffs' constitutional rights by "providing Ms. Kramer, Ms.

Mendez, Ms. Bell, and Ms. Temple false, misleading, and/or unfounded information alleging that [Mother] had abused K.K. and D.K.; by failing to thoroughly review K.K.'s and D.K.'s medical history and other record; and by providing opinions which were based on false, biased, and/or misleading information and which did not contain a true and accurate report of K.K.'s and D.K.'s actual medical history." (SAC ¶ 191). Yet Plaintiffs fail to allege any facts of such actions specifically performed by Kelly much less that such actions on Kelly's part were performed based on an agreement or meeting of the minds with the State to violate Plaintiffs' constitutional rights.

Additionally, Plaintiffs suggest visitations being limited to "two hours twice per week" as a basis for their various § 1983 claims. (SAC ¶ 203). But Plaintiffs fail to allege Kelly, in particular, had any role in deciding the duration and frequency of the supervised visits, much less that she did so pursuant to a conspiracy with the State to violate Plaintiffs' constitutional rights. Quite simply, Plaintiffs lumped Kelly into their § 1983 with the other numerous Defendants with no factual allegations to support the claims specifically against Kelly and sprinkled conspiracy language throughout the SAC in a desperate attempt to state viable § 1983 claims against her and the other Defendants.

The SAC does not and cannot allege the actions forming the basis for their § 1983 claims were performed specifically by Kelly in conjunction with a common objective with the State to violate constitutional rights. Therefore, Kelly is entitled to judgment on Plaintiffs' § 1983 (Claims Two, Four, Five, and Six) because there are insufficient allegations to support that she was acting "under the color of law."

### e. Plaintiffs' negligence claims (Claims Eight, Nine, and Ten) against Kelly lacks legal support.

Plaintiffs' Claims Eight, Nine, and Ten asserts claims for alleged negligence in carrying out the duty to make reasonable efforts to preserve the family relationship. In an effort to create a duty owed by Kelly to Plaintiffs in support of their negligence claim, Plaintiffs cite A.R.S. § 8-456; A.R.S. § 8-533(B)(8); A.R.S. § 8-802; and

As addressed *supra*., A.R.S. § 8-456, upon which Claim Nine is based, applies to DCS "investigators." Plaintiffs do not and cannot allege Kelly was a DCS investigator.

Similarly, A.R.S. § 8-533(B)(8) provides that when a "child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that **the agency responsible for the care of the child** has made a diligent effort to provide appropriate reunification services." (emphasis added). This statute states an obligation on the part of DCS, not any individual, much less Kelly, an employee of a private party.

Additionally, A.R.S. § 8-802 relates to DCS employing "child safety workers." And the specific subsection cites by Plaintiffs, A.R.S. § 8-802(D), sets forth that "[a]ll child safety workers shall be trained and demonstrate competency in… [various areas]. Child safety workers are defined as "a person who has been selected by and trained under the requirements prescribed by the department and who assists in carrying out the provisions of this article." A.R.S. § 8-801(2). A.R.S. § 8-802(D) does not set forth any duty owed by Kelly to Plaintiffs.

None of the statutes upon which Plaintiffs' negligence claims are based set forth a duty owed by Kelly or negligence standard with respect to Kelly, who was not a DCS employee. Therefore, Kelly is entitled to judgment on Claims Eight, Nine, and Ten based on a lack of legal support for these claims against Kelly.

Furthermore, because Plaintiffs' § 1983 Claim Five for failure to preserve the familial relationship against Kelly fails based on the juvenile court failing to terminate Mother's parental rights, Claim Nine is similarly deficient.

### f. Plaintiffs do not allege conducting rising to the level of conduct necessary to support their IIED claim (Claim Thirteen) against Kelly.

