Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
**GILLESPIE, SHIELDS & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com
*Attorneys for Plaintiffs*

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Kahraman, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> State of Arizona, et *al.*, <br><br> Defendants. | Case No.: 2:22-cv-00375-PHX-SRB <br><br> **PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO:** <br><br> **(1) DEFENDANT GWYNETTH KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 153)** <br> **AND** <br> **(2) DEFENDANT DRUE KAPLAN-SIEKMAN'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 154)** <br> **AND** <br> **(3) DEFENDANT DRUE KAPLAN-SIEKMAN'S JOINDER IN DEFENDANT GWYNETTH KELLY'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 155)** <br><br> **(ORAL ARGUMENT REQUESTED)** |

Plaintiffs, by and through their counsel, hereby respond in opposition to *Defendant Gwyneth Kelly's Motion for Judgment on the Pleadings* (Doc. 153), filed on 25 August 2023, *Defendant Drue Kaplan-Siekman's Motion for Judgment on the Pleadings* (Doc. 154), filed on 28 August 2023, and *Defendant Drue Kaplan-Siekman's Joinder in Defendant Gwynetth Kelly's Motion for Judgment on the Pleadings* (Doc 155), filed on 28 August 2023, for the above referenced matter.[1] The following Memorandum of Points and Authorities demonstrates why each of those motions must be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Jessica Kahraman, D.K., and K.K., (collectively, "Plaintiffs") assert the following claims rising under 42 U.S.C. § 1983 in the Second Amended Complaint ("SAC") against Defendants Gwynetth Kelly and Drue Kaplan-Siekman, individually and as employees of Defendant Southwest Human Development ("SWHD"): **Claim 2** (Unlawful Detention), **Claim 4** (Conspiracy), **Claim 5** (Reasonable Efforts to Preserve Family), and **Claim 6** (Due Process / Medical Decisions). Plaintiffs also assert state law claims against Defendants: **Claim 8** (Negligence/Legal Rights); **Claim 9** (Negligence/Reasonable Efforts); **Claim 10** (Negligence Per Se); and **Claim 13** (Intentional Infliction of Emotional Distress).

Defendants move for judgment on the pleadings arguing: (1) the statute of limitations has run for the 42 U.S.C. § 1983 claims (Claims 2 and 4); (2) Claim 5 lacks a legal basis because Mother's parental rights were not terminated; (3) Claim 6 lacks sufficient allegations against Defendants; (4) §1983 Claims 2, 4, 5, and 6 lack sufficient allegations to support that Defendants were acting "under the color of law"; (5) Claims 8, 9, and 10 fail to "create a duty owed" by Defendants; and, (6) Claim 13 lacks sufficiently

---

[1] The respective Motions' docket filing numbers, (Doc. 153 (Kelly) and Doc. 154 (Kaplan-Siekman)), will be used when citing to the two motions, rather than using the form "Kelly's Mot." or "Kaplan-Siekman's Mot."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

heinous factual allegations to support an IIED claim. Defendants' arguments are unpersuasive. Their motions should be denied.

## II. FACTUAL BACKGROUND

Jessica Kahraman is the mother of D.K. and K.K., twin boys born in 2012; Ahmet Kahraman is their father. SAC ¶ 27. DCS removed D.K. and K.K. from their parents' care on or about December 28, 2018, based on false allegations of Munchausen syndrome by proxy ("MSBP") despite overwhelming evidence to the contrary. *Id.* ¶¶ 12, 61, 153, 156, 271. D.K. and K.K. suffered from chronic health issues and none of their healthcare providers, all of whom were mandatory reporters, had ever raised concerns of neglect, abuse, or MSBP. *Id.* ¶¶ 32, 52, 53, 58. Four months after DCS removed D.K. and K.K., Plaintiffs discovered and notified DCS that there was a toxic mold infestation in the family's townhome. *Id.* ¶ 29. This toxic mold was the most likely cause of the boy's health issues. *Id.* ¶¶ 82-89.

After the unlawful seizure, DCS immediately prohibited Jessica from seeing her children, and subsequently restricted her visits and other interactions with them through Southwest Human Development ("SWHD") at the direction of its employees Defendants Gwyneth Kelly and Drue Kaplan-Siekman (collectively, "Defendants"). Defendants, acting at the behest of DCS, implemented an MSBP protocol even though Jessica was never diagnosed with MSBP. *Id.* ¶ 80. Jessica suffered through this restrictive protocol for three years, notwithstanding the significant and mounting evidence from service providers, psychologists, and medical doctors that Jessica was a fit parent. *Id.* ¶ 81. Defendants' involvement continued until termination of the dependency proceeding in November 2020, but Jessica did not regain full visits and custody until a year later, on November 4, 2021. *Id.* ¶¶ 76, 79, 147-148.

