**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Kahraman, et al., | No. CV-22-00375-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Before the Court are Defendant Gwyneth Kelly's Motion for Judgment on the Pleadings ("Kelly's Motion") and Defendant Drue Kaplan-Siekman's Motion for Judgment on the Pleadings ("Kaplan-Siekman's Motion"). (Doc. 153, ("Kelly Mot."); Doc. 154, ("Kaplan-Siekman Mot.").) The Court will grant the Motions.

**I.   BACKGROUND**

    **A.   Factual Background**

The facts of this case are set out in the Court's previous order. (*See* Doc. 145, 04/26/2023 Order.) In short, this case arises out of the Arizona Department of Child Safety's ("DCS") removal of brothers D.K. and K.K. ("Boys") from their parents, Ms. Kahraman[1] and her former husband Ahmet Kahraman. (*See* Doc. 74, Second Am. Compl. ("SAC") ¶¶ 70–71.) The Boys experienced various health complications throughout their early childhood. (*Id.* ¶¶ 32–48.) K.K. was admitted to Banner Children's at Desert on December 18, 2018, after which Ms. Kahraman was suspected of having Munchausen

---

[1] Ms. Kahraman brings this suit individually and on behalf of D.K. and K.K.

Syndrome by Proxy ("MSP"). (*Id.* ¶¶ 51–52, 54.) DCS then opened an investigation into the Kahramans and removed the Boys from their parents' care on December 28, 2018. (*Id.* ¶¶ 59, 63, 71.) According to Plaintiffs, Defendants Kelly and Kaplan-Siekman, employees of Southwest Human Development ("SWHD"), "act[ed] at the behest" of DCS to implement protocols to limit Mr. and Ms. Kahraman's interference with the Boys' nutrition while in DCS custody. (*Id.* ¶¶ 79–80.) Kaplan-Siekman ignored "positive" reports of Ms. Kahraman and instead advanced a "false narrative" that she was unfit to parent the Boys. (*Id.* ¶¶ 93, 104, 122.)

Mr. Kahraman filed for divorce in January 2020. (*Id.* ¶ 125.) DCS eventually lifted Mr. Kahraman's restrictions and "SWHD agents" allowed him to serve as the "parent coordinator." (*Id.* ¶¶ 130–35.) However, Kelly and Kaplan-Siekman "did not lift" Ms. Kahraman's restrictions. (*Id.* ¶¶ 136.) They also allegedly prevented Ms. Kahraman from seeing the Boys and regaining custody by cancelling her visits and failing to re-authorize her visits, "unreasonably restricting" the time available for her to discuss her goals, and requiring that she accept responsibility for her treatment of the Boys. (*Id.* ¶ 137.) Ms. Kahraman regained custody of the Boys following her divorce from Mr. Kahraman on November 4, 2021. (*Id.* ¶¶ 147–48.)

### B.  Procedural Background

Plaintiffs filed their original Complaint on November 16, 2021 in Maricopa County Superior Court. (*See* Doc. 1-3, Ex. A, Compl.) This action was removed to this Court on March 10, 2022 and Plaintiffs filed an Amended Complaint. (Doc. 1, Not. of Removal; Doc. 17 First Am. Compl.) On September 28, 2022, the Court dismissed Plaintiffs' Amended Complaint for failing to comply with Rule 8 pleading standards. (Doc. 72, 09/28/2022 Order.)

Plaintiffs filed a Second Amended Complaint ("SAC") on October 12, 2022. (*See* SAC.) Kelly and Kaplan-Siekman filed answers to the SAC. (Doc. 90, Kaplan-Siekman Ans.; Doc. 117, Kelly Am. Ans.) Other defendants filed motions to dismiss the SAC, which the Court granted in part and denied in part. (*See* 04/26/2023 Order.) Kelly filed

her Motion on August 25, 2023, and Kaplan-Siekman filed her Motion on August 28, 2023. (*See* Kelly Mot.; Kaplan-Siekman Mot.) Plaintiffs filed their Response on September 18, 2023, to which Kelly and Kaplan-Siekman each replied. (Doc. 168, ("Resp."); Doc. 179, Kaplan-Siekman Reply; Doc. 180, Kelly Reply.)

