Larry J. Crown (No. 013133)
Elan S. Mizrahi (No. 017388)
**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
Telephone:  480-483-9600
Facsimile:  480-483-3215
Emails:  lcrown@bss.law
             elan@bss.law

*Attorneys for Defendants The State of Arizona, Arizona Department of Child Safety ("DCS"), Sarah Kramer, Sarah Mendez, Madison Bell, Mecca Temple, Gregory McKay, and Michael Faust*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Kahraman, an individual; D.K., a minor, through his parent and guardian Jessica Kahraman; and K.K., a minor, through his parent and guardian Jessica Kahraman,<br><br>Plaintiffs,<br>v.<br><br>The State of Arizona, a governmental entity, et al.,<br><br>Defendants. | Case No. 2:22-cv-00375-SRB<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendants State of Arizona, Arizona Department of Child Safety ("DCS"), Madison Bell ("Bell" and Mecca Temple ("Temple") (collectively, "State Defendants") pursuant to Rule 56, Fed.R.Civ.P., hereby move this Court to issue its order granting summary judgment in their favor and against Plaintiffs D.K., a minor, and K.K., a minor, through their parent and guardian Jessica Kahraman ("Plaintiffs") on all remaining claims.

This Motion is supported by the following Memorandum of Points and Authorities and separate Statement of Facts, which is incorporated herein by reference.

/ / /

- 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

On December 28, 2018, The Superior Court of Arizona ("Juvenile Court") ordered the removal of twin brothers KK and DK ("Boys") from their parents Jessica Kahraman ("Jessica") and Ahmet Kahraman ("Ahmet") to protect them from neglect. The Boys were ordered wards of the Court by the Juvenile Court and the Juvenile Dependency Proceedings lasted 22 months from December 28, 2018 to their termination on November 9, 2020. The Boys were removed because their parents' neglect had caused them to both suffer malnutrition – severe malnutrition in KK and significant malnutrition in DK. The malnutrition caused the Boys to suffer medical compromise. In the case of KK, he had the potential threat to life and limb without medical intervention. (Statement of Facts "SOF ¶¶ 7, 8)

Six-year-old KK was hospitalized at Banner Desert Medical Center/Cardon Children's Hospital ("Cardon") between December 18, 2018 and January 7, 2019 due to severe malnutrition caused by his mother and father. SOF ¶ 1, **Ex. 1** and **2**. KK was admitted to the Pediatric Intensive Care Unit with acute right heart failure, failure to thrive, anasarca (generalized edema), extremity weakness, pleural effusion, pulmonary hypertension, retarded development, and malnutrition (SOF ¶¶ 1 and 4).

The treating doctors and Cardon Suspected Child Abuse and Neglect ("SCAN") Team got involved to protect KK and called the Department of Child Services ("DCS") Child Abuse/Neglect Hotline. Due to KK's severe medically compromised condition and twin brother DK having similar but less severe symptoms, DK was brought to Cardon on December 23-24, 2018 for laboratory tests and medical evaluation (SOF ¶¶ 14 and 15 and **Ex. 201**).

DK's laboratory diagnostic testing revealed electrolyte abnormalities and it was reported that both KK and DK had not been walking for two months. DK's inability to walk was likely due to deconditioning and behavioral restraints as there was no orthopedic etiology. Since DK's medical conditions were less severe than KK's, concerns about nutritional status and weakness were better worked up for him as an outpatient. Given the

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

similarities to KK's more severe medical condition, doctors remained concerned that DK could develop pulmonary hypertension in the future. ECG abnormal results were likely related to nutritional deficits. (SOF ¶¶ 14 - 16)

In this civil action, this Court has issued a series of dismissal orders that has left just a small amount of claims and only two individual Plaintiffs and two individual Defendants remaining in the Second Amended Complaint ("SAC"). Pertinent to the State Defendants, on April 26, 2023 (Doc. 145), this Court ordered the dismissal of Counts I, III, V, VI, and VII of the SAC (Doc. 92). It ordered the dismissal of all claims brought by Plaintiff Jessica Kahraman. It ordered the dismissal of all claims against DCS Investigator Sarah Kramer and her Supervisor Sarah Mendez. KK and DK are the two remaining Plaintiffs. The sole federal claim in Count II for family association, and six state tort claims in Counts VIII, IX, X, XI, XII, and XIII survived dismissal at the pleading stage against State Defendants Bell and Temple (Doc. 92 and Doc. 145). This Rule 56 Motion addresses and disposes of the remaining claims.

