Larry J. Crown (No. 013133)
Elan S. Mizrahi (No. 017388)
**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
Telephone:    480-483-9600
Facsimile:     480-483-3215
Emails:        lcrown@bss.law
               elan@bss.law

*Attorneys for Defendants The State of Arizona,*
*Arizona Department of Child Safety ("DCS"),*
*Sarah Kramer, Sarah Mendez, Madison Bell, Mecca*
*Temple, Gregory McKay, and Michael Faust*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

| | |
|---|---|
| Jessica Kahraman, an individual; D.K., a minor, through his parent and guardian Jessica Kahraman; and K.K., a minor, through his parent and guardian Jessica Kahraman,<br><br>             Plaintiffs,<br><br>    v.<br><br>The State of Arizona, a governmental entity, et al.,<br><br>             Defendants. | Case No. 2:22-cv-00375-SRB<br><br>**DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants State of Arizona, Arizona Department of Child Safety ("DCS"), Madison Bell ("Bell") and Mecca Temple ("Temple") (collectively, "State Defendants") hereby submit their Statement of Facts in Support of their Motion for Summary Judgment pursuant to Rule 56(c), Fed.R.Civ.P., and Local Rule 56.1 as follows:

1.  Six-year-old Kenan Kahraman ("KK") was hospitalized at Banner Desert Medical Center/Cardon Children's Hospital between 12/18/2018 and 1/7/2019 due to severe malnutrition caused by his mother and father, Jessica Kahraman ("Jessica") and Ahmet Kahraman ("Ahmet") (See **Exhibit 1**-medical records of KK, authenticated by treating hospitalist Dr. Ryan Stewart ("Dr. Stewart"), and **Exhibit 2**, Dr. Stewart deposition transcript, p. 13, l. 6 to p. 22, l. 6.)

2.      KK was admitted with acute right heart failure, failure to thrive, anasarca (generalized edema), lower extremity weakness, pleural effusion, pulmonary hypertension, retarded development and malnutrition. (*See* **Ex. 1**).

3.      The discharge diagnosis for KK was right ventricular dysfunction, pulmonary hypertension, anasarca, protein energy malnutrition, failure to thrive, and suspected child abuse. (*See* **Ex. 1**)

4.      The Cardon Suspected Child Abuse and Neglect ("SCAN") Team got involved for KK. (*See* **Ex. 2,** p. 15, l. 20-25)

5.      Malnutrition was the cause of these severe conditions and Mom (Jessica) was the cause of KK's malnutrition. (*See* **Ex. 2,** p. 21, l. 9-24)

6.      Malnutrition was the most likely, most probable cause for all these symptoms and the compromised medical condition of KK and Mom was the cause of KK's malnutrition. (*See* **Ex. 2,** p. 21, l. 1-6)

7.      KK had potential threat to life and limb without medical intervention. (*See* **Ex. 2,** p. 31, l. 19 to p. 32, l. 6; p. 38 l. 25 to p. 39, l. 9)

8.      Dr. Stewart's opinion was that KK was in danger of this happening again and potentially life-threatening, and that the State would need to allow "us" to feed the child. (**Ex. 2,** p. 52, l. 5-21; p. 54, l. 11-14; p. 58, l. 25 to p. 59, l. 21)

9.      Mom misperceived food allergies and intolerances and whiteboard markers. (**Ex. 2,** p. 67, l. 12-15; p. 69, l. 2-16)

10.     Dr. Stewart and the SCAN Team members told this to DCS regarding KK's severe malnutrition. (**Ex. 2,** p. 70, l. 1-11; p. 73, l. 4-6)

11.     Mom resisted hospital efforts to treat KK. (**Ex. 2,** p. 78, l. 8-14)

12.     KK was in medical compromise with no physiologic reason and it was not safe for him to go home with Mom. Dr. Stewart recommended that DCS take over decisions on what the patient could eat. (**Ex. 2,** p. 82, l. 1 to p. 84, l. 12)

13.     Whiteboard markers did not cause KK's condition. (**Ex. 2,** p. 37, l. 14-16)

14.     Sarah Kramer ("Kramer") was the DCS Investigating Case Worker who

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

responded to the child neglect hotline call made by the healthcare providers at Cardon Children's Hospital ("Cardon"). (**Ex. 3**, p. 187-201, **Ex. 201**, **203**, **204**, and **208**)

