Affidavit


Comes now Affiant, Ahmet; Kahraman, a living man, Presenting as Evidence of the following

facts:

1.  On December 28, 2018, Sarah Kramer and Sarah Mendez, women acting as DCS

    workers, unlawfully took our biological property into temporary custody, without a

    warrant. This is an **infringement of my Fourth Amendment right,** which guarantees

    "the right of the people to be secure in their persons, houses, papers, and effects, against

    unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but

    upon probable cause, supported by oath or affirmation, and particularly describing the

    place to be searched, and the persons or things to be seized."

2.  Therefore, Sarah Kramer and Sarah Mendez, women acting as DCS workers, have no

    jurisdiction over me, as guaranteed by the **Fifth Amendment**: "No person shall be ...

    deprived of life, liberty, or property, without due process of law." All jurisdiction is lost

    when denied due process of law. All court proceedings, all documents, and especially the

    unlawful seizure of our biological property is unconstitutional. I demand the immediate

    return of our biological property.

3.  The following documents are hereby disregarded as without jurisdiction, and have been

    returned to the parties from which they came {See Exhibit A}:

    -   "ARIZONA DEPARTMENT OF CHILD SAFETY TEMPORARY CUSTODY

        NOTICE";

EXHIBIT
209
BELL
8-23-24 HHD

AZ-KAHRAMAN027342

- "APPLICATION AND DECLARATION FOR EX-PARTE REMOVAL OF CHILDREN";

- "ORDER FOR EX-PARTE REMOVAL OF CHILDREN";

- "ORDER SETTING HEARINGS ON DEPENDENCY PETITION AND TEMPORARY ORDERS";

- "DCS'S DEPENDENCY PETITION AND PETITION FOR THE PATERNITY AND/OR CHILD SUPPORT";

- "DCS'S MOTION FOR PROTECTIVE ORDER";

- "OFFICE OF THE ATTORNEY GENERAL STATE OF ARIZONA Authorization to Disclose Health Information";

- "REPORT TO THE JUVENILE COURT FOR PRELIMINARY PROTECTIVE HEARING AND/OR INITIAL DEPENDENCY HEARING."

4. The unlawful seizure of our biological property is an **infringement of my First Amendment right** of "establishment of religion" and "free exercise thereof." I am a Turkish Muslim and our biological property is raised in our home with respect for my religion's culture and beliefs. I demand the immediate return of my biological property out of respect and right to my religious beliefs;

5. I do believe this woman, Sarah Kramer, is a private contractor of a private company that is under contract for the Title IV-E funds and not for wrongs. I require this woman, Sarah Kramer, to swear under the penalty of perjury that she has first-hand knowledge of any wrong done by I and to deny that she has violated my constitutional rights;

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027343

6. I do believe this woman, Sarah Mendez, is a private contractor of a private company that is under contract for the Title IV-E funds and not for wrongs. I require this woman, Sarah Mendez, to swear under the penalty of perjury that she has first-hand knowledge of any wrong done by I and to deny that she has violated my constitutional rights;

7. Any man or woman who denies my claim is true must write an affidavit sworn under the penalty of perjury and having first-hand knowledge of the facts. Any man or woman makes statements without first-hand knowledge commits trespass upon the name of I. {See Exhibits B and C}

## Verification

I hereby declare, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 174 that all of the above and foregoing representations are true and correct to the best of my knowledge, information and belief.

Executed in Mesa, Arizona this ___14___ day of ___January___ 20_19_ .

_____
Ahmet; Kahraman

## Notary

On this _14_ day of _January_, 20_____; before me _Ahmet Kahraman_, the subscriber, affiant personally appeared to me known to be the living man described in and who executed the

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027344

foregoing instrument and swore before me that he executed the same of his free will act and

deed.

_____
Notary

My commission expires: ___11/8/2020_____

ARIEL HUTCHINSON
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires Nov. 8, 2020

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027345

Exhibit A

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027346

Superior Court of Arizona in Maricopa County
Juvenile Court Administration
1810 S Lewis
Mesa, AZ 85210
Ph. (602) 506-2544 // Facsimile (602) 506-6467

Lisa B

# FAX TRANSMISSION

RE: Kahraman                    JD# 532706

*I do not accept*

PRELIMINARY PROTECTIVE CONFERENCE AND HEARING @ SOUTHEAST

DATE: 1/9          TIME: 8:59 am    BEFORE: Judge Orail

*the terms &*

| DATE: | TO: AG | D | PA | OPDS | CPS/CM |
|-------|--------|---|-----|------|--------|
| TIME: | FROM: | | PH# | | |
| No. of Pages to Follow: | | | | | |

*B*

MESSAGE: Conflict Check – Petition and Order

*Conditions of*

| DATE: | TO: | AG | |
|-------|-----|-----|---|
| TIME: | | DCS/CM | Samantha Kramer |
| No. of Pages to Follow: | | DCS Supervisor | Sarah Mendez |
| | | LA | |
| | | LD | |
| | | PA | |
| | | OPDS | |
| | | OPDS | |
| | | OPDS | |
| | | OPDS | |
| | FROM: | | PH # |

*your contract*

**MESSAGE: Notice of Hearing, Petition& Signed Order**

CONFIDENTIALITY NOTICE: The materials enclosed with this facsimile transmission are private and confidential and are the property of the sender. The information contained in the material(s) is privileged and is intended ONLY for the use of the above named individual or entity. If you are not the intended recipient, be advised that any unauthorized disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopies information is strictly prohibited. If you have received this facsimile transmission in error, please immediately notify us by telephone to arrange for the return of the forwarded documents.

rev 7/17/14

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027347

CHRIS DEROSE. CLERK
BY *M. Cortez* DEP

FILED

2019 JAN -3 PM 4: 45

1

2

3    MARK BRNOVICH
     Attorney General

     ROBERT KUPEC
     Assistant Attorney General
4    State Bar No. 010656
     CFP/PSS
5    120 W. 1st Avenue, 2nd Floor
     Mesa, Arizona 85210
6    Telephone: (602) 771-4000
     PSSef@azag.gov
7

8    Attorneys for the Department of Child Safety

9

10           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11                  IN AND FOR THE COUNTY OF MARICOPA

12   In the Matter of:                No. JD532206

13   DYLAN KEMAL KAHRAMAN       DCS'S DEPENDENCY PETITION AND
     d.o.b. 09/27/2012          PETITION FOR PATERNITY AND/OR
14                              CHILD SUPPORT
     KENAN ROY KAHRAMAN
15   d.o.b. 09/27/2012          (OUT OF HOME)

16
     _____        CHILDS NO. 608484
17                              PRELIMINARY PROTECTIVE
     Person(s) under 18 years of age.  CONFERENCE/HEARING: TBD
18                              (Honorable _____)

19

20          Petitioner, the Department of Child Safety (DCS or the Department), by and

21   through undersigned counsel, hereby alleges upon information and belief:

22

23                                     I.

24                                Jurisdiction

25          The Juvenile Court has exclusive original jurisdiction over dependency matters

26   pursuant to A.R.S. § 8-202(B).   The Superior Court has original jurisdiction in

27   proceedings to establish paternity pursuant to A.R.S. § 25-801.

28

                                        1

## II.

### Venue

Venue in this county is proper pursuant to A.R.S. §§ 8-206(A) and 25-802 as Maricopa County is the residence of the children and/or the acts of dependency are alleged to have occurred in Maricopa County.

## III.

### Identity of Children, Placement and Applicability of the Indian Child Welfare Act

A.    DYLAN KEMAL KAHRAMAN:

1.    D.K.    KEMAL KAHRAMAN is a male child whose date of birth is September 27, 2012.

2.    DYLAN KEMAL KAHRAMAN is a dependent child within the provisions of A.R.S. § 8-201(15).

3.    DYLAN KEMAL KAHRAMAN is currently placed with DCS..

4.    D.K.    KEMAL KAHRAMAN is not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4).

B.    KENAN TROY KAHRAMAN

1.    K.K.    TROY KAHRAMAN is a male child whose date of birth is September 27, 2012.

2.    K.K.    TROY KAHRAMAN is a dependent child within the provisions of A.R.S. § 8-201(15).

3.    K.K.    TROY KAHRAMAN is currently placed with DCS.

///
///

2

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027349

*[Handwritten annotation across page: "I do not consent to the terms & conditions of your services. U Contract."]*

4.    K.K. TROY KAHRAMAN is not an Indian child as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4).

## IV.
### Parties

The following individuals are alleged to be the parents, guardians, and/or Indian Custodians of the children who are the subject of this Petition, upon information and belief:

A.    JESSICA WREN KAHRAMAN A.K.A. JESSICA W MANN is the mother of DYLAN KEMAL KAHRAMAN and K.K. TROY KAHRAMAN.

1.    Her date of birth is August 29, 1977.

2.    Her address is 1718 S Longmore, unit 95, Mesa, Arizona 85202. Her phone number is (480) 455-9899.

B.    AHMET KAHRAMAN is the father of DYLAN KEMAL KAHRAMAN and K.K. TROY KAHRAMAN.

1.    His date of birth is April 18, 1981.

2.    His address is 1718 S Longmore, unit 95, Mesa, Arizona 85202. His phone number is (430) 320-9689.

3.    He is married to JESSICA WREN KAHRAMAN A.K.A. JESSICA W MANN.

4.    He has established his paternity of D.K. KEMAL KAHRAMAN and K.K. TROY KAHRAMAN. He is named on the children's birth certificates.

_Handwritten across page: I do not consent to the terms & conditions of your services or contract_

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027350

5.    He does not have a child support order as to ███ KEMAL KAHRAMAN and KENAN TROY KAHRAMAN.

I do not

**Temporary Custody**

Upon information and belief, DYLAN KEMAL KAHRAMAN and ████ TROY KAHRAMAN were taken into temporary physical custody on December 28, 2018, at 5:22 p.m., as authorized by an order of the Superior Court dated December 28, 2018. The Superior Court authorization and DCS's application for court authorization are attached to this petition.

Consent to the Terms &

**VI.**

**Allegations**

Conditions of

A.    Upon information and belief, DCS alleges that DYLAN KEMAL KAHRAMAN and ████ TROY KAHRAMAN, are dependent due to abuse and/or neglect as to JESSICA KEN KAHRAMAN AK JESSICA MENDES.

your Services.

1.    Mother is unable to parent due to abuse and/or neglect. The parents have stated strong beliefs regarding their children's diet and medical care. The

Or Contract

care or lack thereof that they have provided the children as a result has interfered with the children's health and development. For example the parents have the children on a strictly restrictive diet and both children have been assessed by medical providers as being malnourished. The child, ████ was hospitalized in December 2018 due to congestive heart failure and pulmonary hypertension, which was suspected to be tied to his

4

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027351

malnutrition. Despite this, the parents were observed refusing to feed the child in the hospital when he reported that he was hungry. Mother expressed concern to medical staff that she "could not keep up" with the child's hunger and providing him food consistent with his strict diet. She requested that a medication for hypothyroid be stopped because she believed that the child was too full and bloated to eat. Mother also was opposed to recommendations that the child be given new foods and formula to supplement his nutrition, based on her belief that the child has food allergies and/or would be receiving too many calories. An additional concern is the parents' report that both children have been unable to walk for approximately the past six months. The parents believed that this was caused either by falls or exposure to dry eraser markers at school and began to home school the children. Mother admitted that she obtained wheelchairs for the children despite there being no medical recommendation that they were necessary. The parents sought medical evaluation by a neurologist, but did not follow the neurologist's recommendation for further evaluations. Recently, medical providers have opined that both children's inability to walk is likely due to deconditioning and behavioral constraints. Furthermore, there are concerns that Mother has reported serious symptoms in the children, but failed to obtain timely medical care and/or follow medical recommendations for further evaluation. There is additional concern that the children only report pain when asked by

5

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027352

Mother and that Mother has reported various symptoms that have not been

observed by medical providers.  Since removal from the parents' care the

children's eating and medical status have improved.

B.    Upon information and belief, DCS alleges that D.K.    KEMAL KAHRAMAN

and KENAN TROY KAHRAMAN are dependent due to abuse and/or neglect as to

AHMET KAHRAMAN.

1.    Father is unable to parent due to abuse and/or neglect.  The parents have

stated strong beliefs regarding their children's diet and medical care.  The

care or lack thereof that they have provided the children is a result as

interfered with the children's health and development.  For example the

parents have the children on a strict restrictive diet and both children have

been assessed by medical providers as being malnourished.  The child,

K.K.    was hospitalized in December 2018 due to congestive heart

failure and pulmonary hypertension which was suspected to be tied to his

malnutrition.  Despite this, the parents were observed refusing to feed the

child in the hospital when he reported that he was hungry.  Mother

expressed concern to medical staff that she "could not keep up" with the

child's hunger and providing him food consistent with his strict diet.  She

requested that a medication for hypothyroid be stopped because she

believed that the child was too full and bloated to eat.  Mother also was

opposed to recommendations that the child be given new foods and formula

to supplement his nutrition, based on her belief that the child has food

6

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027353

allergies and/or would be receiving too many calories.    Of additional

concern is the parents' report that both children have been unable to walk

for approximately the past two months.   The parents believed that this was

caused either by falls or exposure to dry erase markers at school and began

to home school the children.    Mother admitted that she obtained

wheelchairs for the children, despite there being no medical

recommendation that they were necessary.   The parents sought medical

evaluation by a neurologist, but did not follow the neurologist's

recommendation for further evaluation.   Recently, medical providers have

opined that both children's inability to walk is likely due to deconditioning

and behavioral constraints.   Furthermore, there are concerns that Mother has

reported serious symptoms in the children, but failed to obtain timely

medical care and/or follow medical recommendations for further evaluation.