In Claim Thirteen for IIED, Plaintiffs allege:

> 270. The gross negligence and negligence per se by Dr. Stewart, Ms. Chico, Ms. Kramer, Ms. Mendez, Ms. Bell, Ms. Temple, Ms. Kaplan-Siekman, Ms. Gwyneth Kelly, and Dr. Kelly was extreme and outrageous. This conduct is unquestionably extreme and outrageous because it was clear to any rational, unbiased observer that [Mother] was a loving, caring parent and that agents of DCS, SWHD, and Banner had simply gotten it wrong – badly wrong – and then tried to cover up their mistakes or were too arrogant to admit them.

> 272. Ms. Bell, Ms. Temple, Ms. Gwyneth Kelly, and Ms. Kaplan-Siekman supported [Mother's] manipulative, aggressive and threatening husband as the marriage dissolved. This is extreme and outrageous conduct.
>
> 273. Ms. Bell, Ms. Temple, Ms. Kaplan-Siekman, and Ms. Gwyneth Kelly refused to consider the overwhelming available evidence that [Mother] was a loving, caring parent who never abused or neglected her children. Instead, Ms. Bell, Ms. Temple, Ms. Kaplan-Siekman, and Ms. Gwyneth Kelly pursued a false narrative that [Mother] had MSBP. This is extreme and outrageous conduct.

(SAC ¶¶ 270, 272-73).

The Court previously set for the following standard and ruling on Plaintiffs IIED claim:

> Arizona defines extreme and outrageous as going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford*, 734 P.2d at 485 (quoting Restatement (Second) of Torts § 46 cmt. d). Plaintiffs allege that Dr. Stewart and Ms. Chico's "gross negligence" was extreme and outrageous "because it was clear to any rational, unbiased observer that [Mother] was a loving, caring parent" and Dr. Stewart and Ms. Chico "had simply gotten it wrong." (SAC ¶ 270). Plaintiffs further allege that Dr. Stewart and Ms. Chico's reports of suspected abuse were extreme and outrageous because they did not investigate their suspicions thoroughly. (*Id*. ¶ 271). The Court cannot reasonably infer from these allegations that Dr. Stewart and Ms. Chico's conduct went beyond all "bounds of decency." (See *id*. ¶¶ 16–17, 268–276). The Court grants Banner's Motion on Count 13.

The allegations against Kelly are likewise deficient. Plaintiffs' allegations against Kelly do not support that any conduct on Kelly's part was "beyond all possible bounds of decency." In fact, Plaintiffs' IIED allegations against Kelly are so vague and non-specific that it is unclear what actions on Kelly's part they even contend support their IIED claim. Thus, Plaintiffs' allegation in support of their IIED claim are hollow and do not rise to the level of conduct necessary to support an IIED claim, especially in light of the Minor Children's complex medical histories (*see* Doc. 145 at 1:22-2:9; SAC ¶¶ 32-47, 52-55) and Kelly's limited role. Kelly is entitled to judgment on Claim Thirteen.

### III. Conclusion.

Judgment must be entered in favor of Defendant Gwynetth Kelly, and she should be dismissed as a Defendant in this matter based on the following:

1. Plaintiff Jessica Kahraman's Claims Two (unlawful detention) and Four (conspiracy to seize and detain) are barred by the running of the statute of limitations;
2. Claim Five (failure to preserve the family relationship) is legally deficient;
3. Claim Six (violating right to make medical decisions for minor children) lacks sufficient allegations;
4. Plaintiffs' § 1983 (Claims Two, Four, Five, and Six) lacks sufficient allegations to support that Kelly was acting "under the color of law;"
5. Claims Eight, Nine, and Ten based on the legal basis cited by Plaintiffs failing to create a duty owed by Kelly; and
6. Claim Thirteen (intentional infliction of emotional distress ("IIED")) based on Kelly's alleged conducting not rising to the level of conduct necessary to support an IIED claim.

RESPECTFULLY SUBMITTED this 25th day of August 2023.

**GRASSO LAW FIRM, P.C.**

By  /s/Pamela L. Judd
Robert Grasso, Jr.
Pari K. Scroggin
Pamela L. Judd
2250 East Germann Road, Suite 10
Chandler, Arizona 85286
Attorneys for Defendants Southwest Human Development and Gwynetth Kelly