## III. STANDARD OF REVIEW

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss. *United States ex rel. Caffaso v.*

*Gen'l Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). When deciding a Rule 12(c) motion, the Court does not decide factual issues and must construe the factual allegations in the SAC in the light most favorable to Plaintiffs. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009); *Hal Roach Studios, Inc. v. Richmond Feiner & Co., Inc.*, 869 F.2d 1542, 1550 (9th Cir. 1989) (allegations of the nonmoving party are accepted as true). Then, judgment on the pleadings is properly granted <u>only</u> when, taking all the allegations in the complaint as true, a party is entitled to judgment as a matter of law. *Id.* Under the *Twombly/Iqbal* standard, a complaint should be dismissed <u>only</u> if it does not contain enough factual allegations to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts have discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend. *Cagle v. C&S Wholesale Grocers Inc.*, 505 B.R. 534, 538 (E.D. Cal. 2014).

A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2004) at 206-07 (footnotes omitted). "A motion for a judgment on the pleadings is only proper when all the material allegations of fact, as contained in the pleadings, are not at issue, leaving only questions of law to be decided." *Id*. at 207-08. "If the pleadings do not resolve all of the factual issues in the case, a trial on the merits would be more appropriate than an attempt at resolution of the case on a Rule 12(c) motion." *Id*. at 216. "Although the [Rule 12(c)] motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, …, hasty or imprudent use of this summary procedure by the court violates the policy of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *Id*. § 1368 at 222-23.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

IV.   **ANALYSIS**

A.   **Plaintiff Jessica Kahraman's § 1983 Claims Against Defendants Are Not Time Barred**

1.   **The running of an applicable statute of limitations is an affirmative defense that Plaintiffs have no obligation to plead around.**

The statute of limitations is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003), *overruled on other grounds*, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). "[Federal Rule of Civil Procedure] 8 does not require plaintiffs to plead around affirmative defenses." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). Further, "[o]rdinarily, affirmative defenses ... may not be raised on a motion to dismiss." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018). In short:

> The defendant … bears the burden of proof as to each element of a statute of limitations based affirmative defense. *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993). Similarly, a plaintiff is not ordinarily required to plead around affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

*Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017). A case can be dismissed under Rule 12 as untimely if, and only if, the lack of timeliness is clear from the face of the complaint. Further, the initial burden of persuasion is on Defendants. "In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense." *Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993). A "[d]efendant[] bear[s] the burden of persuasion on [a] motion to dismiss…." *Lesher v. City of Anderson*, 221CV00386WBSDMC, 2021 WL 2682161, *slip op.* at 6 (E.D. Cal. June 30, 2021); *see also Rabago v. Deutsche Bank Nat. Tr. Co.*, 5:10-CV-01917-JST, 2011 WL 2173811, *slip op.* at 2 (C.D. Cal. June 1, 2011).

a.   **Kelly does not demonstrate untimeliness on the face of the Second Amended Complaint**

Defendant Kelly devoted less than one page to the statute of limitations issue, and her analysis consisted ***entirely*** of reliance on this Court's Order ruling on motions to

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

dismiss filed by other Defendants. *See* (Doc. 153 at 3:22-4:12). Kelly makes no attempt to demonstrate how the face of the SAC supports her untimeliness argument. Moreover, having not done so in her motion, she cannot do so in a reply.

#### b. Kaplan-Siekman improperly relies on matters outside the four corners of the Second Amended Complaint

Defendant Kaplan-Siekman, relying on *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), correctly notes that on a Rule 12 motion, a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *See* (Doc. 154 at 4:24-5:12). However, recognizing that untimeliness is NOT clearly shown on the face the SAC, Kaplan-Siekman bootstraps her argument with an impermissible exhibit, arguing that the date of her departure from SWHD "is integral to" the SAC. She is wrong. *First*, the proffered exhibit is not attached to the SAC, nor does the SAC incorporate it by reference.[2] *Second*, with no obligation to plead around an affirmative defense, thrice stating that Kaplan-Siekman was an SWHD employee until "late 2019 or early 2020" (SAC ¶¶ 19, 79, 134), is not "extensive" enough such that incorporating a document Plaintiffs did not even know existed is permissible to defeat the claims at the pleading stage. *See Ritchie*, at 908. *Third*, the exact dates of her employment are not "integral" to the complaint; that is, they are not essential to the completeness of the claims. *Finally*, the proffered exhibit lacks foundation, is not authenticated or verified, purports to be a "Background Check Verification / Status Report" which is meaningless to the SAC allegations, is dated at irrelevant times in 2017, and contains handwritten entries on a pre-printed form that expose areas ripe for cross-examination. In other words, at best and taking it as described by Kaplan-Siekman, her use of "Exhibit 1" here creates a factual issue that cannot be resolved on a Rule 12 motion. *Fleming*, 581 F.3d at 925; *Hal Roach*