## II.   LEGAL STANDARDS & ANALYSIS

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (internal quotation marks omitted). The standard that applies to motions for judgment on the pleadings made under Federal Rule of Civil Procedure 12(c) is the same standard that governs motions to dismiss made under Rule 12(b)(6). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### A. Section 1983 Claims

Plaintiffs bring four claims under 42 U.S.C. § 1983 against Kelly and Kaplan-Siekman: unlawful detention of the Boys (Count 2), conspiracy to seize the Boys (Count 4), and due process violations for failing to preserve the familial relationship and interfering with Ms. Kahraman's right make medical decisions for the Boys (Counts 5 and 6). (SAC ¶¶ 171–80, 188–214.) To state a § 1983 claim, a plaintiff must allege "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiffs allege that Kelly and Kaplan-Siekman conspired with state employees and DCS to violate Plaintiffs' constitutional rights. (*See, e.g.*, SAC ¶¶ 188–94.)

A plaintiff may raise a plausible inference that a private actor was acting under the color of law by alleging a conspiracy between the private actor and the state. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). "To prove a conspiracy between the state and private parties under section 1983, [a plaintiff] must show an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc) (citation and internal quotations omitted). The private actor "must share with the public entity the goal of violating a plaintiff's constitutional rights" and there must be some "substantial degree of cooperation" between the parties. *Franklin*, 312 F.3d at 445. Kelly and Kaplan-Siekman argue that Plaintiffs have failed to plausibly allege that they conspired with DCS or state actors. (Kelly Mot. at 6–7; Kaplan-Siekman Mot. at 5–6.) The Court agrees.

Kaplan-Siekman and Kelly were employees of SWHD, a nonprofit organization, who Plaintiffs allege supervised Ms. Kahraman's visits with her Boys. (SAC ¶¶ 18–20, 76, 79–80.) Plaintiffs allege that Kelly and Kaplan-Siekman were "acting under the color of law as [they] aided the agenda of DCS and the State of Arizona." (*Id.* ¶¶ 19–20.) Specifically, Kelly and/or Kaplan-Siekman, "at the behest of DCS" implemented protocols to restrict Ms. Kahraman's interactions with the Boys, and Kaplan-Siekman

allegedly ignored positive reports to maintain these protocols. (*Id.* ¶¶ 79–80, 93, 104, 122.) According to Plaintiffs, "SWHD agents" later lifted restrictions for Ahmet, while Kelly and Kaplan-Siekman "went to great lengths" to keep Ms. Kahraman from her children. (*Id.* ¶¶ 134–37.) Plaintiffs claim that Kelly and Kaplan-Siekman conspired with the state defendants to violate Plaintiffs' constitutional rights by "providing [state defendants] false, misleading, and/or unfounded information"; failing to thoroughly review medical records; and "refusing" to return the Boys to their parents' custody. (*Id.* ¶¶ 191–92.) The Court previously found similar allegations against other non-state defendants insufficient to plausibly allege a conspiracy and still cannot infer from these facts that Kelly and Kaplan-Siekman shared the "goal" with state defendants to violate Plaintiffs' rights.[2]

Plaintiffs cite *Price v. State of Hawaii*, 939 F.2d 702 (9th Cir. 1991), to argue that Kelly and Kaplan-Siekman conspired with state defendants. (Resp. at 15.) In *Price*, the Ninth Circuit explained that a person may become a state actor "by conspiring with a state officer or by engaging in joint activity with state officials" or becoming "so closely related to the State that [her] actions can be said to be those of the State itself." 939 F.2d at 708. Plaintiffs' do not plausibly allege a conspiracy with state actors. And "[u]nder the joint action test, [the Court considers] whether 'the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1093

---

[2] Plaintiffs assert that the Court previously found the SAC alleged sufficient facts to state a conspiracy claim against defendants Bell and Temple. (Resp. at 15.) Plaintiffs misread the Court's prior Order, as the Court dismissed Plaintiffs' § 1983 claims against non-state defendants after finding Plaintiffs failed to plausibly allege a conspiracy with the state defendants. (*See* 04/26/2023 Order at 7–8.) The Court separately noted that conspiracy is not a standalone claim under § 1983 but instead enables a plaintiff to bring a § 1983 claim against otherwise non-state actors. (*Id.* at 8 n.12, 13 n.17.) The Court did deny the state defendants' motion as to Plaintiffs' familial association claim (Count 2), finding the SAC adequately alleged both Bell and Temple's integral participation "in pursuing an unwarranted and unfounded investigation into Ms. Kahraman's fitness to parent." (*Id.* at 9–10.) However, the Court did not find that Plaintiffs could assert a free-standing conspiracy claim between Bell and Temple, who are already state actors. (*See* Kelly Reply at 9.)