Count II is the remaining federal claim brought for interference with family association/unlawful ongoing detention. As discussed below, summary judgment is clear because the Statement of Facts and supporting evidence well establishes that Bell and Temple are not liable to Plaintiffs as a matter of law based on principles of issue preclusion, claim preclusion, *Rooker-Feldman Doctrine,* lack of causation, and insufficiency of evidence to establish the elements of these seven remaining claims. Significantly, Claim III for judicial deception was dismissed (Doc. 145). The remaining state law claims involve four claims of negligence presented in Claims VIII, X, and XI, a claim for abuse of process in Claim XII, and a claim for intentional infliction of emotional distress in Claim XIII.

The Juvenile Court findings establish that Bell and Temple complied with the applicable standard of care for ongoing DCS Case Workers. The same principles of issue preclusion, claim preclusion, *Rooker-Feldman Doctrine,* lack of causation, and along with compliance with the standard of care equally support summary judgment on these state law claims. As established in the Statement of Facts, which is supported by the sworn testimony

- 3 -

of Dr. Stewart, Kramer, Bell, Temple, medical records, and material Court Orders, Pleadings, and Reports (**Ex. 1-5**, **201** to **281**) the Juvenile Court Dependency Proceedings involving DK and KK were extensive. Jessica filed numerous, repetitive, and voluminous pleadings that resulted in the Juvenile Court addressing and deciding all the factual and legal issues that remain pending in this Court. The Juvenile Court conducted multiple Evidentiary Hearings during the 22-month course of the Dependency Proceedings, assessed credibility, weighed evidence, and made findings of fact. Significantly, Jessica waived her right to trial at the January 6, 2020 Adjudication Hearing (SOF ¶¶ 51-52), and lost her Rule 59 Motion to Change Physical Custody following the Evidentiary Hearing on May 12, 2020 (SOF ¶¶ 61 - 73).

This strong and compelling record supports summary judgment on the multiple bases brought herein on all remaining claims – federal and state.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A movant is entitled to judgment as a matter of law against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. Where the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III. ISSUE PRECLUSION AND CLAIM PRECLUSION

In Count II, Plaintiffs claim that Bell and Temple violated DK and KK's rights to familial association by continuing to detain the Boys. The doctrines of issue preclusion and claim preclusion both apply and support summary judgment in favor of Bell and Temple.

### A. Issue Preclusion

The Ninth Circuit has held issue preclusion applicable to relitigating Section 1983 claims of familial interference because the Juvenile Court made factual findings supporting

continued custody of the child. *Smith v. Banner Health System,* 621 F.App'x 876, 880 (9th Cir. 2015) (mem dec.); *Kasdan v. Cnty. of L.A., Case No. CV 12-06793 GAF (JEMx)*, 2014 W.L. 6669354, (C.D.Cal. Nov. 24, 2014) (the court found issue preclusion barred plaintiff from relitigating the veracity of the state court witnesses in this federal civil rights lawsuit.); *Grimes v. Ayerdis,* 16-CV-06870, 2018 W.L. 3730314 (No.D.Cal. 2018) (issue preclusion applies where a dissatisfied litigant claims that she lost her case because her opponent lied, falsified documents or destroyed evidence so long as the issue was addressed in the prior proceedings.

In its ruling on the State's Motion to Dismiss (Doc. 145), this Court stated that Plaintiffs specifically allege that Bell and Temple ignored exculpatory evidence and refused to restore Jessica's custody of the Boys. Plaintiffs allege that Bell and Temple disregarded reports from Dr. Oakley, Dr. Newberger, and Ms. Schroeckenstein. Instead, Plaintiffs allege Bell and Temple hired Dr. Kelly who agreed with DCS and that Jessica was unfit to parent. Bell and Temple allegedly interfered with Jessica's attempts to visit the Boys and regain custody and eventually misrepresented information to the Juvenile Court when attempting to permanently terminate Jessica's parental rights.