15.     Kramer prepared the Application and Declaration for Ex Parte Removal of Children Under Oath and Judge Melissa Zabor issued the Order for Ex Parte Removal of twin brothers KK and DK Kahraman on 12/28/2018. (**Ex. 3**, p. 188, l. 17-22, **Ex. 201**)

16.     On 12/23-24, 2018, twin Brother Dylan Kahraman ("DK") had diagnostic laboratory testing and a medical evaluation. DK had significant malnutrition, electrolyte abnormalities, and an abnormal ECG likely related to nutritional deficits. (**Ex. 201, 203**)

17.     **Ex. 204** is the Order setting hearings on Dependency Petition and Temporary Orders issued 1/4/2019 by Commissioner Shelley Smith.

18.     Mother Jessica and Father Ahmet did not attend the Team Decision Making Meeting. (**Ex. 3**, p. 189, l. 25 to p. 190, l. 2)

19.     The parents were not speaking with DCS or participating with Team Decision Making for their sons KK and DK. (**Ex. 3**, p. 190, l. 3 to p. 192, l. 8)

20.     On 1/4/2019 Commissioner Smith ordered DK and KK be made temporary wards of the Court; found that continuation of the children in the home would be contrary to the children's welfare; both children were assessed by medical providers as being malnourished; the parents' belief that the children had food allergies and were exposed to dry erase markers was without basis; both children were unable to walk for the past 2 months; and Mother admitted she obtained wheelchairs for the children despite there being no medical recommendation they were necessary. (**Ex. 204**)

21.     Commissioner Smith found DCS made reasonable efforts to prevent removal of the children from the home, and since removal from the home, the children's eating and medical status has improved. (**Ex. 204**, p. 4)

22.     Also on 1/4/19, Commissioner Smith ordered the involvement of the court-appointed special advocate ("CASA"), the Foster Care Review Board ("FCRB"), appointed a Guardian Ad Litem, and appointed separate lawyers for Jessica and Ahmet. (**Ex. 204**)

23.     Kramer prepared and filed a Comprehensive Report to the Juvenile Court on

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

1/8/2019 regarding the removal of KK and DK, including that KK and DK had severe and significant malnutrition due to the very restrictive diet imposed by the parents. (**Ex. 203**)

24.    Kramer relied on the medical team at Cardon and with medical intervention the decline in both boys' health was halted and their condition improved with proper nutrition and support. (**Ex. 3**, p. 195, l. 8; p. 196, l. 20)

25.    On 1/9/19 the Preliminary Protective Hearing was held before Judge David Udall. The Court ordered continuing the children as temporary wards of the Court, found that DCS had made reasonable efforts to prevent the removal of the children from the home, and that continuation in the home would be contrary to the welfare of the children. (**Ex. 208**)

26.    Kramer acted reasonably and pursuant to statute. (**Ex. 3,** p. 199, l. 16 to p. 201, l. 1.

27.    Madison Bell ("Bell") was an ongoing case manager. She is not an investigator as defined in Arizona statutes. (**Ex. 4,** p. 320, l. 15 to p. 321, l. 25)

28.    Bell prepares reports for the Juvenile Court in Dependency Proceedings, testifies in court, follows court orders, and works with Assistant Attorney Generals ("AAG") who are the legal representatives of the State of Arizona. (**Ex. 4,** p. 322, l. 1-23)

29.    The AAGs draft pleadings and file responsive pleadings. (**Ex. 4,** p. 322, l. 24 to p. 323, l. 13)

30.    The court controls the Dependency Proceedings and Custody and Placement of the children. (**Ex. 4,** p. 323, l. 15 to p. 324, l. 6)

31.    In Dependency Proceedings, there are several independent parties involved who are appointed by the court and involved for the children's best interests, including the CASA, FCRB, GAL, AAGs, the parents, the parents' attorneys, and in this case the doctors at Cardon. (**Ex. 4,** p. 324, l. 2 to p. 327, l. 12)

32.    Bell identified and authenticated 82 exhibits selected from the voluminous court orders, pleadings, and reports that were filed in the Juvenile Dependency matter, JD532206. These 82 exhibits chronologically track the material Juvenile Dependency proceedings for DK and KK from the court-approved removal on 12/28/18 through the

Court's termination of the Juvenile proceedings on 11/9/2020. *(See, generally,* **Ex. 4, Ex. 201** through **281.**