There is additional concern that the children only report pain when asked by

Mother and that Mother has reported various symptoms that have not been

observed by medical providers.   There is concern that Father is not involved

in medical and dietary decision making regarding the children and that he

defers to Mother, to the children's detriment.   Since removal from the

parents' care the children's eating and medical status have improved.

///

///

///

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027354

## VII.
### Aggravating Circumstances

Pursuant to A.R.S. §§ 8-841(B)(5) and 8-846(D)(1), DCS has not yet made a determination or cannot determine at this time whether aggravating circumstances exist as to JESSICA WREN KAHRAMAN a.k.a. JESSICA W. MEAN and/or AHMET KAHRAMAN.

## VIII.
### Facts Supporting Contrary to the Welfare of the Children Finding

Continuation of the children in the home would be contrary to the children's welfare. The parents have stated strong beliefs regarding their children's diet and medical care, some care or lack thereof that they have provided the children and it has interfered with the children's health and development. For example the parents have the children on a strictly restrictive diet and both children have been assessed by medical providers as being malnourished. The child, K.K. was hospitalized in December 2018 due to congestive heart failure and pulmonary hypertension, which was suspected to be tied to his malnutrition. Despite this, the parents were observed refusing to feed the child in the hospital when he reported that he was hungry. Mother expressed concern to medical staff that she "could not keep up" with the child's hunger and providing him food consistent with his strict diet. She requested that a medication for hypothyroid be stopped because she believed that the child was too full and bloated to eat. Mother also was opposed to recommendations that the child be given new foods and formula to supplement his nutrition, based on her belief that the child has food allergies and/or would be receiving too many calories. Of additional concern is the parents' report that

8

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027355

both children have been unable to walk for approximately the past two months. The parents believed that this was caused either by falls or exposure to dry erase markers at school and began to home school the children. Mother admitted that she obtained wheelchairs for the children, despite there being no medical recommendation that they were necessary. The parents sought medical evaluation by a neurologist, but did not follow the neurologist's recommendation for further evaluations. Recently, medical providers have opined that both children's inability to walk is likely due to deconditioning and behavioral constraints. Furthermore, there are concerns that Mother has reported serious symptoms in the children, but failed to obtain timely medical care and/or follow medical recommendations for further evaluation. There is additional concern that the children omit reporting pain when asked by Mother and that Mother has reported various symptoms that have not been observed by medical providers. There is concern that Father is not involved in medical and dietary decision making regarding the children and that he defers to Mother to the children's detriment. Since removal from the parents' care the children's eating and medical status have improved.

## IX.
### Facts Supporting Reasonable Efforts Finding

It is further requested that the Court find, based upon the verified allegations of the petition, that reasonable efforts have been made to prevent removal of the children from the home. The Department scheduled a Team Decision Making meeting with the parents for January 3, 2019 to review the safety and placement of the children. Although the parents were notified of the meeting, they did not attend.

9

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027356

## X.
### Facts Supporting Relative or Non-Relative Placement

The Department made attempts to identify and assess placement with the children's grandparent or another member of the children's extended family, including a person who has a significant relationship with the children, but such a placement is not in the children's best interests at this time because there are no identified family members who are willing or unable to care for the child at this time. The children's current placement is the least restrictive consistent with the children's best interests.

## XI.
### Financial Responsibility for the Support of the Child

The parent(s) should pay an appropriate amount as determined by law for the care, maintenance and support of the children while in care pursuant to A.R.S §§ 8-241, 8-243 and 8-243.01.

## XII.
### Education

With regard to possible special education issues of any child named herein who is not placed with a parent, or for any child subsequently removed from a parent(s) physical custody, DCS hereby requests an order providing that:

1.    In the event a public education agency or Arizona early intervention provider advises DCS that it needs to locate a parent of any child named in this petition to serve as the Individuals With Disabilities Education Act

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027357

(IDEA) parent for that child and a parent can no longer be located by DCS; or

2.    In the event the parent or legal counsel for the parent tells the public education agency, or DCS its legal counsel that the parent will not serve as the IDEA parent for the child named in this petition; or

3.    If the parent is subject to a no contact order as to any of the children; or

4.    If a public education agency or an Arizona early intervention provider following reasonable efforts to try and get a parent to respond to its requests to act as the IDEA parent for any child named in this petition, fails to obtain a response or any cooperation of a parent, an adult relative, stepparent, or foster parent with whom the child lives (but not staff of a group home or other residential facility) shall have authority to serve as the IDEA parent.

The IDEA parent represents the children's special education interests under Parts B or C of the IDEA. The purpose of such representation is to ensure that a child with a suspected/known disability receives prompt assessment and evaluation for eligibility for early intervention services or appropriate educational services, which may include special education and related services designed to meet the child's unique needs.

### REQUEST FOR RELIEF

Based upon the foregoing allegations, immediate action is required.

WHEREFORE, DCS requests this Court find and/or order that:

///
///

11

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027358

1. The Juvenile Court has jurisdiction over the subject matter and, after proper service on the parents, guardians, and/or Indian custodians, the persons before this Court;

2. Venue is proper in this county;

3. The children are temporary wards of the Court, placed in the care, custody, and control of DCS, 3003 North Central Avenue, Phoenix, Arizona 85012, and;

   a. Placing D.K. KEMAL KAHRAMAN in the physical custody of DCS;

   b. Placing KENAN TROY KAHRAMAN in the physical custody of DCS;

4. Continuation of the children in the home would be contrary to the the children's welfare;

5. Reasonable efforts have been made to prevent removal of the children from the home;

6. The Department made attempts to identify and assess placement with a grandparent or extended family, including a person who has a significant relationship with the children and such a placement is not in the children's best interest at this time;

7. The children are not Indian children as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4);

8. A Preliminary Protective Hearing be set pursuant to A.R.S. § 8-824, an Initial Dependency Hearing pursuant to A.R.S. §§ 8-842 and 8-843, a

12

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027359

Publication Hearing, and a Permanency Hearing pursuant to A.R.S. § 8-862;

9. The matter be assigned to the Court-Appointed Special Advocate (CASA) Program to determine if it is appropriate for the assignment of an advocate;

10. The matter be assigned to the Foster Care Review Board (FCRB) to perform the duties required by statute;

11. All persons are prohibited from removing the children from the State of Arizona without prior written approval of DCS;

12. Any judgment and orders for the care, paternity, custody, support or such other relief, as the children's welfare and the interests of the State may require under the provisions of Title 8 and Title 25 of the Arizona Revised Statutes;

13. That the parent(s) or legal guardian(s) shall provide the DCS Child Safety Worker or its attorney with a recent educational history (including the name(s) and location(s) of the school(s) each child named in the Petition recently attended and the grade in which each child was most recently enrolled.) The parent(s) or legal guardian(s) shall also provide or confirm the date of birth of each child named in the Petition;

14. An individual other than a biological or adoptive parent is authorized to act as the IDEA parent under the circumstances delineated herein;

15. All medical, dental and mental health providers, health plans, Regional Behavioral Health Authorities (RBHAs), as well as other Health Insurance

13

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027360

Portability and Accountability Act (HIPAA) covered providers who have provided any services to the children, make available to any guardian ad litem for the children and/or attorney for the children the various medical, dental, mental health, genetic and other health care records of the children;

16.  The allegations in this Petition are true by a preponderance of the evidence and that the children are dependent to all alleged parents, guardians, and/or Indian custodians as defined by A.R.S. § 8-201(15), and that the children be made wards of the court committed to the care, custody, and control of CS;

17.  The parent, guardian, or Indian custodian be advised as follows;

a.  Failure to appear without good cause may result in a finding that the parent, guardian, or Indian custodian has waived his/her legal rights and admitted the allegations in the dependency petition;

b.  That hearings may go forward in his/her absence and may result in an adjudication of dependency, permanent guardianship or termination of parental rights based upon the record and evidence presented to the Court, as well as an order of paternity, suspension or termination of an existing current child support order, custody, or change of custody in a consolidated family law matter and an order for child support if paternity has been established;

14

AZ-KAHRAMAN027361

c.    Proceedings for permanent guardianship pursuant to A.R.S. §§
8-871 and 8-872 or proceedings for termination of parental
rights pursuant to A.R.S. § 8-533 may be initiated based upon
the grounds set forth in statute or for failure to participate in
reunification services; and

d.    If a child is under three years of age, within six months after
removal from the home, the Court will determine whether the
parent, guardian or Indian custodian has substantially neglected
or willfully refused to participate in reunification services
offered by DCS; admonish the parent, guardian, or Indian
custodian that substantially neglecting or willfully refusing to
remedy the circumstances that cause a child to be in an out-of-
home placement, including refusing to participate in
reunification services, is a ground for termination of parental
rights; and

18.    That the parent(s) or legal guardian(s) provide to this Court, as required by
A.R.S. § 8-841(D)(5), at the Preliminary Protective Hearing and/or the
Initial Dependency Hearing:  the names, type of relationship, and all
available information necessary to locate persons related to the children or
who have a significant relationship with the children.  Persons related to the
children include the children's grandparents, great-grandparents, brothers or
sisters of whole or half-blood, aunts, uncles and first cousins.  If the

15

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027362

parent(s) or legal guardian(s) do not have sufficient information available to locate a relative or person with a significant relationship with the children, the parent or guardian must inform this Court of this fact. The parent(s) or legal guardian(s) must inform DCS immediately if the parent(s) or guardian(s) becomes aware of information related to the existence or location of a relative or person with a significant relationship with the children.

19.    Notice is given that if DCS has temporary custody of a child or legal custody pursuant to a court order, it has the authority to consent to: evaluation and treatment for emergency conditions that are not life threatening; routine medical and dental treatment and procedures, including early periodic screening diagnosis and treatment services, and services by health care providers to relieve pain or treat symptoms of common childhood illnesses or conditions; surgery; blood transfusions; general anesthesia; and testing for the presence of the Human Immunodeficiency Virus (HIV). A.R.S. § 8-514.05(C).

20.    Notice is given that DCS is proposing to substantiate any allegations of abuse and/or neglect contained in the dependency petition for placement in the DCS Central Registry. The DCS Central Registry is a confidential list of DCS findings that tracks abuse and neglect. If the court finds your child dependent based upon allegations of abuse and/or neglect contained in the

16

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027363

dependency petition, you will be placed in the DCS Central Registry. *See* A.R.S. § 8-804.

21. Notice is given that under the Arizona Rules of Family Law Procedure 5.1(E), during any dependency/guardianship proceeding in the juvenile division, the assigned juvenile division may suspend, modify, or terminate a child support order for current support if the parent entitled to receive the child support no longer has legal or physical custody of the child, and, except in Title IV-D cases, may make appropriate orders regarding any past due support or child support arrears. The assigned juvenile division may direct that the wage assignment be quashed or modified.

RESPECTFULLY SUBMITTED this 3rd day of January, 2019.

MARK BRNOVICH
Attorney General

ROBERT KUPEC
Assistant Attorney General

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027364

**VERIFICATION**

1

2  STATE OF ARIZONA          )
                                                    )  ss.
3  COUNTY OF MARICOPA    )

4

5  I, Sarah Kramer, being duly sworn, upon oath depose and say:

6  I am an employee of the Petitioner, the Department of Child Safety, and I have

7  been authorized to make this verification on its behalf. I have read the foregoing Petition

8  and believe upon information and belief that the contents thereof are true and correct.

9

10

11                                                          Sarah Kramer
                                                            _____
12                                                          Signature of Sarah Kramer

13                                                          DCS Specialist
                                                            _____
                                                            Title

14

15

16  SUBSCRIBED and SWORN to before me this ___3rd___ day of January, 2019.

17

18  [NOTARY SEAL: VICKY HAYES
    Notary Public - State of Arizona
    MARICOPA COUNTY
    My Commission Expires
    September 14, 2020]

19                                                          _____
                                                            Notary Public

20  CLC / Kahraman / HDM#7572289

21

22

23

24

25

26

27

28

*[Handwritten across page: "I do not accept the terms or conditions of your contract"]*

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

19

AZ-KAHRAMAN027365

CSO-1000A (6-18)
*PAGE 2 ON REVERSE*

## ARIZONA DEPARTMENT OF CHILD SAFETY
### TEMPORARY CUSTODY NOTICE

On *(Date)* 12/28/18  At *(Time)* 5:22  ☐ AM  ☒ PM , temporary custody of *(child's name)* Kenan Kahraman
was taken at *(Address)* 1400 S. Dobson Rd  by *(Agency)* DCS

**Type of abuse or neglect requiring temporary custody:** Select the circumstance(s) that most clearly describe the danger to the child(ren) and reason temporary custody is necessary.

☐ Medical examination is required to diagnose abuse.

☐ The child is unsupervised or alone now or on a daily basis, or has been left with a person who is unwilling or unable to provide adequate care.

☐ The caregiver is unable to perform essential parental responsibilities due to substance use, mental illness, physical impairment, cognitive limitations.

☐ The caregiver is unable or unwilling to perform essential parental responsibilities and there is no other appropriate caretaker immediately available.

☐ The caregiver is out of control and cannot currently manage his/her behavior or is unable to properly perform parental responsibilities.

☐ The caregiver's behavior is violent, bizarre, erratic, unpredictable, and/or current or potentially inappropriate and is a threat to child safety.

☐ The caregiver is brandishing weapons, known to be dangerous and aggressive, or is behaving in attacking or aggressive ways that are a threat to child safety.