---

[2] Defendant Kaplan-Siekman does not argue that the Court should take judicial notice of Exhibit 1 or the contents thereof. It would be improper for the Court to do so. *See Richie*, 342 F.3d at 908-909 (judicial notice of facts is only proper where those facts are generally known or capable of accurate and ready determination by resort to reliable sources); *see also* Fed.R.Evid. 201.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*Studios, Inc.*, 869 F.2d at 1550; *see also Ritchie*, 342 F.3d at 908 ("The … contention that the district court could have considered some or all of the attachments under the incorporation by reference doctrine is unpersuasive. … Affidavits and declarations … are not allowed as pleading exhibits unless they form the basis of the complaint.").[3]

**2.** <u>**Defendant Kelly misconstrues a sliver of the Court's April 24, 2023, Order (Doc. 145) ruling on prior motions to dismiss as applying equally to her, it does not; nor does any portion of that Order provide a basis for dismissing as untimely the § 1983 claims asserted against Kelly.**</u>

Defendant Kelly moves to dismiss Claims 2 (Unlawful Detention) and 4 (Conspiracy) as time barred relying exclusively on a sliver of this Court's April 24, 2023, Order (Doc. 145) that Jessica's § 1983 familial association claims accrued on or around December 28, 2018, or the date DCS removed the boys from Jessica's custody. *See* (Doc. 153 at 4:5-12) citing (Doc. 145 at 6:19-7:10). Kelly's reliance on those 20-lines of the Court's 17-page Order to support her argument that Claims 2 and 4 are time-barred against her is misplaced.

First, in those 20-lines of the Court's 17-page Order, the Court dealt only with Claims 1 and 2, and not Claim 4. *See* (Doc. 145 at 6:19-7:10). Claim 1 is not asserted against Defendant Kelly (or Kaplan-Siekman), thus the Court's Order in that regard is not pertinent here. As to Claim 4, the Court did not discuss or dismiss Jessica's conspiracy claim (Claim 4) in that part of the Order; thus, her reliance on that part of the Order for dismissal of the conspiracy claim against her as untimely also fails.

Second, as to Claim 2, the Court's Order is more intricate than Kelly would have us believe and requires reading beyond the simple 20-lines she relies upon. Although there the Court dismissed Claim 2 as untimely against Dr. Stewart, Ms. Chico, and (certain) State Defendants, (*see* Doc. 145 at 7:8-10), it did not dismiss Claim 2 as time barred against Dr. Michael Kelly[4] because his actionable conduct occurred later than December 28, 2018, and

---

[3] Here, Kaplan-Siekman does not even offer an affidavit to provide foundation or authentication for the document, which has not been previously disclosed by her.

[4] Defendant Dr. Michael Kelly is not related to Defendant Gwynetth Kelly.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

within two years of the filing of the Complaint. *See* (*id.* at 7 n.11). Just like Dr. Michael Kelly, Defendants Kelly and Kaplan-Siekman were not involved in this matter on December 28, 2018; logically, then, the claims against them could not have accrued at the time. Just like Dr. Michael Kelly, the actionable conduct of Defendants Kelly and Kaplan-Siekman occurred in 2019 through November 2020, and within two years of the Complaint's filing in November 2021. *See* SAC ¶¶ 19, 20, 79, 134-137.

Furthermore, and contrary to Kelly's assertion otherwise, the Court did not dismiss Claim 2 against State Defendants Madison Bell and Mecca Temple. *Compare* (Doc. 153 at 4:7-9) (asserting that the Court dismissed Claim 2 against Bell and Temple) *with* (Doc. 145 at 9:22-10:11 and 16:25-27) (specifically denying the State's motion to dismiss Claim 2 against Bell and Temple). State Defendants Bell and Temple were the ongoing DCS case workers who took control of the case after the initial investigation by State Defendants Mendez and Kramer. SAC ¶¶ 59, 71, 77. Defendants were involved with this family during the time that Bell and Temple were responsible for the case, that being in 2019 through November 2020, within two years of the original filing in November 2021. Thus, since Claim 2 (and Claim 4) against Bell and Temple are timely, so, too, Claim 2 (and Claim 4) against Defendants Kelly and Kaplan-Siekman are timely.

Third, as to Claim 4 (Conspiracy), as mentioned above, the Court did not dismiss Claim 4 in the 20-lines of its 17-page Order relied upon by Kelly. More to the point, the Court did not dismiss the conspiracy claim against the two State Defendants who Defendants are logically alleged to have conspired with, namely, State Defendants Bell and Temple. *See* SAC ¶¶ 19, 20, 79, 134-137, 188-194; *see also* (Doc. 145 at 16:13-20) (granting State Defendants' motion to dismiss for numerous claims *except not Claim 4*).