(9th Cir. 2003). Though DCS may have requested SWHD, Kelly, or Kaplan-Siekman to implement specific protocols for Ms. Kahraman's visitation, Plaintiffs do not argue that DCS was in any "position of interdependence" with SWHD or explain how the benefits of these protocols flowed to the state. (Resp. at 14–15; *see, e.g.*, SAC ¶¶ 79–80.) Nor do Plaintiffs allege how Kelly or Kaplan-Siekman became "so closely related" to DCS by virtue of their role in overseeing Ms. Kahraman's visitations with the Boys. (*See generally* Resp.; SAC.)

Because Plaintiffs have failed to plausibly allege that Kelly or Kaplan-Siekman were acting under the color of law, the Court grants Kelly's Motion and Kaplan-Siekman's Motion as to Counts 2, 4, 5, and 6.

**B.    State Law Claims**

Plaintiffs bring four state law claims against Kelly and Kaplan-Siekman: negligence (Counts 8, 9, and 10) and intentional infliction of emotional distress ("IIED") (Count 13). (SAC ¶¶ 220–55, 268–76.)

**1.    Negligence**

In Count 8, Plaintiffs claim that Kelly and Kaplan-Siekman are "liable for exercising Gross Negligence." (*See id.* ¶¶ 220–32.) To state a cognizable gross negligence claim, a plaintiff must allege, *inter alia*, that the defendant owed the plaintiff a duty of care. *Noriega v. Town of Miami*, 407 P.3d 92, 100 (Ariz. Ct. App. 2017). Whether a duty exists is a question of law. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (en banc). Citing A.R.S. § 8-802(D)(1), Plaintiffs allege that Kelly and Kaplan-Siekman breached their "duty to protect the legal rights of children and families." (SAC ¶¶ 221–24, 226, 228–30.) Kelly and Kaplan-Siekman contend that they were not acting as child safety workers to owe Plaintiffs this duty. (Kelly Mot. at 8; Kaplan-Siekman Mot. at 6–7; Kelly Reply at 11–12.) The Court agrees, as Plaintiffs allege only that Kelly and Kaplan-Siekman were employed by SWHD. *See* A.R.S. § 8-801(2) (defining "child safety worker" as a person "selected by and trained under the requirements" of DCS); (SAC ¶¶ 18–20, 223.) Plaintiffs similarly fail to state a negligence claim in Count 9 that Kelly and

Kaplan-Siekman owed Plaintiffs a duty as agents of DCS. (*See* SAC ¶¶ 233–43 (describing the duty of care owed by DCS agents).) And Plaintiffs' argument that Kelly and Kaplan-Siekman owed Plaintiffs a duty under the Constitution *as state actors* is unpersuasive because they were not state actors. (*See* Resp. at 16–19.)

Nor have Plaintiffs stated a plausible negligence per se claim against Kelly and Kaplan-Siekman. (*See* SAC ¶¶ 244–52.) Plaintiffs have not alleged that Kelly or Kaplan-Siekman qualified as an "investigator" to owe Plaintiffs a duty under § 8-456. (*Id.* ¶¶ 247–48); *see* § 8-456(K)(2) ("'Investigator' means an employee of the department who investigates allegations of abuse or neglect pursuant to a DCS report."). Plaintiffs fail to offer any persuasive authority to the contrary. (*See* Resp. at 19 (arguing § 8-456 applies to "DCS and its agents" and that Kelly and Kaplan-Siekman were "agents" of DCS).) Section 8-533(B)(8) also does not charge Kelly or Kaplan-Siekman with any cognizable duty, as the Court previously found that this provision applies only to "an agency licensed by [DCS] to place children for adoption." (04/26/2023 Order at 14 (quoting § 8-531(2)).) The Court grants Kelly's Motion and Kaplan-Siekman's Motion Counts 8, 9, and 10.[3]

### 2.   **Intentional Infliction of Emotional Distress**

Kelly and Kaplan-Siekman contend that Plaintiffs do not state an IIED claim. (Kelly Mot. at 8–9; Kaplan-Siekman Mot. at 8; *see* SAC ¶¶ 268–76.) "A plaintiff suing for [IIED] must prove the defendant caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result." *Watkins v. Arpaio*, 367 P.3d 72, 74–75 (Ariz. Ct. App. 2016) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585