Now at summary judgment, the standard is quite different. The Court deals with admissible evidence under Rule 56(c). The record of admissible evidence presented in this Motion overwhelmingly establishes that Bell and Temple took over the case as ongoing Case Worker and Supervisor after the matter had initially been investigated by DCS through former Defendants Kramer and Mendez. This case came into the DCS Child Abuse/Neglect Hotline from Cardon, a children's hospital experienced in identifying the potential likelihood for abuse and neglect in children needing protection. (SOF ¶¶ 1-16)

The testimony of Dr. Ryan Stewart supported the probable cause standard for removal of KK and DK. (SOF ¶¶ 1-13) From that point forward, this matter was fully controlled by the Juvenile Court through extensive proceedings that occurred between 12/28/2018 and 11/9/2020. Plaintiffs filed extensive, voluminous pleadings challenging physical custody as the Boys were first temporary and then made permanent wards of the Court. Early on,

Plaintiffs chose not to challenge the removal of the Boys at the first hearing on January 4, 2019 (SOF ¶¶ 17 - 23) and then by knowingly, intelligently, and voluntarily waiving their rights to present evidence at the Adjudication Hearing on January 6, 2020. (SOF ¶¶ 49 - 50)

Then, one month later, Plaintiffs filed a Rule 59 Motion to change physical custody which led to an extensive Evidentiary Hearing on May 12, 2020 before Judge Green. (SOF ¶¶ 51, 58-59). In her June 11, 2020 ruling, Judge Green made extensive findings on the evidence, weighing the evidence, assessing credibility, and ultimately found that the Boys were not safe in the physical custody of Jessica. (SOF ¶¶ 63 – 73 and **Ex. 263**) It was the Juvenile Court, and not Bell and Temple, that had the power and authority to adjudicate the Boys wards of the Court and controlled their continuing physical custody. The alleged issues of "unlawful detention" were fully litigated and resolved by the Juvenile Court. Thus, principles of issue preclusion support summary judgment.

### B.   Claim Preclusion

In addition, the doctrine of claim preclusion bars all grounds for recovery which could have been asserted, whether they were or not in a prior suit between the same parties and the same cause of action. *Costantini v. Transworld Airlines,* 681 F.2d 1199, 1201 (9th Cir. 1982). In Arizona, claim preclusion will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now at issue between the same parties was, or might have been, determined in the former action. *Hall v. Lalli,* 194 Ariz. 54, 57 (1999). Arizona follows the same evidence test in which the plaintiff is precluded from subsequently maintaining a second action based upon the same transaction if the evidence needed to sustain the second action would have sustained the first action. *Pettit v. Pettit,* 218 Ariz. 529, 532 (App. 2008). The same evidence test is to be interpreted liberally. *Phoenix Newspapers, Inc. v. Dept. of Corrections,* 188 Ariz. 237, 241 (App. 1985). Claim preclusion applies when there is: (1) an identity of claims in the suit in which a judgment was entered in the current litigation; (2) a final judgment on the merits in the previous litigation; and (3) identity or privity between parties in the two suits. *In re General Adjudication of All Rights to Use Water in Gila River System and Source,* 212 Ariz. 64 (2006).

The issue in Count II involves ongoing physical custody of the Boys following initial removal and early ongoing physical custody pursuant to court orders prior to the involvement of Bell and Temple. (SOF ¶¶ 15, 17-22, 25)

On January 6, 2020, Jessica waived her right to a trial at the Adjudication Hearing and with it the ability to present evidence. The Court found that Jessica was unable to parent due to neglect and the allegation of neglect is true. (SOF ¶¶ 50 - 52) Then, on May 12, 2020, the Court conducted an Evidentiary Hearing on Jessica's Rule 59 Motion to Change Physical Custody. Witnesses testified and the Court received evidence. On June 11, 2020, the Court issued a lengthy ruling denying Jessica's Rule 59 Motion. (SOF ¶¶ 61 – 73, **Ex. 263**) These two State Court rulings (**Ex. 247, 263**) stand out among the multiple State Court rulings addressing the same issues and claims that were based on the same evidence as presented extensively in the Juvenile Court. The Juvenile Court's rulings were a final judgment on the merits of common identity or privity, and a substantial identity of interest and a working or functional relationship. *Hall,* 194 Ariz. at 57. All interests were represented and protected in the Juvenile Court litigation regarding KK and DK.