33.    On 1/25/19, Bell filed an Addendum Report to the Juvenile Court. The Report noted the improved condition of DK and KK since becoming wards of the court. (**Ex. 216**)

34.    On 1/29/19, Judge Udall issued an Order setting the matter for a Dependency Adjudication. The Court noted that the parents demanded the return of their "biological property" and that both parents stated they were "*suri juris.*" (**Ex. 217**)

35.    On some pleadings Mother wrote in black marker "your offer of contract is not accepted." (**Ex. 209, 219**)

36.    Mother and Ahmet filed a series of Affidavits in the Juvenile Court. These Affidavits sought the immediate return of the parents' "biological property." (**Ex. 202, 205, 206, 209, 210, 211, 212, 213, 214, 215, 218, 219, 220, 221**)

37.    On 2/12/19, Judge Jennifer Green, who became the main judge presiding over the Juvenile Dependency Proceedings following Judge Udall, Commissioner Smith's and Judge Zabor's earlier involvement, denied two pleadings and a series of 12 Affidavits filed by Jessica. (**Ex. 222**)

38.    On 2/13/19, Judge Green conducted an Evidentiary Hearing on an Order to Show Cause and issued an Order finding that the statutes and the laws of Arizona specifically grant this Court jurisdiction to preside over dependency proceedings and rejected Mother's argument that the Court lacked jurisdiction. (**Ex. 223**)

39.    On 2/22/19, Judge Green ordered denying any relief sought by Mother's Affidavit filed 2/12/19. (**Ex. 224**)

40.    On 5/7/19, the FCRB filed its findings and recommendations with the Juvenile Court. (**Ex. 225**)

41.    On 6/18/19, Ahmet filed an emergency motion for the children to be tested and treated for mold toxins. (**Ex. 226**)

42.    On 6/25/19, Judge Green agreed with the position offered by the GAL and ordered that an independent specialist from Phoenix Children's Hospital shall review the

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

boys' medical records and assess whether testing for mold exposure would be appropriate. (**Ex. 229**)

43. On 7/11/19, Ahmet filed a Motion for Reconsideration of the 6/25/19 Order. (**Ex. 230**)

44. On 7/26/19, Dr. Jodi Carter of Phoenix Children's Hospital issued her written opinions that KK and DK did not need testing for mold-related illness. (**Ex. 234, 235**)

45. On 8/5/19, Judge Green denied Mother's Motion for Reconsideration regarding additional mold testing. (**Ex. 236**)

46. On 12/2/19, Dr. Michael B. Kelly issued a report that was filed by DCS with the Court. (**Ex. 239**)

47. On 12/6/19, Bell filed her Report to the Juvenile Court for Permanency Hearing, and on 12/16/19, CASA Stark filed a Court Report. (**Ex. 240, 241**)

48. On 12/20/19, AAG Martoncik filed a Response pleading stating the Department has never alleged Mother has Fictitious Disorder by Proxy. (**Ex. 242,** p. 2-3)

49. On 12/26/19, Mother filed a Motion to Dismiss the Amended Pendency Petition. (**Ex. 244**)

50. On 1/6/2020, DCS, through AAG Martoncik, filed the Second Amended Dependency Petition. (**Ex. 246**)

51. On 1/6/2020, the Adjudication Hearing was held before Judge Green. Mother and Ahmet stipulated to the evidence, knowingly, intelligently, and voluntarily waived their right to trial and were found unable to parent due to neglect and the allegation of neglect is true. (**Ex. 247,** 1/6/20 Court Order of Judge Green)

52. Judge Green ordered making the children wards of the Court as dependent children. The Case Plan was Family Reunification. The Court found that DCS has made reasonable efforts to prevent the removal of the children from the home, and a continuation in the home would be contrary to the welfare of the children. (**Ex. 247,** p. 4)

53. On 2/19/2020, Mother filed a Motion for Change in Physical Custody pursuant to Rule 59 of the Juvenile Rules of Procedure. (**Ex. 248,** and DCS objection, **Ex. 248(a)** and

Ahmet's objection, **Ex. 249**)

54.    On 3/2/2020, the Court issued an Order **"ASFA FINDINGS RE: REASONABLE EFFORTS TO FINALIZE THE PERMANENCY PLAN"** finding under federal and state statutes that DCS has made reasonable efforts to finalize the permanency plan for DK and KK. (**Ex. 251**)