☐ The caregiver has not, cannot, or will not protect the child from serious or severe harm, including harm from other persons having access to the child.

☐ Dynamics in the household include a person establishing power, control, or coercion over a caregiver in a way that impairs necessary supervision or care of the child and has canceled, or plans to abuse, caused harm to severe harm to the child's physical, mental, or emotional health.

☐ The caregiver has an extremely negative perception of the child, and/or has extremely negative expectations for the child's needs.

☐ Physical conditions in the home are hazardous and immediately threaten the child's safety.

☐ The caregiver is subjecting the child to brutal or bizarre punishment or there is severe to extreme maltreatment alleged to be occurring.

☒ The child requires immediate medical attention, and the absence of medical treatment could seriously affect the child's health and well-being.

☐ The child is actively harming self or others and is unwilling or unable to control his/her behavior or caregiver is unable or unwilling to provide necessary care.

☐ There is evidence of child sexual abuse, or the perpetrator currently has access to the child, and/or no protective action is being taken by a caregiver.

☐ The child has injuries such as facial bruises, injuries to the head, multiple plane injuries, injuries to a non-ambulatory child, immersion burns.

☐ The child has serious injuries that the caregivers and others cannot or will not explain, or the explanation is inconsistent with the child's injuries or condition.

☐ The caregiver deliberately harmed the child, or caused or threatened serious or severe harm to the child.

☐ The child is fearful or terrified of the caregiver or the home situation, or a parent is threatening in or having access to the home.

☐ The caregiver previously endangered a child and/or caused harm to a child and circumstances indicate the person will likely cause severe harm to the child.

☐ There is evidence of abuse or neglect and the caregiver cannot produce the child, refuses access to or is likely to flee with the child, or actively avoids DCS.

☐ Criminal activity by the caregiver or criminal activity of other persons living in or having access to the home will likely result in severe harm to the child.

Select how temporary custody was obtained: ☐ Parent or Guardian Consent  ☒ Court Authorized  ☐ Exigent Circumstances

**The Department of Child Safety (DCS) must:**

- Return your child within 72 hours *(not including weekends and holidays)* unless DCS files a legal paper, called a petition, with Juvenile Court. If a petition is filed, your child will be kept in the temporary custody of DCS.

- Return your child within 12 hours if your child was removed for a medical examination, unless abuse is revealed, and

- Inform you of the right to give a verbal, telephonic or written response to the allegations and have the response included in the investigation report. Any documentation you give, what you say or write, will be included in the case record and can be used in court proceedings.

| | |
|---|---|
| DCS REPRESENTATIVE'S NAME *(Please print)* Sarah Kramer | AREA CODE AND PHONE NO. 480 659-6364 |
| ARIZONA DEPARTMENT OF CHILD SAFETY ADDRESS *(No., Street, City, State, ZIP)* 1201 S. Alma School  Mesa, AZ  85210 | |
| DCS SUPERVISOR'S NAME *(Please print)* Sarah Mendez | AREA CODE AND PHONE NO. 602 771-0460 |

**METHOD OF NOTICE:** On *(date)* 12/28/18 at *(time)* 5:22  ☐ AM  ☒ PM , I served noticed to *(parent, guardian or custodian)* *(print name)* Jessica Kahraman

Method used: ☒ In-Person  ☐ Left at Residence  ☐ Verbal  ☐ Fax    Date: 12/28/18    Time: 5:22 pm
Address where mailed/left/given *(No., Street, City, State, ZIP)*

What is the child or child's parents American Indian heritage/ancestry?    Has the tribe been notified? ☐ Yes ☒ No ☐ N/A

PARENT, GUARDIAN OR CUSTODIAN'S SIGNATURE
X

DCS REPRESENTATIVE'S SIGNATURE *(Or her designee)* Sarah Kramer    DATE 12/28/18

ROUTING: Original – Parent/Guardian/Custodian; 1st Copy – Sent to Assistant Attorney General to file with the Petition; 2nd Copy – Retained in the case record

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027366

CSO-1040A (6-18)
SEE REVERSE

**ARIZONA DEPARTMENT OF CHILD SAFETY**
**TEMPORARY CUSTODY NOTICE**

On *(Date)* 12/28/18  At *(Time)* 7:00  ☐ AM ☒ PM , temporary custody of *(child's name)* Dylan Kahraman
was taken at *(Address)* 1400 S Dobson Mesa  by *(agency)* DCS

Type of abuse or neglect requiring temporary custody: Select the circumstance(s) that most clearly describe the danger to the child(ren) and reason temporary custody is necessary.

*[Handwritten across form: "I do not accept the terms or conditions of your contract"]*

☐ Medical examination is required to diagnose abuse.
☐ The child is unsupervised or alone now or is likely to be or has been left with a person who is unwilling or unable to provide adequate care.
☐ The caregiver is unable to perform essential parental responsibilities due to substance use, mental illness, physical impairment, cognitive limitations.
☐ The caregiver is unable or unwilling to perform essential parental responsibilities and there is no other appropriate caretaker immediately available.
☐ The caregiver is out of control and cannot focus or manage his/her behavior in ways to properly perform parental responsibilities.
☐ The caregiver's behavior is violent, bizarre, erratic, unpredictable, incoherent, or totally inappropriate and is a threat to child safety.
☐ The caregiver is brandishing weapons, known to be dangerous and aggressive or is behaving in attacking or aggressive ways that are a threat to child safety.
☐ The caregiver has not or cannot or will not protect the child from serious harm or threat of harm, including harm from another person with access to the child.
☐ Dynamics in the caregiver's relationship (establishing power, control, or coercion of a caregiver) that may impair the safe supervision or care of the child and has caused, or will likely cause, serious or severe harm to the child's physical, mental, or emotional health.
☐ The caregiver has an extremely negative perception of the child, and/or has extremely unrealistic expectations for the child's behavior.
☐ Physical conditions in the home are hazardous and immediately threaten the child's safety.
☐ The caregiver is subjecting the child to brutal or bizarre punishment or there is severe to extreme maltreatment alleged to be occurring.
☐ The child requires immediate medical attention and the caregiver will not provide treatment or would seriously affect the child's health and well-being.
☒ The child is actively endangering self or others and the caregiver cannot or will not consent to the child's treatment or arrange or provide necessary care.
☐ There is evidence of recent sexual abuse, the perpetrator currently has access to the child, and no protective action is being taken by a caregiver.
☐ The child has injuries such as facial bruises, injuries to the head, multiple plane injuries, injuries to a non-embulatory child, immersion burns.
☐ The child has serious injuries that the caregivers and others cannot or will not explain or the explanation is inconsistent with the child's injuries or condition.
☐ The caregiver cannot be located to care for the child, or cannot or will not disclose the child's whereabouts.
☐ The child is prevented from (or terrified) of their present home situation, that particular person living in or having access to the home.
☐ The caregiver previously endangered a child and/or caused harm to a child and circumstances indicate the person will likely cause severe harm to the child.
☐ There is evidence of abuse or neglect and the caregiver cannot produce the child, refuses access to or is likely to flee with the child, or actively avoids DCS.
☐ Criminal activity by the caregiver or criminal activity of other persons living in or having access to the home will likely result in severe harm to the child.

Select how temporary custody was obtained: ☐ Parent or Guardian Consent ☒ Court Authorized ☐ Exigent Circumstances

**The Department of Child Safety (DCS) must:**

- Return your child within 72 hours *(not including weekends and holidays)* unless DCS files a legal paper, called a petition, with Juvenile Court. If a petition is filed, your child will be kept in the temporary custody of DCS.

- Return your child within 12 hours if your child was removed for a medical examination, unless abuse is revealed, **and**

- Inform you of the right to give a verbal, telephonic or written response to the allegations and have the response included in the investigation report. Any documentation you give, what you say or write, will be included in the case record and can be used in court proceedings.

DCS REPRESENTATIVE'S NAME *(Please print)*  Sarala Kramer
AREA CODE AND PHONE NO.  480-659-6364
ARIZONA DEPARTMENT OF CHILD SAFETY ADDRESS *(No., Street, City, State, ZIP)*  1201 S Alma School Rd Ste 1100, Mesa, AZ 85210
DCS SUPERVISOR'S NAME *(Please print)*  Sarah Mendez
AREA CODE AND PHONE NO.  480-659-6418
METHOD OF NOTICE: On *(date)* 12/28/18  at *(time)* 7:00  ☐ AM ☒ PM , I served notice to *(parent, guardian or custodian) (print name)*
Ahmed & Jessica Kahraman
Method used: ☒ In-Person ☐ Left at Residence ☐ Verbal ☐ Fax  Date: 12/28/18.  Time: 7:00pm
Address where mailed/left/given (No., Street, City, State, ZIP) ☐  Cardon Children's Medical Center
What is the child or child's parents American Indian heritage/ancestry:  Has the tribe been notified? ☐ Yes ☒ No ☐ N/A
PARENT, GUARDIAN OR CUSTODIAN'S SIGNATURE

DCS REPRESENTATIVE'S SIGNATURE *(Or law enforcement officer)*  Sarah Kramer
DATE  12/28/18

ROUTING: Original – Parent/Guardian/Custodian; 1st Copy – Sent to Assistant Attorney General to file with the Petition; 2nd Copy – Retained in the case record

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027367

# APPLICATION AND DECLARATION FOR EX-PARTE REMOVAL OF CHILDREN
## Superior Court of Arizona for Maricopa County

REMOVAL REQUEST # RR2018-01846

COUNTY OF ORIGIN Maricopa

DCS CASE ID 608484

I, Sarah Kramer, hereby affirm the following statement of facts:

1. I am employed by the Arizona Department of Child Safety. By virtue of my education, training and experience I am qualified and authorized to conduct child abuse and neglect investigations. I am currently assigned to investigate the case involving the children named in this application and declaration (or I am the supervisor of a person that person's supervisor I make this declaration in support of this application. Further, I have the following qualifications: Bachelor of Social Work from ASU (2013)
Masters of Social Work - Child Welfare Specialization from ASU (2014)
Department of Child Safety Investigator (2014 - current)

2. This application and declaration is in support of for ex-parte removal of the following children:

| Child Name | DOB | Sex | ICWA Status |
|---|---|---|---|
| Dylan Kahraman | 09/27/2012 | M | No |
| Kenan Kahraman | 09/27/2012 | M | No |

3. The mother(s) is/are:
The mother of D.K. Kahraman is Jessica Kahraman
The mother of K.K. Kahraman is Jessica Kahraman

4. The father(s) is/are:
The father of D.K. Kahraman is Ahmet Kahraman
The father of K.K. Kahraman is Ahmet Kahraman

5. The legal guardian(s) is/are:
The legal guardian of D.K. Kahraman and K.K. Kahraman is None or Unknown

6. Probable cause exists to believe that temporary custody is clearly necessary to protect the children from suffering abuse or neglect, and it is contrary to the children's welfare to remain in the home under A.R.S. §8-821(A). Specifically, Specific present danger condition(s) or impending danger threat(s) for each child listed on this application:

Child requires immediate medical attention, and the absence of medical treatment could seriously affect the child's health and well-being; such as a child who is severely malnourished, dehydrated

*[handwritten across page: I do not Accept the terms or conditions of your contract]*

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027368

## APPLICATION AND DECLARATION FOR EX-PARTE REMOVAL OF CHILDREN
### Superior Court of Arizona for Maricopa County

or failure to thrive.

Circumstances that require temporary custody including a detailed account of circumstances and supporting facts:

Children Kenan and D.K. resides with their parents, Jessica and Ahmet.

K.K. was admitted to Cardon Children's Medical Center on 12/18/18 after his parents brought him in. K.K. was found to be "extremely swollen." K.K. has lost his ability to walk over the last three months. When Kenan was admitted he had low blood sugar and ketones in his urine. Mother reported to the hospital that over the past few weeks prior to 12/18/18, Kenan had had "seizure like activity," but that she did not take him to the doctor. Kenan was diagnosed with pulmonary hypertension, right heart failure, malnourishment, and anasarca (severe swelling from his organs not working). The malnourishment is contributing to Kenan's heart failure. K.K. is receiving oxygen support, which he is responding well to. On 12/25/2018, Dr. Bandla, a pediatric GI doctor, reported that "Kenan seems to be malnourished due to severe dietary restriction based on moms suspicions and issues." On 12/26/2018, Dr. Stewart reported that he has a strong suspicion for medical neglect or medical child abuse. K.K. has also been diagnosed with failure to thrive. Maria Chico with SCAN team completed an assessment with the family. On 12/20/18, it was stated "the child is at high risk for further/ongoing poor medical/nutritional status in his current environment." Kenan remains hospitalized for his medical issues. Per medical professionals, the current diet is not nutritionally adequate to meet his nutritional needs. The current amounts of non-meat foods parents feed the child are insufficient and not age appropriate. Kenan also requires ongoing increases in portion sizes. Dr. Manz, a pediatric nutritionist, stated that mother does not seem to be able to grasp that she is withholding adequate nutrition form the child. Medical doctors have recommended that K.K. receive supplemental formula but mother did not agree to this. Mother has agreed to try some new foods for the children but the portion sizes have been a teaspoon or ½ cup. Dr. Stewart reported that K.K. would likely take adequate intake for his nutritional needs if mother would stop limiting his intake. Medical staff have overheard K.K. state he was hungry and be denied food by mother, father, and maternal grandmother. K.K. lost weight for several days while hospitalized where mother was responsible for all of the children's food intake.