Having failed to demonstrate that Jessica's § 1983 claims against her are time barred by reason of those 20-lines of the Court's prior Order being equally applicable to her, Defendant Kelly's motion must be denied in this regard.

Other reasons Jessica's § 1983 claims against Defendants are timely are discussed next.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### 3.    Jessica's claims did not accrue until November 2020, at the earliest, and most likely not until November 4, 2021.

Although the Court previously ruled that December 28, 2018, or the date the boys were removed from her custody was the accrual date for certain of Jessica's § 1983 claims, it was not a universal accrual date for all of her federal claims. *See* (Doc. 145 at 16) (not dismissing Claim 2 as to Bell and Temple, nor Claim 4 as to any State Defendants). Moreover, Plaintiffs contend that the Court was mistaken in finding the date of removal to be the accrual date for any of Jessica's § 1983 claims. Rather, the correct accrual date is when Jessica was no longer facing a Sophie's Choice of either cooperating with DCS and its agents to hopefully effectuate a swift reunification with her children, or antagonizing DCS and its agents by filing suit against them. Thus, the earliest possible accrual date is the termination of the dependency proceedings in November 2020. Requiring Jessica to file a lawsuit against persons holding inordinate power over her visitation rights and when (or if) her children would be returned to her within two years of removal – while dependency proceedings are pending (proceedings during which any rational parent wants to be cooperative to regain custody) – as opposed to within two years of when those persons no longer held that Damocles' sword over Jessica, is inconsistent with the purposes of § 1983 and its distinct significance in the child welfare context.

Federal courts look to state law for the length of the limitations period applicable to § 1983 claims, and to federal law to determine when a § 1983 claim accrues. *McDonough v. Smith*, 139 S.Ct. 2149, 2155 (2019) (*citing Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). Importantly, "[w]here, [as here] for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Id. (citing Wallace*, 549 U.S. at 389, 127 S.Ct. 1091). The Supreme Court's decision in *McDonough* supports either the date the dependency petition was terminated and DCS and Defendants were no longer holding sway over Jessica's parental rights (i.e., November 2020) (SAC ¶ 144), or the date that Jessica regained unrestricted care and custody of her children (i.e., November 4, 2021) (SAC ¶ 147), as the proper accrual date

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

for her § 1983 claims. In either case, the complaint filed on November 16, 2021, was timely.

*McDonough* addressed the accrual date for a § 1983 claim against defendants for fabricating evidence against the plaintiff in an earlier criminal case. The Supreme Court concluded that the accrual date for the plaintiff's § 1983 claim was not the date he knew that fabricated evidence had been used, but the date the earlier proceedings against him terminated in his favor. *Id.*, 139 S.Ct. at 2154-55. The court noted that the "accrual analysis begins with identifying the specific constitutional right alleged to have been infringed." *Id.* at 2155. The court considered the fabricated evidence claim to arise under the Due Process Clause of the Fourteenth Amendment, as do familial association claims, which sought to "vindicate a right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Id.* The Supreme Court then considered the correct accrual date by "referring to the common-law principles governing analogous torts." *Id.* at 2156. The plaintiff in *McDonough* argued, and the Supreme Court agreed, that his § 1983 fabricated-evidence claim was most analogous to the common-law tort of malicious prosecution. *Id.* The Supreme Court then stated, "[w]e follow the analogy where it leads: McDonogh could not bring his fabricated evidence claim under §1983 prior to favorable termination of his prosecution." *Id.* The Supreme Court noted the policy considerations that supported its finding – the desire to avoid parallel criminal and civil litigation over the same subject matter and possibility of conflicting results. *Id.* at 2157.

The same result applies here because of the State's and Defendants' inordinate position of power over families caught within the dependency machinery. If Jessica's claims accrued the moment her boys were taken into state custody, then she would have faced the "untenable choice" that worried the Supreme Court in *McDonough*: either letting her claims expire, or filing a civil lawsuit against the state actors restricting her visits and seeking to sever her parental rights in the dependency proceedings. *See id.* at 2158. Under *McDonough*, the correct accrual date for Jessica's claims is thus either when the dependency proceedings terminated in November 2020, or on November 4, 2021, when

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Jessica regained full care and custody of her boys. In either case, the § 1983 claims were timely filed.

In addition, the doctrine of continuing torts applies when there are a series of related or multiple wrongful acts or omissions. *See Cruz v. City of Tucson*, 243 Ariz. 69, 74, 401 P.3d 1018, 1023 (Ct. App. 2017). In these matters, "accrual begins at the termination of the wrongdoing, rather than at the beginning". *Id.* (internal citations omitted); *see also*, *accord Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (the continuing torts doctrine applies "when it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct."). Here, Jessica did not regain her full parental rights until November 4, 2021, nearly one year after dismissal of the dependency petition. SAC ¶ 148. The doctrine of continuing torts applies here as it would have been impractical for Jessica to have filed a lawsuit every time she was injured by Kelly's (or Kaplan-Siekman's) failure to increase or recommend increasing her visitations, or return the boys to her custody.