---

[3] Plaintiffs contend that Kelly's and Kaplan-Siekman's Motions regarding Plaintiffs' negligence and IIED claims fail in part because the Court found that the SAC adequately pled the claims against defendants Bell and Temple, "with whom [Kelly and Kaplan-Siekman] conspired." (Resp. at 16, 20.) But defendants Bell and Temple only sought to dismiss the negligence and IIED claims based on the statute of limitations, and alternatively, under Rule 8 pleading standards. (*See* Doc. 92, ("State Mot. to Dismiss").) Bell and Temple did not move to dismiss, and the Court did not consider, whether Plaintiffs alleged sufficient facts to support cognizable legal claims under Rule 12(b)(6). (*See generally id.*; 04/26/2023 Order.)

(1987)). Arizona defines extreme and outrageous as going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford*, 734 P.2d at 485 (quoting Restatement (Second) of Torts § 46 cmt. d). "The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief; however, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury." *Johnson v. McDonald*, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999) (citing *Mintz v. Bell Atl. Sys. Leasing Intern., Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995)); *see also Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL, 2018 WL 6727267, at *10 (D. Ariz. Dec. 21, 2018) ("In the 12(b)(6) context, the 'trial court is to act as a gatekeeper to determine whether the alleged actions are . . . to be regarded as atrocious and utterly intolerable in a civilized community.'" (citation and second internal quotations omitted)).

Plaintiffs allege that Kelly's and Kaplan-Siekman's "gross negligence and negligence *per se*" was extreme and outrageous "because it was clear to any rational, unbiased observer that Jessica was a loving, caring parent" and Kelly and Kaplan-Siekman "had simply gotten it wrong." (SAC ¶ 270.) The Court previously found these generalized allegations of negligence to be insufficient to state a plausible IIED claim. (*See* 04/26/2023 Order at 14–15.) Plaintiffs also allege that Kelly and Kaplan-Siekman "supported" Mr. Kahraman during Ms. Kahraman's divorce proceedings and disregarded positive evidence of Ms. Kahraman's fitness to parent.[4] (SAC ¶¶ 272–73.) Taking Plaintiffs factual allegations as true, the Court finds that Plaintiffs fail to state a plausible IIED claim against Kelly or Kaplan-Siekman. Assuming Kelly and Kaplan-Siekman "had simply gotten it wrong" by implementing and maintaining protocols intended to protect the Boys during DCS's investigation and deciding not to credit reports that reflected positively on Ms. Kahraman, this conduct does not go "beyond all possible bounds of

---

[4] Plaintiffs' attempt to attribute additional generalized allegations in the SAC to Kelly and Kaplan-Siekman is unpersuasive. (*See* Resp. at 20–21 (citing SAC ¶¶ 81 (alleging generally that MSP protocol "was maintained"), 104 (stating "SWHD ignored [a] positive report"), 109 (stating Ms. Kahraman admitted to "SWHD agents" that she was misguided by online advice)).)

decency" in the context of DCS's investigation into Ms. Kahraman's fitness to care for the Boys. *See Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986) (en banc) ("[A]s the terms 'outrageous conduct' and 'severe emotional distress' are not readily capable of precise legal definition, a case-by-case analysis is required."); (*e.g.*, SAC ¶¶ 79–80, 93, 122, 135, 137.) The Court grants Kelly's Motion and Kaplan-Siekman's Motion on Count 13.

### III. CONCLUSION

The Court dismisses Plaintiffs' § 1983 claims against Defendants Kelly and Kaplan-Siekman because Plaintiffs failed to plausibly allege that they were acting under the color of law. The Court also dismisses Plaintiffs negligence and IIED claims against Defendants Kelly and Kaplan-Siekman for failure to state a claim.

**IT IS ORDERED** granting Gwyneth Kelly's Motion for Judgment on the Pleadings (Doc. 153).

**IT IS FURTHER ORDERED** granting Drue Kaplan-Siekman's Motion for Judgment on the Pleadings (Doc. 154).

**IT IS FURTHER ORDERED** dismissing Defendants Gwyneth Kelly and Drue Kaplan-Siekman from this lawsuit.

Dated this 3rd day of November, 2023.

_____
Susan R. Bolton
United States District Judge