The third element of claim preclusion is satisfied where both actions involve the same Plaintiffs and DCS employees, and the same conduct is the subject matter of both the State Court claims and the cause of action before the District Court. *See, Beseder, Inc. v. Osten Art, Inc.,* CV05-00031-PHX-NVW, 2006 W.L. 2730769 at p. 6 (D.Ariz. Sept. 25, 2006). The fact that Plaintiffs are now arguing a Constitutional violation does not change the analysis. *Ferguson v. County of Los Angeles,* CV12-06865, 2014 W.L. 12949968 at p. 5 (C.D.Cal. June 5, 2014).

The Statement of Facts and supporting evidence show that Plaintiffs first did not challenge removal of the Boys. They did not attend the Team Decision Making Meeting on January 3, 2019 (SOF ¶¶ 18 – 19). The parents filed a series of 12 Affidavits that are bizarre in nature, making accusations against involved Judges and individuals over the removal and return of their "biological property". (SOF ¶¶ 36) These were rejected by Judge Green (SOF ¶¶ 37, 39). Then Jessica added mold toxicity to explain the compromised medical condition

of DK and KK. (SOF ¶¶ 41 – 45) Then Plaintiffs knowingly, intelligently, and voluntarily waived their right to present evidence at the Adjudication Hearing on January 6, 2020. (SOF ¶¶ 51 – 52) Judge Green found Jessica and Ahmet were unable to parent due to neglect. Then Plaintiffs aggressively challenged physical custody of the Boys. Again, extensive pleadings were filed and an Evidentiary Hearing was held on May 12, 2020. (SOF ¶¶ 61 – 62) The Court's June 11, 2020 ruling is lengthy, comprehensive and resolved physical custody in favor of the best interest of the Boys. The Court found the Boys would be at risk of harm if returned to the parents. (SOF ¶¶ 63 – 73)

In the course of the proceedings, the Juvenile Court on many occasions made findings that DCS had made reasonable efforts for family reunification and AFSA Findings to finalize the Permanency Plan. (SOF ¶¶ 21, 25, 52, 62, and 75) The parents argued that white board markers, food sensitivities, and mold were a cause of the severe symptoms in KK and significant symptoms in DK. The Juvenile Court rejected these arguments and found, as the treating doctors and healthcare professionals at Cardon had found, that severe and significant malnutrition caused the Boys these harms. (SOF ¶¶ 63 – 73)

In addition, Plaintiffs directly challenged the continued involvement of Bell and the CASA Susan Stark by filing Motions to remove them from this case. (SOF ¶¶ 57, 74 and 76) Judge Green found that the "dizzying series of events" involved reasonable actions by Bell, and that the CASA had been a steady hand as the case unfolded. (SOF ¶¶ 76)

It is clear that viewing the totality of the evidence presented in the Statement of Facts that summary judgment should be granted on Count II based on principles of issue preclusion and claim preclusion.

**IV.   THE ROOKER-FELDMAN DOCTRINE BARS PLAINTIFFS' CLAIMS**

The Rooker-Feldman Doctrine precludes federal courts from hearing cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It prohibits direct appeals from the final judgment of a

state court and may also apply where the parties do not directly contest the merits of the state court decision as the Doctrine prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment. *Reusser v. Wachovia Bank, N.A.,* 525 F.3d 855, 859 (9th Cir. 2008). If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003).

A federal district court dealing with a suit that is in part a forbidden *de facto* appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is inextricably intertwined with an issue resolved by the state court in its judicial decision. *Doe v. Mann,* 415 F.3d 1038, 1043 (9th Cir. 2005). The *Rooker-Feldman Doctrine* applies to final state court orders and judgments, interlocutory orders and non-final judgments issued by a state court as well. *Doe & Assoc. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir. 2001).