55.    On 4/27/2020, Bell filed a Progress Report to the Juvenile Court. (**Ex. 252**)

56.    On 5/11/2020, Mother filed an Emergency Motion for Reconsideration and for a ruling regarding the Court's Order precluding the testimony of Dr. Eli Newberger for late disclosure. (**Ex. 253**)

57.    On 5/11/2020, Mother filed a Motion for Injunctive Relief to Remove Bell as DCS Case Worker alleging that she has exercised her authority in an arbitrary and unreasonable manner contrary to law. (**Ex. 254**)

58.    On 5/11/2020, Judge Green issued an Order granting the request to preclude Dr. Newberger's report and testimony at the 5/12/2020 Rule 59 Evidentiary Hearing for an extraordinarily late disclosure and associated unprofessional conduct. (**Ex. 255**)

59.    On 5/11/2020, Judge Green issued a second Order deciding several pretrial motions. (**Ex. 256**)

60.    On 5/12/2020, CASA Stark filed a CASA Court Report (**Ex. 257**)

61.    On 5/12/2020, the first of three Rule 59 Evidentiary Hearings regarding physical custody of the Boys was held before Judge Green. Jessica testified, Bell testified, Dr. Kelly Rodriguez testified, DCS moved for a change of case plan to severance and adoption. The GAL and Jessica objected, and Ahmet and CASA did not object. The Court found that the children continued to be dependent according to the statutes and to remain wards of the Court. (**Ex. 258**)

62.    The Court found that DCS had made reasonable efforts to finalize the permanency plan for the children. (**Ex. 258**)

63.    On 6/11/2020, Judge Green issued an Under Advisement Ruling from the 5/12/2020 Rule 59 Evidentiary Hearing that reviewed the extensive evidence that had been

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

presented to her as the finder of fact. (**Ex. 263**)

64.    The Court reviewed the medical history of the Boys and found that the Mother did not fully comprehend the seriousness that "her own actions played in her children's somewhat close, shocking physical condition" when they were brought to Cardon in December 2018. (**Ex. 263,** p. 3)

65.    The Court found that Mother was not prepared to parent the children safely because she was blaming the children's poor and dangerous health on mold, KK's thyroid condition, food sensitivities, stress, and chemical exposure. (**Ex. 263,** p. 4)

66.    The Court stated it reviewed all the evidence, including the exhibits, and highlighted the additional testimony and evidence it found compelling, summarizing the testimony of Dr. Oakley, Dr. Rodriguez, noting that Dr. Rodriguez maintained that Mother understood that KK's condition was "life-threatening and that medical intervention saved KK's life." (**Ex. 263,** p. 5)

67.    Mother has taken responsibility for her decisions that contributed to her children's "extraordinary physical condition when they were admitted to Cardon in December 2018 but does not believe she harmed her children." "Mother would not be in the position today if she had not been going down rabbit holes." (**Ex. 263,** p. 5)

68.    Mother's willingness to chase down theories about things like mold, bacteria, and dry erase markers served as a detriment to her ability to make sound decisions. (**Ex. 263,** p. 6)

69.    The Court found enlightening that Dr. Rodriguez, Karla White, and Bell agreed that prior to reunification Mother needed to demonstrate her ability to make medical decisions based in fact. (**Ex. 263,** p. 6)

70.    The Court found Dr. Kelly's opinions to be credible. (**Ex. 263,** p. 7)

71.    Mother testified that to resolve the children's food sensitivity she placed them on a diet that she should not have. Mother agreed that the diet was too restrictive and caused the children's dangerous health conditions. The Court found that during her testimony there were signs that the children may still face a "substantial risk of harm" if returned to Mother's

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

care. (**Ex. 263,** p. 8)

72.    The Court found it perplexing that Mother was still blaming mold for the children's condition. (**Ex. 263,** p. 9)

73.    The Court stated its concern about whether Mother has the ability to recognize when her children are medically distressed and need medical attention; finds little evidence to demonstrate that Mother has the common sense to seek medical attention when appropriate; weighed the evidence and finds that Mother has not met her burden in this case; found that there was substantial risk of harm to the children's physical, mental, and emotional health from Mother; and that she is still putting her own wants ahead of her children. The Court denied Mother's Motion for Change of Physical Custody and denied DCS Request to Change the Case Plan to Termination and Adoption. (**Ex. 263,** p. 9-10)