The parents report that they have used the Gut and Psychology Syndrome (GAPS) diet for their children for two years. This diet has different stages and the children are still in stage one after two years. The GAPS diet has additional foods that are recommended through the GAPS diet. Mother reported that they consult with a GAPS expert in Georgia but this doctor has not seen the children in person. The parents report using this diet due to their children's significant food intolerances and chemical sensitivities. The children do not have an official diagnosis for their food intolerances. Father reported that he children eat lamb from New Zeeland, carrots, and beets. He stated that "here and there we are trying other options." The children receive four meals a day and one snack. Their diet consist of lamb meat, meat stock/brother, carrots, and beets. They will receive a "quarter to half an egg yolk off and on." In a single day, each child eats about four cups broth, four cups meat, ¼ cup carrots, and a ¼ cup beets. They also have probiotics and drink water.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER                                          AZ-KAHRAMAN027369

## APPLICATION AND DECLARATION FOR EX-PARTE REMOVAL OF CHILDREN
### Superior Court of Arizona for Maricopa County

On 12/21/18, the Department instructed mother to bring Dylan to the hospital to be evaluated by the morning of 12/24/18. She brought Dylan to the Cardon Children's Medical Center on 12/23/18. Routine laboratory diagnostic testing revealed electrolyte abnormalities. He has not been walking for two months and relies on a wheel chair / his parents for mobility. He will scoot around to be mobile on his own. Medical documentation states that Dylan's inability to walk is likely due to de-conditioning and behavioral constraints. He was previously evaluated by Orthopedics who found no knee instability. Dylan did not present with an acute condition that would require inpatient hospitalization. The emergency room physical stated he is concerned about his nutritional status and weakness, however it is being worked up as an outpatient and he would not benefit from hospitalization. The cardiologist Dr. Miga, saw Dylan on 12/21/2018 He reported that Dylan has a normal heart rate and has no evidence of pulmonary hypertension. He reported that Dylan has significant malnutrition as a result of a very restrictive GAPS diet. Mr. Miga has concerns about Dylan's inability to walk and stated it could be behavioral and may be related to his underlying malnutrition. Dr. Miga reported that "although he does not have any evidence of pulmonary hypertension, given the similarities to his brother's condition I remain concerned he could develop pulmonary hypertension in the future. ECG had abnormal results likely related to his nutritional deficits".

Kenan and Dylan have been reportedly healthy until the last few months. Both children stopped walking within weeks of each other around September/October. Mother reported the children each had injuries from falling that caused them to stop walking. Mother has taken the children to medical providers since they stopped walking but there was no evidence of an injury to diagnose. They have received physical therapy weekly since October. Kenan has not made progress. Dylan has made some progress and he can now take a few assisted steps. Medical professionals report the children have been de-conditioned. The children were withdrawn from school in October due to their medical issues and are now homeschool.

Specific reasons why a less intrusive option is not feasible or sufficient to manage the safety of the child in the home and why remaining in the home is contrary to the child's welfare:

Both children stopped walking within weeks of each other in October due to different falls. Both have received physical therapy. D.K. has made slow progress as he can now take a couple steps but remains de-conditions. K.K. has not made progress. K.K. is currently hospitalized for failure to thrive and pulmonary hypertension. The children are fed a very restrictive diet which consistently includes lamb, meat broth/stock, carrots, and beets. Parents report the children have significant food intolerances and chemical sensitivities. The parents report trying to introduce small amounts (drops or teaspoons) of new foods to the children over the last two years but they have reactions such as behavior changes, pain, or rashes. Medical professionals have notified parents that this diet is not sufficient to meet Kenan's needs. The parents are unwilling to make immediate changes to the diet to have it meet Kenan's needs. D.K. is fed the same diet as K.K. and has been assessed to have nutritional deficits and at risk of developing pulmonary hypertension like his brother has.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER                                        AZ-KAHRAMAN027370

**APPLICATION AND DECLARATION FOR EX-PARTE REMOVAL OF CHILDREN**
Superior Court of Arizona for Maricopa County

7. I, Sarah Kramer, declare under penalty of perjury that the information contained within this application and declaration is true and correct to the best of my knowledge and belief.

*I do not*

12/28/2018 2:52 PM

*accept the terms or conditions of your contract.*

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER                                              AZ-KAHRAMAN027371

# ORDER FOR EX-PARTE REMOVAL OF CHILDREN
## Superior Court of Arizona for Maricopa County

REMOVAL REQUEST # RR2018-01846

COUNTY OF ORIGIN Maricopa

DCS CASE ID 608484

TO ANY DCS REPRESENTATIVE IN THE STATE OF ARIZONA

Proof by application and declaration having been made this date 12/28/2018 before me by Sarah Kramer of the Department of Child Safety ("DCS"), and on the basis of the evidence presented in such application and declaration and pursuant to A.R.S. §8-821(A), I find probable cause exists to believe that temporary custody is clearly necessary to protect the following children Dylan Kahraman and Kenan Kahraman from suffering abuse or neglect. I further find, for the reasons indicated below and pursuant to A.R.S. §8-821 (A), that probable cause exists to believe that it is contrary to the children's welfare to remain in the home.

- ☑ Failure to protect a child(ren) from abuse or neglect
- ☑ Mental health issues
- ☑ Risk of abuse or neglect of children
- ☑ Unfit or unsafe home environment for child(ren)

Therefore, **IT IS ORDERED** granting DCS's request for authorization to remove Dylan Kahraman and Kenan Kahraman and authorizing DCS to remove these children.

*Melissa Zabor*

Hon. Melissa Zabor

12/28/2018 3:08 PM

*[Handwritten across page: I do not accept the terms of conditions of your contract.]*

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027372

ORIGINAL of the foregoing filed
this 31 day of January, 2019, with:

Clerk of the Court
Maricopa County Superior Court
Juvenile Court Southeast Facility
1810 South Lewis Street
Mesa, AZ 85210

Copy of the foregoing hand-delivered
this 31 day of January, 2019 to:

Honorable
Maricopa County Superior Court
Juvenile Court Southeast Facility
1810 South Lewis Street
Mesa, AZ 85210

Copies of the foregoing mailed
this 31 day of January, 2019 to:

Foster Care Review Board
1501 W. Washington, Suite 128
Phoenix, Arizona 85007

Sarah Kramer
sarah.kramer@azdcs.gov
Case Manager
Site Code: 155C

_____
CLC / Kahraman / T042157 / HDM#7572289

*[Handwritten across page: do not accept the terms or conditions of your contract]*

18

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027373

1   MARK BRNOVICH
    Attorney General

2

3   ROBERT KUPEC
    Assistant Attorney General

4   State Bar No. 010656
    CFP/PSS

5   120 W. 1st Avenue, 2nd Floor

6   Mesa, Arizona 85210
    Telephone: (602) 771-4000

7   PSSSef@azag.gov

8   Attorneys for the Department of Child Safety

9

10          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11                  IN AND FOR THE COUNTY OF MARICOPA

12  In the matter of:                    No. JD532206

13  D.K.    KEMAL KAHRAMAN           ORDER SETTING HEARINGS ON
        d.o.b. 09/27/2012            DEPENDENCY PETITION AND
14                                   TEMPORARY ORDERS
    KENAN TROY KAHRAMAN
15      d.o.b. 09/27/2012

16  Person(s) under 18 years of age.              (Honorable                    )

17
    Upon a verified petition alleging the children to be dependent and that the interests
18
    of the children requires immediate action:
19

20          IT IS ORDERED setting a Preliminary Protective Conference for the 9 day of

21  January, 2019, at 8:15 A.m., to be held at 1810 South Lewis Street, Mesa,

22
    Arizona 85210, before the Facilitator _____.
23

24          IT IS FURTHER ORDERED setting a Preliminary Protective Hearing for the 9

25  day of January, 2019, at 9 A.m., to be held at 1810 South Lewis Street,

26  Mesa, Arizona 85210, before the Honorable Judge Udall.

27

28

AZ-KAHRAMAN027374

IT IS FURTHER ORDERED setting an Initial Dependency Hearing for 9 day of January , 2019, at 9 A .m., to be held at 1810 South Lewis Street, Mesa, Arizona 85210, before the Honorable Judge Udall .

IT IS FURTHER ORDERED setting a Publication Hearing for the ___ day of _____, 20___, at ___ .m., to be held at 1810 South Lewis Street, Mesa, Arizona 85210, before the Honorable _____

IT IS FURTHER ORDERED setting a Permanency Hearing for D.K. KEMAL KAHRAMAN, KENAN TROY KAHRAMAN for the 19 day of November, 2019, at 2:30 A .m., to be held at 1810 South Lewis Street, Mesa, Arizona 85210, before the Honorable Judge Udall .

FAILURE TO COMPLY WITH THESE ORDERS MAY RESULT IN THE COURT'S FINDING YOU IN CONTEMPT OF COURT

IT IS ORDERED that, pending the hearing, D.K. KEMAL KAHRAMAN is made a temporary ward of the Court, committed to the legal care, custody, and control of the Department of Child Safety (DCS or the Department) and placed in the physical custody of DCS.

IT IS ORDERED that, pending the hearing, KENAN TROY KAHRAMAN is made a temporary ward of the Court, committed to the legal care, custody, and control of the Department of Child Safety (DCS or the Department) and placed in the physical custody of DCS.

THE COURT FINDS, based upon the verified allegations of the Petition that continuation of the children in the home would be contrary to the children's welfare. This finding is based on the following facts: The parents have stated strong beliefs regarding

2

AZ-KAHRAMAN027375

their children's diet and medical care.  The care or lack thereof that they have provided

the children as a result has interfered with the children's health and development.  For

example the parents have the children on a strictly restrictive diet and both children have

been assessed by medical providers as being malnourished.  The child, KENAN, was

hospitalized in December 2018 due to congestive heart failure and pulmonary

hypertension, which was suspected to be tied to his malnutrition.  Despite this, the parents

were observed refusing to feed the child in the hospital when he reported that he was

hungry.  Mother expressed concern to medical staff that she "could not keep up" with the

child's hunger and providing him food consistent with his strict diet.  She requested that a

medication for hypothyroid be stopped because she believed that the child was too full

and bloated to eat.  Mother also was opposed to recommendations that the child be given

new food and formula to supplement his nutrition, based on her belief that the child has

food allergies and/or would be receiving too many calories.  Of additional concern is the

parents' report that both children have been unable to walk for approximately the past two

months.  The parents believed that this was caused either by falls or exposure to dry erase

markers at school and began to home school the children.  Mother admitted that she

obtained wheelchairs for the children, despite there being no medical recommendation

that they were necessary.  The parents sought medical evaluation by a neurologist, but did

not follow the neurologist's recommendation for further evaluations.  Recently, medical

providers have opined that both children's inability to walk is likely due to

deconditioning and behavioral constraints.  Furthermore, there are concerns that Mother

has reported serious symptoms in the children, but failed to obtain timely medical care

3

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027376

and/or follow medical recommendations for further evaluation. There is additional concern that the children only report pain when asked by Mother and that Mother has reported various symptoms that have not been observed by medical providers. There is concern that Father is not involved in medical and dietary decision making regarding the children and that he defers to Mother, to the children's detriment. Since removal from the parents' care the children's eating and medical status have improved.

THE COURT FURTHER FINDS, based upon the verified allegations of the Petition, that reasonable efforts have been made to prevent removal of the children from the home. This finding is based on the following facts: The Department scheduled a Team Decision Making meeting with the parents for January 3, 2019 to review the safety and placement of the children. Although the parents were notified of the meeting, they did not attend.

THE COURT FURTHER FINDS, based upon the verified allegations of the Petition, that the Department made attempts to identify and assess placement with the children's grandparent or another member of the children's extended family, including a person who has a significant relationship with the children, but such placement is not in the children's best interests at this time because there are no identified family members who are willing or able to care for the child at this time  The children's current placement is the least restrictive consistent with the children's best interests.

IT IS ORDERED that DCS and the placement are authorized to consent to social and authorized educational activities for the children.

*[Handwritten across page: "I do not accept the terms or conditions of your Contract."]*

4

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027377

IT IS FURTHER ORDERED that no person shall remove or cause the removal of the children from the State of Arizona without prior written approval of DCS.

IT IS FURTHER ORDERED that DCS is authorized to consent for the children to leave the jurisdiction of the Court for travel within the United States for a period not to exceed thirty days.

IT IS FURTHER ORDERED that, pursuant to Rule , Ariz. R.P. Juv. Ct., this matter be referred to the CASA Program Coordinator to determine the appropriateness of an appointment of an advocate for the children.

IT IS FURTHER ORDERED that the Foster Care Review Board review this matter within six months of out-of-home placement and at least every six months thereafter as long as the children remain in out-of-home care to determine what efforts have been made by DCS to carry out the plan for permanent placement. The review period for out-of-home placement includes time the above-named children have been in voluntary out-of-home placement.

IT IS FURTHER ORDERED that the parent(s) or legal guardian(s) provide the DCS Child Safety Worker or its attorney with a recent educational history (including the name(s) and location(s) of the school(s) the children named in the Petition recently attended and the grade in which the children were most recently enrolled). The parent(s) or legal guardian(s) shall also provide or confirm the dates of birth of the children named in the Petition.

IT IS FURTHER ORDERED that in the event of any of the following circumstances, a relative, stepparent or foster parent with whom the children live (but not

5

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027378

staff of a group home or other residential facility) shall have authority to act as the IDEA

parent:

1.    Neither the public education agency, an early intervention provider or DCS

can locate the parent;

2.    The parent or legal counsel for the parent tells the public education agency,

DCS or one of its attorneys that the parent will not act as the IDEA parent;

3.    There is a no contact order against the parent as to a child in issue; or

4.    The public education agency or Arizona early intervention provider has

made reasonable attempts to get a parent to respond to its requests to act as

the IDEA parent and fails to obtain a response or any cooperation from the

parent.