**B.** **Plaintiffs Alleged Specific Wrongful Conduct Supporting the Plausibility of Claim 5**

Defendants argue Plaintiffs' §1983 claim for failure to use reasonable efforts to preserve the family relationship (Claim 5) fails because Jessica's parental rights were not terminated, and it lacks legal support as to them. *See* (Doc. 153 at 5:4-12; Doc. 155). This argument fails.

Defendant Kelly relies heavily on footnote 16 in the Court's prior Order, *see* (Doc. 153 at 4:22-5:5), where the Court dismisses Claim 5 (failure to make reasonable efforts at family reunification) "because the [juvenile] court did not terminate Ms. Kahraman's parental rights", *see* (Doc. 145 at 10 fn 16). Termination of Jessica's parental rights is not a prerequisite to her claim for Defendants' failure to make reasonable efforts at a swift family reunification. The gist of that claim is that family reunification was wrongfully delayed by Defendants' severely limiting Jessica's visitations with her boys to only four hours per week for nearly three years despite numerous Ph.D.-level psychologists and a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

medical expert's opinion that Jessica was not a Munchausen parent and should have frequent visitation with her boys, and in fact, custody returned to her. *See* SAC ¶¶ 195-206.

Additionally, Plaintiffs allege that Defendants participated with DCS in pursuing an unwarranted, unfounded, harassing, and vexatious course of conduct regarding Jessica's ability and fitness as a parent, including wrongfully labeling her with MSBP to justify limited visits. *See Daurio v. Arizona Dep't of Child Safety*, No. CV-18-03299-PHX-GMS, 2020 WL 6940812, at *5 (D. Ariz. Nov. 25, 2020) (citation omitted) ("Unwarranted interference includes governmental actions that are vexatious and unnecessary, harassing, unfounded or unreasonable, and arbitrary, discriminatory, or demonstrably irrelevant."). Specifically, Plaintiffs allege that Defendants implemented the MSBP protocol for no legitimate reason (SAC ¶ 80), ignored positive reports from properly credentialed professionals so they could continue the restrictive protocol (*id.* ¶¶ 104, 200), ignored Dr. Shroekenstien's August 28, 2020, report by refusing to restore Jessica to full visitation rights (*id.* ¶¶ 119, 200), ignored Carla White's report that it was not in the best interest of the boys to sever Jessica's parental rights (*id.* ¶ 120), ignored positive parenting aide reports and insisted Jessica remain on a highly restricted supervised visits schedule with MSBP protocol (*id.* ¶ 122), inaccurately portrayed Jessica as dangerously hyper-vigilant during visitation and did not lift MSBP protocol or supervised visits (*id.* ¶ 136), and went to great lengths to keep Jessica from seeing her children (*id.* ¶ 137). Had they not acted this vexatiously, more frequent, and longer visits would have occurred and Jessica's reunification with her boys would have happened sooner. That is the gist of Claim 5.

The Ninth Circuit views the right to familial and, more specifically, parent-child association, as grounded in the First and Fourteenth Amendments. The First Amendment protects "family relationships, that presuppose 'deep attachments and commitments to the necessary few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (*quoting Bd. Of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987)). The Fourteenth Amendment's

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Due Process Clause recognizes that parents have a fundamental liberty interest in the "companionship, care, custody, and management" of their children that includes the right to make decisions about their children's education, medical treatment, and to be present for medical procedures. *Meyer v. Nebraska*, 262 U.S. 390 (1993) (right to direct upbringing and education of children); *Fields v. Palmadale Sch. Dist. (PSD)*, 447 F. 3d 1187, 1189-98 (9th Cir. 2000) (right to make educational decisions); *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) (right to make medical decision and be present for procedures.). Moreover, "[w]hether a private party engaged in state action is a highly factual question." *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1209 (9th Cir. 2002). Federal and state law require child welfare agencies to make "reasonable efforts" to preserve the family and prevent removal of children, which necessarily includes prompt reunification when children are removed. *E.g.*, 42 U.S.C. § 671(a)(15); A.R.S. § 8-846.

Even if the Arizona statutes do not apply to Defendants, which they do because these Defendants were state actors, *see infra* § IV.D, the SAC contains sufficient allegations setting forth a plausible claim that Defendants failed to make reasonable efforts at family reunification and thereby failed to make reasonable efforts to preserve the family relationship during the three years the boys were taken from Jessica. Defendants are not entitled to judgment on the pleadings as to Claim 5.