Plaintiffs' familial association claim invites review of the Juvenile Dependency Proceeding. Significantly, this Court dismissed Plaintiffs' claim for judicial deception alleged in Count III (Doc 145). Because Plaintiffs presented voluminous pleadings that challenged multiple issues and findings in the Juvenile Court, the issues raised here are inextricably intertwined with the Juvenile Dependency Proceeding. When Plaintiffs were not satisfied with rulings in the Juvenile Court, they filed Motions for Reconsideration. These Motions were resolved by the Juvenile Court, rejecting Plaintiffs' positions multiple times.

Stripped to its essentials, Plaintiffs' familial association claim is a failed attempt to relitigate state court decisions that were repeatedly considered and rejected by the Juvenile Court. This lawsuit is tantamount to another of Plaintiffs' misplaced Motions for Reconsideration of the extensive Orders, findings, and rulings made in the Juvenile Court by first Judge Zabor, then Comm. Smith, then Judge Udall, and then repeatedly by Judge Green.

We also note that the Boys' medical decline was halted through the intervention of the Cardon doctors and then the Juvenile Court making the Boys first temporary and then

permanent wards of the Court. By the time that the Juvenile Proceedings were terminated on November 9, 2020, the Boys were walking independently, eating a nutritious broad diet, and moving forth with their growth and development.

Based on the strength of the evidence submitted in support of this Motion, this Court lacks jurisdiction to review, reverse, or invalidate the rulings of the Juvenile Court.

## V.     LACK OF CAUSATION

Bell and Temple did not cause the ongoing removal of DK and KK from their parents. Bell and Temple's involvement was that of ongoing case worker and ongoing Supervisor. DCS involvement was triggered by a report from healthcare professionals at Cardon and the SCAN Team to the DCS Hotline. These independent healthcare professionals assessed the severe medical condition of KK requiring his admission to the Pediatric Intensive Care Unit based on malnutrition, and a similar advancing condition of DK based on significant malnutrition. The parents, particularly Jessica, were the cause of the Boys' malnutrition. Arizona has a statutory scheme that vests complete power in the Juvenile Court to first order the *ex parte* removal of children based on probable cause and make the children temporary wards of the Court, and then after an Adjudication Hearing, make the children permanent wards of the Court. Ongoing case workers like Bell and Temple have no authority over the initial removal, continued removal, or change in physical custody back to a parent who establishes to the satisfaction of the Court that they are now fit.

The initial removal was based on probable cause pursuant to A.R.S. § 8-821(A) and the Court Order of Judge Melissa Zabor. *See* **Ex. 201**. Probable cause is determined by the totality of circumstances. *Illiniois v. Gates,* 462 U.S. 213, 230 (1983). A.R.S. § 8-821(B) provides that an Arizona court could issue a temporary removal order based upon "finding that probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect, and it is contrary to the child's welfare to remain in the home." Again, it was Sarah Kramer who filed the Application and Declaration for Ex Parte Removal based on the opinions and assessments of the medical professionals at Cardon and Judge Zabor who issued the Order of Removal. From that point forward, it was the

1 Juvenile Court through Comm. Judge Shelly Smith on January 4, 2019 (**Ex. 204**), Judge
2 Udall on January 9, 2019 (**Ex. 208),** Judge Green on January 6, 2020 (**Ex. 247)**, Judge Green
3 again on June 11, 2020 (**Ex. 263)**, Judge Green again on August 31, 2020 (**Ex. 275**), and
4 Judge Green finally dismissing the Dependency Petition on November 9, 2020 (**Ex. 281**). It
5 was the Court, not Bell or Temple who controlled the continuing physical custody and status
6 of the Boys as wards of the Court.

7 Moreover, Bell and Temple were just two of the many participants independently
8 ordered by the Court to be independently involved on behalf of the Boys. From the earliest
9 moments in the Dependency Petition, the Court appointed a CASA, involvement of the
10 Foster Care Review Board, a Guardian Ad Litem for the Boys, and separate attorneys for
11 both parents that were ultimately rejected by them. The parents were ultimately represented
12 by private counsel of their choice. Jessica's private counsel became the firm of Gillespie,
13 Shields, Goldfarb & Taylor who are co-counsel for Plaintiffs in this civil action.