74.    On 7/9/2020, the Court denied Mother's Motion for injunctive relief to remove DCS Case Worker Bell. (**Ex. 264**)

75.    The Court found DCS made reasonable and diligent efforts to provide reunification services to Mother and that DCS Case Worker's efforts in providing reunification services were not unlawful or unreasonable, nor were her efforts performed in an arbitrary manner. (**Ex. 264,** p. 3)

76.    On 8/26/2020, Judge Green issued an Order denying Mother's request to remove the CASA from this case. The Court found that the CASA has identified the children's best interests and advocated for the children in court. The Court summarized the "dizzying series of events" and found that CASA has been a steady hand as the case unfolded. The Court denied Mother's request to remove CASA that was tucked inside its rebuttal to CASA Susan Stark's report. (**Ex. 274**)

77.    On 8/31/2020, the Court held a second Rule 59 Evidentiary Hearing and ordered granting Father's Motion for Change of Physical Custody. (**Ex. 275**)

78.    On 9/15/2020, the Court held a third Rule 59 Evidentiary Hearing on Mother's Motion for Change of Physical Custody. Dr. Newberger, Dr. Ann Schroeckenstein and Dr. Celice Korsten testified for Mother. The Court took the matter under advisement. (**Ex. 275**)

79.    On 10/30/2020, Bell filed her last Report to the Juvenile Court. (**Ex. 278**)

80.    On 11/9/2020, Judge Green ordered the dismissal of the Dependency Action releasing the children from the wardship of the court and relieving DCS of further responsibility for the children. The Court relieved FCRB, all court-appointed attorneys, and the GAL of further responsibility in this case. All outstanding motions are moot. (**Ex. 281**)

81.    On 11/10/2020, the CASA filed its last report to the Court. (**Ex. 280**)

82.    Bell followed statutory requirements, had a reasonable basis for all actions taken as an ongoing Case Worker, did not make misrepresentations to the Court and did not act in an arbitrary or unreasonable manner. (**Ex. 4,** p. 405, l. 3 to p. 408, l. 22)

83.    Temple was the ongoing DCS Supervisor over Bell in the dependency action. (**Ex. 5,** p. 253 to p. 330) (Much of Temple's testimony is duplicative of Bell and Kramer, and will not be presented in detail to accommodate page limitations.)

84.    All the independent persons and agencies that the Court appointed filed Reports and Recommendations with the Court. (**Ex. 5,** p. 283, l. 9-13)

85.    It is for the Court to decide which opinions to accept, reject, or accept in part and reject in part because that is the function of the Court. (**Ex. 5,** p. 283, l. 15-20)

86.    Temple noted the Court Orders that found DCS had made reasonable efforts to prevent the removal of the children from the home and that continuation in the home would be contrary to their welfare. (**Ex. 5,** p. 290, l. 2-9; p. 310, l. 10-15; p. 313, l. 6-10)

87.    Temple noted the Court's finding in the 8/26/2020 Order that Mother's history included asking the Court to remove the DCS Case Worker, remove the Southwest Human Development Service provider, remove the CASA, and refused to be assessed by Dr. Michael Kelly. (**Ex. 5,** p. 314, l. 13 to p. 315, l. 25, **Ex. 274**)

88.    Temple and Bell's involvement ended with Judge Green's Termination Order on 11/9/2020. (**Ex. 281**)

89.    Temple acted at all times lawfully, reasonably, with a reasonable basis for all actions taken as a supervisor and never interfered with Jessica's efforts to regain custody of the boys. (**Ex. 5,** p. 327, l. 11 to p. 330, l. 18)

**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

DATED this ___16th___ day of December, 2024.

**BRUECKNER SPITLER SHELTS PLC**

By: /s/ *Larry J. Crown*
          Larry J. Crown
          Elan S. Mizrahi
          *Attorneys for Defendants The State of*
          *Arizona, Arizona Department of Child*
          *Safety ("DCS"), Sarah Kramer, Sarah*
          *Mendez, Madison Bell, Mecca Temple,*
          *Gregory McKay, and Michael Faust*

## CERTIFICATE OF SERVICE

I hereby certify that on this ___16th___ day of December, 2024, I electronically transmitted the foregoing document to be filed electronically with the Clerk's Office through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *Karin A. Meister*

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600