IT IS FURTHER ORDERED that any Regional Behavioral Health Authority

(RBHA) health plan, medical, dental or mental health provider professional, hospital,

clinic, laboratory, pharmacy, medical facility or other health care provider that has

provided or is providing treatment or services to DYLAN KEMAL KAHRAMAN and

KENAN TROY KAHRAMAN shall, upon written request, provide the children's

guardian ad litem and/or the children's attorney with copies of paper and electronic

medical, health, dental, mental health, genetic test, communicable disease (including

HIV-related information) records of this child in DCS's legal custody. The records may

be provided in any medium that is acceptable to the entity or individual providing the

records. RBHAs are to provide the children's guardian ad litem and/or the children's

attorney with the names of any service providers for the children. All individuals and

6

AZ-KAHRAMAN027379

entities covered by this Order are also permitted to speak with the children's guardian ad litem and/or the children's attorney. The children's guardian ad litem and/or children's attorney shall not request records as to these children after the period of representation in this matter ends.

IT IS FURTHER ORDERED that the parent(s) or legal guardian(s) provide to this Court, at the Preliminary Protective Hearing and/or the Initial Dependency Hearing: the names, type of relationship, and all available information necessary to locate persons related to the children or who have a significant relationship with the children. Persons related to the children include the children's grandparents, great-grandparents, brothers or sisters of whole or half-blood, aunts, uncles, and first cousins. If the parent(s) or legal guardian(s) do not have sufficient information available to locate a relative or person with a significant relationship with the children, the parent or guardian must inform this Court of this fact. The parent(s) or legal guardian(s) must inform DCS immediately if the parent(s) or guardian(s) becomes aware of information related to the existence or location of a relative or person with a significant relationship with the children.

You are hereby advised that your failure to appear without good cause may result in a finding that you waived your legal rights and have admitted the allegations in the Petition. In addition, if you fail to appear without good cause, the hearings may go forward in your absence and may result in an adjudication of dependency, termination of your parental rights or the establishment of a permanent guardianship based upon the record and evidence presented to the Court, as well as an order of paternity, suspension or termination of an existing

7

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027380

1   current child support order, custody, or change of custody in a consolidated family

2   law matter and an order for child support if paternity has been established.    You

3   are also advised that if a child is under three years of age, within six months after

4   removal from the home, the Court will determine whether you have substantially

5

6   neglected or willfully refused to participate in reunification services offered by DCS.

7   In addition, you are hereby advised that substantially neglecting or willfully refusing

8   to remedy the circumstances that cause your child to be in an out-of-home

9

10  placement, including refusing to participate in reunification services, is a ground for

11  termination of parental rights.

12  **APPOINTMENT OF COUNSEL – CHILDREN**

13  ☑  IT IS FURTHER ORDERED appointing _____, as

14  ☑  Guardian    ad    Litem    for    the    children;    and    appointing

15

16  _____, as ☐ counsel for the children.

17  **APPOINTMENT OF COUNSEL – OTHER PARTIES**

18  ☑  IT IS FURTHER ORDERED assigning _____, as

19

20  counsel for <u>JESSICA WREN KAHRAMAN</u> A.K.A. JESSICA W MANN pending the

21  decision of the Court at the hearing.  The determination of appointment of counsel may

22  require the completion of a financial affidavit.

23  ☑    IT IS FURTHER ORDERED assigning _____, as

24

25

26

27

28

8

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027381

counsel for <u>AHMET KAHRAMAN</u> pending the decision of the Court at the hearing.  The

determination of appointment of counsel may require the completion of a financial

affidavit.

DATED this __4__ day of _Jan._ 2019

JUDGE OF THE SUPERIOR COURT
COMMISSIONER SHELLIE SMITH

I do not

accept the

terms or

Conditions of

Your contract.

9

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027382

**SUPERIOR COURT OF THE STATE OF ARIZONA**
**MARICOPA COUNTY JUVENILE COURT**

In the Matter of   Person or Persons under 18 years of age

Dylan Kahraman (09/27/2012)          )     JD 532206
Kenan Kahraman (09/27/2012)          )
                                     )
                                     )
                                     )
                                     )

*I do not*

*consent or* COMPLIANCE WITH RULE 47.3 OF
THE ARIZONA RULES OF JUVENILE
COURT PROCEDURE

In the Matter of   Parents
Jessica Kahraman (09/29/1982)        )     Mother
Ahmet Kahraman (04/09/1981)          )     Father
                                     )     Father
                                     )     Father
                                     )     Father

*accept the*

*terms or conditions*

The Court has reviewed the paperwork provided in support of the Arizona Department of Child Safety's
Petition for Dependency. The Court finds that the Department:

✓ HAS

HAS NOT  *of this contract.*

complied with Rule 47.3 of the Arizona Rules of Juvenile Court Procedure.

This Order shall remain in full force and effect until further order of the Court.

1-4-2019

_____          _____
Date                                Honorable
                                    Superior Court Judge

Docket Code: DOC – Document
(LRD: 09/17/18)

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027383

**SUPERIOR COURT OF THE STATE OF ARIZONA**
**MARICOPA COUNTY JUVENILE COURT**

In the Matter of   Person or Persons under 18 years of age

| | |
|---|---|
| D.K.  Kahraman (09/27/2012) | JD 532206 |
| K.K.  Kahraman (09/27/2012) | |

*[Handwritten across the form: "I do not accept the terms or conditions of this contract"]*

In the Matter of   Parents
Jessie Kahraman (08/14/1982)        Mother
Ahmet Kahraman (04/18/1981)        Father
                                                    Father
                                                    Father
                                                    Father

**COMMUNITY COORDINATOR REQUEST OF INFORMATION**

IT IS ORDERED assign a community coordinator to this case. The Community Coordinator Program Supervisor will assign a Community Coordinator to assist the Court in ensuring appropriate services are provided in a timely manner.

IT IS ORDERED all education, medical, mental health treatment, probation and parole, human services and social services providers and agencies shall provide any requested information or records to the Community Coordinator regarding the children and children's parents subject to this proceeding.

The Community Coordinator shall treat all information and records received pursuant to this order as confidential.

This Order shall remain in full force and effect until further order of the Court.

**Community Coordinator Program**
**Statutory Authority**

ARS 8-846 C. The court may employ an individual or individuals to facilitate collaboration between the parties and to ensure the delivery of court-ordered services. An employee acting in that capacity has access to all documents and information necessary to ensure service delivery regarding the child and the child's family without obtaining prior approval from the child, the child's family or the court. The employee may disclose documents and information the employee acquires, reviews or produces only as prescribed pursuant to section 8-807.

1-4-2019
Date

_____
Honorable
Superior Court Judge

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027384

1   MARK BRNOVICH
    Attorney General
2

3   Lisa Boddington
    Assistant Attorney General
4   State Bar No. 028217
    Kathleen E. Martoncik
5   Assistant Attorney General
    State Bar No. 023982
6   CFP/PSS
7   120 W. 1st Avenue, 2nd Floor
    Mesa, Arizona 85210
8   Telephone: (602) 771-4000
9   PSSSef@azag.gov

10  Attorneys for the Department of Child Safety

11              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
12
13                  IN AND FOR THE COUNTY OF MARICOPA
14  In the Matter of:                      No.JD532206

15  D.K.    KEMAL KAHRAMAN          DCS'S MOTION FOR PROTECTIVE
16  d.o.b. 09/27/2012               ORDER
    KENAN TROY KAHRAMAN
17  d.o.b. 09/27/2012

18  Person(s) under 18 years of age.       (Honorable David Udall)

19
20          Petitioner, the Department of Child Safety (DCS or the Department), by and
21  through undersigned counsel, hereby moves for a protective order instructing the parents
22  and all interested parties not to release identifying information about D.K.    KEMAL
23  KAHRAMAN and K.K.    TROY KAHRAMAN (hereinafter collectively known as
24  "the children").
25
26          Since the children's removal from their parents' physical custody on December 28,
27  2018, personal and identifying information about the children has been posted on the
28

                                        1

internet, including their names, their photographs, information about the parents' beliefs about their medical conditions, some of their medical providers, the fact that they are in DCS custody, and the name and contact information of the case manager. This type of information has been posted on sites including but not limited to, Facebook, nourishingspot.com, and medicalkidnap.com.

Arizona law takes seriously the responsibility of protecting the privacy of children that are the subject of dependency actions in this internet age. While a parent, under regular circumstances, may have the right, however imprudent, to post personal information about their children on the internet absent State intervention, that right is not unlimited when the children are wards of the Court. Once the children are subject to a dependency action, the law requires that information about them be held confidential. *See* A.R.S. § 8-522.07; *A Dep't of Econ. Sec. v. Doe* 228 Ariz. 150, 155, ¶ 23 (App. 2011) ("The clear purpose of governing statutes and Rules demands that in dependency cases, if a child is held in temporary custody, all other considerations become subordinate to the child's health and safety."). Section 8-542, Arizona Revised Statutes, specifically makes it unlawful "...for **any person** to knowingly disclose, receive or make use of, or authorize, knowingly permit, participate in or acquiesce in the use of, any information involved in any proceeding under this article..." (emphasis added) and makes the knowing disclosure of any such information a class 2 misdemeanor.

The internet does not forget. Long after this dependency is dismissed, the information posted about these children will be accessible on-line for the world, including classmates, colleges, and future employers, to view. The parents and other interested

2

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027386

parties may have had varying goals in posting such information but absent an immediate, voluntary removal of all such information from the internet, the Department requests that the Court take action and order such a removal in order to protect the best interests of the children.

RESPECTFULLY SUBMITTED this ___9th___ day of January, 2019.

*I do not accept the terms or conditions of this contract.*

MARK BRNOVICH
Attorney General

Kathleen E. Martorelli
KATHLEEN E. MARTORELLI
Assistant Attorney General

3

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027387

1    ORIGINAL of the foregoing filed
     this 9ᵗʰ day of January, 2019, with:

2

3    Clerk of the Court
     Maricopa County Superior Court

4    Juvenile Court Southeast Facility
     1810 South Lewis Street

5    Mesa, AZ 85210

6
     Copy of the foregoing hand-delivered

7    this 9ᵗʰ day of January, 2019, to:

8    Honorable David Udall
     Maricopa County, Superior Court

9
     Juvenile Court Southeast Facility

10   1810 South Lewis Street

11   Mesa, AZ 85210

12   Copies of the foregoing mailed
     this 9ᵗʰ day of January, 2019, to:

13

14   Foster Care Review Board
     1501 W. Washington, Suite 126

15   Phoenix, Arizona 85007

16
     Sarah Kramer

17   sarah.kramer@azdcs.gov
     Case Manager

18

19
     Copies of the foregoing electronically mailed

20   this 9ᵗʰ day of January, 2019, to:

21   Bernadette Burick

22   Bernadette.burick@old.maricopa.gov
     jdjsme@old.maricopa.gov

23   Attorney for Mother

24
     Megan Haywood

25   Haywoodm@mail.maricopa.gov

26   Guardian ad Litem for the Children

27

28

                                4

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027388

1  Suzanne Nicholls
   Suzanne.Nicholls@mail.maricopa.gov
2  Attorney for Father

3  KLD
   _____
4  KEM / Kahraman / T042157 / HDM#7573178

I do not accept the terms or conditions of this contract.

5



**MARK BRNOVICH**
ATTORNEY GENERAL

**OFFICE OF THE ATTORNEY GENERAL**
**STATE OF ARIZONA**

PROTECTIVE SERVICES
SECTION

### Authorization to Disclose Health Information
(Parent form)
Court Case No. _____

I, _____ (DOB: _____), hereby authorize any Regional Behavioral Health Authority, health plan network, physician, health care professional, behavioral health care provider, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided or is providing treatment, services or payment to me or on my behalf, to disclose medical/health, parent aide reports, behavioral health, and communicable disease, including, HIV-related, and all substance abuse treatment confidential information and/or records as permitted under 42 C.F.R. 2.31(a)(5), to the Department of Child Safety and the Office of the Arizona Attorney General. I also authorize any Regional Behavioral Health Authority to disclose name of my service providers to the Department of Child Safety and the Office of the Arizona Attorney General.

This disclosure is made at the request of the individual whose records are to be disclosed and is to be used to assist in making family preservation, reunification, permanency planning decisions, and/or in litigation. *See* Title 8 of the Arizona Revised Statutes.

This authorization expires on the earlier of: three years from the date it is signed or the date I am dismissed as a party by the Court in this matter.

**RIGHT TO WITHDRAW THIS AUTHORIZATION** – I understand that I have the right to revoke/withdraw this authorization at any time by providing a written statement of revocation/withdrawal as to any or all provider(s)/plan(s) that is/are disclosing my health information. I am aware that any revocation/withdrawal will not be effective until received by the provider/plan and will not be effective regarding the uses and/or disclosures made prior to receipt of the revocation/withdrawal.