### C.     Specific Wrongful Conduct is Alleged for Claim 6

Defendants argue that Plaintiffs' § 1983 claim for alleged violation of due process in failing to allow the parents to make medical decision, Claim 6, should be dismissed because the SAC contains no allegations that Defendants were personally involved. *See* (Doc. 153 at 6:1-3; Doc. 155).

As it pertains to Defendants' liability under Claim 6, Jessica's inability to make medical decisions for the boys derives, at least in part, from their conduct and implementation of MSBP protocols for no legitimate reason, thereby preventing Jessica from making medical decisions, being present for medical appointments, or having access to her children at medically significant times. Indeed, the gist of a MSBP diagnosis is that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

a parent induces symptoms of a disease or injury in their child, falsifies the child's medical history, or tampers with the child's diagnostic specimens to create a situation that typically requires medical attention. *See* "Munchausen syndrome by proxy." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/Munchausen%20syndrome%20by%20proxy, last accessed 14 September 2023. The obvious consequence of diagnosing a parent with MSBP is the implementation of protocols preventing that parent from making important medical decisions for her children. That is what happened here and what Claim 6 alleges. The Ninth Circuit stated in *Wallis*:

> The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decision made by their parents rather than the state. (*citing Parham v. J.R.*, 442 U.S. 584, 602 1979) (holding it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless "neutral fact finder" determines, through due process hearing, that parent is not acting in child's best interests).

202 F.3d at 1141.

Defendants prevented Jessica from making medical decisions when they implemented restrictive MSBP visitation protocols, which included Jessica having very limited access to the children during their hospital stays and medical appointments.

**D.     Defendants Were State Actors Because They Conspired with DCS**

Defendants argue that they were acting as SWHD employee, not as DCS employees, and there was no common objective with the State to violate Plaintiffs' constitutional rights, thus, according to them, Claims 2, 4, 5 and 6 should be dismissed. *See* (Doc. 153 at 6:6-7, 15-18; Doc. 154 at 5:14-6:11; Doc. 155). This argument fails, too. The SAC alleges that Defendants are liable under § 1983 because: (1) "[a] private individual may be liable under § 1983 if she conspired or entered joint action with a state actor," and (2) Defendants, in fact, did conspire with, or aid and abet, DCS employees Bell and Temple. *See* SAC ¶¶ 190-192, *citing Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).  The SAC also alleges

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

specific facts on how Defendants aided and abetted DCS agents to violate Plaintiffs' constitutional rights. SAC ¶¶ 19, 20, 79-81, 104, 114, 119-122, and 134-141. Moreover, the Court previously found that these allegations were sufficient for the conspiracy claim against State Defendants Bell and Temple, the two State Defendants that these Defendants logically conspired with, to proceed. *See* (Doc. 145 at 9:22-10:11 and 16:25-27); *see also* SAC ¶¶ 19, 20, 79-81, 104, 114, 119-122, and 134-141.

Defendants can become state actors "by conspiring with a state officer or by engaging in a joint activity with state officials" and "by becoming so closely related to the State that the person's actions can be said to be those of the State itself." *Price v. State of Hawaii*, 939 F.2d 702, 708-09 (9th Cir. 1991) cert. denied 503 U.S. 938 (1992). Further, this "determination is usually fact bound, and that militates against too hasty a termination of action." *Id.* (internal citations and quotations omitted).

The State, through DCS, took the boys into temporary custody based on false accusations that the parents have MSBP. SAC ¶ 70. After the unlawful seizure, DCS prohibited Jessica from seeing her children through the necessary cooperation of Defendants. *Id.* ¶ 76. When the parents began visitation at SWHD, acting at the behest of DCS, Defendants implemented the DCS-desired MSBP protocol even though Jessica was never diagnosed with MSBP. *Id.* ¶ 80. Defendants ignored positive reports about Jessica, maintained restrictions on her visits, and refused to recommend full visitation rights for her, all in keeping with the desired DCS course for this family. *Id.* ¶¶ 104, 119. For instance, Carla White, another SWHD agent, unequivocally stated it was not in the boys' best interest to sever parental rights or keep them away from their mother. *Id.* ¶ 120. Yet, Defendants continued to ignore such positive reports and continued to insist that Jessica remain on highly restricted supervised visits with MSBP protocol. *Id.* ¶¶ 121, 122. As a result, Defendants were acting under color of law because of this conspiracy, according to *Franklin*, 312 F.3d at 441, and *Price*, 939 F.2d at 708-09. Kelly's argument fails.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

E.   <u>Defendants Owed a Duty of Care to Plaintiffs as a Matter of Law</u>

Defendants argue that Claims 8, 9, and 10 fail to establish a duty owed by them and should be dismissed. (Doc. 153 at 8:14-15; Doc. 154 at 6:13-8:1; Doc. 155). This is incorrect, not least of which because this Court previously ruled that Claims 8, 9, and 10 are adequately pled as to other State Defendants Bell and Temple, with whom these Defendants conspired. *See* (Doc. 145 at 16:25-27).