14 These independent parties appointed by the Court filed independent reports to the
15 Court. Hearings, such as the Adjudication Hearing held January 6, 2020, and the Rule 59
16 Evidentiary Hearing held May 12, 2020, were attended by large numbers of people, including
17 AAGs who represented DCS, Bell and Temple, the Guardian Ad Litem, the CASA, attorney
18 for Jessica, and separate attorney for Ahmet.

19 It is the AAGs who independently prepare pleadings on behalf of DCS. AAGs are
20 licensed attorneys who sign and file pleadings subject to Rule 11. The Juvenile Court is
21 required to ensure that reasonable efforts are being made by DCS to provide reunification
22 services pursuant to A.R.S. § 8-846. Any movement or change of placement of the Boys was
23 controlled by the State Court as it has jurisdiction to direct placement of a ward of the Court.
24 *See* A.R.S. §§ 8-829, 842, 845, 846, and 861. In order for the Plaintiffs to prove that Bell and
25 Temple are liable for the contents of a Petition, they must overcome the presumption that the
26 Prosecutor executed independent judgment in drafting the Petition. *Smiddy v. Varney,* 665
27 F.2d 261, 266-67 (9th Cir. 1981).
28 / / /

- 11 -

It is obvious that Bell and Temple did not cause an unconstitutional continuation of the Boys' physical custody as a matter of law.

## VI. FAILURE TO ESTABLISH THE ELEMENTS OF UNWARRANTED INTERFERENCE WITH THE FAMILY RELATIONSHIP

To establish a familial association claim, Plaintiffs must establish that Defendants' interference with the familial relationship was unwarranted. *See* 4/26/23 Order, Doc. 145, citing *Crowe v. Cnty. of San Diego,* 608 F.3d 406, 441 n. 23 (9th Cir. 2010) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 685-686 (9th Cir. 2001)). Evaluating whether the Defendants continuing detention of the Boys was unconstitutional, Plaintiffs must show that Defendants' conduct was so egregious that it "shocked the conscious". *See* Doc 145. "Unwarranted interference includes governmental actions that are vexatious and unnecessary, harassing, unfounded, or unreasonable, and arbitrary, discriminatory, or demonstrably irrelevant." (Doc. 145 and *Daurio v. Az. Dept. of Child Safety,* No. CV18-03299-PHX-GMS, 2020 W.L. 6940812 at p. 5) (D.Ariz. Nov. 25, 2020).

Bell and Temple both testified that they had a reasonable basis for all their actions. (SOF ¶¶ 79, 86) The Court on multiple occasions found that DCS had made reasonable efforts to prevent removal of the children (SOF ¶¶ 21, 25, 52, 62, 75); (**Ex. 204**, **208, 247, 258, 264**) and reasonable efforts to finalize the Permanency Plan for the Boys (**Ex. 258**). The Court also made the ASFA Findings, finding that DCS has made reasonable efforts to finalize the Permanency Plans currently in effect for KK and DK (SOF ¶¶ 54). (**Ex. 251**) The evidence establishes that Plaintiffs fail to meet the unwarranted, vexatious, shock the conscience standard as a matter of law.

## VII. TORT NEGLIGENCE CLAIMS

Plaintiffs in Counts VIII, IX, X and XI, present overlapping, repetitive theories of negligence and negligence *per se* that fail as a matter of law. First, the arguments above regarding issue preclusion, claim preclusion, *Rooker-Feldman Doctrine,* and lack of causation all apply here, are incorporated herein by reference, and are dispositive of these four negligence claims.

- 12 -

Notwithstanding that point, the material evidence shows that Bell and Temple acted reasonably, complied with the applicable standard of care, and satisfied their limited role under the applicable Arizona statutes as a matter of law. The Juvenile Court repeatedly found that Bell and Temple had made reasonable efforts to prevent removal of the Boys and that continuation in the home would be contrary to the welfare of the Boys.