**I UNDERSTAND THAT I DO NOT HAVE TO SIGN THIS AUTHORIZATION AND THAT PROVIDERS/HEALTH PLANS MAY NOT CONDITION TREATMENT, PAYMENT, ENROLLMENT IN A HEALTH PLAN OR ELIGIBILITY FOR HEALTH CARE BENEFITS ON MY SIGNING THIS AUTHORIZATION, EXCEPT AS PROVIDED UNDER STATE OR FEDERAL LAW.**

I understand that once the health information is disclosed pursuant to this authorization it could be disclosed by the recipient(s) and no longer be protected by the Health Insurance Portability and Accountability Act of 1996 and its regulations. However, most persons who or entities which receive this information from DCS or the Arizona Attorney General's Office are bound by contract or law to maintain the confidentiality of health and other information received, unless they are required or authorized by law to release it. HIV-related information is confidential under state law and can only be further disclosed by written authorization of the person to whom it pertains, his personal representative or as otherwise permitted by law.

_____
(Full printed name of parent/legal guardian)

_____
(Date)

_____
(Signature of parent/legal guardian)

DM 4263394 Rev. May 2015

---

**Any facsimile or photocopy of this Authorization submitted to HIPAA**
**is considered as authentic as the original.**

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027390

Exhibit G

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027391

CT01200 (5/18)

# REPORT TO THE JUVENILE COURT
# FOR
# PRELIMINARY PROTECTIVE HEARING
# AND/OR
# INITIAL DEPENDENCY HEARING

*[handwritten: I do not accept the terms or conditions of your document]*

**Court Case Number**   JD532206          **Date of Report**   01/08/2019

**Case Name**      KAHRAMAN, JESSICA          **ID**   608484

**A.**   Name and Date of Birth for Each Child Subject to This Court Case Number:

3874373 KAHRAMAN, D.K.          DOB: 09/27/2012
3874372 KAHRAMAN, K.K.          DOB: 09/27/2012

**B.**   Child or Children Subject to This Report If Different From Above:

Not applicable.

**C.**   Family Composition:

Jessica Kahraman aka Mann (mother)
Ahmet Kahraman (father)
Dorothy Mann (maternal grandmother)

**I.**      **REASON FOR DCS INVOLVEMENT**

    **A.**   Description of the dangerous condition(s) currently occurring within the family that require Department involvement (include evidence of abuse or neglect), including how the parent, guardian or custodian's behaviors cause the child to be unsafe and, if applicable, why the child(ren) was removed from the parent, guardian or custodian's custody.

On 12/18/2018, K.K. was admitted to Cardon Children's Medical Center following a "two month history of inability to walk, 3-week history of chest pain, facial swelling, periodic abdominal pain, and 2 weeks of increasing lethargy." K.K. was admitted to the PICU. A cardiac cath was completed on 12/21/18 which confirmed pulmonary hypertension. Nutrition was consulted and K.K. was started on TPN until it was determined he was able to gain weight if fed a recommended amount of calories. K.K. was diagnosed with acute right heart failure, failure to thrive, anasarca, right ventricular dysfunction, ketotic hypoglycemia, lower extremity weakness, pleural effusion, pulmonary hypertension, retarded development following protein-calorie malnutrition, unspecified severe protein-calorie malnutrition."

On 12/20/2018, the SCAN team at the hospital was consulted for an evaluation. Several reasons for the evaluation were noted, including "the

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

child's current highly regimented diet does not provide sufficient caloric intake for normal growth/development and has contributed to his extremely poor nutritional status." There was also concern that mother reported seeing "parasites" in Kenan's stool and did not seek follow up care for this. There was a recent evaluation at PCH neurology for the inability to walk that resulted in recommendations for MRI, NICV, EMG — which parents deferred due to fears of general anesthesia." It was noted in the evaluation that "the medical team is concerned that the child's health has been directly impacted by parent's belief system that values natural adult therapeutics in lieu of accepted pediatric standards of care. Unfortunately, this has likely resulted in the child's current critical cardiac status, overall poor nutritional state and deconditioning that has lead to an inability to ambulate." Dr. Cohrs reported that "the child is at high risk for further ongoing poor medical/nutritional status in his current environment."

The parents report that they have used the Gut and Psychology Syndrome (GAPS) diet for their children for two years. This diet has different stages and the children are still in the initial stage after two years. Mrs. Kahraman reported that they consult with a GAPS expert in Georgia but this individual has not seen the children in person. The parents report using this diet due to their children's "significant food intolerances and chemical sensitivities." The children do not have an official diagnosis for their food intolerances. Mr. Kahraman reported that the children eat lamb from New Zealand, carrots, and beets. He stated that "here and there we are trying other options." The children receive four meals a day and one snack. Their diet consists of lamb meat, meat stock/broth, carrots, and beets. They will receive a "quarter to half an egg yolk off and on." In a single day, each child eats about four cups broth, four cups meat, ¼ cup carrots, and a ¼ cup beets. They also have probiotics and drink water.

On 12/24/18, the pediatric GI doctor, Vinay Bandla, completed an initial consult. Dr. Bandla noted that ⬛K.K.⬛ "is able to eat four small meatballs, ¼ of an egg yolk, and approximately 1 teaspoon of shredded vegetables cooked in lamb broth at a time. He drinks four cups of lamb broth per day. He is getting an average of 500 cal/day at home. Per today's bedside RN, mom is restricting his food and water intake despite his complaints of being hungry. RD has been consulted and the plan is to introduce one new food into his diet every day." The calorie goal is 1500 cal/day. Dr. Bandla noted "For the past 2 weeks he has been complaining of pain around his rectum. Mom has been performing massage and states his rectum feels swollen." Dr. Bandla stated "⬛K.K.⬛ seems to be malnourished due to severe dietary restriction based on moms suspicions and research. No evidence to support 'leaky gut' theory in the literature."

On 12/26/2018, a nutritional follow-up was completed by Lindsey Manz RD. Mrs. Kahraman reported that she is not notifying the staff of the reactions

K.K. is having "because they are not worried about anything short of anaphylaxis." Mrs. Kahraman stated that she "wants to continue with offering foods by mouth, but with slow progression over weeks or months in the outpatient setting." Mrs. Kahraman was not in agreement with the timeline medical providers developed to have K.K. gain weight. The RD reviewed that the current diet is not nutritionally adequate, this is not an acceptable long-term diet." The RD also reviewed that the current amounts of non-meat foods are insufficient and are not age appropriate."

Medical staff have overheard K.K. state he was hungry and be denied food by his mother, father, and maternal grandmother. K.K. did not gain weight for several days while hospitalized during a timeframe where parents were responsible for all of Kenan's food intake. After the recommendation by the RD agreed to add some new foods for Kenan but the portion sizes were small, such as a teaspoon or ½ cup.

On 12/26/2018, Dr. Ryan Stewart stated "mom states the patient is again overly hungry and she can't provide enough food to keep patient full, despite the fact his belly is distended." Dr. Steward wrote "Have a strong suspicion for medical/... of medical child abuse. Patient's appetite has increased, and mom is wanting to stop the levothyroxine to avoid having to feed him so much. Mom also still convinced the pulmonary hypertension is due to patient's exposure to white board markers. The patient would likely take adequate PO intake for this nutritional needs if mom would stop limiting his intake. Also suspected digestible cancer symptoms are fictitious as they are based solely on mom's reports and not supported by nurse observations. Mom refuses to relinquish any control of the patient's food options, and refuses supplemental formulas due to 'corn syrup, maltose, and GMO's being present in them.'"

On 12/28/2018 the Department requested a Court Authorized Removal (CAR) and it was granted. The Department took temporary custody of the children on this day.

Starting 12/28/18 in the evening, K.K. was fed a diet based on the dietician's recommended meal plan from the hospital. Between 12/28/18 and 01/02/2019, K.K. was introduced to all food groups. He tolerated new and different types of food with no allergies noted. On 01/02/19, Christina Woods NP noted that K.K. is "tolerating a regular diet" and is taking 1500 cal/day. She noted "his weight has increased since admission." K.K. did not have any rash, anaphylaxis, nausea, vomiting, or diarrhea while being introduced to new foods.

K.K. has a twin brother, D.K. who resides in the home. On 12/21/18, the Department requested that Mr. and Mrs. Kahraman bring D.K. to Cardon Children's Medical Center (CCMC) to be evaluated by the morning of 12/24/18. She brought D.K. to the CCMC on 12/23/18. D.K. did not present with an

acute condition that would require inpatient hospitalization. The doctors reviewed Dylan's records from Phoenix Children's Hospital. Dr. Shah wrote "At this time, I do not feel this patient has any acute condition that would require inpatient hospitalization. I remain concerned about his nutritional status and weakness, however it is being worked up as an outpatient and I do not believe he would benefit from hospitalization."

Dylan was also seen by the cardiologist, Dr. Miga, and SCAN team, Maria Chico NP, on 12/24/18. Per Maria Chico NP's note of 12/24/18, "Routine laboratory diagnostic testing revealed electrolyte abnormalities." D.K. has not been walking for two months and relies on a wheelchair or his parents for mobility. D.K. will scoot around to be mobile on his own. D.K. was found to have functional gait abnormality and it was stated that "Dylan's inability to walk is likely due to de-conditioning and behavioral constraints...It is likely that Dylan inability to ambulate is due to de-conditions since he has only been utilizing a wheel chair for the past 2 months. In addition, D.K. has developed a presumption of pain with ambulation and is fearful of leg movement." It was noted that "D.K. was evaluated by Orthopedics and found no knee instability; his exam was normal at that time. Per mom's request, she obtained a wheelchair for D.K. and the child has not made any progress with regard to PT. Since that time the child has complained of pain when standing and states he is unable to walk." Dr. Miga reported that D.K. "was previously evaluated by the orthopedic surgeon at Banner and at Phoenix Children's Hospital and does not have any orthopedic diagnosis. He has been on a very restrictive GAPS diet for several years and has had significant failure to thrive." He also noted multiple laboratories were obtained and he was found to have low pre-albumin and mildly elevated sedimentation rate." Dr. Miga found that D.K. has a normal heart rate and has no evidence of pulmonary hypertension. Mr. Miga stated "D.K. has significant malnutrition as a result of a very restrictive GAPS diet. He and his brother have limited nutritional intake due to their "food intolerance." He is stuck in the first stage of the GAPS diet and has not progressed in years." Dr. Miga reported concerns about Dylan's inability to walk and stated it could be behavioral and "may be related to his underlying malnutrition." Dr. Miga documented that "although he does not have any evidence of pulmonary hypertension, given the similarities to his brother's condition I remain concerned he could develop pulmonary hypertension in the future. His abnormal ECB is likely related to his nutritional deficits."

A CAR was granted on 12/28/2018 and the Department took temporary custody of D.K. was placed in a licensed foster home. Since 12/28/18, D.K. has tried all food groups (dairy, meat, grains, gluten, fruits, vegetables, ect) and has not presented with any reactions to the newly introduced foods. D.K. has not reported any pain in his body, including his legs or knees, even when he has been taking steps. On 01/04/2019, DCSS spoke with D.K. in-person. He reported he feels good and his body has not felt yucky at all while trying new foods. D.K. reported he is sleeping well.

The children are vulnerable as they rely on their parents for their basic needs and protection. They are not able to seek their own medical care or understand their medical needs. Although the children are not currently in school, various DDD providers are in the home on a weekly basis whom work directly with the children. Mr. and Mrs. Kahraman do not have sufficient protective capacities to ensure their children's safety. Mr. and Mrs. Kahraman do not recognize the safety threat and have not developed a realistic plan to address the threat. This situation is likely to continue without intervention as the parents do not acknowledge the concerns for malnutrition due to the children's restrictive diet. Parents reported that the children are on this diet due to significant food intolerances and chemical sensitivities. The children have been introduced to new foods and have represented adverse reactions that parents reported the children have if they eat foods outside of their specific diet. The parents have taken the children to various medical providers in the last six months, including chiropractor, physical therapist, orthopedist, naturopathic pediatrician, and a neurologist. The Department is in the process of requesting prior medical records for Dylan and Kenan. Several of these visits with medical providers were reviewed by Cardon Children's Medical Center during Kenan's hospital stay.

**B.   Parent/guardian/custodian's verbal or written response to the allegations**

On 12/21/2018, DCSS Kramer interviewed father, Ahmet Kahraman, in-person at his home. Mr. Kahraman reported that D.K. and K.K. have been receiving physical therapy two times a week. They both had falls that have caused them to stop walking. Mr. Kahraman stated they went to Phoenix Children's Hospital (PCH) on 11/26 and the doctor said rheumatology. The children have been on the GAPS diet for two years. They eat lamb from New Zealand, carrots, and beets. Mr. Kahraman reported that "here and there" they are trying other options for foods. As soon as they have a food they are intolerant to, they will have itchy eye or mood changes. The children have chiropractic alignments. They also receive probiotics. The children's doctor is Dr. Scott Jensen. They saw him in the last month.