In the dependency action, where Jessica's ability and fitness as a parent were at issue, DCS retained Defendants to provide therapeutic supervised visits between Jessica and her boys. In that role, Defendants were pivotal persons in determining the fate of this parent-children relationship, including the frequency and length of visitations and whether her boys would be permanently removed from Jessica's life. Given their ability to disrupt the life of both Jessica and her boys, and the fundamental nature of the relationship between Jessica and her boys, Defendants had a duty of care to Plaintiffs in the provision of their services. The duty arises from law, including from the United State Constitution.

Duty as an element of **negligence** is about relationships, ***not*** conduct. "'[D]uty' is 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Guerra v. State*, 237 Ariz. 183, 185, ¶ 7 (2015) (quoting *Ontiveros v. Borak*, 136 Ariz. 500, 508 (1983)). "[D]uty in Arizona is based on either recognized common law special relationships or relationships created by public policy." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 565, ¶ 14 (2018). "Whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 10 (2007). "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Monica C. v. Arizona Dep't of Economic Sec.*, 211 Ariz. 89, 92 (App. 2005) (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 (2005)). As such, the State cannot interfere, whether directly or through its agents like Defendants, with this interest unless the parent is provided with fundamentally fair procedures that satisfy due process requirements. *Id*.

The seminal case in this regard is *Santosky v. Kramer*, 455 U.S. 745 (1982). *Santoksy* involved the parents of three children, Tina, John, and Jed. In November 1973, the New York equivalent of DCS (hereinafter, "DSS") removed Tina on grounds of parental neglect. Ten months later, DSS removed John. The child Jed was born on the same day that John was removed, and DSS removed him from the parents three days later, even though there were no allegations that Jed had been directly neglected.

DSS sought to terminate the parents' rights to all three children. The New York family court considered whether DSS had proven neglect by a "fair preponderance of the evidence," concluding that it had. The parents appealed, asserting that this was an inappropriate burden of proof. The matter proceeded to the United States Supreme Court.

The Supreme Court began its analysis with the paragraph most well-known and oft cited, setting forth the fundamental nature of parents' relationship with their children:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Id*. at 753-54 (footnote omitted).

Thus, in determining the appropriate burden of proof, the Court employed the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976): "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky*, 455 U.S. at 754. "In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." *Id*. at 758.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

As to the first prong of due process, the Court noted that "a natural parent's desire for and right to 'the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." *Id*. at 758-59 (quotation omitted). "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Id*. at 759.

Moreover, the Supreme Court noted that, for purposes of the parental fitness phase, a phase analogous to a dependency proceeding, a State cannot minimize the interests of the children as well. "At the factfinding, the State cannot presume that a child and his parents are adversaries." *Id*. at 760.

> Until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. **Thus, at the factfinding [i.e., prior to termination proceedings], the interests of the child and his natural parents coincide to favor use of error-reducing procedures**.

*Id*. at 760-61 (footnote omitted; emphasis added); *Cynthia D. v. Superior Ct.*, 5 Cal. 4th 242, 251, 851 P.2d 1307, 1312 (1993) ("Until the state has established parental unfitness it cannot assume that the interests of the child and his or her parents diverge and until such time parent and child share an interest in preventing an erroneous termination of the relationship"); *In re Carla C.*, 143 A.3d 677, 688 (Conn.App. 2016) ("A child, no less than a parent, has a powerful interest in the preservation of the parent-child relationship"). "The *Santosky* court concluded that the balance of private interests strongly favored heightened procedural protections." *Cynthia D.*, *supra*.

Although the United States Supreme Court's mandate that severance proceedings required heightened procedural protections, its holding that "error-reducing procedures" are necessary pertains to all levels of proceedings involving the disruption of parent-child relationships. Defendants maintain that they do not owe a duty of care toward the parent or children whose relationship they may effectively end. Such a conclusion does not constitute an "error-reducing procedure" at the time in the dependency proceeding where "the interests of the child and his natural parents coincide." Indeed, eliminating a duty of care toward the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

family would actually create an incentive for a service provider like SWHD and its employees to err in favor of the preferred DCS-determined course, if for no other reason than to continue to receive DCS referrals, with no one to answer to for this unconstitutional incentive.

As is often the case in contested dependency/severance proceedings, particularly where a parent's mental health is at issue, as it was here with a presumption that Jessica was a Munchausen parent, the service providers retained by DCS, including those overseeing therapeutic visits as Defendants were doing, often play an oversized role in determining the fate of the parent-child relationship. Jessica and her boys shared *the same interest* in procedures that reduced the risk of erroneous visitation and custody determinations. Thus, the relationship giving rise to Defendants' duty of care arises from the United States Constitution.