Bell testified multiple times before the Court, and the Court found Bell's testimony credible, and corroborated by other witness testimony and evidence. As said, it was Sarah Kramer and Sarah Mendez who were initially involved for DCS with the removal of the Boys pursuant to a Court Order based on the medical opinions of the Cardon Hospital team. Cardon is a leading children's hospital whose licensed professional staff has expertise in child neglect. Once in the court system, there were multiple, independent officials such as the Foster Care Review Board, the Guardian Ad Litem, the CASA, and aggressive attorneys for Jessica and Ahmet who fully challenged all the issues in this case. Jessica went so far as to move for Bell's removal which was denied.

On this record, Plaintiffs fail to meet their burden to establish a breach of the applicable standard of care of ongoing DCS workers, and causation - both essential elements to a negligence claim as a matter of law. *Noriega v. Miami,* 243 Ariz. 220, 407 P.3d 92 (App. 2018).

## VIII. CLAIM XII – ABUSE OF PROCESS

Plaintiffs' abuse of process claim presented as Claim XII fails as a matter of law. The preceding arguments on issue preclusion, claim preclusion, *Rooker-Feldman*, and causation are dispositive and incorporated herein by reference.

In Arizona, for a plaintiff to recover on a claim of abuse of process, the plaintiff must prove all of the following:

> 1. Defendants willfully used against Plaintiffs [insert an appropriate description of the specific judicially sanctioned processes which plaintiff claims defendant abused, *e.g.,* "a subpoena to be served upon the plaintiff directing him to…"]; and
>
> 2. Defendants used that process in a wrongful manner that was not proper in the regular course of the proceedings; and

- 13 -

>   3. Defendants used that process primarily for an improper purpose or ulterior motive; and
>
>   4. Defendants' wrongful use of that process caused injury, damage, loss, or harm to Plaintiffs.

ARIZONA REVISED JURY INSTRUCTIONS (CIVIL), 6TH, Intentional Torts 18.1 (Abuse of Process – Elements of Liability) (citing *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257-59, ¶¶ 11-19, 92 P.3d 882, 887-889 (App. 2004); *Morn v. City of Phoenix*, 152 Ariz. 164, 166-68, 730 P.2d 873, 875-77 (App. 1986); *Nienstedt v. Wetzel*, 133 Ariz. 348, 353-54, 651 P.2d 876, 881-82 (App. 1982) (citing RESTATEMENT (SECOND) OF TORTS § 682 (1977); *Rondelli v. County of Pima*, 120 Ariz. 483, 489, 586 P.2d 1295, 1301 (App. 1978). "Because abuse of process consists of the misuse of specific legal procedures rather than the maintenance or defense of the lawsuit as a whole, the court must identify for the jury which specific legal procedures may, as a matter of law, give rise to the claim." *Id.* at Use Notes (citations omitted). Further, "[u]se of process is wrongful ***only if it is not reasonably justifiable in light of legitimate litigation goals*** and can be logically explained ***only*** by an improper purpose or ulterior motive, ***even if it was actually undertaken with bad intentions***, such as spite, ill will, or an intent to harass." *Id.* at Intentional Torts 18.2 (Abuse of Process – Reasonably Justifiable Conduct) (emphasis added) (citations omitted).

Importantly, Arizona Courts will also consider this fact:

>   The plaintiff must prove that the defendant used the process ***primarily for an improper purpose or ulterior motive***, instead of the purpose for which the process was intended or authorized. A primary improper purpose or ulterior motive ***requires more than an incidental motive of ill will to the plaintiff*** or benefit to the defendant, or an awareness that the action, though otherwise proper, will cause the opposing party to incur additional legal expenses or other injury.

*Id.* at Intentional Torts 18.3 (Abuse of Process – Primary Motivation) (emphasis added) (citations omitted). The Arizona Civil Jury Instructions Committee has also offered this helpful insight in the introduction to the jury instructions on intentional torts:

>   Abuse of process and malicious prosecution, distinctly different but often-confused torts, are addressed [herein] . . . . Although both torts arise out of the use of legal process, the former requires proof that the legal process was used to accomplish an ulterior

- 14 -

> purpose for which the process or procedure was not designed, while the latter requires proof that an action was unmeritorious, was initiated without probable cause, and was motivated by malice.