On 12/26/18, DCSS Kramer interviewed mother, Jessica Kahraman, in-person at Cardon Children's Medical Center. Mrs. Kahraman reported that on 10/01/18, K.K. was at school. He was walked at school, tripped, fell, and hurt his knee. He was walking okay afterwards. This was after D.K. got hurt so Mrs. Kahraman was not sure if K.K. did this because of D.K. getting attention. The next Friday, Mrs. Kahraman went to pick up K.K. from school. She was informed by school staff that K.K. was refusing to walk. His right knee hurt. The teacher said that he fell again. K.K. said that he tripped over a kid's backpack and fell on his knees on the tile. Mrs. Kahraman stated she met with school staff about this. K.K. had to pee in a jar for one day due to

his right knee hurting and refusing to walk. A couple weeks prior to this, another kid pushed K.K. on the basketball court several times and hurt his knees. Mrs. Kahraman stated she talked to the teacher and Mrs. Kahraman requested that K.K. sit out of recess and read a book to keep him safe. Since the children started school, they have gotten colds. Dylan was supposed to have an appointment with orthopedics around this time and Kenan had one too. Kenan had an x-ray done. The doctor stated he may have severely bruise the patella bone. The doctor did not see anything on the imaging and said to give it two weeks. For a while, K.K. could barely move. Mrs. Kahraman used topical herbs. She did not want him to miss a lot of school so she got him a wheelchair so he could continue to attend school. He had a follow-up appointment with Dr. Bowman who pushed him to walk a little bit. Kenan was still in pain so physical therapy was considered for him. D.K. was already going to Advanced Neurological Rehabilitation (ANR). The physical therapist assessed K.K. Initially she said it was just an injury but they could work with movement. Kenan's pain lasted longer than Dylan's pain. The pain was just in Kenan's knees. The orthopedic doctor said it takes 6-8 weeks. Kenan has been in a wheelchair since 10/02/18. They were taking the kids to school in a wheelchair but it was becoming difficult. On 10/30/18, Mrs. Kahraman took the children out of school until they could heal. On 11/2/18, the physical therapist saw K.K. showing the same weakness as D.K. in his quads and hipflexers.

Dylan hurt himself at Taekwondo on 07/07/18. Mrs. Kahraman did not see it happen. Dylan was running across the mats before class, tripped, and fell. The instructor picked up Dylan but he would not bear weight on his legs and his leg buckled. He said his ankle and knee hurt. Mrs. Kahraman took him to a pediatric chiropractor who said he is fine and is in fear because of pain. Dylan progressed to normal within a few days. He was back in Taekwondo within two weeks and was doing well. Then seeing something Dylan tripped on another kid's leg. He tripped and fell. He said his knee also hurt while they were bowling. In movement (PE), D.K. said his knee hurt. D.K. did not have a major injury during these times but did trip several times. Over Labor Day weekend, maternal grandmother was watching the kids while Mrs. Kahraman was at work. Maternal grandmother said D.K. was not weight bearing on his right leg. In early September, Mrs. Kahraman took D.K. to the orthopedic at Banner and a PA. They said it was an MCL sprain. The doctor said it was consistent with being injured. D.K. could walk but with a lot of pain. The doctor said to bring him back in two weeks. About one week later, his left leg hurt and there was tingling about his right ankle. The doctor said "he's fine" and said to give it 6-8 weeks and come back if it is still an issue. D.K. has been in a wheelchair since September. Mrs. Kahraman kept him out of school for a few days. The doctor said they could do a wheelchair but it was not the best option. Mrs. Kahraman decided to rent one for school. She thought this issue was not normal so she asked for an order for physical therapy. She took him to Foothills Sports Medicine in Gilbert to complete an assessment with

Blake. D.K. didn't present to be consistent with a MCL sprain. Blake stated it may be a sprained patella ligament and maybe he reinjured the Taekwondo injury from July. D.K. completed 1-2 sessions at this place but that is when he developed the pain in the left leg and the spot of tingling so an orthopedic needed to check it out. This occurred prior to Dylan using a wheelchair. Mrs. Kahraman was not entirely sure about the sequence of events and dates for Dylan. Dylan was seen at Phoenix Children's Hospital because Banner did not give answers. Dr. Bowman was not sure about the injury. He said neurology but the family already had a neurology appointment three months ago. Banner was not taking new patients for neuro so Mrs. Kahraman researched physical therapists and found a neuro PT location.

To address any concerns about something being deficient in the children's diet, they did a blood test with Dr. Jensen. Mrs. Kahraman that test took the nutritional piece out of the mobility issue.

Mrs. Kahraman reported the children have been on the GAPS diet for about two years. When she was pregnant she was on five rounds of antibiotics and she believes this had caused gut issues for the boys. She nursed them for 2.5 years after they were born. Prior to weaning them, they ate everything. Mrs. Kahraman stated there were definitely dairy allergies as K.K. would projective vomit and his face would swell with dairy. Mrs. Kahraman reported that more food sensitivities came up. She researched reactions online. For example, strawberries would make the children "super hyper." The skins of fruits and vegetables was increasing issues for the kids. Kenan would get head pain with eggs, ect. Gradually, it got to a point where there were so many intolerances that the children had. K.K. wanted to eat but knew what foods caused issues so he did not eat for 1-2 days. Mrs. Kahraman stated they did feeding therapies but this did not help. Kenan got sick and all he wanted to eat was whole peas and apples. He looked pale, tired and swollen feet when he was about three years old. She took him to the ER at Banner, They said it was not neuro and to follow-up with the pediatrician. They then saw Cindy at Autism Research for three years. They had ongoing labs and supplements through this place. Mrs. Kahraman told Cindy that something was wrong with the boys. In their labs, their uric acids were really high which indicates inflammation. Mrs. Kahraman found that fructose was causing it. She tried different food categories. Cindy did not help with the diet. Mrs. Kahraman called doctors in Arizona but they did not help. She did research online and found a doctor in Georgia, Becky Plotner, who specialized in the GAPS diet. Becky Plotner has connections in the UK and Russia with the GAPS diet. Mrs. Kahraman started with meat and broth. She would gradually add things back in to their diet. Mrs. Kahraman stated they were "whole different kids" with this diet change. They were calm and did not cry. She noticed a big difference. The kids were then progressing but not tolerating more foods. D.K. has similar sensitivities but can tolerate more foods than K.K. Mrs. Kahraman discussed that it is a difficult balance having to be fair between the kids even

though K.K. can tolerate more than K.K. For example, D.K. can he ghee (butter with dairy removed) and a drop of whey. Mrs. Kahraman explained her process of "desensitization" for introducing the children to food. Examples of this process are dipping a knife, scratching a fork, a drop of it, ect.

Mrs. Kahraman consults with Becky Plotner who is a naturopathic doctor in Georgia. They discuss what the kids are eating, growth, behaviors, bowel movements, and goals to increase their nutrients. Mrs. Kahraman reported that everyone is raving about how her kids are doing now.

Mrs. Kahraman reported that K.K. will eat meat stock with New Zealand lamb shanks. The New Zealand lamb is more pure. If he has any other meat, it causes an extreme reaction of screaming, depression, ect. He will eat the meat, marrow, and broth. Kenan drinks four cups of broth a day. He will have egg yolk too and one liter. Kahraman clarified that it is ¼ to ½ of a boiled egg yolk that he is fed. K.K. will eat different vegetables, including broccoli, cauliflower, beets, carrots, and rutabaga. When these vegetables are tried, it is in "little bits" where they are graded on a cheese grader. Before he started attending school, they pushed vegetable and was increasing his stemming behavior. Mrs. Kahraman clarified that these behaviors would include him rocking back and forth on the ground, licking his finger, and sensory issues. Mrs. Kahraman reported that she has tried fruits off and on too. Two times this year she has tried ¼ apple and a couple blueberries. Two minutes after eating this, Kenan was screaming in pain and bloated. Dylan did not have a reaction. Mrs. Kahraman stated there are not any vitamins or minerals in vegetables and fruits that are not in meat. She stated they spend three hours every other night preparing food. Mrs. Kahraman stated the children have always been on the lower end of the growth chart.

Dylan eats New Zealand lamb shank, some beets, and carrots. The beets and carrots are shredded and cooked in the broth so it helps with the digestion. He will have little bits of egg yolk but not every day. D.K. gets angry and grumpy when he has egg yolk, which is not typical behavior for him. K.K. will cry and gets sad.

K.K. does not sleep with new foods. He gets itchy, sniffling, and his knees and back hurt. AT the hospital today, he tried potatoes and 3 teaspoons of a baked apple. He did not like the skin of the potatoes. He tried lentils today but did not like them. Now that he is in the hospital eating new foods, his heart rate increases when he is eating. K.K. has also had trouble sleeping and is itchy since being in the hospital.

Mrs. Kahraman reported that initially, the hospital promised they were going to solve the problem with K.K. Kenan's appetite increased because of thyroid medication. She stated there is lack of help from the nutritionist right now. Today, the dietician said they are going to push through any reactions that

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

K.K. has because they are at a hospital. Mrs. Kahraman reported that she has met with tons of doctors to consult regarding Kenan's diet.

Mrs. Kahraman reported that Kenan's symptoms recently are possibly from chemical reactions from school. She tried to get the neuro appointment moved up. They tired having a different doctor call but it didn't work so they went to the Phoenix Children's Hospital (PCH) ER on 11/2. There were no heart or lung issues, just mobility. Kenan's inflammatory markers were high "because he was exposed to chemicals" so the neuro appointment was bumped up to 11/8. There were no immediate concerns. The protocol is rheumatology but it was three months out. In the last few weeks, the children have been to the chiropractor, allergist, and Dr. Jensen.

K.K. can get off of the couch by himself but he is afraid to stand. The children were attending music therapy but that stopped when they started school. They have been getting occupational therapy in-home since they were 22 months old. It is one time a week. In regards to their homeschool curriculum, they use Saxon for math and journeys.

In regards to the children's food sensitivities, it has been more discussions with doctors rather than a diagnosis.

Mrs. Kahraman calculated that Kenan got 2100 calories yesterday and 500 calories of TPN. She thinks that the synthroid medication stimulated his metabolism. When asked about the hospital's statement of the calorie count of Kenan's normal diet, Mrs. Kahraman stated the first time they added it up it was 1100 calories but there have been days K.K. does not want to eat because he doesn't feel well.

In normal day, the children eat 4 tbps of meat, ¼ cup of another, ¼ cup each of carrots and beets, water, and probiotics. Kenan recently started eating a couple meatballs. K.K. does not like to drink the brother. Sometimes Mrs. Kahraman will give a couple drops of sauerkraut juice.

C.    **Family history of involvement with the Department or other child welfare agencies**

The family does not have prior history with DCS.

12/19/2018 - CURRENT REPORT
K.K. (6y) and D.K. (6y) reside with mother, Jessica Kahraman and father, Ahmet Kahraman. K.K. is currently at Cardon Children's Medical Center. K.K. was admitted to Cardon Children's Medical Center on 12/18/18 after he was found to be "extremely swollen." K.K. has lost his ability to walk over the last three months. K.K. has been diagnosed with pulmonary hypertension, congestive heart failure, malnourishment, and anasarca (severe swelling from

his organs not working). The malnourishment is contributing to Kenan's heart failure. When Kenan was admitted he had low blood sugar and ketones in his urine. Mother has refused some of the medications that the doctor has prescribed while in the hospital due to her not knowing where they are coming from. At this time, Kenan not receiving those medications is not life threatening. Mother reported that over the past two weeks, Kenan has had "seizure like activity," but that she did not take him to the doctor.

Six weeks ago, K.K. was seen in the emergency department at Phoenix Children's Hospital due to swelling that was causing him to not be able to walk. At that time a neurology work up was done and it was recommended that mother follow up with the rheumatology. Mother and father never followed up. D.K. has had similar failure to walk "around the same time as K.K. and Dylan are in physical therapy and Dylan is doing better. The cardiologist has scheduled an Echocardiogram for D.K. to ensure he is not having the same issues as K.K.

Kenan and Dylan are given a limited amount of food to eat due to mother restricting what they eat. Mother explained that she does this due to their having allergies. Kenan and Dylan are on a gluten free, carbohydrate free, and dairy free diet. D.K. has not been observed.

D.    Services and supports provided to the family to prevent removal and outcomes of services and supports

A TDM Meeting was scheduled for 01/03/2019. The parents reported to DCS Specialist (DCSS) by email that they were choosing not to attend the meeting. The meeting remained scheduled and the parents did not show.

E.    If the family has Native American heritage, efforts to identify and contact the child's tribe and confirm the child's membership status

Not applicable.

II.    SAFETY PLANNING

A.    If applicable, efforts to locate each missing parent

Not applicable.

B.    Description of the current safety plan, including the location and living arrangement of the child, the actions that are necessary to control the dangerous condition(s), when those actions and/or services are needed, and the adults responsible for carrying out the actions

D.K. and K.K. are in the temporary legal custody of DCS. They are placed in a licensed CDH/DDD foster home who will ensure each of their basic needs are met. All contact between parents and children must be approved by DCS and supervised by DCS or DCS designee.

**C.    Efforts to implement the least intrusive plan that is sufficient to control the dangerous conditions; and for Indian children, the active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and the outcome(s) of these efforts.**

Question #1: Is there a combination of safety actions and/or services capable of sufficiently controlling the identified danger threats, and are there sufficient resources within the family network or community to control the identified threats? NO.

Question #2: Are the parents, guardians, or custodians willing for an in-home or combination safety plan to be implemented and have they demonstrated that they will cooperate with the responsible adults, safety service providers, and safety actions identified in the safety plan? NO.

Question #3: Is the home environment calm and consistent enough for an in-home safety plan to be implemented and for responsible adults and/or safety service providers to be in the home safely? NO.

Question #4: Can an in-home safety plan and the use of in-home safety actions and/or services sufficiently control impending danger without the results of outside professional evaluations (substance abuse, psychiatric/psychological, medical)? NO.

Question #5: Do the parents, guardians, or custodians have a suitable place to reside where an in-home or combination safety plan can be implemented? YES.

**D.    The conditions for return as described in the safety plan (only applicable if the child is not residing with a parent or guardian and is assessed as unsafe due to impending danger)**

#1: A responsible adult will need to be in the home at all times to monitor Mr. and Mrs. Kahraman's behaviors and provide for the children's needs should they be observed to be putting their children in a situation that could harm them.