These concepts are also embodied in Arizona's juvenile statutes. Arizona Revised Statutes § 8-456 provides in relevant part that DCS and its agents have the "[t]he duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure." A.R.S. § 8-456(A)(2). Furthermore, investigations must be "prompt and thorough" and "must evaluate … any condition … that would tend to support or refute the allegation that the child is a victim of abuse …" A.R.S. § 8-456(C)(1); *see also* 42 U.S.C. § 671(a)(15) (child welfare agencies must use "reasonable efforts" to preserve the family; A.R.S. § 8-846 (same). Thus, both constitutionally and statutorily, an agent of the Department who participates in the momentous decision whether to continue to restrict a mother's relationship with her children, or the equally momentous decisions on frequency and length of visits, whether or when custody should be returned to a parent, or even more so whether to end the relationship between children and their parent, has a legal duty to protect the interests and rights of all parties. This legal duty can and should be incorporated into the law of negligence.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**F.**     **Plaintiffs Adequately Plead Count 13 for Intentional Infliction of Emotional Distress Against Defendants**

Defendants argue that Plaintiffs' IIED (Claim 13) allegations are too vague and deficient, relying again, at least in part, on the Court's April 26, 2023, Order (Doc. 145) dismissing the IIED claim against Defendants Dr. Stewart and Ms. Chico. *See* (Doc. 153 at 9:9-22; Doc. 154 at 8:3-25; Doc. 155). As the Court previously noted, "A plaintiff suing for [IIED] must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result." (Doc. 145 at 15:1-5) citing *Watkins v. Arpaio*, 367 P.3d 72 (Ariz. App. 2016) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580 (1987). Of course, it goes without saying that at the pleading stage, Plaintiffs are not obligated to "prove" anything; rather, they merely must allege a plausible claim. It is for the factfinder to determine what does or does not constitute extreme and outrageous conduct. With the facts alleged in the SAC, a jury could reasonably find that creating and implementing a false narrative of MBSP to prevent a mother from have care, custody, or even more than four-hours a week of visits with her twin boys, is sufficiently extreme and outrageous as to be emotionally distressful. Indeed, this Court found the IIED allegations sufficiently pled as to State Defendants Bell and Temple, with whom Defendants are alleged to have conspired. *See* (Doc. 145 at 16:25-27).

Additionally, Defendants' roles and actions here are different in kind, nature, and frequency than those of Dr. Stewart and Ms. Chico, and their actions are more outrageous. Defendants were brought in by DCS to supervise the parents' visits with the boys in a therapeutic supervised visitation setting; in other words, Kelly and Kaplan-Siekman were engaged to provide therapy to reunite the Kahraman family. They did the exact opposite. They imposed unreasonable restrictions on the parent's visits with their boys – restrictions reserved for abusive parents, such as MSBP protocols when there was no diagnosis of MSBP. Rather than oversee a steady progression to family reunification, Defendants sought out evidence of MSBP to find it and support severance of Jessica's parental rights.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

SAC ¶¶ 81, 104, 109, 122. Instead of fulfilling their duty to provide therapeutic services to the family for purposes of reuniting that family, Defendants took affirmative actions designed to present Jessica in the worst possible light to facilitate DCS in restricting and severing Jessica's relationship with her sons. *Id.* ¶¶ 136, 137. This is extreme and outrageous behavior that is "utterly intolerable in a civilized community. *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 805 P.2d 559 (App. 1995). A reasonable jury could see it that way, and it is a factual inquiry that must be left to a jury.

Crediting the facts alleged in the SAC as true, and drawing all reasonable inferences in Plaintiffs' favor, a reasonable jury could conclude that Defendants, conspiring with or aiding and abetting DCS to keep these boys from the loving care of their competent mother based on a false MSBP narrative and protocol, is utterly intolerable in any decent society. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678; *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141 (N.D. Cal. 2020). This is a question for the jury and not for judgment on the pleadings. *See Lucchesi v. Frederic N. Stimmel, M.D., Ltd*, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986) ("Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."); *see also Twombly*, 550 U.S. at 556 (Rule 12 motions ought to be denied where there is "a reasonable expectation that discovery will reveal evidence" of the claims asserted in a complaint).

## V.    CONCLUSION

For all the foregoing reasons, Defendants motions must be denied. If the Court grants either motion, Plaintiffs should be given the opportunity to amend.

RESPECTFULLY SUBMITTED this 18th day of September 2023.

MILLS + WOODS LAW PLLC

By   */s/ Thomas A. Connelly*
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Phoenix, AZ 85014

GILLESPIE, SHIELDS & TAYLOR
DeeAn Gillespie Strub
7319 North 16th Street
Phoenix, AZ 85020

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2023, I electronically transmitted the foregoing document to be filed electronically with the Clerk's Office through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to be served on all counsel of record via the Court's CM/ECF system.

_/s/ Michelle Feltes_

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556