Again, it is obvious that the record presents overwhelming evidence that Bell and Temple did not commit abuse of process. Their involvement began after removal of the Boys through Court Order based on the strong medical opinions by the medical experts at Cardon. Thereafter Bell and Temple's involvement was one of many contributing independent components to court rulings that controlled the wardship and physical custody of the Boys during the Dependency Proceedings. Numerous independent persons were involved – GAL, FCRB, CASA, Mother's attorney, Father's Attorney, and AAGs. All pleadings by the State were prepared by the involved AAGs. The process involved complied with Arizona statutes and court orders. Summary judgment on Count XII for abuse of process must be granted.

## IX. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Arizona law, the tort of intentional infliction of emotional distress ("IIED") requires proof of three elements: "[F]irst, the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct." *Demetrulias v. Wal-Mart Stores Inc.*, 917 F.Supp.2d 993, 1012 (D.Ariz. 2013) (quotation marks omitted) (quoting *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (citing RESTATEMENT (SECOND) OF TORTS § 46(1) (1965)). "The adjectives 'extreme' and 'outrageous' are not just for show; evidence of callousness or insensitivity will not suffice." *Id.* (quoting *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 555 (Ct.App.1995)). "The question of whether the acts complained of by a plaintiff are sufficiently extreme or outrageous is answered by the court." *Demetrulias*, 917 F.Supp.2d at 1012 Id. (citation omitted); *see also Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476 (1978) (citation omitted) ("It is the duty of the court as society's conscience to determine

- 15 -

whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief.")

As to the first element, "[t]he conduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." *Matson v. Safeway*, 2013 WL 6628257, at *4 (D.Ariz. Dec. 17, 2013) (quotation marks omitted) (quoting *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258 (1980)) (emphasis added). To satisfy this element, "[t]he plaintiff must show that the defendant's acts were so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Demetrulias*, 917 F.Supp.2d at 1012 (quotation marks omitted) (quoting *Mintz*, 183 Ariz. at 554). Importantly, "[i]t is not enough that the [Defendants have] acted with an intent which is tortious or even criminal, or that [they have] intended to inflict emotional distress, or even that [their] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Allen v. Quest Online, LLC*, 2011 WL 4403674, at *10 (D.Ariz. Sept. 22, 2011) (quotation marks omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. D (1965)). Likewise, "even a defendant's 'unjustifiable' conduct does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Matson*, 2013 WL 6628257 at *4 (quoting *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 199 (App.1994)).

Again, the strong record established by the Statement of Facts and supporting exhibits shows Plaintiffs' claim fails to establish the three elements necessary in intentional infliction of emotional distress claims. Summary judgment on Count XIII must be granted.

**X.   CONCLUSION**

The sworn testimony of Dr. Stewart, Kramer, Bell, and Temple, presented in **Ex. 2** through **5**, the Cardon medical records presented in **Ex. 1**, and the Court Orders, pleadings, and reports presented in **Ex. 201** through **Ex. 281** establish multiple dispositive bases to grant summary judgment on all remaining claims. Analysis of this record under principles of issue

preclusion, claim preclusion, *Rooker-Feldman*, lack of causation, failure to establish the elements for a Constitutional Fourth/Fourteenth Amendment familial association claim, and failure to establish necessary elements of the state tort negligence claims, abuse of process claim, and the intentional infliction of emotional distress claim, all lead to the same conclusion: that this Court should grant summary judgment in favor of Bell and Temple on Counts II, VIII, IX, X, XI, XII and XIII.

RESPECTFULLY SUMBMITTED this   16th   day of December, 2024.

**BRUECKNER SPITLER SHELTS PLC**

By: /s/ *Larry J. Crown*
Larry J. Crown
Elan S. Mizrahi
*Attorneys for Defendants The State of Arizona, Arizona Department of Child Safety ("DCS"), Sarah Kramer, Sarah Mendez, Madison Bell, Mecca Temple, Gregory McKay, and Michael Faust*

## CERTIFICATE OF SERVICE

I hereby certify that on this   16th   day of December, 2024, I electronically transmitted the foregoing document to be filed electronically with the Clerk's Office through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *Karin A. Meister*