#2: Mr. and Mrs. Kahraman are willing to allow for safety services in the home and demonstrate an openness to cooperate with whatever level of involvement from safety service providers is required to ensure child safety.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027402

#2: Mr. and Mrs. Kahraman are open to having an honest discussion about the reason for a safety plan and what the safety plan would involve regarding the children's safety and the need for a safety plan.

#3: Mr. and Mrs. Kahraman no longer express or behave in such a way that will reasonably disrupt an in-home safety plan, express acceptance of the in-home safety plan and concern for child and safety actions and/or services are sufficient for monitoring and managing their behavior as necessary.

#4: Mr. Kahraman has participated in the recommended evaluations and the results provide sufficient information to understand how the danger threats manifest within the family.

#4: Mrs. Kahraman has participated in the recommended evaluations and the results provide sufficient information to understand how the danger threats manifest within the family.

E.    Describe why continued temporary custody is necessary

The parents have stated strong beliefs regarding their children's diet and medical care. The care, or lack thereof that they have provided the children as a result has interfered with the children's health and development. For example, the parents have the children on a strictly restrictive diet. K.K. has been assessed by medical professionals as malnourished. D.K. has been assessed by medical professionals to have nutritional deficiencies. K.K. was hospitalized in December 2018 due to congestive heart failure and pulmonary hypertension which was suspected to be tied to his malnutrition. Despite this, the parents were observed refusing to feed the child in the hospital when he reported that he was hungry. Mrs. Kahraman expressed concern to medical staff that she "could not keep up" with the child's hunger and providing him food consistent with his strict diet. She requested that a medication for hypothyroid be stopped because she believed that the child was too full and bloated to eat. Mrs. Kahraman was also opposed to recommendations that the child be given new foods and formula to supplement his nutrition, based on her belief that the child has food allergies and/or would be receiving too many calories. Of additional concern is the parents' report that both children have been unable to walk for approximately the past two to three months. The parents believed that this was caused either by falls or exposure to dry erase markers at school and began to home school the children. Mrs. Kahraman admitted that she obtained wheelchairs for the children, despite there being no medical recommendation that they were necessary. The parents sought medical evaluation by a neurologist, but did not follow the neurologist's recommendation for further evaluations. Recently, medical providers have opined that both children's inability to walk is likely due to deconditioning and

behavioral constraints. Furthermore, there are concerns that Mrs. Kahraman has reported serious symptoms in the children, but failed to obtain timely medical care and/or follow medical recommendations for further evaluation. There is additional concern that K.K.    only reported pain when asked by Mrs. Kahraman and that she has reported various symptoms that have not been observed by medical providers. There is concern that Mr. Kahraman is not involved in medical and dietary decision making regarding the children and that he defers to Mrs. Kahraman, to the children's detriment. Since removal from the parents' care the children's eating and medical status have improved.

III.    **IDENTIFICATION, LOCATION, AND ENGAGEMENT OF EXTENDED FAMILY MEMBERS OR OTHER CONNECTIONS**

A.    **Results of efforts to identify, locate, contact, and engage adult relatives of the child, including grandparents, great-grandparents, adult siblings, parents, or step-parents who have custody of any siblings, aunts, uncles and first cousins, and persons who have a significant relationship with the child, including information, if known, about the person's willingness to be a potential placement**

There are no identified family members who are willing or able to care for the children at this time. Maternal grandmother, Dorothy Mann, is involved with caring for the children frequently and has a significant relationship with the children. Ms. Mann is aware of the diet the children are on but has not intervened. On 12/23/18, Ms. Mann was in Kenan's hospital room when he stated several times how hungry he was. Ms. Mann refused to feed him and told him he had to wait. The Department has denied Ms. Mann as a kinship placement.

B.    **Description of the child's important connections, including information provided by the child, parents, and/or guardians**

The children's important connections include their parents, maternal grandmother, and various service providers that they have weekly contact with.

C.    **Contact between the child and the child's relatives, friends, former foster parents and any connections the child identifies; and if contact is restricted, the reasons why**

All contact between the children and relatives or connections must be approved by DCS. The Department will assess these contacts as they are identified.

D.    **Efforts to maintain cultural connections, including opportunities for the child to build cultural awareness and involvement**

The Department will encourage the licensed placements to expose the children to cultural opportunities. The Department will continue to discuss cultural connections with the family.

**IV.    CHILD'S FUNCTIONING, SERVICES, AND LIVING ARRANGEMENT**

**A.    Physical, developmental, and behavioral health needs assessment and services, including coordination of services with the RBHA**

Dylan is a six-year-old boy who likes elephants and loves to play with Legos. Dylan is diagnosed with autism but is high functioning. At the time of DCS involvement, D.K. is not enrolled in behavioral health services. D.K. is enrolled in DDD and participates in the Early Childhood Autism intervention plan where he receives speech therapy, occupational therapy, physical therapy, and habilitation. Since September 2018, Dylan has not been able to walk and has received twice weekly physical therapy outside of the home. D.K. is currently able to take assisted steps, get off/on the couch, scoot, and crawl.

Kenan is an 6-year-old boy who likes giraffes and loves to play with Legos. Kenan is recently diagnosed with failure to thrive and pulmonary hypertension. He is on several medications as a result of his medical conditions. Upon discharge from the hospital on 01/07/19, Kenan is on nasal cannula oxygen. Kenan is not able to ambulate and relies on a wheelchair for mobility for the last two months. He was receiving physical therapy prior to his hospitalization in December 2018. Kenan is also enrolled in DDD for autism and receives occupational therapy, physical therapy, and habilitation. A Rapid Response assessment will be completed.

**B.    Education and social development needs assessment and services, including efforts to ensure educational stability**

Dylan and Kenan are in Kindergarten. From August to October 2018, both children attending a charter school. Mr. and Mrs. Kahraman decided to homeschool the children starting in October 2018. DCS is in the process of reviewing their prior education records to continue meeting their educational needs.

**C.    For youth age fourteen or older in out-of-home care, efforts or plans to assess and provide services to support the youth's preparation for Adulthood**

Not applicable.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027405

**D.    Description of the type of living arrangement and whether it is consistent with the Department's placement preferences; if the child is not living in the home of a grandparent, other relative, or person who has a significant relationship with the child, the reasons why such placement has not been identified or is contrary to the child's best interest**

Dylan is placed in a Child Development Home (CDH) through DDD. K.K. is placed in a CDH with a nurse through DDD. These placements are the least restrictive placements available at this time.

**E.    Description of any assistance or services provided to the caregiver(s) to enhance their capacity to provide appropriate care and supervision**

The Department is providing CMDP, standard allowances, Rapid Response assessments, RBHA coordination, and case management.

**F.    If the child has a sibling in out-of-home placement, description of efforts made to place siblings together; and if not placed together, the specific reasons why placement did not occur or reasons why this would be contrary to the child's or a sibling's safety or well-being**

Initially, D.K. was placed in a licensed CDH home. The Department requested to approve capacity approval. This request was denied due to DDD censing requirements. Upon his release from the hospital on 01/04/2019, Kenan was on oxygen and licensing requirements state he must be placed in a CDH home with a nurse. The Department is continuing to assess if this placement can be a placement for both children. If they are not able to, the Department will continue to identify a placement where the children can reside together.

**G.    If placement with sibling(s) is not possible, efforts to facilitate frequent visitation or contact with siblings; and if frequent visitation or contact with siblings is not recommended, the reasons why this would be contrary to the child's or sibling's safety or well-being**

While the children are placed in separate placements, the Department will coordinate with the placements to encourage sibling contact. The children will see each other during supervised visits with the parents.

**H.    Efforts to provide an Indian child with an appropriate living arrangement in accordance with ICWA guidelines**

Not applicable.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027406

I.   **If out-of-state placement is appropriate and in the best interest of the child, state why (include ICPC and/or out-of-state visitation status)**

An out-of-state placement is not appropriate or in the best interest of the children as both parents reside in Arizona. There are also no known family members who reside out-of-state.

V.   **PARENT FUNCTIONING, ADDITIONAL ASSESSMENT, AND INITIAL SERVICES**

A.   **Description of each parent's, guardian's, or custodian's protective capacities**

MOTHER (Jessica Kahraman):

BEHAVIORAL
History of protecting: Yes
Takes action: Yes
Controls impulses: Yes
Sees and own needs for children: Yes
Demonstrates adequate skills as caregiver: No
Adaptive/ assertive as caregiver: No

COGNITIVE
Plans and articulates a plan to protect the children: No
Is self-aware as a parent/caregiver: No
Is intellectually able to fulfill responsibilities: Yes
Recognizes threats: No
Recognizes children's needs: No
Understands own protective capacities: Yes

EMOTIONAL
Meets own emotional needs: Unknown
Resilient as a caregiver: Yes
Tolerant as a caregiver: Yes
Is stable: Yes
Expresses love, empathy, sensitivity for children: Yes
Is positively attached with children: Yes
Is aligned with and supports children: Yes


FATHER (Ahmet Kahraman):

BEHAVIORAL
History of protecting: Yes
Takes action: Yes
Controls impulses: Yes

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027407

Sets aside own needs for children: Yes
Demonstrates adequate skills as caregiver: No
Adaptive/ assertive as caregiver: No

COGNITIVE
Plans and articulates a plan to protect the children: No
Is self-aware as a parent/ caregiver: No
Is intellectually able to fulfill responsibilities: Yes
Recognizes threats: No
Recognizes children's needs: No
Understands own protective role: Yes

EMOTIONAL
Meets own emotional needs: Unknown
Resilient as a caregiver: Yes
Tolerant as a caregiver: Yes
Is stable: Yes
Expresses love, empathy, sensitivity for children: Yes
Is positively attached with children: Yes
Is aligned with and supports children: Yes

**B.    Description of assessments, services, and/or supports provided or offered to each parent, guardian, or custodian since the child's removal to remedy the need for temporary custody (including date of evaluations scheduled or completed) and proposed case plan services**

Based on the Initial Family Functioning Assessment that was completed, the following services are being offered to Mr. and Mrs. Kahraman. The final case plan will be developed with the family within 60 days.

Therapeutic visitation, psychological evaluations and any recommendations from the psychological evaluations.

**C.    Services or supports requested by, or on behalf of a parent or guardian, and if not provided, the reasons why**

Mr. and Mrs. Kahraman have not requested any supports or services. Per an email from Mrs. Kahraman, she stated "I do not consent to the terms and conditions of your services and will not contract with you for services."

**VI.    PROPOSED PERMANENCY/CASE PLAN GOAL AND PARENTING TIME (VISITATION) PLAN**

**A.    Proposed case plan goal and target date**

Family Reunification with a target date of July 2019.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**B.    Proposed concurrent case plan goal and target date, if applicable**

Not applicable.

**C.    Current or proposed plan for parenting time (visitation) between the child and each of their parents, guardians or custodians**

Mr. and Mrs. Kahraman will receive supervised visitation through a therapeutic visitation provider.

**D.    Describe the results of any visitation that has occurred between the child and a parent guardian, or custodian since removal**

On 01/07/19, DCSS Kramer emailed Mr. and Mrs. Kahraman notifying them of a scheduled supervised visitation on 01/08/19. DCSS requested that Mr. and Mrs. Kahraman respond by 9:00am on 01/08/19 stating they agree to follow the visitation guidelines provided in the email. DCSS did not receive a response by phone or email. The visit was cancelled.

**VII.    DCS SPECIALIST'S CONCLUSIONS**

The Department respectfully recommends that the children, Kenan and Dylan Kahraman, continue to be made temporary wards of the court due to the impending danger threat of medical neglect. The parents have stated strong beliefs regarding their children's diet and medical care. The care or lack thereof that they have provided the children as a result has interfered with the children's health. At this time, the criteria for an in-home safety plan are not met. The least restrictive intervention is an out of home dependency. The children are placed in licensed foster care.

**VIII.    RECOMMENDATIONS:**

**A.    Agency**

It is respectfully recommended that K.K.    and D.K.   Kahraman be made a ward(s) of the court, committed to the care, custody, and control of the Arizona Department of Child Safety.

It is further respectfully recommended that K.K.    and D.K.   Kahraman be placed in the physical custody of DCS with appropriate medical, social, and educational authorizations.

If the child is in out-of-state placement, it is further respectfully recommended that the court find that the out-of-state placement continues to be appropriate and in the best interest of the child.

AZ-KAHRAMAN027409

**B.    Financial:**

It is respectfully recommended that beginning (date) _____ , the parents listed below be assessed the following amounts on a monthly basis per child as the contribution towards the cost of foster care:

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

**C.    Reasonable Efforts Findings**

It is respectfully recommended that the court find that the Arizona Department of Child Safety has made reasonable efforts to prevent or eliminate the need for removal and to make it possible for the child to safely return home.

If the child is an Indian child, it is further respectfully recommended that the court find that Arizona Department of Child Safety has made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

If the child is an Indian child, it is further respectfully recommended that the court find that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

It is further respectfully recommended that the court approve the proposed case plan.

*[handwritten across page: "I do not accept the terms or conditions of this warrant"]*

**Respectfully submitted:**    *Sarah Kramer*

**Name/Title**    Sarah Kramer, MSW

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN027410

Page    Preliminary Protective/ Initial Dependency Hearing
20

DCS Specialist
**ARIZONA DEPARTMENT OF CHILD SAFETY**
Telephone Number:    480-659-6364
Date:    01/08/19

Approved by:

Name/Title    Sara Mendez
Program Supervisor
**ARIZONA DEPARTMENT OF CHILD SAFETY**
Telephone Number:    480-659-6648
Date:    01/08/19

Case Name:    KAHRAMAN, JESSICA    ID:    608484

*I do not agree the terms and conditions of this contract.*

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER