**GILLESPIE, SHIELDS, GOLDFARB & TAYLOR**

7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
Email: mailroom@gillaw.com

**DeeAn Gillespie Strub #009987**
*Attorney for Respondent*

CLERK OF THE
SUPERIOR COURT
G. CAMARENA, DEP

2020 AUG 14  AM 8:00



EXHIBIT 247
BELL
8-22-24 MAG

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

In re: the matter of:

**D.K. KAHRAMAN**
(d.o.b. 9/27/12),

**K.K. KAHRAMAN**
(d.o.b. 9/27/12),

Persons under 18 years of age.

No. JD532206

**REBUTTAL TO CASA
SUSAN STARK'S REPORT**

*(Assigned to the Hon. Jennifer Green)*

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ◆ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ◆ Fax (Mesa): (480) 985-7552

Jessica Kahraman ("Mother") submits her rebuttal to CASA Susan Stark's report. It appears Ms. Stark has not had the benefit of reviewing several important case documents in this matter, which directly address multiple concerns which she has expressed.

While Mother respects Ms. Stark's desire to support the children, it is necessary to once again bring to her attention that she is not a licensed therapist, nor does she demonstrate the proper use of forensic assessment in drawing her own conclusions. This makes for an unsound foundation on which to base her professional recommendations, which may well impact the future of this family.

In support of her recommendations, Ms. Stark relies upon just two virtual

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028129

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ◆ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ◆ Fax (Mesa): (480) 985-7552

visits from a sixteen week period, plus self-reported information from Father, who is outspoken in his anger over the divorce (per the parent aide reports and TDM outbursts). She has recently relied heavily on verbal information from the case manager, such as the inaccurate and prejudicial report that Mother "still trusts Becky Plotner," despite documentation to the contrary. Ms. Stark made several statements at the TDM that began with, "I heard that…," and were clearly based on hearsay. As a result, Ms. Stark's report has been skewed with misinformation. This bias can be plainly seen, as Ms. Stark reports nearly all negative information about Mother, while providing only positive information about Father.

Although Ms. Stark notes "relaxed meal times" and an "ability to set limits" in Father's parent aide reports, she has ignored similar information reported about Mother (by Masters-level social workers at SWHD). The following are two brief examples:

1) March Summary Report (VS White and FSS Avilla): "Mrs. Kahraman has involved the children in what they will be eating for dinner and the children eat well and often ask for second portions."

2) June 2020 SWHD Report: "Generally, Ms. Kahraman demonstrates healthy, safe, and age-appropriate parenting skills. Ms. Kahraman was observed to set limits, redirect misbehaviors, provide the children with opportunity to explore how the misbehavior may have affected others, moderately followed the lead of children's play, and supplied the children with items they needed (i.e. underwear, shoes)."

Although Mother takes her own actions very seriously, Ms. Stark's assertions that Mother needs "professional help" and that "therapy may be too painful for

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028130

the children and Mother" seem disconnected from the facts of this matter. Mother has successfully completed three sets of goals with Doctorate-level therapists, and has completed two positive psychological evaluations, denying the need for psychiatric assessment. These reports have been regularly disclosed in this case, but perhaps Ms. Stark has not had the opportunity to review them. Mother is unsure if Ms. Stark has ever participated in meaningful therapy, but emotions can and should be worked through instead of "keeping the worms in the can" as Ms. Stark suggested at the TDM.

There have been no documented incidents shared with Mother or her therapist about the children expressing negativity or trauma surrounding Mother in the last 20 months. The children's affection for Mother is clearly shown in the Rapid Response interviews from Day 1, where the children state in their own words that they get along well all the time. The continued compliments regarding the children's manners, intelligence, athletic ability, adaptive ability, kindness and joyfulness evidence their upbringing by their parents for the past six years.

The children's therapy records are completely devoid of any noted concern for Mother, with respect to discussions with the children. In fact, Dr. Korsten's efforts to identify concerns by the children's therapist to address with Mother have been met with resistance by the caseworker. Certainly, DCS would have given immediate attention to any serious concern if it were vocalized by the children. Further, foster placement has always stated the children do not show signs of trauma from interactions with Mother, they look forward to visits with both parents, and there are no maladaptive behaviors following visits. The children inquired as recently as this week as to when they could also live with Mother.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ♦ Fax (Mesa): (480) 985-7552

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028131

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

Undersigned has noted that Father's disparaging comments toward Mother in the parent aide reports and at the TDM clearly indicate he has no intention of supporting the children's positive relationship with Mother. As such, any new concerns that may be voiced by the children at this time would be regarded with suspicion. For this reason, Mother requests a reunification team be in place for both parents.

Since Ms. Stark's beliefs about Father's comments concerning the children's care are opinions and are not based upon forensic evidence, Mother will refrain from addressing Father's unfounded remarks. His comments align with his ongoing desire to punish Mother for divorcing him and for her current lifestyle choices. Mother has emphatically shared she does not trust Becky Plotner and has completely accepted responsibility for what occurred, as per her doctorate-level therapist. Dr. Korsten's updated report will be shared today. For Ms. Stark to continue to dredge up allegations without merit from two years ago is not productive.

Ms. Stark states that Mother continues to lack insight, however, her own report demonstrates that she has seemingly not reviewed important SWHD records, nor Mother's therapy reports that evidence the contrary. Ms. Stark appears uninformed as to the extent to which Mother has discussed the ACCEPTS model and has accepted responsibility in this matter, as is evidenced by three sets of goals met in therapy, months of demonstrated behavioral changes in SWHD records, and dozens of pages of therapeutic work, completed over the last six months.

Mother requests that Ms. Stark please review the extensive documentation shared today that addresses many of her concerns, so that she may form a more

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028132

balanced and fact-based position regarding the parents' efforts and relationships with the children, particularly if she would like to make recommendations regarding the children's placement.

Furthermore, while Ms. Stark's conversations with the children may be well-intentioned, they are clearly outside the appropriate scope of her role. They may well be causing more confusion and trauma to the children than the therapy that Ms. Stark deems may be too "painful." Foster placement has previously voiced this same concern regarding Ms. Stark.

As Mother stated at the TDM, she has a deeply loving bond with her children. While this family has experienced trauma that needs healing, Mother has demonstrated her ability to work through difficult situations with grace and devotion for her children. She trusts the children's therapist to make decisions in their best interest.

Ms. Stark's opinions should not be given any weight, given her limited credentials, lack of foundation, and frequent actions exceeding the scope of her role. Mother affirms that the answers to many of Ms. Stark's concerns may be found in third-party provider documents which may have heretofore eluded Ms. Stark's eye.

Ms. Stark's current report evidences a disregard for the GAL's concern that severance is not in the children's best interest and the Court's directive that the case plan is not severance. She appears stuck in her inaccurate perceptions. She's chosen not to inform herself by studying current data. Her current appointment as the CASA in this case could be detrimental to the children. Mother is concerned that Ms. Stark's negative opinions are having an undue impact on the boys. Mother therefore asks the Court to remove Ms. Stark from her role as the CASA.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ♦ Fax (Mesa): (480) 985-7552

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028133

Positions were requested from the parties. DCS and the Guardian ad Litem both object. No position has been received from Father at the time of this filing.

Respectfully submitted this 1̲3̲ day of August, 2020.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

DeeAn Gillespie Strub
Carol Coghlan Carter
*Attorneys for Jessica Kahraman*

ORIGINAL filed this 1̲3̲ day of August, 2020.

COPIES delivered/emailed this same date to:

Honorable Jennifer E. Green
*Maricopa County Superior Court*

Gregory Coordes
Janna Johnson
Kathleen Martoncik
*Assistant Attorneys General*
gregory.coordes@azag.gov
janna.johnson@azag.gov
Katheen.martoncik@azag.gov

Kinda Johnson-Hurd
*Guardian ad litem for Children*
johnsonK010@mail.maricopa.gov

Rachel Metelits
*Attorney for Father*
rachel.metelits@maricopa.gov

by: 

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ♦ Fax (Mesa): (480) 985-7552

6

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028134



EXHIBIT 208
BELL
8-23-24

Clerk of the Superior Court
*** Electronically Filed ***
8/19/2020 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206

8/14/2020

HONORABLE JENNIFER E. GREEN

CLERK OF THE COURT
P. Bryant
Deputy

IN THE MATTER OF:

D.K. [redacted] KAHRAMAN
F1149031
DOB: 9/27/2012
K.K. [redacted] KAHRAMAN
F1149032
DOB: 9/27/2012

KINDA JOHNSON-HURD

JANNA LEE JOHNSON

DEEAN GILLESPIE STRUB

RACHEL METELITS

KATHLEEN MARTONCIK

CASA
DCS SPECIALIST - MARICOPA EAST REGION

REPORT AND REVIEW HEARING

9:00 a.m. This matter is digitally recorded in Courtroom 9.

This is the time set for a Contested Report and Review Hearing.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                                8/14/2020

Present telephonically:  Assistant Attorney General Janna Johnson; Assistant Attorney General Katie Martoncik; Madison Bell, DCS child safety specialist; Kinda Johnson-Hurd, guardian ad litem for the children; DeeAn Gillespie Strub, counsel for Mother; Mother Jessica Kahraman; Rachel Metelits, counsel for Father; Father Ahmet Kahraman, assisted by Kurdish Interpreter Emine Fougner; Susan Stark, CASA; Carol Cooper, co-CASA; and Dr. Celice Korsten.

The Court has read and considered the DCS child safety specialist's report dated 8/4/2020 and the CASA report dated 8/12/2020.

Emine Fougner, Kurdish interpreter, is sworn.

The Department moves for a Change in Physical Custody of the children to Father.

Discussion is held.

9:31 a.m.  Court Stands in Recess.

10:00 a.m.  Court resumes.

All previously present parties appear telephonically.

Further discussion is held.

Based on the matters presented,

THE COURT FINDS that the children continue to be dependent according to the statutes.

IT IS ORDERED that the above-named children remain a ward of the Court in the legal care, custody and control of the Department of Child Safety.

IT IS ORDERED affirming current legal custody and placement orders.

THE COURT FINDS that there is a need for out-of-home care based upon the information presented, foster care being necessary to protect the children's welfare.

IT IS ORDERED reassigning this matter to the Foster Care Review Board to review this matter at least every six months as long as the children remain in out-of-home care to determine

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031599

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                                  8/14/2020

what efforts have been made by the Department of Child Safety to carry out the plan for permanent placement.

THE COURT FINDS that the Department of Child Safety has made reasonable efforts to finalize the permanency plan for the children.

IT IS ORDERED setting this matter for Evidentiary - Non-Delinquency regarding the Motion for Change in Physical Custody of the Minor Children to Father

on      8/31/2020
at      8:45 AM (1 hour)
before  Honorable Jennifer E. Green
at the Maricopa County Juvenile Court Center
Southeast Facility, 1810 S. Lewis St., Mesa, AZ 85210

IT IS ORDERED that any exhibits be admitted to the Clerk of Court by 8/30/2020.

The parties agree to an allotment of time for the Evidentiary Hearing as follows:

Assistant Attorney General 15 minutes
Counsel for Father and guardian ad litem will share 15 minutes
Counsel for Mother 30 minutes

IT IS ORDERED setting this matter for Dependency - Uncontested Report & Review

on      11/9/2020
at      10:30 AM
before  Honorable Jennifer E. Green
at the Maricopa County Juvenile Court Center
Southeast Facility, 1810 S. Lewis St., Mesa, AZ 85210

The DCS child safety specialist shall provide a report to the Court and the parties at least fifteen (15) days prior to the hearing which shall address:
1. The placement of the child;
2. The services being provided to the child and family;
3. The progress the parties have made in achieving the case plan goals; and
4. Whether the child continues to be dependent.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031600

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                                    8/14/2020

Any party seeking an evidentiary hearing on any issue shall file a motion requesting that the matter be set for a contested hearing. The motion shall identify the issues to be litigated, the names and addresses of all witnesses and the estimated time the parties will need to present evidence. The Court may reset the matter or proceed with the hearing as scheduled.

10:44 a.m. Court adjourns.

IT IS ORDERED, pursuant to Arizona Revised Statutes, that any and all schools, school districts and personnel thereof shall fully cooperate with juvenile probation officers, DCS child safety specialists, and attorneys or guardian ad litem or Court appointed special advocates representing a child in a dependency or delinquency action by allowing access by them to all educational records of the child, including but not limited to records pertaining to school, attendance, behavior, academic progress, and psychological evaluations, and shall discuss the contents and meaning thereof with them to assist them in the preparation, implementation, and completion of a rehabilitation and treatment plan for the child.

WARNING

As a parent, it is your responsibility to cooperate with all services offered, and work toward return of your children. A failure to do so, within a reasonable period of time, may mean losing your children forever through termination of your rights and adoption.

This Courtroom utilizes an electronic recording system for the Court's record. If a court reporter is needed, a written request must be filed with the Clerk of the Court and a copy provided to the assigned judicial officer at least 72 hours before the commencement of the proceeding.

To order a copy of the audio record on compact disc (CD), please call Juvenile Court Administration (Durango facility - 602-506-4533/Southeast facility - 602-506-2544). There will be a fee of $30 for each copy of the Superior Court proceedings. All copies will be provided using Court-supplied media.

_____          / s /   HONORABLE JENNIFER E. GREEN
DATE                              HONORABLE JENNIFER E. GREEN

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031601

**GILLESPIE, SHIELDS, GOLDFARB & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
Email: mailroom@gillaw.com

**DeeAn Gillespie Strub #009987**
*Attorney for Respondent*

CLERK OF THE
SUPERIOR COURT
FILED
S Jessen        DEP
2020 AUG 17  AM 11: 38



IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In re: the matter of: | No. JD532206 |
| DYLAN KAHRAMAN<br>(d.o.b. 9/27/12), | **ADDENDUM TO MOTHER'S<br>CONCURRENT MOTION<br>FOR CPC TO BOTH PARENTS** |
| KENAN KAHRAMAN<br>(d.o.b. 9/27/12), | *(Assigned to the Hon. Jennifer Green)* |
| Persons under 18 years of age. | |

Jessica Kahraman ("Mother") submits this addendum to her Motion. Positions were requested from all parties. DCS objects. Father objects. The Guardian ad Litem concurs with a CPC for Father but objects to a CPC for Mother.

Respectfully submitted this ⎵17⎵ day of August, 2020.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

DeeAn Gillespie Strub
*Attorney for Jessica Kahraman*

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ♦ Fax (Mesa): (480) 985-7552

1

**ORIGINAL** filed this 17 day of August, 2020.

**COPIES** delivered/emailed this same date to:

Honorable Jennifer E. Green
*Maricopa County Superior Court*

Gregory Coordes
Janna Johnson
Kathleen Martoncik
*Assistant Attorneys General*
gregory.coordes@azag.gov
janna.johnson@azag.gov
Katheen.martoncik@azag.gov

Kinda Johnson-Hurd
*Guardian ad litem for Children*
johnsonK010@mail.maricopa.gov

Rachel Metelits
*Attorney for Father*
rachel.metelits@maricopa.gov

by: Alexander Strub

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480)-985-4000 ♦ Fax (Mesa): (480) 985-7552

2



CLERK OF THE SUPERIOR COURT
FILED
SJessen DEP
2020 AUG 20 PM 3:47

ROSE MARIE PENA-LYNCH
Office of the Legal Advocate
KINDA V. JOHNSON-HURD
Deputy Legal Advocate
State Bar No. 027621
3800 North Central, Suite 1500
Phoenix, AZ 85012
(602) 506-4131
johnsonk010@mail.maricopa.gov

EXHIBIT 210
BELL
8-23-24 HMB

**Office of the Legal Advocate**
Firm Bar No. 441200
3800 North Central
Suite 1500
Phoenix, AZ 85012
(602) 506-5379
Fax
(602) 506-0019

Guardian ad Litem for the Minor Child

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| In the matter of:<br><br>D.K. [redacted] KAHRAMAN<br>d.o.b. [redacted] 2012<br><br>K.K. [redacted] KAHRAMAN<br>d.o.b. [redacted] 2012<br><br>Person(s) under 18 years of age. | No. JD532206<br><br>**GAL's RESPONSE TO MOTHER'S REBUTTAL TO CASA SUSAN STARK'S REPORT AND REQUEST TO REMOVE CASA**<br><br>(Honorable Jennifer E. Green) |

The Guardian ad Litem (GAL), objects to Mother's request to remove CASA, Susan Stark from the matter.

The CASA, in dependency matters, is assigned to promote and advocate for the best interest of the children in DCS custody. In this case, the CASA, Susan Stark has gone above and beyond in advocating and ensuring that the best interest of the children is sought. This CASA is focused on making sure that these children are healthy, mentally and physically.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

**Office**

of the

**Legal**

**Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ 85012

(602) 506-5379
Fax
(602) 506-0019

1    As stated in court, it has been brought to my attention that the children have made

2    statements regarding the CASA's continuous questioning of the children regarding their

3    home environment.  This far in the case, I believe that such discussion should take place

4    in the therapeutic setting.  If the questioning is giving rise to comments by the children,

5    it is not appropriate.  However, such concern does not rise to the level of requesting a

6    removal of the CASA.  The CASA needs to recognize and understand that her approach

7    in advocating for these children, in this case, may not be appropriate for these children

8    with the level of trauma they have experienced and relive with her questioning.  The fact

9    that the children have made such comments, she may need to make adjustments in her

10   approach.  The children have been assigned a therapist with whom they work with

11   consistently through JFCS, Jenna Young.  The therapist has voiced similar concerns of

12   the CASA.   It is the job of the therapist to assist the children in identifying and

13   processing their past trauma.

14       I have since spoken with CASA supervisor, Leslie Blakely, and have voiced my

15   concerns.  I am confident that Ms. Stark will address and make any necessary changes

16   that will promote the ongoing therapy of the children while continuing to advocate for

17   their best interest.

18

19

20

21

2

AZ-KAHRAMAN031549

**Office**

of the

**Legal**

**Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ 85012

(602) 506-5379

Fax
(602) 506-0019

1     Therefore, the GAL objects to Mother's Motion to Remove the CASA in

2     this matter and ask that the court deny the motion.

3     RESPECTFULLY SUBMITTED this 20th day of AUGUST, 2020.

4

5     ROSE MARIE PENA-LYNCH
      OFFICE OF THE LEGAL ADVOCATE

6

7     By _Kinda V. Johnson-Hurd_

8     Kinda V. Johnson-Hurd
      Deputy Legal Advocate

9

10

11

12

13

14

15

16

17

18

19

20

21

3

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031550

**Office**

**of the**

**Legal**

**Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ  85012

(602) 506-5379
Fax
(602) 506-0019

1  Original of the foregoing filed
this of 20ᵗʰ day of AUGUST, 2020, to:

2

3  Copy of the foregoing Petition and
Notice of the Hearing electronically and hand-delivered
this 20ᵀᴴ day of AUGUST, 2020 to:

4

5  Honorable Jennifer E. Green
Maricopa County Superior Court

6  Juvenile Court Southeast Facility
1810 South Lewis Street

7  Mesa, Arizona 85210

8  Clerk of the Court
Maricopa County Superior Court

9  Juvenile Court Southeast Facility
1810 South Lewis Street

10  Mesa, Arizona 85210

11  Kathleen Martoncik
kathleen.martoncik@azag.gov

12  Assistant Attorney General

13  Janna Johnson
Janna.johnson@azag.gov

14  Assistant Attorney General

15  DeeAn Gillespie Strub
DGillespie@gillaw.gcom

16  Attorney for Mother

17  Suzanne M Nicholls
Suzanne.nicholls@maricopa.gov

18  Attorney for Father

19  Madison Bell
Madison.bell@azdcs.gov

20  Case Manager

21

by _____          4

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031551

CLERK OF THE
SUPERIOR COURT
FILED

*S Jesser* DEP

2020 AUG 20 PM 3: 48

EXHIBIT 211

*Bau*
8-23-24 MM

1 | ROSE MARIE PENA-LYNCH
Office of the Legal Advocate
2 | KINDA V. JOHNSON-HURD
Deputy Legal Advocate
3 | State Bar No. 027621
3800 North Central, Suite 1500
4 | Phoenix, AZ 85012
(602) 506-4131
5 | johnsonk010@mail.maricopa.gov

6 | Guardian ad Litem for the Minor Child

**Office
of the
Legal
Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ 85012

(602) 506-5379
Fax
(602) 506-0019

7 |         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8 |            IN AND FOR THE COUNTY OF MARICOPA

9 |

10 | In the matter of:

11 | D.K. ████████ KAHRAMAN
d.o.b. ████ 2012

12 |

13 | K.K. ████████ KAHRAMAN
d.o.b. ████ 2012

14 | Person(s) under 18 years of age.

No. JD532206

**GAL's RESPONSE TO AND OBJECTION
TO MOTHER'S MOTION FOR CHANGE
OF PHYSICAL CUSTODY TO BOTH
PARENTS**

(Honorable Jennifer E. Green)

15 |

16 |         The Guardian ad Litem (GAL), objects to Mother's Motion to Change

17 | Physical Custody of the Children to both parents and hereby requests that the Court deny

18 | Mother's Motion.

19 |         Mother's motion is essentially a Motion for Return of the Child pursuant to Rule

20 | 59. Pursuant to Rule 59, "at any time after the temporary custody hearing, a parent…

21 | may file a with the court requesting return of the custody of the parent…" The rule

further provides the determination of the court is "whether return of the child would

1

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031544

**Office**

of the

**Legal**

**Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ 85012

(602) 506-5379
Fax
(602) 506-0019

1    create a substantial risk of harm to the children's physical, mental, or emotional health

2    or safety.

3    In this case, as outlined in court and in the Department's response, the GAL

4    agrees that Father has made the necessary progress and behavior changes in this case,

5    where he has shown that the children would not be a substantial risk of harm physical,

6    mental, or emotional health or safety.

7    In regards to Mother, the GAL objects to children returning to Mother at this

8    time. Mother was the primary caretaker for the children immediately prior to the

9    Department's involvement. Based on the records and reports, Mother was responsible

10   for the feeding, education, daily care taking, consulting and following up with medical

11   providers. These children have been in care for almost two years and the delay in

12   progression of this case has been due to Mother and her denial of any wrong doing and

13   not accepting responsibility for her role in why the children were brought into care as

14   well as diverting the blame to other sources. While she is now making progress, she has

15   not made sufficient progress to even warrant unsupervised contact at this time.    Just

16   because she thinks that she has made the progress necessary does not mean that she is

17   has made the progress. Actually her continued grandiose attitude shows the opposite of

18   what she is intending. It actually shows that she has not made any progress towards

19   behavior changes. It shows that if she has a certain opinion, she will not take the advice

20   or opinion of the experts but, instead will search for providers who agree with her, which

21   places these boys at a substantial risk of harm. The children's therapist with JFCS, Jenna

Young, is not recommending that family counseling begin with the children and Mother

2

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031545

**Office**
of the
**Legal**
**Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ 85012

(602) 506-5379
Fax
(602) 506-0019

1    at this time.  This is a major step that must be made prior to the children even having

2    unsupervised time with Mother.  The facts and reasons outlined in court during the last

3    hearing, in the court report dated August 4, 2004, returning the children to Mother at

4    this time would cause a substantial risk of harm to their physical, mental, and emotional

5    health, and safety.

6        Therefore, the GAL objects to Mother's Motion for Change of Physical Custody

7    of the Children to Both Mother and Father and ask this court to deny the motion as it is

8    written.

9                 RESPECTFULLY SUBMITTED this 20th day of AUGUST, 2020.

10

11                                  ROSE MARIE PENA-LYNCH
                                    OFFICE OF THE LEGAL ADVOCATE

12

13    By _____

14                                  Kinda V. Johnson-Hurd
                                    Deputy Legal Advocate

15

16

17

18

19

20

21

3

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031546

**Office**

of the

**Legal**

**Advocate**

Firm Bar No. 441200

3800 North Central
Suite 1500
Phoenix, AZ 85012

(602) 506-5379

Fax
(602) 506-0019

1    Original of the foregoing filed
this of 20th day of AUGUST, 2020, to:

2

3    Copy of the foregoing Petition and
Notice of the Hearing electronically and hand-delivered
this 20TH day of AUGUST, 2020 to:

4

5    Honorable Jennifer E. Green
Maricopa County Superior Court
Juvenile Court Southeast Facility

6    1810 South Lewis Street
Mesa, Arizona 85210

7

8    Clerk of the Court
Maricopa County Superior Court

9    Juvenile Court Southeast Facility
1810 South Lewis Street

10   Mesa, Arizona 85210

11   Kathleen Martoncik
kathleen.martoncik@azag.gov

12   Assistant Attorney General

13   Janna Johnson
Janna.johnson@azag.gov

14   Assistant Attorney General

15   DeeAn Gillespie Strub
DGillespie@gillaw.gcom

16   Attorney for Mother

17   Suzanne M Nicholls
Suzanne.nicholls@maricopa.gov

18   Attorney for Father

19   Madison Bell
Madison.bell@azdcs.gov

20   Case Manager

21

by _____                          4

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031547

1
2

MARK BRNOVICH
Attorney General

3
4

JANNA L. JOHNSON
Assistant Attorney General
State Bar No. 030792
CFP/PSS
120 W. 1st Avenue, 2nd Floor
Mesa, Arizona 85210
Telephone: (602) 771-4000
PSSSef@azag.gov

5
6
7
8

Attorneys for the Department of Child Safety

9

CLERK OF THE
SUPERIOR COURT
FILED
C. Mohammed DEP
2020 AUG 20 AM 10: 55



EXHIBIT 272
BELL
8-23-24 MAD

10

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

11

IN AND FOR THE COUNTY OF MARICOPA

12

13
14
15
16

In the Matter of:

D.K.          KAHRAMAN
   d.o.b.       2012
KENAN TROY KAHRAMAN
   d.o.b.      2012

Person(s) under 18 years of age.

No. JD532206

DCS'S RESPONSE AND OBJECTION
TO MOTHER'S MOTION FOR
CHANGE OF PHYSICAL CUSTODY
TO BOTH PARENTS

(Honorable Jennifer E Green)

17
18

        The Department of Child Safety (DCS or the Department), by and through

19

undersigned counsel, hereby requests that the Court deny Mother's Concurrent Motion

20

for Change of Physical Custody to Both Parents.

21
22

        Mother's statement that that she's done "significant work over the last three

23

months since the May 12 hearing" actually echoes DCS's concerns that Mother

24

previously failed to meaningfully engage in services, particularly Southwest Human

25

Development therapeutic visitation, before the Rule 59 hearing. *See Attachment A –*

26
27

*Progress Report to the Court dated August 4, 2020.* Father, on the other hand, progressed

28

through therapeutic visitation, parent aide, and his counseling over the course of the last

eight months. As this Court has stated previously, "in many dependency cases, parents progress at different levels." *See Minute Entry – Order Entered by the Court, dated July 28, 2020, filed July 30, 2020.* In this case, Father has demonstrated an ability to appropriately and safely parent his children and make safe medical decisions regarding their care. Mother has only begun to do the hard work and has not demonstrated the same behavioral change. While Mother continues to report she is taking full accountability, Mother undermines her position by emailing Father's providers and stating Father has "unfounded fears." *See Attachment B – email from Mother to Dr. Elizabeth Capps-Conkle, dated July 28, 2020.*

Additionally, the children's therapist, Jennifer Young with JFCS, notes significant concerns regarding Mother's behaviors at CFTs that illustrate Mother has not yet made an internal behavioral change. *See Attachment C – email from Jennifer Young to Madison Bell, dated August 19, 2020.* Ms. Young has observed Mother at CFTs for the children for a prolonged period and noted she has "yet to observe mother accept any responsibility for her actions without minimizing the consequences of her choices, and blaming or deflecting consequences to another party." *Id.* As a result, Ms. Young is not prepared to recommend Mother begin the necessary family therapy between Mother and the children. *Id.*

Notably, there is no provider or professional even recommending unsupervised visitation for Mother and the children, a necessary recommendation in any transition to reunifying with the children. While Mother continuously touts completing treatment goals with Dr. Rodriguez, she does not acknowledge that the provider she switched to, Dr.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031556

Celice Korsten, recommended Mother begin EMDR therapy. Additionally, she has not yet opined as to whether Mother can safely parent her children in an unsupervised setting.

Mother seemingly asserts her motion on two additional points, one being that the boys love her and are bonded to her. The Department does not doubt the children love Mother; and does not indicate otherwise. Likewise, both the Department and Father have advocated support for continued supervised visits with Mother should the Court grant the Department's request for change of physical custody to Father. However, there is a marked difference between a bond and an ability to appropriately and safely parent.

Mother also asserts that there is "substantial risk that if the children are returned solely to Father, [the children] will be subject to alienation from their Mother and emotional peril from their Father." *See Mother's Motion at Page 2, lines 1-4.* This statement is unfounded and inaccurate; at the TDM held on August 10, 2020, Father reiterated his support for Mother's presence in the children's lives. Additionally, it ignores entirely the underlying reasons why the children came into care in the first place.

Mother's motion continues on to *again* request a new visitation provider and a new case manager. The Department maintains its objections for reasons previously stated in various filings. These repeated requests reflect her pattern of seeking out providers who agree with her perspective on the case.

///

///

///

///

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031557

1     For the foregoing reasons, the Department respectfully requests this Court deny

2  Mother's Concurrent Motion for Change of Physical Custody to Both Parents.

3

4

5

6         RESPECTFULLY SUBMITTED this 20 day of August, 2020.

7                              MARK BRNOVICH
                                Attorney General
8
9                              JANNA L. JOHNSON
                                Assistant Attorney General
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031558

1

OFFICE OF THE PUBLIC ADVOCATE
Rachel Metelits, State Bar No. 029049
106 E. Baseline Road
Mesa, AZ 85209
Phone: (602) 372-2815
Opa-DepMes@maricopa.gov
rachel.metelits@maricopa.gov
*Attorney for Father*





CLERK OF THE
SUPERIOR COURT
FILED
_S Jesen_      DEP
2020 AUG 21  PM 4:19

EXHIBIT
273
BELL
8-23-24 Mkh

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA
JUVENILE DIVISION**

In the Matter of:

D.K. ███ KAHRAMAN,
D.O.B. ███ 2012
K.K. ███ KAHRAMAN,
D.O.B. ███ 2012

Person(s) under 18 years of age.

CASE NO: JD532206

**FATHER'S OBJECTON TO
MOTHER'S CONCURRENT
MOTION FOR CPC
TO BOTH PARENTS**

(Honorable Jennifer E. Green)

Father, AHMET KAHRAMAN, objects to Mother's concurrent Motion for CPC

to Both Parents ("Motion"), filed August 14, 2020.  Father agrees with the Department's

Motion for Change in Physical Custody of Dylan and K.K. to Father. Father joins DCS's

Response and Objection to Mother's Motion for Change in Physical Custody to Both

Parents.

Respectfully submitted this 21st day of August, 2020.

SABRINA AYERS FISHER
OFFICE OF THE PUBLIC ADVOCATE

By _____

RACHEL METELITS
Deputy Public Advocate

1

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031211

1    ORIGINAL filed this 21st day of
2    August, 2020, and a COPY delivered to:

3    Honorable Jennifer E. Green
     Maricopa County Superior Court
4    1810 S Lewis St.
5    Mesa, AZ 85210

6    COPIES electronically delivered
7    this 21st day of August, 2020, to:

8    Kathleen Martoncik
     Janna Johnson
9    Gregory Coordes
     Assistant Attorneys General
10   PSSSEF@azag.gov; kathleen.martoncik@azag.gov; Janna.Johnson@azag.gov;
11   Gregory.coordes@azag.gov
     *Attorneys for DCS*
12
13   Kinda Johnson-Hurd
     Kinda.Johnson-Hurd@maricopa.gov
14   *Guardian ad litem for Children*

15   DeeAn Gillespie
     DGillespie@gillaw.com; Mailroom@gillaw.com
16   *Attorney for Mother*

17
     Madison Bell
18   madison.bell@azdcs.gov
     *DCS Case Manager*
19

20

21

22   By _____
23

24

25

26

27

28

2

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031212



Clerk of the Superior Court
*** Electronically Filed ***
8/27/2020 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                    8/26/2020


                                    CLERK OF THE COURT
HONORABLE JENNIFER E. GREEN               K. Scanlon
                                           Deputy

IN THE MATTER OF:

D.K.          KAHRAMAN          KINDA  JOHNSON-HURD
  F1149031
  DOB: 9/27/2012
K.K.          KAHRAMAN
  F1149032
  DOB: 9/27/2012

                          JANNA LEE JOHNSON

                          DEEAN  GILLESPIE STRUB

                          RACHEL  METELITS

                          CASA
                          DCS SPECIALIST - MARICOPA EAST
                          REGION


                          MINUTE ENTRY

      The Court has received and reviewed the following:  Rebuttal to CASA Susan Stark's
Report, filed August 14, 2020; DCS's Response and Objection to Mother's Rebuttal and to
CASA Susan Stark's Report and Request to Remove CASA, filed August 20, 2020; GAL's
Response to Mother's Rebuttal to CASA Susan Stark's Report and Request to Remove CASA,
filed August 20, 2020.

      Tucked deep into a pleading entitled "Rebuttal to CASA Susan Stark's Report," on page
five in the last sentence of the second-to-the last paragraph of the pleading, Mother asked the
Court to remove the CASA from this case.  The Court wonders how serious a request this is
based on the fact that the request is not mentioned in the caption or first paragraph of Mother's
pleading.


Docket Code ORDENTERED          Form XPJDBlankME                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                         8/26/2020

In fact, the Court only knew about the request due to the objections filed by DCS and the GAL where each mentioned their objections in the captions of their Responses.

The Court has reviewed all the pleadings. The Court finds that the context of Mother's unusual request is helpful; during the pendency of this case, Mother has asked the Court to remove the DCS case worker; to remove Southwest Human Development as her service provider; and has refused to be assessed by Dr. Michael Kelly. Mother alleged as to the CASA, that the CASA should review "several important case documents" to address the CASA's concerns. Mother asserted that the CASA's conversations with the children are "outside the appropriate scope of her role." (Rebuttal at 5.) Mother urges the Court to not give any weight to the CASA's opinions; Mother concluded that the CASA has not informed herself of the updated information that might change her negative opinion of Mother.

DCS objected, noting the CASA has taken her job seriously and sharply disputed the narrative that the CASA's conversations with the children were outside the scope of her role. (DCS Response at 2.) DCS noted that the CASA urged the Court to continue a case plan of Family Reunification, instead of DCS's recommended case plan of Termination and Adoption. (*Id.*) DCS disagreed that the CASA's negative opinions of Mother had "an undue impact on the boys." (*Id.*) In fact, to the contrary, the CASA sought out a "co-CASA" to be appointed to this case to prevent any misplaced bias. (*Id.*)

The GAL also objected. The GAL maintained that the CASA "has gone above and beyond in advocating and ensuring that the best interest of the children is sought." (GAL Response at 1.) The GAL expressed concern, however, that the CASA's "continuous questioning of the children regarding their home environment" should take place in a therapeutic setting. (*Id. at 2.*) The GAL also noted that the children's therapist had similar concerns. (*Id.*) The Court is aware of the trauma these children have endured and will not recount it in the context of this ruling. Ultimately, however, the GAL urged the Court to keep the CASA on this case, noting she will make any necessary changes and will promote the children's engagement in therapy, while supporting and advocating for their best interests. (*Id.*)

The Court finds that the CASA has identified the children's best interests and advocated for the children in Court. The Court finds that the CASA's reports in this matter have been helpful to the Court as this case has presented a dizzying series of events and some issues of first impression for this Court: the allegations that the children were malnourished due to a highly restrictive diet; Kenan's alarming heart diagnosis; the mold and white board marker defenses; the dueling experts; the request to unseal confidential juvenile records and then referring to those records in the pleading itself; the parties' filing for divorce and Mother's newly disclosed boyfriend, and more.

Docket Code ORDENTERED          Form XPJDBlankME                    Page 2

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031292

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                          8/26/2020

        While Mother and Father have demonstrated progress in services, the CASA has been a
steady hand as this case has unfolded. The CASA has regularly attended court hearings and met
with the children. The CASA's work in this case has assisted the Court. As for the accusations
that the CASA has crossed the line in asking questions that should be reserved for the children's
therapist, the Court simply asks the CASA to review with DCS and/or the children's therapist
what questions or topics are "out of bounds" to discuss with the children. The Court has no
doubt the CASA will refrain from getting into areas that the children's therapist should
handle. As for Mother's assertion that the CASA has crossed a line she should not have and that
she should review more material, the Court is very familiar with this case and can give the
CASA's opinions the weight they deserve.

        The Court declines to remove the CASA from this case.

        IT IS ORDERED denying Mother's request to remove the CASA tucked inside its
Rebuttal to CASA Susan Stark's Report.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031293



Clerk of the Superior Court
*** Electronically Filed ***
9/3/2020 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                                    8/31/2020

                                            CLERK OF THE COURT
HONORABLE JENNIFER E. GREEN                        P. Bryant
                                                   Deputy

IN THE MATTER OF:

D.K. █████ KAHRAMAN                    KINDA  JOHNSON-HURD
F1149031
DOB: 9/27/2012
K.K. █████ KAHRAMAN
F1149032
DOB: 9/27/2012

                                       JANNA LEE JOHNSON

                                       DEEAN  GILLESPIE STRUB

                                       RACHEL  METELITS

                                       CASA
                                       DCS SPECIALIST - MARICOPA EAST
                                       REGION
                                       FOSTER CARE REVIEW BOARD -
                                       RELIEVED

                        EVIDENTIARY HEARING

        Prior to the hearing commencing, Respondent Mother's Exhibits 1 through 7, and 22
through 28; Petitioner's Exhibits 8 through 21; and Respondent Father's Exhibits 29 through 31
are marked for identification.

        8:45 a.m.  This matter is digitally recorded in Courtroom 9.

        This is the time set for Evidentiary Hearing on DCS's Motion for Change of Physical
Custody of the children to Father Ahmet Kahraman filed 8/7/2020.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028149

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                                    8/31/2020

Present telephonically:  Assistant Attorney General Janna Johnson; Madison Bell, DCS child safety specialist; Kinda Johnson-Hurd, guardian ad litem for the children; DeeAn Gillespie Strub, counsel for Mother; Mother Jessica Kahraman; Rachel Metelits, counsel for Father; Father Ahmet Kahraman, assisted by Turkish Interpreter Emine Fougner; Carol Cooper and Susan Stark, co-CASA's; Eli Newberger; Dr. Celice Korsten; Assistant Attorney General Robin Reese, observing; Mecca Temple and Juliet Tsoka, DCS, observing.

Turkish Interpreter, Emine Fougner, is sworn.

The Court is in receipt of Mother's Motion for Change of Physical Custody.

Discussion is held.

The Department objects to Mother's witnesses and exhibits for today's hearing.

The Court will set this matter at another date and time to hear Mother's Motion.

The Court proceeds by avowals as to DCS's Motion for Change of Physical Custody.

The Department moves to admit Petitioner's Exhibits 8 through 21.

Counsel for Mother objects to the admission of Exhibits 8, 9, and 19.

THE COURT NOTES it will give Exhibit's 8, 9, and 19 the weight they deserve in the context of today's proceeding.

Petitioner's Exhibits 8 through 21 are admitted into evidence.

Respondent Father's Exhibits 29 through 31 are withdrawn.

Based on the matters presented,

IT IS ORDERED granting Father's Motion for Change of Physical Custody for the reasons set forth on the record.

Dockct Code EVIDHRG                 Form JDHearing                        Page 2

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028150

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                        8/31/2020

IT IS FURTHER ORDERED that the children, ██ Kahraman and ██ Kahraman, be placed in the physical custody of Father Ahmet Kahraman, who is authorized to consent to routine medical treatments, routine dental procedures, and social and educational activities for the children.

IT IS FURTHER ORDERED that the Department of Child Safety be authorized to consent for surgical procedures, psychological/psychiatric evaluations, and therapy for the children.

Upon the request of Father,

IT IS ORDERED Father's may take the children to California to pick up their Grandmother from the airport, but they will not be allowed to enter the airport due to the current pandemic.

IT IS ORDERED affirming the Dependency - Uncontested Report & Review

   on 11/9/2020
   at  10:30 AM
   before  Honorable Jennifer E. Green
   at the Maricopa County Juvenile Court Center
   Southeast Facility, 1810 S. Lewis St., Mesa, AZ 85210

9:51 a.m.  Court adjourns.

LATER:

IT IS ORDERED setting this matter for Evidentiary - Non-Delinquency regarding Mother's Change of Physical Custody

   on 9/15/2020
   at  10:30 AM
   before  Honorable Jennifer E. Green
   at the Maricopa County Juvenile Court Center
   Southeast Facility, 1810 S. Lewis St., Mesa, AZ 85210

IT IS ORDERED that Respondent Father's Exhibits 29 through 31 be disposed of by the Clerk of Court.

Docket Code EVIDHRG     Form JDHearing     Page 3

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028151

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                            8/31/2020

    This Courtroom utilizes an electronic recording system for the Court's record.  If a court reporter is needed, a written request must be filed with the Clerk of the Court and a copy provided to the assigned judicial officer at least 72 hours before the commencement of the proceeding.

    To order a copy of the audio record on compact disc (CD), please call Juvenile Court Administration (Durango facility - 602-506-4533/Southeast facility - 602-506-2544).  There will be a fee of $30 for each copy of the Superior Court proceedings.  All copies will be provided using Court-supplied media.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN028152



Clerk of the Superior Court
*** Electronically Filed ***
9/30/2020 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                          9/15/2020

                                        CLERK OF THE COURT
HONORABLE JENNIFER E. GREEN              P. Bryant
                                        Deputy

IN THE MATTER OF:

DYLAN KEMAL KAHRAMAN              KINDA  JOHNSON-HURD
    F1149031
    DOB: 9/27/2012
KENAN TROY KAHRAMAN
    F1149032
    DOB: 9/27/2012

                                 JANNA LEE JOHNSON

                                 DEEAN  GILLESPIE STRUB

                                 RACHEL  METELITS

                                 CASA
                                 DCS SPECIALIST - MARICOPA EAST
                                 REGION

                    EVIDENTIARY HEARING
                 MATTER TAKEN UNDER ADVISEMENT

        Prior to the hearing commencing, Petitioner's Exhibits 32 through 41, Respondent
Mother's Exhibits 42 through 51, and Respondent Father's Exhibit 52 are marked for
identification.

        LET THE RECORD REFLECT Respondent Mother's Exhibits 1 through 7, and 22
through 28, Respondent Father's Exhibits 29 through 31, and Petitioner's Exhibits 8 through 21
were previously marked for identification.

Docket Code EVIDHRG                Form JDHearing                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                              9/15/2020

LET THE RECORD FURTHER REFLECT Petitioner's Exhibits 8 through 21 were admitted into evidence and Respondent Father's Exhibits 29 through 31 were withdrawn at the Evidentiary Hearing regarding Father's Motion for Change of Physical Custody Hearing on 8/31/2020.

10:30 a.m. This matter is digitally recorded in Courtroom 9.

This is the time set for Evidentiary Hearing on Mother's Motion for Change of Physical Custody.

Present telephonically: Assistant Attorneys General Janna Johnson and Gregory Coordes; Madison Bell, DCS child safety specialist; Kinda Johnson-Hurd, guardian ad litem for the children; DeeAn Gillespie Strub, counsel for Mother; Mother Jessica Kahraman; Rachel Metelits, counsel for Father; Father Ahmet, assisted by Court Interpreter, Emine Fougner; Carol Cooper and Susan Stark co-CASA's; Dr. Ann Schroeckenstein; Dr. Celice Korsten; and Dr. Eli Newberger.

Discussion is held.

The Department invokes the Rule of Exclusion of Witnesses.

Dr. Ann Schroeckenstein, Dr. Celice Korsten, and Dr. Eli Newberger are sworn.

Dr. Schroeckenstein and Dr. Korsten are excused and disconnect telephonically.

Dr. Eli Newberger testifies.

The witness is excused and disconnects telephonically.

Respondents Exhibits 1 through 7, 22 through 28, and 42 through 51, Petitioner's Exhibits 32 through 41, and Respondent Father's Exhibit 52 are admitted into evidence by the stipulation of the parties.

10:58 a.m. Dr. Ann Schroeckenstein, previously sworn, appears telephonically and testifies.

The witness is excused and disconnects telephonically.

11:08 a.m. Dr. Celice Korsten, previously sworn, testifies.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                             9/15/2020

The witness is excused and disconnects telephonically.

Discussion is held.

IT IS ORDERED directing the Department to provide the July 2020 and August 2020
Southwest Human Development Progress Reports to all parties by 9/28/2020.

Upon the agreement of the parties,

IT IS ORDERED marking and admitting the July 2020 and August 2020 Southwest
Human Development Progress Reports as Petitioner's Exhibits 53 and 54, and will be provided
to the Court for consideration.

The Court will take this matter under advisement.

IT IS ORDERED affirming the Dependency - Uncontested Report & Review

   on  11/9/2020
   at   10:30 AM
   before Honorable Jennifer E. Green
   at the Maricopa County Juvenile Court Center
   Southeast Facility, 1810 S. Lewis St., Mesa, AZ 85210

This Courtroom utilizes an electronic recording system for the Court's record.  If a court
reporter is needed, a written request must be filed with the Clerk of the Court and a copy
provided to the assigned judicial officer at least 72 hours before the commencement of the
proceeding.

To order a copy of the audio record on compact disc (CD), please call Juvenile Court
Administration (Durango facility - 602-506-4533/Southeast facility - 602-506-2544).  There will
be a fee of $30 for each copy of the Superior Court proceedings.  All copies will be provided
using Court-supplied media.

11:46 a.m.  Court adjourns.

CLERK OF THE
SUPERIOR COURT
FILED
DEP
D. Garcia
20 OCT 15 PM 4:13

1    MARK BRNOVICH
     Attorney General
2
3    JANNA L. JOHNSON
     Assistant Attorney General
4    State Bar No. 030792
     CFP/PSS
5    120 W. 1st Avenue, 2nd Floor
     Mesa, Arizona 85210
6    Telephone: (602) 771-4000
     PSSSef@azag.gov
7

**EXHIBIT** 271
BELL
8-23-24

8    Attorneys for the Department of Child Safety
9
10              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
11                   IN AND FOR THE COUNTY OF MARICOPA
12   In the Matter of:                  No. JD532206
13   D.K.        KAHRAMAN               **DCS'S RESPONSE AND OBJECTION**
14      d.o.b.    2012                  **TO MOTHER'S MOTION FOR THE**
                                        **COURT TO ORDER DCS TO**
     K.K.        KAHRAMAN               **PROVIDE APPROPRIATE SERVICES**
15      d.o.b.    2012                  **TO ADVANCE FAMILY**
                                        **REUNIFICATION: TO**
16                                      **IMMEDIATELY REMOVE SWHD**
17                                      **AND MOVE TO A FAMILY**
                                        **REUNIFICATION TEAM**
18
19
20   Person(s) under 18 years of age.   (Honorable Jennifer E Green)
21
22       The Department of Child Safety (DCS or the Department), by and through
23   undersigned counsel, hereby requests that the Court deny Mother's Motion to Remove
     SWHD and Move to a Family Reunification Team, and requests this Court deny Mother's
24
25   request for an evidentiary hearing on the matter.
26       This Court is well-versed on the procedural posture and history of this case. The
27   Court has also made note, on the record, of Mother's consistent requests to remove all
28   service providers whose narratives do not exclusively echo her own. Before addressing

the substance of the motion, the Department objects to Mother's motion on the basis that this Court is currently reviewing evidence from an evidentiary hearing held on the issue of a change of physical custody to Mother, and this request is premature given the issue is still under advisement. Many of the arguments made in Mother's current Motion are regurgitations of the arguments made at the September 15, 2020 hearing. Moreover, the Court was presented with all relevant evidence just one month ago, and circumstances have not changed so drastically to warrant yet another evidentiary hearing. It would be an inefficient use of judicial resources to rehash the same facts and evidence yet again.

The above reasoning notwithstanding, the Department objects substantively to the Motion and makes the following clarifications:

Mother is now allowed to bring pre-purchased food with her to visits starting with her visit on Tuesday, October 20. If consistent progress is made, she will be approved to bring homemade food to these visits. This decision was made given the review of the latest SWHD reports and the now-consistent period of progress the Department has seen. As this Court is aware, the issue of providing proper nutrition for these boys is a paramount concern and cannot be skipped or rushed. Mother contends this restriction "has no rational basis," but ample evidence has been provided to this Court of Mother's actions regarding the children's diets. There has also been ample evidence provided to the Court that despite SWHD making notes of proper food being provided at visits throughout this case, Mother had denied that her actions led to the boys' malnutrition for an extended period of time.

Mother continues to assert many of the same arguments for the removal of SWHD as she did in her Motion to Compel Compliance with Family Reunification filed July 13,

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031592

2020, that Father has been treated differently than Mother and that DCS is ignoring Mother's progress with her therapists and SWHD. This continued assertion disregards the evidence and testimony this Court has heard of Father's progress and Mother's progress, respectively. The Court has since granted Father physical custody, and so recognizes he has made the requisite behavioral changes.

Mother continues to assert DCS has ignored the opinions of her therapists and professionals in this case. While Mother was documented to have met all treatment goals with Dr. Kelly Rodriguez, Dr. Rodriguez notably recommended Mother needed a "medical gatekeeper" in the future, thus suggesting she could not be the sole medical decision maker. Furthermore, Dr. Korsten recommended Mother begin EMDR therapy to aid in using adequate coping skills, and has yet to opine on unsupervised visitation. While Dr. Oakley made a recommendation to lessen restrictions on Mother's visitation, Dr. Kelly also opined based on an extensive review of the medical records that Mother presented a danger to these children. SWHD has not yet recommended a change in supervised visitation. DCS has had to review and consider many conflicting opinions and operate in the best interests of the children throughout this case.

Mother also argues DCS has disregarded Dr. Schroekenstein's records-review, however, the Department asserts it has been reviewed and given the weight it deserves in such a complex and record-heavy case. This records-review does not exist in a vacuum. Mother asks this Court to utilize Dr. Schroekenstein's records-review as a direct rebuttal and discrediting of SWHD visitation records, but Dr. Schroekenstein has never been present for a visitation between Mother and the boys. The Department finds her absence from these visitations important in considering her opinion on past visits.

Mother continues to assert that the Department has "retaliated" against Mother in various ways, including an assertion yet again that her visits at SWHD were suspended due to her request to record them in March and April 2020. The Department objects to this incessant mischaracterization. This Court has found no retaliatory action to date.

The Department believes that SWHD is still the most appropriate service for Mother's visitation at this time. SWHD is fully-trained and has extensive experience in supervising visitation for parents and children in medically complex cases. SWHD visitation goals are also more specifically targeted toward the trauma experienced by the children and the emotional needs of the family. Mother has, despite her own assertions, been given credit for her progress to date, and can now bring pre-purchased food to visitation. If that goes well, she can bring homemade food to these visits. The Department does agree with Mother on one point – that a Parent Aide referral is unnecessary – because it is not Mother's direct interactions with her children that need to be enhanced. Rather, the Department believes Mother needs to show consistency in fact-based medical decision making and acceptance of her role in the children's medical care. In fact, when deemed appropriate, SWHD can recommend a transition to family reunification services, which they themselves provide.

///

///

///

///

///

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031594

As such, the Department respectfully asks this Court to deny Mother's Motion to Remove SWHD and Move to a Family Reunification Team, and requests this Court deny Mother's request for an evidentiary hearing on the matter.


RESPECTFULLY SUBMITTED this 15th day of October, 2020.

MARK BRNOVICH
Attorney General

*Brittany Lowe for*

JANNA L. JOHNSON
Assistant Attorney General

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031595

ORIGINAL of the foregoing filed
this /S/ day of October, 2020, to:

Clerk of the Court
Maricopa County Superior Court
Juvenile Court Southeast Facility
1810 South Lewis Street
Mesa, AZ 85210

Copy of the foregoing hand-delivered
this /S/ day of October, 2020, to:

Honorable Cassie Woo
Maricopa County Superior Court
Juvenile Court Southeast Facility
1810 South Lewis Street
Mesa, AZ 85210

Copies of the foregoing electronically mailed this
/S/ day of October, 2020, to:

Kinda Johnson-Hurd, Esq.
Kinda.Johnson-Hurd@Maricopa.Gov
Guardian Ad Litem for the Children

DeeAn Gillespie Strub, Esq.
DGillespie@gillaw.com
Attorney for Mother

Rachel Metelits, Esq.
rachel.metelits@maricopa.gov
OPASEFDisclosure@maricopa.gov
Attorney for Father

Madison Bell
madison.bell@azdcs.gov
Case Manager

Susan Stark
Susan.Stark@maricopacasa.org
Court Appointed Special Advocate

Kevin Trujillo
Kevin.Trujillo@JBAZMC.maricopa.gov.
Bailiff for Judge Green

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031596

Shelby DeMassari
Shelby.DeMassari@JBAZMC.Maricopa.Gov
JA for Judge Green

jlj/JD532206/HDM#9031823

7

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031597

CT04400 (7/19)

# PROGRESS REPORT TO THE JUVENILE COURT

**Court Case Number**   JD532206          **Date of Report**   10/30/2020

**Case Name**          KAHRAMAN, JESSICA       **Case ID** 608484

**A.   Name and date of birth for each child subject to this court case number.**

3874373 KAHRAMAN, DYLAN            DOB: 09/27/2012
3874372 KAHRAMAN, KENAN            DOB: 09/27/2012

**B.   Child or children subject to this report if different from above.**

N/A

**C.   Family composition.**



Jessica Kahraman - Mother
Ahmet Kahraman - Father
Kenan Kahraman - Child
Dylan Kahraman - Child

**D.   If the family has or may have American Indian tribal affiliation, efforts to identify and contact the child's tribe and confirm the child's membership status or eligibility for membership.**

N/A

## I.   REASON FOR DCS INVOLVEMENT

**A.   Description of the dangerous condition(s) currently occurring within the family that require Department involvement; including how the parent, guardian, or custodian's behaviors cause the child to be unsafe or at substantial risk of harm and, if applicable, why the child(ren) are removed from the parent, guardian or custodian's custody.**

Mr. Kahraman has physical custody of the children as he is determined to be a safe and appropriate parent to the children.

It is concerning to the Department that Ms. Kahraman is focused on checking boxes rather than making behavior changes. Ms. Kahraman has demonstrated the ability to mimic what others are saying. When concerns are brought to Ms. Kahraman's attention, Ms. Kahraman immediately changes what she says and mimics back what was told to her to alleviate any concerns. However, Ms. Kahraman has not changed her thought process and is not able to articulate why her behaviors were unsafe to her children and how her children have been affected by her actions.

## II.   SAFETY PLANNING

**A.    If applicable, efforts to locate missing parent(s).**

The whereabouts of Ms. and Mr. Kahraman are known at this time.

**B.    The current safety plan, including whether it is an in-home plan or out-of-home plan, the actions that are necessary to control the dangerous condition(s), when those actions are needed, the adults responsible for carrying out the actions, and any supportive resources to support the safety actions.**

Dylan and Kenan Kahraman are in the physical custody of Mr. Kahraman. There is no safety plan with Mr. Kahraman. Ms. Kahraman continues to have supervised visitation.

**C.    Efforts to implement the least intrusive plan that is sufficient to control the dangerous conditions, including explanation of why the safety threats can or cannot be managed in the home; and for American Indian children, the active efforts to provide services designed to prevent the breakup of the Indian family and the outcome of these efforts.**

The safety threats are currently able to be managed in Mr. Kahraman's home as he is considered a safe and appropriate parent.

**D.    If applicable, the conditions for return as described in the safety plan.**

Mrs. Kahraman recognizes and articulates that her behaviors are causing physical and emotional harm to Kenan and Dylan.
Mrs. Kahraman displays genuine remorse and has open and honest conversations regarding her behavior.
Mrs. Kahraman allows providers and responsible adults access to the home when asked, both scheduled and unannounced visits.
Mrs. Kahraman demonstrates a willingness to follow the safety plan and abide by the direction of the safety monitor and providers. Mrs. Kahraman will allow the safety monitor to re-direct her.
Mrs. Kahraman has consistently demonstrated an ability to maintain a home environment that is calm and predictable so she, Mr. Kahraman, Dylan and Kenan, safety monitors and providers are safe.

Mr. Kahraman recognizes and articulates that Mrs. Kahraman's behaviors and Mr. Kahraman's lack of intervention are causing physical and emotional harm to Kenan and Dylan and displays and ability to protect his children - MET
Mr. Kahraman displays genuine remorse and has open and honest conversations regarding his behavior. - MET
Mr. Kahraman allows providers and responsible adults access to the home when asked, both scheduled and unannounced visits. - MET
Mr. Kahraman demonstrates a willingness to follow the safety plan and abide by the direction of the safety monitor and providers. Mr. Kahraman will allow the safety monitor to re-direct him. - MET
Mr. Kahraman has consistently demonstrated an ability to maintain a home environment that is calm and predictable so he, Mrs. Kahraman, Dylan and Kenan, safety monitors and providers are safe.  - MET

III.  **IDENTIFICATION, LOCATION, AND ENGAGEMENT OF EXTENDED FAMILY MEMBERS AND OTHER IMPORTANT CONNECTIONS (only applicable for children in out-of-home care)**

A.  **Results of efforts to identify, locate, contact, and engage adult relatives of the child, including grandparents, great-grandparents, adult siblings, parents, step-parents who have custody of any siblings, aunts, uncles, first cousins, and persons who have a significant relationship with the child; and if known, information about each person's willingness to be a potential out-of-home caregiver for the child.**

Maternal grandparents were assessed as placement, however were denied due to not understanding the safety concerns and aligning themselves with the parents by refusing to provide food to Kenan when he was hungry.

Maternal great uncle has previously expressed an interest in being placement for the children on a long term basis if needed, however he resides in an retirement community and would have to purchase a new home in order to have the children placed in his care. If the children need permanent placement, the uncle is willing to purchase a new house.

B.  **Description of the child's important connections, including information provided by the child, parents, and/or guardians; and efforts to maintain these connections.**

Maternal grandparents are allowed to attend 2 visits a month with the children in order to continue the relationship. Maternal great uncle has expressed a desire to see the children, however mother has denied him being able to attend visitation.

C.  **Description of contact between the child and the child's relatives, friends, former foster parents and any connections the child identifies; and if contact is restricted, the reasons why.**

Dylan and Kenan have supervised visitation with Ms. Kahraman and maternal grandparents at this time.

Dylan and Kenan have unsupervised contact with Mr. Kahraman.

D.  **Efforts to maintain cultural connections, including opportunities for the child to build cultural awareness, identity, and involvement.**

Ms. Kahraman can bring cultural activities and traditions to visit to share with the children.

Mr. Kahraman is educating the children about Turkish culture and language.

IV.  **CHILD FUNCTIONING, SERVICES, AND LIVING ARRANGEMENT**

A.  **The child's physical, developmental, and emotional functioning; including the child's medical, dental, behavioral health, and developmental needs and services.**

Dylan is 8 years old and is residing with his twin brother, Kenan Kahraman. Dylan enjoys spending time with his brother, Kenan. Dylan is open with JFCS for behavioral health services. Dylan engages in individual counseling as well as some sessions with his brother Kenan. The therapist is working with Dylan on speaking up for himself and emotional expression.

Kenan is 8 years old and is residing with his twin brother, Dylan Kahraman. Dylan enjoys spending time with his brother, Dylan. Kenan is open with JFCS for behavioral health services. Kenan engages in individual counseling as well as some sessions with his brother Dylan. The therapist is working with Kenan on emotional expression. Kenan's heart failure has completely resolved itself since being on a proper diet.

**B.   The child's academic status and social development, including the child's needs and services, and efforts to ensure the child's educational stability.**

Dylan and Kenan just started the 2nd grade and there are no concerns noted. Due to COVID and their medical health history, the children are currently being homeschooled.

**C.   For youth age fourteen or older in out-of-home care, efforts and plans to assess and provide services to support the youth's preparation for adulthood.**

N/A

**D.   History of living arrangements (placements), including the length of time the child has been in out-of-home care (if applicable), and the type and dates of each living arrangement.**

Dylan
12/28/2019-01/11/2019: DDD Licensed Foster Home
01/11/2019-09/04/2020: DDD Licensed Foster Home (with Kenan)
09/04/2020-Current: Father

Kenan
12/28/2019-01/07/2019: Cardon's Children Medical Center
01/07/2019-09/04/2020: DDD Licensed Foster Home (with Dylan)
09/04/2020-Current: Father

**E.   Description of the child's current living arrangement, including the type; whether this living arrangement is consistent with the Department's placement preferences; and if the child is in out-of-home care and not living in the home of a grandparent, other relative, or person who has a significant relationship with the child, the reasons why such placement has not been identified or is contrary to the child's best interest.**

Dylan and Kenan are currently residing with their father, which is consistent with the Department's placement preferences.

**F.   If the child is an Indian child, efforts to place the child according to ICWA**

**placement preferences and active efforts to provide culturally appropriate services.**

N/A

G. **If the child has a sibling in out-of-home care, efforts to place siblings together; and if not placed together, the specific reasons why this did not occur or reasons why this would be contrary to the child's or sibling's safety or well-being.**

The children are together with their father.

H. **If placement with sibling(s) is not possible, efforts to facilitate frequent visitation or contact with siblings; and if frequent visitation or contact with siblings is not recommended, the reasons why this would be contrary to the child's or a sibling's safety or well-being.**

N/A

I. **If out-of-state placement is appropriate and in the best interest of the child, the reasons why (include ICPC and/or out-of-state visitation status).**

N/A

J. **Description of any assistance or services provided to the caregiver(s) to enhance their capacity to address the child's needs and provide appropriate care and supervision.**

Mr. Kahraman is currently open with a family reunification team and receives monthly in person contact with DCS.

K. **Description of the Department's and out-of-home caregiver's efforts to implement reasonable and prudent parent standards to allow the child to participate in age and developmentally appropriate extracurricular, enrichment, cultural, and social activities.**

Dylan and Kenan participate in age appropriate activities with their father.

V. **PARENT FUNCTIONING AND CASE PLANNING**

A. **The behavioral changes necessary in order for the parent, guardian, or custodian to demonstrate enhanced caregiver protective capacity and eliminate the safety threats (as described in the case plan).**

Ms. Kahraman will need to report medical history and conditions accurately,(free from exaggeration or falsifying in order to prevent unnecessary medical treatment).

Ms. Kahraman will need to gain insight into her own mental health condition and how this impacts her ability to safely parent her children.

Ms. Kahraman will understand the ages and stages of child development and parent according to what is developmentally appropriate. Mother will need to work

with service providers in order to gain insight into her children's needs and how to respond appropriately. Ms. Kahraman will need to participate in psychological services to include but not limited to; psychological evaluation and follow recommendations made by service providers. Mother will need to acknowledge the reasons why her children came into care and accept responsibility.

Mr. Kahraman will need to report medical history and conditions accurately,(free from exaggeration or falsifying in order to prevent unnecessary medical treatment).

Mr. Kahraman will need to gain insight into mother's mental health condition and how this impacts her ability to safely parent her children. Mr. Kahraman will need to have a plan to protect his children form Ms. Kahraman.

Mr. Kahraman will understand the ages and stages of child development and parent according to what is developmentally appropriate. Father will need to work with service providers in order to gain insight into his children's needs and how to respond appropriately. Mr. Kahraman will need to participate in psychological services to include but not limited to; psychological evaluation and follow recommendations made by service providers. Father will need to acknowledge the reasons why his children came into care and accept responsibility.

**B.    Each parent's, guardian's, or custodian's progress, or lack of progress, toward achieving necessary behavioral changes (including changes in caregiver protective capacities or family protective factors).**

Ms. Kahraman will need to report medical history and conditions accurately,(free from exaggeration or falsifying in order to prevent unnecessary medical treatment).- In Progress

Ms. Kahraman will need to gain insight into her own mental health condition and how this impacts her ability to safely parent her children. - Not Met

Ms. Kahraman will understand the ages and stages of child development and parent according to what is developmentally appropriate. Mother will need to work with service providers in order to gain insight into her children's needs and how to respond appropriately. Mother will need to acknowledge the reasons why her children came into care and accept responsibility. - In Progress

Mr. Kahraman will need to report medical history and conditions accurately,(free from exaggeration or falsifying in order to prevent unnecessary medical treatment). - Met

Mr. Kahraman will need to gain insight into mother's mental health condition and how this impacts her ability to safely parent her children. Mr. Kahraman will need to have a plan to protect his children form Ms. Kahraman. - Met

Mr. Kahraman will understand the ages and stages of child development and parent according to what is developmentally appropriate. Father will need to work with service providers in order to gain insight into his children's needs and how to respond appropriately. Mr. Kahraman will need to participate in psychological

services to include but not limited to; psychological evaluation and follow recommendations made by service providers. Father will need to acknowledge the reasons why his children came into care and accept responsibility. - Met

**C.    Services and supports provided to assist in achievement of the behavioral changes identified in the case plan; and the participation in, and outcome of services and supports.**

Jessica Kahraman

Therapeutic Visitation

Since being open to engaging in feedback sessions and working through the accepts model, Ms. Kahraman has made progress in the accepts model. Ms. Kahraman has made progress in demonstrating healthy, safe, age appropriate parenting skills and coping skills that are shown to be healthy and safe.

Ms. Kahraman is continuing to work on acknowledging her responsibility for her abusive behaviors, demonstrating empathy for what her children have suffered as a result of her actions, demonstrating the ability to take charge of their lives in a healthy manner and developed a healthy non abusive support system.

Southwest Human Development has requested an extension in order to continue to work on these goals, and this is in progress.

Individual Counseling

In May 2020, Ms. Kahraman voluntarily chose to end services with Dr. Kelly Rodriguez. At the time of the closure, Dr. Rodriguez was working with Ms. Kahraman on making medical decisions based on fact and processing that the recommendations made from doctors came from information provided by Ms. Kahraman.

In June 2020, Ms. Kahraman started counseling with Dr. Celice Korsten through private pay. Based on the notes provided by Dr. Korsten, Ms. Kahraman is not making decisions based on fact. Ms. Kahraman reported to Dr. Korsten in June 2020, that Mr. Kahraman was doing unsupervised, even though this was not accurate information. It is concerning that Ms. Kahraman is continuing to report inaccurate information.

Dr. Korsten has reported that Ms. Kahraman has met all goals except for her EMDR due to the open DCS case.

Psychological Evaluation

Ms. Kahraman completed an updated evaluation on 02/20/2020. Dr. Oakley made the following observations:

Ms. Kahraman's prognosis appears to be improved since her last psychological evaluation. It continues to be dependent on her willingness to be open to gaining

insight regarding her role in her children's health issues, and her ability to make the necessary changes as a result. Ms. Kahraman still spoke at length about the children's medical issues, and suggested that there may have been some underlying issues that contributed to their issues. Yet, she acknowledged that malnutrition from their diet was mostly responsible.

Ms. Kahraman has demonstrated that she is invested in having the children returned to her care. Records have suggested that she has done well at visits and that she has likely demonstrated as much as possible given the current limitations of her interactions with the children. Mother explained that she is willing to make changes. The next steps may include her having more flexibility in her interactions with the children, particularly as it relates to food and her focus on their physical health. Eventually, if they are going to be returned to her care, Ms. Kahraman will need to demonstrate that she can choose appropriate meals for the children. It would be best to do this in a step-wise fashion. Mother also needs to continue to accept that the children are strong and healthy, and to not reinforce symptoms or ailments in the children. Ms. Kahraman would benefit from continuing with her mental health treatment. She described that she has made significant personal progress. She would benefit, however, from additional insight to help her understand her role in this case. She also could benefit from support to remind her to stick with the changes she has made and not resume her previous patterns of rigidity and inflexibility, especially if she is getting more time or freedoms with the children.
Some sort of mediation or family services would be beneficial if the children are to be returned to both homes. They family needs a parenting plan so that the children have similar routines and rules while in the two different homes; this is particularly important given the children's Autism diagnosis. Mother expressed interest in co-parenting with Father, though was somewhat worried about how he would interact with her. Father expressed disinterest in co-parenting.

It appears that Ms. Kahraman has been given the services that she needs to be successful; she has also participated in additional services on her own accord. Loosening the restrictions related to her interactions with the children will help her better demonstrate if she is able to make ongoing, measurable changes. This will need to occur if the children are to be returned to Ms. Kahraman's care.


Records Review Evaluation with Dr. Michael Kelly

Dr. Kelly completed his evaluation on 12/02/2019. Dr. Kelly noted the following:

It is my opinion, with reasonable medical certainty, that allowing Ms. Jessica Kahraman to care for her sons, Dylan and Kenan, places them in significant danger for additional harm.
It is also my opinion that additional recommendations must be followed to determine if Ms. Kahraman is psychotic and/or has other mental health conditions that are preventing her from parenting the boys safely.
It is my opinion that Ms. Kahraman needs mental health treatment services, like those described in the opinion section of this report, in order to make enough progress toward the goal of reunification with Dylan and Kenan.

I cannot opine on whether Ms. Kahraman meets Diagnostic Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) criteria for a mental disorder because she deferred meeting with me, and I was not granted access to her entire medical record. However, it is my opinion, with reasonable medical certainty, that Ms. Kahraman's behavior toward her sons raises concerns for mental illness, and that regardless of the cause of Ms. Kahraman's behavior, she is currently incapable of providing safe and adequate care to her boys. (Please see pages 4-13 of the evaluation attached for his evidence that supports his opinion) Dr. Kelly reports in the 10 pages that Ms. Kahraman's concerns about food and chemical sensitivities are unwarranted. Dr. Kelly states "It is unclear whether Ms. Kahraman's statements related to Kenan's chemical sensitivities reflect attempts to evade detection of abuse or serves as evidence that she has lost touch with reality." and "Ms. Kahraman was aware that restricting her boys' nutritional intake for extended periods of time would cause harm." Dr. Kelly noted "Ms. Kahraman's decision to defer taking Kenan to the hospital despite allegedly observing him have seizures, vomit up liver flukes, and pass parasites in his stool defies common sense."

It is my opinion, with reasonable medical certainty, that Ms. Kahraman is currently unable to demonstrate minimally adequate parenting skills. Ms. Kahraman will require continued mental health treatment and appropriate supervision to determine if she can demonstrate minimally adequate parenting skills in the foreseeable future. Please see the examples of Ms. Kahraman's behavior in this report and the Jessica Kahraman Date of Birth: 08/29/1972 accompanying chronological summary of records for evidence supporting my opinion.

It is my opinion, with reasonable medical certainty, that Kenan and Dylan are at risk for serious harm if returned to Ms. Kahraman's care. Evidence supporting my opinion includes, but is not limited to, Ms. Kahraman's belief that the boys' health problems are due to sensitivities to environmental chemicals and mold rather than inadequate nutrition, her unsubstantiated claims that Kenan has been infested with parasites, and her reports of chronic food intolerances that were shown to be false once the children were removed from her home.

I carefully considered whether Ms. Kahraman's current treatment program was optimal based on the findings and recommendations from Dr. Mary Oakley's psychological evaluation dated 04/16/2019. However, it is my opinion, with reasonable medical certainty, that Ms. Kahraman may be suffering from undiagnosed mental illness that was not apparent during her meeting with Dr. Oakley. It is also my opinion that Ms. Kahraman may benefit from additional mental health services as she progresses toward reunification with her sons.

It is my opinion that the standard protocol for therapeutic supervised visitation used by DCS must be followed in order to ensure Dylan and Kenan's safety. Dylan and Kenan's parents should not be allowed to supply food during visits. Ms. Kahraman's continued denial of the cause of Kenan's health problems and her role in precipitating them and records indicating that she may have misrepresented Kenan's calorie count in the hospital, of her role in precipitating the boys removal from her care, medical records indicating that she may have misrepresented Kenan's calorie count during his hospital stay necessitate that the parents not be

Progress Report to Juvenile Court

allowed to supply food during visits.

Father, Ahmet Kahraman

Individual Counseling

In April 2020 Mr. Kahraman worked in therapy on processing his emotions regarding the Dr. Kelly report and mother's psychological evaluation. Mr. Kahraman was working on making a plan to keep his children safe in regards to Ms. Kahraman.

In May 2020, Mr. Kahraman continued to work on safety planning for his children and how that would look in the future. Mr. Kahraman continued to process the children's medical history and what they have experienced, including internal hydrotherapy.

In June 2020, Mr. Kahraman's therapy decreased to biweekly. Mr. Kahraman expressed concerned whether or not Ms. Kahraman was following through on her reported willingness to coparent due to the fact that Ms. Kahraman would rather have the children placed with her parents instead of father.

In July 2020, Mr. Kahraman was successfully closed from therapy with all goals being met.

Psychological Evaluation

Mr. Kahraman completed a psychological evaluation with an interpreter present on 2/19/2020. Dr. Oakley noted the following:

Mr. Kahraman's prognosis is fair. He has apparently gained insight regarding the case. Furthermore, he has taken accountability for his actions and described that he is willing to protect the children. There is some concern how well he will be able to coparent, if it comes down to that.

Mr. Kahraman has been transitioning to more privileges with the children. It is advised that this trend continue, as long as things continue to go well. He should be included in any medical appointments so that he can get in the habit of being an active participant.
Furthermore, Mr. Kahraman would benefit from continuing with individual counseling services to help him cope with the adjustment of having the children more time and on his own. Treatment should address coping skills to utilize if he becomes overwhelmed. He should also be encouraged to address his anger with Mother in treatment, and any resulting behaviors. Treatment should address different types of relationship violence. If the children are going to be returned to both homes, some sort of mediation or family services would be beneficial. They family needs a parenting plan so that the children have similar routines and rules while in the two different homes; this is particularly important given the children's Autism diagnoses. Mother expressed interest in co-parenting with Father. Mr. Kahraman expressed disinterest in co-parenting.

Parent Aide

Mr. Kahraman completed his intake for parent aide services on 02/18/2020. Mr. Kahraman completed one skill session for February 2020, which focuses on proper nutrition and meal planning. In February and March 2020, father has attended all visitation and skill sessions. The parent aide reports that father is open and engaging in the skill sessions. Mr. Kahraman is flexible with his children and allows for them to lead the visit and provide ideas on things they would like to do.

In April 2020, Mr. Kahraman attended all visitation and skill session. The midpoint was completed in April and Mr. Kahraman fully enhanced 4 out of 9 protective capacities. The parent aide reported he had made progress in the remaining 5 capacities, but they were still working on them. He fully enhanced the following capacities:

Controls Impulse
Sets aside own needs for child
Recognizes Threats
Understands Protective Role

In May and June 2020, Mr. Kahraman attended all visitation and skill sessions. Mr. Kahraman fully engaged in all skill sessions and was open to feedback and communication with the parent aide. By the end of June 2020, Mr. Kahraman had fully enhanced the remaining 5 capacities. The following 5 capacities were enhanced:

Takes Action
Is Self-Aware
Recognizes Childs Needs
Plans and Articulates plans for protection
Meets own emotional needs

In July 2020, the parent aide and Mr. Kahraman continued to review all capacities until successful closure on 7/30/2020.


Family Reunification Team

Mr. Kahraman started with a family reunification team on 08/04/2020. Mr. Kahraman has consistently engaged in this service and has worked with the team on a successful transition of the boys to father's home. Mr. Kahraman has the children enrolled in school and have them established with doctors. Mr. Kahraman has met all of his goals and has successfully closed out of all services as of 10/30/2020. Mr. Kahraman worked on ensuring that he is able to meet all of his children's needs as a single parent, building a support system and positive single parenting.


**VI.    PARENTING TIME (VISITATION)**

**A.**   **The plan for parenting time (visitation) for each parent and child; including the frequency, length, location, level of supervision, why a less restrictive level of supervision is not sufficient to ensure child safety, and the plan for progressive parenting time.**

Ms. Kahraman currently has 4 hours of therapeutic visitation through Southwest Human Development. These visits occur at the SWHD visitation center.

The children are currently in the care of Mr. Kahraman.

**B.**   **Attendance at, and results of, parenting time (visitation) between each child and parent, guardian, or custodian since the last report to the court.**

Ms. Kahraman was consistently attending visitation, however on 4/22/2020, mother informed all parties that she intended to record the visitation and feedback sessions. This is a violation of Southwest Human Development policy, so visitation did not occur until 5/11/2020 as Ms. Kahraman was awaiting a ruling from the court on recording visitation. Since visitation resumed, Ms. Kahraman has been consistent with visitation.

## VII.   PERMANENCY GOAL AND CONCURRENT PLANNING

**A.**   **Permanency goal and target date (attach case plan).**

Remain with Family

**B.**   **Concurrent goal and target date, including a description of activities initiated to implement the concurrent plan, if applicable.**

N/A

**C.**   **Recommended permanency goal and target date, if different than the current permanency goal.**

N/A

**D.**   **Reason for recommended change in permanency goal, if applicable.**

N/A

## VIII.   DCS SPECIALIST'S CONCLUSIONS

It is this case manager's conclusion that Mr. Kahraman has demonstrated the ability to safely parent Dylan and Kenan Kahraman and is able to meet all of their needs. Mr. Kahraman is aware and is able to articulate the current safety concerns with Ms. Kahraman parenting the children. Mr. Kahraman is able to meet the children's educational, medical, and behavioral health needs.

Ms. Kahraman is a significant safety concern to her children with the choices she makes on their behalf in regards to their health and well-being. Ms. Kahraman is encouraged to continue to work with Southwest Human Development and her

therapist Dr. Celice Korsten to make progress towards being able to safely and appropriately parent her children.

At this time, due to Mr. Kahraman being a safe and appropriate parent and making all necessary behavior changes, it is respectfully recommended that JD532206 be dismissed in its entirety.

## IX.    RECOMMENDATIONS

### A.    Agency

It is respectfully recommended that <u>Dylan and Kenan Kahraman not</u> remain a ward(s) of the court, committed to the care, custody and control of the Arizona Department of Child Safety.

It is further respectfully recommended that <u>Dylan and Kenan Kahraman</u> be placed in the physical custody of <u>Ahmet Kahraman</u> with appropriate medical, social, and educational authorizations.

If the child is in out-of-state placement, it is further respectfully recommended that the court find that the out-of-state placement continues to be appropriate and in the best interest of the child.

### B.    Financial

It is respectfully recommended that beginning (date) _____ , the parents listed below be assessed the following amounts on a monthly basis per child as the contribution towards the cost of foster care:

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

(parent name) _____ be assessed $ _____ monthly for each of the following children: _____

### C.    Reasonable Efforts Findings

It is respectfully recommended that the court find that the Arizona Department of Child Safety has made reasonable efforts to eliminate the need for continued out-of-home placement and to make it possible for the child to safely return home.

**It is further respectfully recommended that the court find that the Arizona Department of Child Safety has made reasonable efforts to place the child in a timely manner in accordance with the permanency plan and to finalize the permanent placement of the child.**

**It is further respectfully recommended that the court approve the permanent case plan.**

Respectfully submitted:

**Name/Title**    Madison Bell DCS Specialist
**ARIZONA DEPARTMENT OF CHILD SAFETY**
**Telephone Number:**    480-656-9306
**Date:**    10/30/2020

**Approved by:**

**Name/Title**    Mecca Temple DCS Program Supervisor
**ARIZONA DEPARTMENT OF CHILD SAFETY**
**Telephone Number:**    480-656-9427
**Date:**    10/30/2020

**Case Name:** KAHRAMAN, JESSICA    **Case ID:** 608484

CLERK OF THE
SUPERIOR COURT
FILED
_Swank Gr_  DEP
2020 NOV -6  PH 1:58

1   **DeeAn Gillespie Strub #009987**
2   **GILLESPIE, SHIELDS, GOLDFARB & TAYLOR**
3   7319 North 16th Street
    Phoenix, Arizona 85020
4   Telephone: (602) 870-9700
    Fax:  (602) 870-9783
5   Email: mailroom@gillaw.com
6   *Attorney for Respondent*

EXHIBIT 279
_BELL_
8-23-21 MHD

7
8      **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
9          **IN AND FOR THE COUNTY OF MARICOPA**

10  In re: the matter of:            No. JD532206
11
    DYLAN KAHRAMAN                   **MOTHER'S OBJECTION TO THE**
12  (d.o.b. 9/27/12),                **COURT'S CONSIDERATION OF THE**
                                     **DCS REPORT AT THE SCHEDULED**
13                                   **HEARING**
    KENAN KAHRAMAN
14  (d.o.b. 9/27/12),                *(Assigned to the Hon. Jennifer Green)*
15
    Persons under 18 years of age.
16

17          Jessica Kahraman ("Mother") submits this report to the court in connection

18  with the Report and Review hearing set for November 9, 2020 at 10:30 am.

19
20          DCS has a duty under Rule 58 C to provide the court and parties an

21  updated case report to the court *at least fifteen days prior* to a report and review

22  hearing. *This report must include the progress the parties have made toward*

23
24  *achieving the case plan goals.* As Mother's report was being drafted, Ms. Bell had

25  not circulated any case report, even though it was less than two business days

26
27
28

*(left margin vertical text)* GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 N 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

1

prior to the November 9 report and review hearing.[1] Mother had specifically requested timely disclosure of the September reports, which has not occurred. Under Rule 45(C), "reports prepared by the child safety worker" may be reviewed by this Court and admitted into evidence *if* they are provided "ten (10) days prior to any hearing." Since Ms. Bell's report is untimely, Mother objects to it being considered by this Court in the upcoming hearing and to it being admitted into evidence.

In addition to its untimeliness, Ms. Bell's report should further not be considered because it is misleading and unreliable. The report is riddled with old information and Ms. Bell's own unfounded and unsupported conjecture and opinions. In fact, Ms. Bell has not personally met with Mother to assist in reunification efforts *since March* of this year. Ms. Bell has demonstrated a need for this case to remain static, and not allow Mother or her children to advance toward reunification.

It is well established that the state is not permitted to tell "less than the total story" to "manipulate the inferences" the court may draw, or "intentionally or recklessly omit[ ] facts required to prevent technically true statements … from

---

[1] This morning, as Mother's report to the court was being finalized, counsel checked JAX and saw that caseworker Bell uploaded a report dated October 30, 2020 (eight days ago) just yesterday, November 6, 2020, with no email notification of the same. As anticipated, Ms. Bell substituted her own ill-conceived opinions, which are not based on fact, and are contrary to multitude of expert and service provider opinions who do not agree with her biased assessment of Mother.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

being misleading." *Frimmel v. Sanders*, 236 Ariz. 232, 239 ¶ 27 (App. 2014) (quoting *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985)). Courts have long recognized that the state deceives the court not just when it presents information that is false, but also when the state submits documents that include "reckless omissions of facts that tend to mislead" the court. *Id.*

In her belatedly-disclosed October 30 case report, Ms. Bell willfully deceives the court by omitting relevant and necessary information. Ms. Bell recites *ad nauseam* "out of date information as an expression of the current status" while omitting current fact-based information. Courts have recognized that the state's "use of out-of-date information as an expression of current status tends to support a claim of recklessness" in regards to the truth. *Id.* at 240, ¶ 31. Additionally, courts have held that "the unexplained failure to ... disclose written information prepared by and readily available" to the state, also shows that the state acted "recklessly." *Id.* at 241, ¶ 36.

Ms. Bell willfully chose omit from her report to the court the critical information that Dr. Celice Korsten stated, in a letter dated November 3, 2020, that "...**Ms. Kahraman is capable of making medical decisions that are in the**

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

best interests of the children..." (Exhibit A.)[2] Ms. Bell also did not inform the court that in a previous letter dated October 29, 2020, Dr. Korsten explained that her work with Mother has come to a standstill as **there have been no further concerns expressed by DCS or SWHD.** (Exhibit B.)[3]  Further, no SWHD personnel attended the scheduled case plan meeting in October 19, 2020, nor did they provide anything substantive for discussion in Mother's therapy.

Dr. Korsten further clarified that Mother has willingly completed the following goals, which are demonstrative of the fact that she has exceeded all of DCS' objectives:

1. Attended weekly therapy since June 6, 2020;

2. **Achieved her _third_ set of treatment goals from DCS;**

3. Completed all trauma work (EMDR) that is possible until the case has concluded;

4. **Addressed all "concerns" expressed by SWHD, which are indicated to be subjective parenting tips such as encouraging Kenan to cut his own pancakes and less frequent prompting of the children to identify their emotions.**

---

[2] Since this letter has been provided to parties well in advance of the hearing, Mother requests that it be admitted into evidence and considered by the court at the upcoming hearing.

[3] Since this letter has been provided to parties well in advance of the hearing, Mother requests that it be admitted into evidence and considered by the court at the upcoming hearing.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

(Exhibit B.)

Ms. Bell willfully omitted relevant material information about Mother meeting DCS' expectations and goals as corroborated by professionals. Instead, she substitutes her non-expert opinion that Mother's considerable progress constitutes merely "checking boxes" and "mimicking." DCS' goals had clearly all been achieved by September 2020 at the latest. Aware of the complexities posed by Ms. Bell, Dr. Korsten carefully ensured all goals and DCS objectives had been addressed and clearly met before submitting her report.

Further, over the past two months, Mother was finally provided the opportunity to participate in telephonic family therapy with the children's therapist, Jenna Young. Ms. Young communicated at the October 22, 2020 Child & Family Therapy (CFT) meeting *at which Ms. Bell was present*, that she was pleased both parents were engaged and applied feedback. During Mother's therapy session on October 30, 2020, Ms. Young praised Mother for her growth during CFT meetings, sharing she had tested Mother with topics she believed could be triggering, and giving kudos to Mother. She observed that Mother quietly listened, had not engaged in baited discussions out of alignment with DCS objectives, and had shown no signs of defensiveness. She shared that it is evident both parents love the boys immensely and were heading favorably toward unified family therapy with both parents and children. Family therapy was long

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

overdue and could have been implemented many months earlier had Ms. Bell not intentionally stalled and ignored Mother's repeated requests to participate in family therapy. ***Ms. Bell is also aware of this important fact-based material information and willfully and improperly chose not to include it in her report.***

Ms. Bell also chose not to document in her report that the July and August reports clearly evidence Mother's consistent discussions and acceptance of responsibility via the ACCEPTS model. This information was also suppressed and should have been available to all parties and the court prior to the September 15, 2020 hearing, as the information contained in them was supportive of and relevant to Mother's pending CPC.[4] ***The content of these informative reports also warranted implementation of family therapy many months earlier.***

In contradiction of the unsupported opinion Ms. Bell set forth in her inaccurate case report, ***both caseworker Madison Bell and the personnel at SWHD have previously stated they have no concerns regarding Mother's parenting abilities.*** Beth Revell-Matthews, Mother's family counselor at SWHD, shared with Mother that the September report documents their detailed discussion on the ACCEPTS model (wherein Mother recounted all her therapy work to ensure all DCS concerns had been reiterated in recent discussions.) ***Ms.***

---

[4] Southwest Human Development's reports for July and August were not disclosed until September 28, 2020 after a court order required the same.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ◆ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ◆ Fax (Mesa): (480) 985-7552

*Revell-Matthews praised Mother for her consistent application of visit feedback and shared this in September's SWHD report.* (Exhibit C.)[5] These facts do not constitute "checking boxes" or "mimicking."

As stated above, Ms. Revell-Matthews confirmed this report was timely provided to Ms. Bell on or before October 28, 2020. *However, Ms. Bell unreasonably withheld this important report from the parties, and has never shared it with Mother's therapist, as SWHD anticipated.* This morning, the AAG claimed this report was uploaded to JAX yesterday, however this document does not appear visible to undersigned, despite checking twice over. Ms. Bell's conduct of intentionally withholding of favorable material information from this Court and parties should not be accepted. This type of egregious conduct violates the protective tenets of due process.

Due to Ms. Bell's misconduct, Mother has now been compelled to commence a *third* round of the same Nurturing Parent lessons which she has previously completed at SWHD, even though *Ms. Bell clearly told Dr. Korsten in June that she had no concerns about Mother's parenting.* This third round of lessons is being implemented not because of any deficit in Mother's parenting, but because SWHD has initiated a new policy under its new manager utilizing

---

[5] Since this report has been provided to parties well in advance of the hearing, Mother requests that it be admitted into evidence and considered by the court at the upcoming hearing.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

this model with all families it serves, even if this course has been successfully completed in the past. Mother has now been participating in services at SWHD longer than most of the present staff have even been employed there. This threefold redundancy in Mother's services is an unreasonable use of public resources which should be allocated to families who truly stand in need of them. Further, it underscores Mother's position that the services provided by SWHD have long outlived their utility.

Ms. Bell's report also intentionally omits the material fact that Mother's parental fitness is demonstrated in SWHD's October/November feedback notes (as provided to Mother at the end of each visit), (Exhibit D)[6] which detail the following:

1. Mother's consistent application of feedback;

2. Mother's calm demeanor during safety matters;

3. Mother's provision of a variety of food the children enjoy preparing and eating;

4. Mother's supportiveness during conversations about activities with Father and paternal Grandmother;

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ◆ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ◆ Fax (Mesa): (480) 985-7552

---

[6] Since these notes have been provided to parties well in advance of the hearing, Mother requests that they be admitted into evidence and considered by the court at the upcoming hearing.

8

5. Mother's appropriate setting of boundaries and encouragement of table manners;

6. The children's loving bond with Mother and enjoyment of the visits.

The state's most recent filing in response to mother's request to transition from supervised visitation at SWHD claims that SWHD had not made any recommendations concerning whether their services should be terminated. Its position is accurate, but meaningless. *SWHD Supervisor Carla White indicated it is not within SWHD's scope to make recommendations for any parent's reunification progress or whether their services should be terminated.* Even so, SWHD reports and feedback notes through October make it evident Mother has met their objectives and poses no danger to her children. This is opinion is affirmed by Dr. Schoeckenstein's SWHD records review. Ms. Bell's report inexcusably ignores all of these material facts.

Although the state also claimed it is waiting on Dr. Korsten to make a recommendation concerning Mother having unsupervised visitation, such a position is also meaningless, as such recommendations are also not within her purview. Dr. Korsten has acknowledged Mother's completion of all provided objectives and goals, but she has been denied the opportunity to observe Mother's

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

visitation with the children.[7] Dr. Korsten therefore cannot professionally opine regarding the children progressing to unsupervised access with Mother. That decision lies with Ms. Bell. The AAGs assigned to this matter must stop endorsing Ms. Bell's reckless conduct. The tail should not wag the dog.

Ms. Bell has provided no additional objectives for Mother, as none are needed. In fact, she curiously told Dr. Korsten that she was awaiting direction *from the court* as to the children's reunification with Mother.[8] Such a statement was completely disingenuous. She has the authority and exercised it as it related to Father. Ms. Bell is obviously unwilling to advance the court-ordered case plan of family reunification for Mother.

Ms. Bell used her authority to rapidly advance Father's progress into unsupervised access with the children, despite January and February SWHD reports stating Father had *not* accepted responsibility and he had also directly contradicted his earlier position that his actions and positions regarding the children's diet were appropriate. Ms. Bell now disingenuously claims she lacks the authority to advance Mother's case plan to unsupervised access with the children. Ms. Bell has resisted advancing reunification contrary to the abundant

---

[7] Ms. Bell has resisted any third-party observation of the visits even though such observation would provide this Court with a more complete, and unbiased, review of those visits.

[8] This state is speaking out of both sides of its mouth. The AAG claimed in its recent response to Mother's request to the court that DCS was awaiting a recommendation from Dr. Korsten before proceeding. Yet Ms. Bell told Dr. Korsten she was awaiting a ruling from the court before proceeding.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

documentation (including PhD-level recommendations) available to her, some of which is referenced herein, that Mother has met DCS' objectives and is fit to parent. *Ms. Bell has inexusably ignored the universe of fact-based information that does not square with her desired court action.*

It is profoundly improper for Ms. Bell to use her government position to stymie the case plan of reunification for Mother, leaving Mother in a pointless holding pattern at SWHD. It has now become evident that caseworker Ms. Bell has willfully refused to make reasonable efforts in her role as a governmental gatekeeper to advance the court-ordered case plan of reunification for Mother and her children.

Even though DCS has persisted in not giving Mother much latitude to demonstrate her fulfilment of their objectives under Ms. Bell's oversight, Mother has managed to satisfy all of DCS' objectives since the previous hearing of September 15, which occurred seven weeks ago. Ms. Bell has again unlawfully and unfairly suppressed documentation substantiating Mother's efforts and achievements.[9] Withholding relevant and material information from the court and parties is in contravention of Ms. Bell's duties to respect the due process

---

[9] Ms. Bell has unreasonably withheld the September SWHD reports. Mother's therapist, Dr. Celice Korsten, was informed more than a week ago by Beth Revell-Matthews of SWHD that the September reports had been forwarded to Ms. Bell. Mother has reason to believe from her conversations with Beth Revell-Matthews and the notes she has been provided at the end of each visit that the September reports contains significant favorable material information regarding Mother and her interaction with her children.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

rights of parents and children throughout the pendency of the process. A.R.S. § 8-456. Her actions are also contrary to Arizona's strong public policy of strengthening families and are detrimental to both the children and the case plan of reunification.

Mother has a constitutional right to not have the state present false evidence to this court. The "rights secured by the constitution are not mere 'technicalities' which should be swept aside in the interests of expediency even to accomplish the most desired social goal." *Frimmel*, 236 Ariz. at 242, ¶ 42. The courts have made clear that "where there is significant doubt about the propriety" of state conduct, courts "should exercise caution on the side of the Fourth Amendment." *Id*

A clear pattern is now manifest. Ms. Bell did not timely disclose the April 2020 SWHD report prior to the Rule 59 hearing in May. That report contained relevant, positive, material information concerning Mother, including the fact that Mother was willingly addressing the ACCEPTS model and had detailed her acceptance of responsibility. Ms. Bell concurrently pressed the court for a change of case plan to severance while withholding this material information from the court, most likely because it did not support her agenda of severance as to Mother. The Court denied Ms. Bell's improper request to change the case plan to

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ◆ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ◆ Fax (Mesa): (480) 985-7552

severance.[10] Shortly thereafter, Ms. Bell failed to ensure the July and August SWHD reports were timely disclosed to the court and parties, as the contents thereof also did not square with her agenda. Ms. Bell would ultimately be directly compelled by the court to ensure these reports were disclosed no later than September 28, 2020. These reports also contained fact-based relevant material information favorable to Mother, including her positive interaction with the children and fulfilment of the ACCEPTS model.

In June, the Court acknowledged Mother's progress while denying Ms. Bell's request for a change of case plan to severance. Nevertheless, Ms. Bell has not respected the court's decision and seems bent on abusing her governmental authority to penalize and hold Mother back without good cause and in contravention of multiple professionals' recommendations. In her March 2020 psychological evaluation of Mother, DCS' provider, Dr. Oakley, made a clear recommendation to loosen the restrictions on Mother's interactions with her children.[11] This evaluation was ordered pursuant to Dr. Kelly's direction. **It was favorable to Mother and addressed and refuted many of Dr. Kelly's concerns.**

---

[10] In May, contrary to the facts available to her which she suppressed, Ms. Bell unfairly pushed for an unwarranted change of case plan to severance when neither supervisor Carla White of SWHD nor the child's guardian ad litem believed doing so was a prudent course. Certainly, Ms. Bell did not ask their opinion, as she knew their opinions would certainly not favor her personal agenda of severance.

[11] Mother remains at the same two hour twice weekly visitation scheduled instituted in early 2019!

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

**Ms. Bell flatly ignored DCS' own PhD-level evaluator's important recommendation to loosen the existing restrictions on Mother.**

For a prolonged period of time, DCS (through Madison Bell's oversight) unreasonably restricted Mother's ability to bring food to her visits. Neither Dr. Oakley nor Dr. Kelly ever recommended such a stringent and irrational restriction. It was only at the GAL's urging in late October that Ms. Bell staffed this issue and *finally* permitted Mother to bring food to her visits. Even then, Ms. Bell still unreasonably restricted Mother from bringing homemade food for her sons. Mother provided an unlimited diet to the children for eight months via DoorDash before DCS even permitted her to touch the bags of food.[12] **Under Madison Bell's supervision, Mother *then had to wait another full year before she was permitted to bring sealed pre-purchased food, which DCS only permitted last week.*** Ms. Bell is well aware that none of the professionals in this matter ever alleged Mother intentionally harmed or poisoned her children. *These food restrictions were utterly without merit and only served to further obfuscate and delay the case plan.*[13]

---

[12] This restriction could have been confusing to the children, as it implied their parent was somehow poisonous or unfit.

[13] There is no rational basis for DCS' failure (under Ms. Bell's supervision) to have completely removed the food restrictions at SWHD many months ago, when Dr. Oakley unequivocally recommended a lessening of restrictions. Ms. Bell ignored this sound recommendation. Not only did Dr. Oakley advised lessening the restrictions on preparing and serving food, she also recommended lessening restrictions on Mother's access with her sons, which would have

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ◆ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ◆ Fax (Mesa): (480) 985-7552

The children's joy during meal preparation with Mother has been consistently documented in SWHD reports, yet this favorable information is nowhere to be found in Ms. Bell's current case report. Mother has taught her children to follow recipes, measure ingredients, apply math skills and tailor their taste preferences. DCS indicates Mother will *eventually* be able to prepare her own food for the children "if she continues to progress." This is an absurd position, as Mother has completed all of DCS' objectives, and both DCS and SWHD personnel have indicated they have no concerns regarding her parenting. Mother's cooking ability and food safety skills have never been questioned by any of her providers.

In her report, Ms. Bell ignores and suppresses the abundance of favorable and fact-based information regarding Mother's fitness and substitutes her own personal "concern" that Mother is simply checking the boxes and recklessly claims Mother has not changed her thought processes. This notion ignores the fact that Mother has completed three sets of treatment goals through her work with both Drs. Rodriguez and Korsten. Ms. Bell rationalizes away and suppresses contrary information by claiming nonsensically that Mother's progress is a result of her simply "mimicking" what others are saying. Ms. Bell stands alone in her

---

allowed Mother to progress to the services of a parent aide many months ago. Caseworker Bell ignored these sound recommendations as well, despite clearly telling Dr. Korsten in her first conversation with her in June 2020 that she had no problem with Mother's interactions with the boys.

perception, which is clearly not shared by Drs. Korsten, Rodriguez, Newberger, or Shroeckenstein, or by the child's therapist who provides family therapy, or the professionals at SWHD.

Recently, Ms. Bell also unreasonably ignored Mother's requests for information about the children's medical appointments, effectively shutting Mother out, even though both parents had previously been given permission to attend all medical appointments. Ms. Bell's failure to respond to Mother's emails was brought to the attention of the assistant attorneys general both last week and earlier this week, but neither they nor Ms. Bell have yet addressed the issue.

Ms. Bell is shielding Father's failure to provide appropriate information to Mother regarding the children. Father indicated at the TDM on August 10, 2020 that he would be taking the children to his personal therapist that he sees for divorce counseling. Mother has not yet been informed as to who this professional is or whether this appointment has occurred.[14] Father also recently informed Mother that he had taken the children to a new pediatrician. The name of this doctor has also not been disclosed despite a request for the same. The children also told Mother that they had a blood work appointment.

---

[14] While Father failed to keep Mother informed of relevant medical information regarding the children, he seems to busy himself stalking her on social media. Yesterday, Father disclosed through his counsel that Mother liked Becky Plotner's Facebook page years ago. Mother has not been in contact with Becky Plotner for almost a year. Enabling this type of misdirected energy is not healthy or conducive to the eventual need of these parents to effectively co-parent.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

Ms. Bell failed to inform Mother about any of these visits, despite Mother's written request to her the previous week that she receive information regarding medical appointments so she could attend. Mother subsequently emailed Ms. Bell on October 24, advising that she had not been informed of the children's appointments, requesting the results of the children's lab work, and the assurance that she would both be informed of and invited to all future medical appointments. Ms. Bell simply ignored Mother's request.

On October 26, Mother requested that Ms. Bell provide contact info for the children's new pediatrician, as well as for any doctors or therapists either had seen since March. Again Ms. Bell did not reply to Mother's email.

Mother emailed Ms. Bell yet again on the morning of October 28, asking if she had received Mother's previous two emails. As of this filing, neither Ms. Bell nor her counsel have responded to this inquiry. We now know Ms. Bell was simply lying in wait with the intent of preparing her report dated October 30, which she belatedly disclosed just yesterday in her ill-fated effort to ensure the case plan of reunification with Mother could not happen. Ms. Bell must be held accountable for her misconduct.

It is not in the children's best interests for Ms. Bell to misuse her authority to stonewall Mother or shut her out of the children's medical appointments. This

conduct does not comport with the case plan of family reunification. It is another indicator of DCS' failure to make reasonable efforts.

Ms. Bell's consistent failure to follow the providers' recommendations and respond to Mother's reasonable requests, while at the same time compelling Mother to continue in moribund services, is in contravention of the case plan and does not benefit the children. Rather, Ms. Bell has demonstrated an overt abuse of the governmental authority with which she is vested through her employment with DCS.

Rule 58 C required DCS to file a timely, complete and accurate report with up-to-date information. Failing to do so is yet one more factor in Ms. Bell's refusal to make reasonable efforts to advance the case plan of family reunification as to Mother.

"[T]he constitutional right to be free from the knowing presentation of false or perjured evidence" is clearly established. *Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000); *see also Whitaker v. Garcetti*, 486 F.3d 572, 582 (2007) (concluding that "the contours of the Fourth Amendment right against judicial deception" were clearly established by 1996). By 2000, it was clearly established in this circuit that "use of ... fabricated evidence in court in order to" affect "familial bond[s]" "was unconstitutional." *Hardwick*, 844 F.3d at 1117 (9th Cir. 2017). As stated by the Ninth Circuit, today, "[n]o official with an IQ greater than room temperature

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

in Alaska could claim that he or she did not know that" presenting false evidence to the court during a dependency proceeding was a violation of the constitutional rights of parents. *Hardwick*, 844 F.3d at 1118.

What has come to light in the past 24 hours through the content of Ms. Bell's belated court report is deeply troubling. Mother will be filing an order to show cause as to why Ms. Bell should not be held in contempt for her failure to follow the law, as well as her willful and contemptuous disregard of the court-ordered case plan of reunification as to Mother. Ms. Bell's conduct demonstrates a disturbing pattern of continued suppression of material information which is supportive of Mother's unsupervised access with the children.

Mother's proposed CPC motion is presently under advisement, as is her request to move beyond services at SWHD. Granting Mother's CPC is not only factually warranted, but it would resolve both matters. Mother respectfully requests the court grant her pending motion for change of physical custody. If dismissal is to occur, it should not happen until the court has had an evidentiary hearing on the pending order to show cause and thereafter be dismissed with a family court order awarding both parties joint legal decision-making with equal parenting time.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

Respectfully submitted this 6th day of November, 2020.

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

DeeAn Gillespie Strub
*Attorney for Jessica Kahraman*

ORIGINAL filed with the court this 6th day of November, 2020.
COPIES provided this same date to:

Honorable Jennifer E. Green
*Maricopa County Superior Court*

Gregory Coordes
Janna Johnson
Kathleen Martoncik
*Assistant Attorneys General*
Katheen.martoncik@azag.gov
gregory.coordes@azag.gov
janna.johnson@azag.gov

Kinda Johnson-Hurd
*Guardian ad litem for Children*
johnsonK010@mail.maricopa.gov

Rachel Metelits
*Attorney for Father*
rachel.metelits@maricopa.gov

By: _____

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16th Street, Phoenix, Arizona 85020
1630 S. Stapley Drive, Suite 212, Mesa, Arizona 85204
Telephone: (602) 870-9700 ♦ Fax: (602) 870-9783
Telephone (Mesa): (480) 985-4000 ♦ Fax (Mesa): (480) 985-7552

EXHIBIT 1

# ENVISION PSYCHOLOGICAL SERVICES, P.L.L.C.

Celice Korsten, Psy.D.
11201 N. Tatum Blvd., Ste. 300
Phoenix, AZ 85028
Phone: 480-390-2254
Email: ck@envisionpsych.com

October 29, 2020

To Whom It May Concern:

I am the treating psychologist for Jessica Kahraman who started services with me on 06/06/20. Since that time, she has met the Department of Child's Safety's third set of treatment goals for her individual therapy. The only goal that could not be completed was her trauma work (through EMDR therapy) given that much of her trauma is currently linked to her DCS case and can only be concluded once her case is closed out.

Neither DCS nor Southwest Human Development has given me any further guidance as to any remaining concerns. Instead, SWHD did not attend the recent staffing that was scheduled for 10/19/20 stating they believed it was cancelled. As a result, I emailed DCS and SWHD whether there were any additional problems that they needed me to work on with Ms. Kahraman aside from minor issues included in their monthly progress notes (i.e. helping foster independence by allowing Kenan to cut his own pancakes and less frequent prompting to identify emotions). As of date, I have not received a return email. If you have any questions or concerns about my treatment with Ms. Kahraman, please do not hesitate to contact me at (480) 390-2254 or via email at ck@envisionpsych.com.

Sincerely,

*C. Kch., Psy.D.*

Celice Korsten, Psy.D.
Clinical and Forensic Psychologist

EXHIBIT 2

# ENVISION PSYCHOLOGICAL SERVICES, P.L.L.C.

Celice Korsten, Psy.D.
11201 N. Tatum Blvd., Ste. 300
Phoenix, AZ 85028
Phone: 480-390-2254
Email: ck@envisionpsych.com

November 3, 2020

To Whom It May Concern:

This letter is to amend the previous letter I had written on 10/29/20. In that letter it states that I had not received any further guidance as to any remaining concerns about Ms. Kahraman's visits with the children. However, I later realized I had received an email on 10/28/20 at approximately 9:00 p.m. stating that Southwest Human Development had submitted September's progress notes to the case manager and was asking her to send them directly to me. While I have yet to receive these notes, my observations of Jessica indicate that she understands the important of fact-based medical decisions and that she consistently discusses her intent to follow pediatric advice from allopathic doctors only.

I continue to work on the "growth" areas that are submitted by Southwest Human Development each month, although DCS previously reported that they are not concerned with Ms. Kahraman's interactions with the children, but rather, how she will respond to their medical needs in the future. I believe Ms. Kahraman is capable of making medical decisions that are in the best interests of the children at this time. If you have any questions or concerns about my treatment with Ms. Kahraman, please do not hesitate to contact me at (480) 390-2254 or via email at ck@envisionpsych.com.

Sincerely,

*C. Koch, Psy.D.*

Celice Korsten, Psy.D.
Clinical and Forensic Psychologist

Kahraman - 000002

EXHIBIT 3

FC Revell Matthews asked Ms. Kahraman to remind Dylan to replace his mask..

FC Revell Matthews informed Ms. Kahraman when there 15 minutes left in the visit.

*Child Behavior during Visit:*

At the beginning of the visit, Dylan ran into the visit room and hugged Ms. Kahraman affectionately. Dylan presented in an even mood and appeared agreeable to making minimal rules about game play with Kenan. Dylan appeared to become more energetic as the visit progressed and tossed toys and pretended to smash bugs. Dylan appeared moderately engaged with his grandparents throughout the video call portion of visit and interacted with them intermittently. Dylan appeared to pay minimal attention to Ms. Kahraman's cues about cleaning up throughout the visit. Dylan appeared initially resistant to replacing the dolls clothes after he removed them and then sat near Ms. Kahraman and aided her in dressing the doll. Towards the end of the visit, Dylan's mood appeared to shift and he appeared resistant to Ms. Kahraman's prompts, and he spoke in a low tone.

At the beginning of the visit, Kenan ran into the visit room and hugged Ms. Kahraman affectionately. Kenan appeared excited to tell Ms. Kahraman about the family videos that they had watched and provided lots of details about the videos. Kenan appeared to become more energetic as the visit progressed and tossed blocks and various toy items. Kenan appeared to pay minimal attention to Ms. Kahraman's cues about cleaning up throughout the visit. Kenan appeared to initially be resistant to sharing with Dylan and then shared some items with him without incident for the remainder of the visit.

*Glows:*

Ms. Kahraman followed Dylan and Kenan's cues regarding activities after offering to retrieve items from the storage cabinet.

Ms. Kahraman appeared to incorporate previous feedback regarding providing minimal notifications about the time remaining in the visit.

When Dylan and Kenan discussed "slicing" the Pokémon, Ms. Kahraman prompted for the children to engage in a positive behavior of hugging to soft toy, in place of ceasing the aggressive behavior.

*Grows:*

No considerations for this visit.

Visit Date: 10/07/2020

**Notes from the Parent(s)**

Please describe how the visit went:

Ms. Kahraman shared, "Visit was good...I really allowed things to play out today...One thing that came to mind today was Kenan asked Dylan to not knock over his structure that he built and Dylan looked at Kenan for a reaction and then knocked it down and Kenan didn't react...I feel like there was a lot of Dylan poking at Kenan.

Ms. Kahraman shared that when she asked about the inflatable bat that she could have used the word "thought" instead of "feeling." Ms. Kahraman shared that the visit was more, "high energy," and that "they bounced around and played a lot, not as structured as they usually are, which is fine." Ms. Kahraman stated, "It worked out because Dylan was boundary testing and Kenan was flexible."

Do you have any questions or concerns about the recorded information? If so, please list below:

NA

Do you have anything else you would like to add about the visit?

Kahraman - 000003

SWHD Visit Feedback Notes 10.08.20 FC Revell Matthews 2

game. Ms. Kahraman asked Kenan if he wanted to play Monopoly with him. Kenan replied, "Nah." Kenan plugged in the remote control car to the charger. Dylan stated that he was going to assign Kenan the candlestick figure.

Kenan shifted to play with the Pokémon toys that he had brought to the visit and he informed Ms. Kahraman that his CASA had gotten him one for his birthday. Dylan and Ms. Kahraman began to play. Kenan joined in the gameplay. Ms. Kahraman encouraged Dylan to use math to complete the transaction of buying property. Kenan played Monopoly briefly. Kenan told Ms. Kahraman that he wanted to write in his diary before the visit ended and told Ms. Kahraman, "Baba told me to write in it while I'm in the visit." Kenan encouraged Dylan to also write in his diary. Dylan continued to play Monopoly with Ms. Kahraman. Dylan asked Kenan about moves that he could make for Kenan during the Monopoly gameplay when Kenan was writing in his diary. Kenan showed Ms. Kahraman that his diary entry was in English. Ms. Kahraman replied, "I love that." Kenan returned to writing in his diary while Ms. Kahraman and Dylan continued to take turns. Dylan engaged in math to complete a Monopoly transaction. Ms. Kahraman gave Dylan a high five.

PM Johnson arrived at the doorway of the room at 06:02pm. Ms. Kahraman requested hugs. Dylan hugged Ms. Kahraman and she thanked him for being flexible. Dylan told Kenan that he could write in his diary in the car. Dylan reminded Kenan to hug Ms. Kahraman after an initial hug. Ms. Kahraman informed the children that she would see them the next week. Dylan and Kenan left the room with PM Johnson at 06:02pm.

*Interventions:*

FC Revell Matthews informed Ms. Kahraman when there 12 minutes left in the visit.

*Child Behavior during Visit:*

At the beginning of the visit, Dylan greeted Ms. Kahraman with affection as evidenced by hugging her. Dylan appeared to goad Kenan into running the car towards him so that he could smack it away from him. Dylan presented with high energy and hopped around the room and stuck the remote control cars numerous times. Dylan appeared playful and switched out the tall chairs with the children sized chairs at the small table when setting up the food. Dylan appeared to talk in an assertive manner towards Kenan. As the visit continued, Dylan appeared eager to include Kenan in joint activities.

At the beginning of the visit, Kenan greeted Ms. Kahraman with affection as evidenced by hugging her. Kenan presented in an energetic mood and jumped around while he controlled his toy car. Kenan appeared open to Dylan striking his remote control car and didn't raise any objections. Kenan appeared content to engage in periods of individual play but then appeared to become intrigued by Dylan's play with Ms. Kahraman and joined in. Kenan appeared to speak with heightened intensity when he told Ms. Kahraman that he needed to write in his diary prior to the end of the visit.

*Glows:*

Ms. Kahraman appeared to remain neutral when Kenan held a spoon in his mouth without using his hands and also when he tripped into the Beyblade stadium.

Ms. Kahraman appeared to incorporate previous feedback and provided minimal updates about the time within the visit.

Ms. Kahraman encouraged Dylan and Kenan to try the miniature oranges.

*Grows:*

No considerations for this visit.

Visit Date: 10/08/2020

### Notes from the Parent(s)

Please describe how the visit went:

Ms. Kahraman shared, "The visit was good...Definitely high energy, a little rougher play...I think like most kids,

Kahraman - 000004

switched between talking to Ms. Kahraman and Dylan about memories and looking at himself in the mirror while he posed with his sword. After the meal, Kenan appeared to follow the rules about the sword minimally and appeared to become more energetic with his sword usage and demonstrated minimal awareness of safety.

*Glows:*

Ms. Kahraman sat back and observed while the children engaged in playing with the Lego.

Ms. Kahraman engaged in supportive dialogue of Dylan and Kenan's story about going to the pumpkin patch.

Ms. Kahraman used a neutral but firm tone when Kenan was observed to wield his sword with little awareness of people around him.

*Grows:*

Ms. Kahraman could consider waiting to the end of meal time prior to asking what they children want to eat during the next scheduled visit.

**Visit Date: 10/14/2020**

### Notes from the Parent(s)

**Please describe how the visit went:**

Ms. Kahraman shared, "The visit was fun, and both of the boys had high energy today, especially Kenan. If they were at the fair today, coming from the fair and the high energy." Ms. Kahraman shared that regarding Kenan disclosing on the previous day that he had a scheduled eye doctor's appointment, that she followed up with Maddie and wants to also attend doctor appointments. Ms. Kahraman shared that previously there had been an issue with Kenan that he would not go outside without wearing sunglasses and would cry, "It's bright, it's bright." Ms. Kahraman shared that she wanted to respond appropriately, as Kenan has been wearing his sunglasses indoors for a significant period of time and is not encouraging the use of the sunglasses, and would prefer to discourage the indoor usage, but not contradict what Mr. Kahraman is saying.

**Do you have any questions or concerns about the recorded information? If so, please list below:**

**Do you have anything else you would like to add about the visit?**

| | | | |
|---|---|---|---|
| _(signature)_ | 10/14/2020 | _(signature)_ | 10/14/2020 |
| Observer's Signature | Date | Parent/Adult Signature | Date |

| | | | |
|---|---|---|---|
| Observer's Signature | Date | Parent/Adult Signature | Date |

Your signature does not indicate that you agree with the observer's assessment, only that you have had an opportunity to review & ask questions about this form.

Kahraman - 000005

of Lego inside the yellow tub.

*Glows:*

Ms. Kahraman demonstrated interest when Dylan and Kenan told her about their new bikes.

Ms. Kahraman encouraged Dylan and Kenan to read her jokes from the joke book that they brought with them and to read some text from a Lego packet after they expressed interest on what the packet said.

Ms. Kahraman appeared to incorporate feedback that was discussed at the end of the last visit and did not make suggestions about food for the next visit during meal time.

*Grows:*

Ms. Kahraman could consider methods of casually being involved in child-led activities.

Ms. Kahraman could use different ways of phrasing her thoughts about the children and imagining them involved in activities without sounding like she is talking about the future.

**Visit Date: 10/20/2020**

**Notes from the Parent(s)**

**Please describe how the visit went:**

Ms. Kahraman shared, "Good, it was fun very relaxed, they communicated really well. I worked on the things we talked about, not giving them so much notice about the time, not talking about what to eat in the next visit. And then I said at the end, I would get food. The sunglasses were addressed easily and I requested Kenan not wearing them except when outside.

FC Revell Matthews discussed developing a balance of being engaged in various play during child-led activities and explore building while they build. Ms. Kahraman responded that she enjoyed watching them build but agreed that she could play more with Lego similar to how she plays Play-doh.

**Do you have any questions or concerns about the recorded information?  If so, please list below:**
"No."

**Do you have anything else you would like to add about the visit?**

When discussing feedback regarding the grow, "Ms. Kahraman could use different ways of phrasing her thoughts about the children and imagining them involved in activities without sounding like she is talking about the future." Ms. Kahraman responded that she meant that her thinking was aligned for their requests for her to swim while they were swimming, eating McDonalds at the same time or looking at the moon at the same time. Ms. Kahraman shared her understanding when FC Revell Matthews noted that it sounded like Ms. Kahraman was referencing her swimming pool.

_____          10/20/2020           _____          10/20/2020
**Observer's Signature**                **Date**            **Parent/Adult Signature**                **Date**


_____                                 _____
**Observer's Signature**                **Date**            **Parent/Adult Signature**                **Date**

Kahraman - 000006

*Glows:*

Ms. Kahraman provided an assortment of food that Dylan and Kenan appeared to enjoy.

Ms. Kahraman set boundaries and provided examples of her expectations of table manners and the reason for those manners

Ms. Kahraman appeared to incorporate feedback from the previous feedback session and engaged in playing Lego with children and appeared more at ease during the Lego play on the previous day.

*Grows:*

Ms. Kahraman could consider not asking specific questions about activities at their father's house (current placement) and follow their lead when the children first mention activities at their father's house.

**Visit Date: 10/21/2020**

### Notes from the Parent(s)

**Please describe how the visit went:**

Ms. Kahraman shared, "It was a great visit. Very chill. I liked building with them. I think it helped to bring more basic Lego. When they build with sets, I don't want to interfere. It was a good mix of conversation and imaginative play. I like to hear their stories and dialogue. And just continue to incorporate previous feedback and what they talked about yesterday. I liked bringing stuff from the store. They got to help set it up and it helped with participation.

**Do you have any questions or concerns about the recorded information? If so, please list below:**

**Do you have anything else you would like to add about the visit?**

When discussing feedback, Ms. Kahraman inquired if she didn't discuss ACCEPTS in every visit if it would look inadequate. FC Revell Matthews shared that there could be continued revisiting and inquired if there were any additional supports. Ms. Kahraman noted that she had her parents and also that nobody from DCS had spoken to her parents. FC Revell Matthews inquired if Ms. Kahraman's parents ever interjected or questioned the number of providers that the children had seen. Ms. Kahraman shared that her parents were under the impression that since they were going to multiple providers, that they were getting the feedback that they needed. Ms. Karhaman shared that was why she included her aunt and uncle. FC Revell Matthews asked what the aunt and uncles specific role would play with the children. Ms. Karhaman shared that her aunt was a medical doctor and specified that she was an optomestrist and that she had been to medical school and Ms. Kahraman had talked about her own medical concerns in the past. Ms. Kahraman noted that her aunt and her mother were both aware of how important self-care is and that they would plan regular time for Ms. Karhaman to go to the gym and therapy. Ms. Kahraman shared that everybody recognized that she took on too much and that she had learned to communicate better when she needs help. Ms. Kahraman shared that she was supposed to have family therapy this week and the therapist called out sick and that it was rescheduled for the 30th and that there was a CFT on Friday.

When discussing the grow, Ms. Kahraman shared that she wanted to encourage to just continue to be part of a family clean like they used to and just encourage them to clean up at home.

| | | | |
|---|---|---|---|
| _(signature)_ | 10/21/2020 | _(signature)_ | 10/2/2020 |
| **Observer's Signature** | **Date** | **Parent/Adult Signature** | **Date** |
| | | | |
| **Observer's Signature** | **Date** | **Parent/Adult Signature** | **Date** |

At the beginning of the visit, Kenan appeared excited to show Ms. Kahraman that he had lost a tooth and showed Ms. Kahraman where he had lost a tooth. Kenan initially appeared interested in which toys would stay onsite and which toys would go home with Ms. Kahraman and made selections, but then his attention began to wane and he engaged in crushing discarded Lego boxes. Kenan appeared to enjoy being outside playing and jumped on the stomp rockets with a lot of energy. Kenan appeared minimally receptive to adding turkey onto his sandwich. Kenan appeared enthusiastic about eating pickles and expressed that he was not willing to save the pickles for another day. Kenan appeared to ignore Ms. Karhaman's cues about picking up Lego towards the end of the visit.

*Glows:*

Ms. Kahraman set boundaries and provided examples of her expectations of Dylan and Kenan's involvement in selecting which toys were going to stay onsite.

Ms. Kahraman provided reminders and prompts for Dylan and Kenan to take small bites.

Ms. Kahraman appeared to incorporate feedback from the previous feedback sessions.

*Grows:*

Ms. Kahraman could consider to continue setting expectations and discuss rules prior to the family engaging in outside play in the grassy area adjacent to parking lot.

Ms. Kahraman is encouraged to continue to set expectations regarding table manners.

**Visit Date: 10/27/2020**

### Notes from the Parent(s)

**Please describe how the visit went:** Ms. Kahraman shared, "The visit was fun and that there was a lot packed into the visit. They had fun outside with the stomp rockets. I really liked them preparing their own meal. That is something I want to incorporate when they are back home. Dylan was quite proud of his. There was good cooperative play today, didn't really have to remind them too much of anything. They did a good job sorting through the cabinet and consolidating that too."

**Do you have any questions or concerns about the recorded information? If so, please list below:**

**Do you have anything else you would like to add about the visit?**

When discussing feedback, Ms. Kahraman shared that the reason that she did not set boundaries was because the children in the past were aware of the expectations and that when the rocket went into the parking lot, Kenan stopped and looked at her. FC Revell Matthews shared the importance of reminding the children about safety.

Ms. Kahraman noted that she had rolled up pieces of turkey and provided it to Kenan and that he had eaten it. Ms. Kahraman shared that during the CFT that it was discussed that Dylan had engaged in talking loudly while in foster placement and that a current goal with the therapist was to work with Dylan's volume. Ms. Kahraman shared that it was discussed about Kenan's "toe-walking" and that the parents were to keep working on it and that she would remind him one time if she sees him do it. Ms. Kahraman also noted that Mr. Kahraman shared that Kenan's vision was not as good as Dylan's and that he would make an eye appointment for him.

| | |
|---|---|
| _____  10/27/2020 | _____  10/27/2020 |
| Observer's Signature        Date | Parent/Adult Signature        Date |
| | |
| _____ | _____ |
| Observer's Signature        Date | Parent/Adult Signature        Date |

Kahraman - 000008

and told the children she loved them. FC Revell Matthews escorted the children up front to the lobby. Dylan called out, "I love you." to Ms. Kahraman. Kenan called out, "Bye!"

After the visit concluded, Ms. Kahraman asked for FC Revell Matthews to bring her the food items from the fridge so she could consolidate them.

*Interventions:*
FC Revell Matthews shared when there were 13 minutes of the visit remaining.
FC Revell Matthews reminded Dylan to replace his mask after eating a piece of candy.

*Child Behavior during Visit:*
At the beginning of the visit, Dylan greeted Ms. Kahraman enthusiastically with a hug when he entered the room. Dylan appeared excited by his costume and began to change into it. Dylan appeared to be looking forward to eating candy and mentioned it a few times prior to the phone call with the grandparents. Dylan appeared to eat his food in a reluctant manner and ate a small portion of his quesadilla; Dylan appeared to enjoy drinking his beverages and drank strawberry lemonade and strawberry milk. Dylan appeared to take his time with his craft and drew slowly. Dylan presented in an excitable mood throughout the visit and played and spoke occasionally in a loud tone.

At the beginning of the visit, Kenan appeared eager to show Ms. Kahraman his sunglasses and showed her immediately. Kenan appeared excited by his costume and began to change into it at the beginning of the visit. Kenan appeared focused on eating candy and grabbed the candy bags and mentioned eating candy often throughout the visit. Kenan appeared to seek out Ms. Kahraman's approval for his craft and asked her what she thought of his, after she commented on Dylan's ghost craft. Kenan engaged in drawing seemingly random figures. Kenan presented in an excitable mood throughout the visit and bounced and played.

*Glows:*
Ms. Kahraman supported Dylan and Kenan with being creative with their craft.
Ms. Kahraman provided reminders and prompts for Dylan to take small bites.
Ms. Kahraman appeared to incorporate feedback from the previous feedback sessions.

*Grows:*
Ms. Kahraman is encouraged to continue to set expectations regarding table manners and continue to incorporate feedback from previous sessions.

**Visit Date: 10/28/2020**

### Notes from the Parent(s)

**Please describe how the visit went:** Ms. Kahraman shared, "It was great, it was really fun." "Very fun Halloween celebration, fun craft. I love that the enjoy making their own food. When they are back home, I want to teach them how to cook. They did some gardening at foster placement, I'd like to do that with them too. I think they are more adventurous and willing to try it when they grow it." "Costumes were really cute, I think they, my parents, they enjoyed their costumes and my parents costumes. My mom likes to make things for them. Also, in one of the virtual visits, Kenan felt bad that his artwork wasn't as good as Dylans, we talked about it in the CFT, Kenan was proud of himself, Dylan praised him and he wasn't comparing himself...I noticed Kenan is more flexible and if Dylan had his shift on, he would have had a fit. I'm seeing that more in play too. Kenan is more flexible.

**Do you have any questions or concerns about the recorded information? If so, please list below:**

**Do you have anything else you would like to add about the visit?**
When discussing feedback, Ms. Kahraman

Kahraman - 000009

*Glows*:

Ms. Kahraman provided a selection of food that the children appeared to enjoy eating.

Ms. Kahraman provided reminders and prompts for Kenan to sit down while eating and Dylan to take appropriate sized bites while eating.

Ms. Kahraman appeared to incorporate some of the feedback from the previous feedback sessions though the use of not using the word potty and instead saying bathroom and encouraging age appropriate independence with food handling.

*Grows*:

Ms. Kahraman is encouraged to continue to set expectations regarding table manners and continue to incorporate feedback from previous sessions. Ms. Kahraman is encouraged to consider to consistently support the children in clean up prior to meal time to allow for the children to equally be involved in the clean up process.

**Visit Date: 11/03/2020**

FC Revell Matthews informed Ms. Kahraman that PM Johnson would facilitate the previsit on the following day and introduce the first Nurturing Parenting section. FC Revell Matthews shared that they would determine on the following day whether or not outdoor play could occur. FC Revell Matthews and Ms. Kahraman talked about Dylan's increased frequency of Dylan echoing Ms. Kahraman's directives to Kenan.

### Notes from the Parent(s)

**Please describe how the visit went:** Ms. Kahraman shared, "Really well...I'm noticing it's a little more to manage time when they are prepping food and having outdoor time." Ms. Kahraman talked about the number of items that they had and that she will try to limit that more. "Dylan was testing boundaries a little bit more today, but eventually he did what he needed to and took care of his toy." Ms. Kahraman shared that she can see when he is in a defiant mood. Ms. Kahraman shared that she enjoys the food prep together and that they seemed proud of what they made and then talked about Kenan trying the pepper.

**Do you have any questions or concerns about the recorded information? If so, please list below:**

**Do you have anything else you would like to add about the visit?**

When discussing feedback, Ms. Kahraman shared that she has been asking the children less about their emotions and that the children either seem to "speak on it or move on." Ms. Kahraman shared that she had also thought about beginning to implement clean up time prior to eating.

| | | | |
|---|---|---|---|
| 11/03/2020 | | 11/03/2020 | |
| **Observer's Signature** | **Date** | **Parent/Adult Signature** | **Date** |

| | | | |
|---|---|---|---|
| **Observer's Signature** | **Date** | **Parent/Adult Signature** | **Date** |

Kahraman - 000010

SWHD Visit Feedback Notes-11.04.20 F C Revell/L Mathews

Kahraman - 000011

Dylan to pull his mask up. Ms. Kahraman provided examples of things that could be tied. At 5:02pm, Ms. Kahraman told the children that in two minutes they would need to begin cleaning up and that the children were going to need to follow a recipe and that they would need to clean up most of the toys before they began to eat. Dylan and Kenan helped knock over the blocks. Ms. Kahraman asked if she could go and microwave the pasta; FC Revell Matthews replied that staff were required to use the kitchenette and that parents could not use it independently. Kenan suggested that they go and wash their hands in the bathroom and put his sunglasses on. Ms. Kahraman said that they would need to tidy up some more toys first. Kenan shared that it was Dylan's turn to go first for a piggy back ride. Ms. Kahraman noted, "That's nice." Dylan jumped onto Ms. Kahraman's back, Dylan and Ms. Kahraman both began to fall backwards towards FC Revell Matthew. FC Revell Matthews steadied Ms. Kahraman as Ms. Kahraman grabbed Dylan and adjusted him and stopped him from falling onto the floor. Ms. Kahraman talked to Dylan about safety for piggyback rides. The family continued to transition to the restroom and used separate stalls and then transitioned back to the FNC.

Once inside the Neighborhood room, Ms. Kahraman retrieved the packaged cooked pasta from the visit room while Dylan and Kenan explored the Neighborhood room. Ms. Kahraman opened the pouch of pasta and placed it in the microwave, FC turned the dial for one minute. The children took turns on the slide. FC Revell Matthews handed the pasta to Ms. Kahraman. Ms. Kahraman requested all of the items from the refrigerator. Ms. Kahraman pulled out a ceramic bowl and two bags of cheeses. Dylan squeezed the pasta pouch and shrieked, "So hot." Ms. Kahraman encouraged Dylan and Kenan to keep reading the recipe. Ms. Kahraman provided a measuring cup for the cheese; Dylan and Kenan assisted with pouring the cheese. Kenan volunteered to pour the milk and Ms. Kahraman gave directions on how to pour the milk. Ms. Kahraman told Dylan and Kenan that they could share the remainder of the milk to drink. Ms. Kahraman provided a teaspoon for the salt. Kenan said that he was stirring the food, "Like a chef." Ms. Kahraman encouraged Dylan and Kenan to take turns stirring the food dish. Dylan stated, "Following a recipe is fun!" Ms. Kahraman then asked for a turn; the children agreed. FC Revell Matthews accompanied all parties to the kitchenette. Ms. Kahraman suggested using a paper towel since she did not bring plastic wrap. FC Revell Matthews set the microwave for three minutes. Dylan and Kenan used the slide in a quicker manner; Ms. Kahraman asked if she should wash the cucumber in the hallway sink; FC Revell Matthews washed the cucumber while the children continued to use the slide in her line of sight. Ms. Kahraman began to cut the cucumber on the table in the Neighborhood room. Ms. Kahraman asked if Dylan and Kenan wanted chocolate milk or strawberry lemonade. Kenan replied, "Strawberry lemonade." FC Revell Matthews pulled the bowl out of the microwave for Ms. Kahraman to stir and then set the microwave for two minute as directed. Ms. Kahraman directed Dylan to follow the rules for the slide when Dylan slid down the slide when Kenan was already on it. All parties returned to the visit room at 5:35pm. Ms. Kahraman told the children that the macaroni and cheese was hot but that there was other food they could eat first and suggested that they sit next to each other so they could share the ranch dressing. Ms. Kahraman placed cucumbers and hard boiled eggs on their plates and then also offered broccoli. Ms. Kahraman asked for bowls and spoons. Dylan and Kenan accompanied FC Revell Matthews to the kitchenette while she retrieved bowls and spoons. Ms. Kahraman told the children that the macaroni and cheese was hot and when they did eat it that they should blow on it and touch it to their lips to see if it was cool enough, but for the moment there was more food to eat. Dylan stated that the food, "Was going to be really yummy." Ms. Kahraman helped Dylan and Kenan with putting their straws in the lemonade. Dylan stood up while eating multiple pieces of cucumber. Ms. Kahraman encouraged Dylan and Kenan to try the macaroni and cheese. Dylan remained standing and then sat down and took a bite. Dylan stood up again and continued to eat. Kenan leaned back in his chair and was observed to be sucking on the empty lemonade sachet. Ms. Kahraman encouraged Kenan not to miss out on eating his macaroni and cheese. FC Revell Matthews informed Ms. Kahraman that there were

Kahraman - 000012

**Glows**

Ms. Kahraman followed the children's lead regarding the plastic animal war game.

Ms. Kahraman selected food items that the children appeared to enjoy preparing and eating.

Ms. Kahraman encouraged turn taking during various activities.

**Grows**

Ms. Kahraman is encouraged to continue to incorporate feedback from previous session.

Ms. Kahraman is encouraged to consider less involved meal preparation during the allotted visit time.

**Post Parenting Time Notes/Additional Feedback**

**Service Plan Goals: What progress did you make toward your goals today?**

A. NA

B.

C.

**Additional Notes**

**Notes from the Parent(s)**

**Please describe how you feel the Clinically Supervised Parenting Time went overall.**

Ms. Kahraman shared, "It was great. They seemed like they had a lot of fun. I'm really pleased with how much they are getting into food prep. Still fine-tuning the time management. I need to choose food that have less heating time and less steps." Ms. Kahraman said that it was a matter of trial and error and that it could be simpler. Ms. Kahraman said, "It was successful, I just don't want to sacrifice too much play time, even though they probably enjoyed it just as much as playtime." Ms. Kahraman shared that she would explore more foods such as building a salad.

**Do you have any questions or concerns about the recorded information? If so, please list below.**

**Do you have anything else you would like to add about the Clinically Supervised Parenting Time?**

Ms. Kahraman shared that meal prep was quite involved and would pick simpler dishes in the future so that they wouldn't have to sacrifice play time.

**Signatures**

11/04/2020

CSPT Professional's Signature                    Date

*EXHIBIT 4*

## RE: Kenan

Sent: **Wednesday, October 28, 2020 8:03 AM**

From: **Jessica Mann jessicamannlac@protonmail.com**

To: **Bell, Madison M Madison.Bell@AZDCS.GOV**

Good morning.

I'm following up to see if you received these two emails. Thank you.

Jessica Kahraman

Sent from ProtonMail Mobile

On Mon, Oct 26, 2020 at 11:04 AM, Jessica Mann <jessicamannlac@protonmail.com> wrote:

Good morning,

Could you please provide the name and contact information for the pediatrician who saw the boys last week, as well as any other doctors or therapists (apart from Jenna) that either of them has seen since March?

Thank you.

Jessica Kahraman

Sent from ProtonMail Mobile

On Fri, Oct 23, 2020 at 10:36 AM, Jessica Mann <jessicamannlac@protonmail.com> wrote:

Maddie.

During the CFT, Dad mentioned he had taken the boys to the pediatrician and will be taking them to the eye doctor next week. Could I please be permitted to attend all medical appointments?
I was not advised of the pediatric visit.

Thank you.

Jessica Kahraman

Sent with ProtonMail Secure Email.

------- Original Message -------
On Friday, October 16, 2020 5:42 PM, Jessica Mann <jessicamannlac@protonmail.com> wrote:

Thank you. If he's wearing them because it's bright outside, it makes sense for me to discourage his wearing them inside, as he has been for extended periods during multiple visits.

I don't need to attend the dental appointment but appreciate the offer.

Jessica Kahraman

Sent from ProtonMail Mobile

On Fri, Oct 16, 2020 at 9:09 AM, Bell, Madison M <Madison.Bell@AZDCS.GOV> wrote:

He was wearing them because it is bright outside.

They do not currently have an eye appointment. They have a dental appointment next week, that we can request SWHD to supervise by phone, if they are able, as I know it is last minute for them if this is something you are interested in.



Maddie Bell

DCS Specialist

Department of Child Safety

1205 S Alma School Rd

Mesa, AZ 85210

Kahraman - 000014

11/5/2020, 11:09 A

Phone: (480) 656-9304

Fax: 1-833-845-9954

Madison.Bell@azdcs.gov

AZDCS Website| Twitter| to report child abuse or neglect: 1-888-SOS-CHILD

---

From: Jessica Mann <jessicamannlac@protonmail.com>
Sent: Wednesday, October 14, 2020 2:32 PM
To: Bell, Madison M <Madison.Bell@AZDCS.GOV>
Subject: Kenan

CAUTION: This email originated from outside of DCS. Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Maddie,

Kenan has been wearing sunglasses inside throughout the last several visits, saying that he wears them because it's bright. Can you tell me about this, please?

He also said they're going to the eye doctor soon.

I'd like to attend any medical appointments.

Thank you.

Jessica Kahraman

Sent from ProtonMail Mobile

---

NOTICE: This e-mail (and any attachments) may contain PRIVILEGED OR CONFIDENTIAL information and is intended only for the use of the specific individual(s) to whom it is addressed. It may contain information that is privileged and confidential under state and federal law. This information may be used or disclosed only in accordance with law, and use may be subject to penalties under law for improper use or further disclosure of the information in this e-mail and its attachments. If you have received this e-mail in error, please immediately notify the person named above by reply e-mail, and then delete the original e-mail. Thank you.

image001.png
13.73 KB

Kahraman - 000015

11/5/2020, 11:09 AM





CLERK OF THE
SUPERIOR COURT
FILED
C. CAMACHO. DEP

2020 NOV 10 PM 3: 12

## CASA COURT REPORT

**Court HearingDate:** 11/09/20
**CASA:** Susan Stark
**County:** Maricopa
**JD No:** JD532206
**#/Placements:** 3 each
**Contact Hours:** 580.00

| CHILD(REN)'S NAME | AGE |
|---|---|
| ▉ Kahraman | 8 |
| ▉ Kahraman | 8 |

## BRIEF HISTORY:

▉ and ▉ Kahraman were taken into the temporary physical custody of the Arizona Department of Child Safety (DCS) on December 28, 2018. The allegation as to both parents, mother Jessica Kahraman A.K.A. Jessica Mann, and father Ahmet Kahraman, was medical neglect.

▉ and ▉ were initially placed in separate licensed foster homes, because ▉ required a higher level of care. They are now placed together with their father.

CASA Susan Stark was appointed by Court Order dated May 28, 2019.
Co-CASA Carol Cooper was appointed by Court Order dated July 27, 2020.

Information in this report is current as of November 2, 2020.

## ASSESSMENTS:

▉ and ▉ Children
▉ and ▉ are happy and thriving since being placed with their father. This CASA and Co-CASA have been able to do a short virtual visit with them and their father, almost once a week, and in-person on their birthdays and today. This CASA also saw them in-person when they got their bikes. The bikes were a surprise, so when this CASA gave them new helmets before the bikes, ▉ asked, "What are we supposed to do with these?" They were excited to get their first bikes, though a little tentative about the lessons.

▉ showed this CASA their online home school program and how he navigates it. When this CASA and CO-CASA visited the children on 11-02-20, both ▉ and ▉ separately, shared that they were bored with their home schooling. These boys were tested to read at a 3rd grade level, in first grade.

When ▉ and this CASA went for a walk, he stepped into the street, without looking, and I had to grab him. This CASA stopped and reminded him to look both ways. But later, he did it again without looking.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

When I asked him which way he should look, he said straight.

The Boys showed this CASA a cooking video they made, after a lesson from Father. Amongst the variety of foods they eat, they said they are eating lamb and tell me they like it with all the other stuff they can eat now. That surprised this CASA because, for over a year, they blamed lamb for Kenan's heart failure and said they would never eat lamb again. Last March, when K.K. again said that lamb gave him heart failure, D.K. corrected him saying "No K.K. Lamb is OK. We just needed to be eating all the other stuff we eat now." K.K. was silent. (CASA).

In August, K.K. asked his mother, "remember when we used to make lamb soup?" Then, "I'm not going to eat lamb soup again, just in case." D.K. shared, "It's not the thing that caused your heart failure." Mother shared that they "could eat lots of food." K.K. asked, "I have one question, is lamb soup healthy?" Mother shared it was. K.K. said, "Then it's not the thing that caused my heart failure." Then, "Maybe it was the drugs." Mother said, "I'm really, really sorry that it happened and it makes me sad." (SWHD 8-19-20).

The children are both now well-developed for their eight years. Their hair is thick and shiny. Kenan's hair was thin and fuzzy when this CASA first met him.

Father
Father is happy to have the children home. He reports they are doing well homeschooling, independently, and if they don't know something, he tells them to Google it. He has set up safety guards for the children on the internet, and taught them how to use the phone to reach him at work. He is helping K.K. train his bladder at night, and checks his blood pressure on the advice of their doctor. Father has taken them to their pediatrician, and they have caught up to growth standards for their ages. Father has returned to work.

Since their paternal grandmother arrived from Turkey, it appears she has blended in easily. She and the kids are comfortable using an application on her phone, that audibly translates phrases, when they need to communicate something specific. I saw her actively playing with the children, at their level, on the floor and on the swing set at the park. The boys go to her for comfort or help and she openly welcomes them. They said "she's a good cook."

Mother
Mother continues to participate in services, towards reunification, and learning to cope with these extraordinary circumstances. This CASA agrees that virtual visits made it difficult for the boys to engage in visitations, especially with all the distractions in the foster home. She shows affection to the children, and the children are affectionate with her as well. During visitations, in almost all SWHD notes, she remains focused on these very active children. That is a challenge in itself. She has been meeting with the boy's therapist, to discuss, and prepare for some of the issues that may come up, before they begin family therapy. (CFT 10-23-20)

When K.K. asked the mother if lamb soup was healthy, mother said she "Felt sad and that she was very, very sorry for what he had been through". FC Mathews discussed with Ms. Kahraman to "allow space for K.K. and D.K. to identify feelings and then support, seeking clarifications about those feelings." (SWHD 8-18-20).

This CASA has noticed statements from Mother that do not match up with facts.

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031326

One example: On 07-06-20, mother e-mailed DCS, asking for permission to give the children a specific photo, but DCS was concerned because ██K.K.██ had poked the eyes out of the person in a photo last spring. Mother responded, "██K.K.██ scratched one person out in a photo last spring, who was not in the photos I recently printed."

That is not true. ██K.K.██ showed me that disturbing photo. It was a group photo in which ██K.K.██ poked out the eyes of his brother, father, grandparents, and extended family, leaving only himself and his mother untouched. It is true that it was last spring.

Another example: Dr. Schroeckenstein's August 28, 2020 report and review of SWHD records dated 03-04-20, mentioned in her review, mother's explanation for Kenan's leg pain, was due to a fracture, and that is why he needed a wheelchair.

It is not true that ██K.K.██ had fractured his leg, as evidenced by x-rays taken when ██K.K.██ was in the hospital. There were no past or present fractures identified. (BDMC, 1-3-19).

## REASONABLE EFFORTS:
The case plan goal is Family Reunification. DCS has made Reasonable Efforts to achieve this goal.

## OPINIONS and/or CONCERNS:
This CASA is concerned that the boys are disinterested, and falling behind in their 2nd grade curriculum.

This CASA is concerned that ██D.K.██ failed to display basic traffic safety rules.

This CASA is concerned that ██K.K.██ is walking on his toes more often now, something that occurred when he got out of the hospital, and had almost resolved by last March.

This CASA is concerned for ██K.K.██ as he is now trying to understand why all of this happened to him.

This CASA believes ██D.K.██ has an unusual gait now, in conjunction with some posture changes that need evaluating and treatment if indicated.

This CASA is concerned for the children's welfare, if a responsible gatekeeper doesn't actually live with the children, because mother may misrepresent the facts of the children's day to day lives.

This CASA believes that Mother has a loving bond with her children. But whatever drove her to defy common sense, legitimate advice and put their lives in peril, was obviously much stronger and much more complicated.

## RECOMMENDATIONS:
1. That ██K.K.██ and ██D.K.██ Kahraman remain wards of the court, committed to the care, custody, and control of DCS.
2. That both boys remain in the physical custody their father, Ahmet Kahraman.
3. That a re-evaluation of the boy's educational plan that would engage them in a program that both interests

and challenges them, and to include appropriate adult guidance, be completed.

4. That the rules of basic traffic safety be incorporated into their educational plan.

5. That ▉K.K.▉ be re-evaluated for his toe walking.

6. That ▉D.K.▉ be evaluated for his posture and gait.

7. That Mother continue to process this complicated situation with licensed professionals.

8. That services currently in place be continued.

9. That the case plan goal of Family Reunification be affirmed.

**RESOURCES:**
**Persons of Interest and/or Interviewed Since Last Report:**
Children
Father
DCS Case Manager
Child Family Team

**Records Reviewed Since Last Report:**
Documents filed with the Juvenile Court
Emails from Jessica Kahraman to DCS, 07-06-2020.
Dr Schroeckenstein's Report August 8, 2020.
Southwest Human Development January to August 2020.
Email from Carla White, Southwest Human Development, to DCS.
Banner Desert Medical Center Records for ▉K.K.▉ Kahraman, December 18, 2018 to January 7, 2019.

**"THIS DOCUMENT IS DISCLOSED PURSUANT TO RULE 44(a)(3),RULES OF PROCEDURE OF THE JUVENILE COURT, AND IS OTHERWISE CONFIDENTIAL PURSUANT TO A.R.S. § 8 - 522(F), RULE 47(A), RULES OF PROCEDURE OF THE JUVENILE COURT, AND ACJA  § 7 - 101(G).THIS DOCUMENT CANNOT BE DISCLOSED EXCEPT UPON ORDER OF THE COURT OR AS OTHERWISE PROVIDED BY LAW."**

**Respectfully submitted,**

**Susan Stark**
**Court Appointed Special Advocate**

CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

AZ-KAHRAMAN031328



EXHIBIT 281
BELL
8-23-24 MHS

Clerk of the Superior Court
*** Electronically Filed ***
11/17/2020 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                          11/9/2020

                                    CLERK OF THE COURT
HONORABLE JENNIFER E. GREEN              P. Bryant
                                          Deputy

IN THE MATTER OF:

DYLAN KEMAL KAHRAMAN            KINDA  JOHNSON-HURD
    F1149031
    DOB: 9/27/2012
KENAN TROY KAHRAMAN
    F1149032
    DOB: 9/27/2012

                                    JANNA LEE JOHNSON

                                    DEEAN  GILLESPIE STRUB

                                    RACHEL  METELITS

                                    JUVENILE OFFICE OF PUBLIC
                                    DEFENSE SERVICES
                                    CASA
                                    OPA DEPENDENCY MESA
                                    LEGAL ADVOCATE-JUVENILE

            REPORT AND REVIEW HEARING
          DEPENDENCY PETITION DISMISSED
        TEMPORARY FAMILY COURT ORDERS ENTERED

    10:30 a.m.  This matter is digitally recorded in Courtroom 9.

    This is the time set for Report and Review Hearing.

Docket Code RNRDEPPETDIS            Form JDRNR                    Page 1



SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                              11/9/2020

Present via Court Connect:  Assistant Attorney General Janna Johnson; Madison Bell, DCS child safety specialist; Kinda Johnson-Hurd, guardian ad litem for the children; DeeAn Gillespie Strub, counsel for Mother; Mother Jessica Kahraman; Rachel Metelits, counsel for Father; Father Ahmet Kahraman, assisted by Court Interpreter Emine Fougner; and Carol Cooper, CASA.

LET THE RECORD REFLECT the court has read the Admonition pursuant to Arizona Rule of Juvenile Procedure Rule 41(F).

The Court has read and considered the DCS child safety specialist's report dated 10/30/2020.

The Department moves for a dismissal of the dependency.

Discussion is held regarding entering Temporary Family Court Orders in FC2020-090497.

Based on the matters presented,

IT IS ORDERED dismissing the dependency action, releasing the children from the wardship of the Court, and relieving the Department of Child Safety of further responsibility for the children.

IT IS ORDERED relieving the Foster Care Review Board and all court-appointed attorneys and guardians ad litem of further responsibility in this case.

No further hearings are set in this matter.

**FC 2020-090497**

**TEMPORARY ORDERS RE:**
**LEGAL DECISION-MAKING AUTHORITY AND PARENTING TIME**
**NOTICE TO PARENTS RE: MODIFICATION AND CHILD SUPPORT**

This matter has been under the exclusive jurisdiction of the juvenile court under JD-532206 involving the minor children, Dylan Kahraman, born 9/27/2012, and Kenan Kahraman, born 9/27/2012.

Docket Code RNRDEPPETDIS                Form JDRNR                        Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                            11/9/2020

The matter came before the juvenile court based upon the Petition for Dependency filed on 1/3/2019. During the course of the proceedings, each parent was offered a variety of services designed to address the issues presented.

Father has successfully remediated the identified issues and there no longer exists any legal or factual basis for the children to remain wards of the court. As for Mother, there remain several concerns, including the following: whether she completed all of her treatment goals with Southwest Human Development, including whether she fully took responsibility for her role in what happened with the children; whether she is ready for unsupervised parenting time (she currently has supervised parenting time and no provider who has supervised her during parenting time has opined that she is ready for unsupervised parenting time); whether she is prepared to make medical decisions for the children based on facts and science.

To be clear, Mother has made strides since this case opened and is engaged in supervised visitation with the children, which has been going well. The children are bonded with Mother. At the time of dismissing the dependency case, however, Mother had not remedied all of her outstanding issues, and she contests these temporary orders. For all these reasons, the Court orders DCS to file the following three pleadings confidentially for the benefit of the Family Court judge: the very first and most recent DCS court report, and Mother's Objection to the last court report.

Based upon Father's remediation of issues presented and the concurrent dismissal of the dependency action, jurisdiction over the parents and the children is being returned to the family court.

It is appropriate to enter temporary orders under the family court case, pending any further proceedings that may be brought therein by either parent. This court is exercising temporary jurisdiction over the family court matter so as to enter these orders.

### *Temporary Legal Decision-Making Authority*

**IT IS ORDERED** that Father Ahmet Kahraman, born 4/18/81, is awarded temporary sole legal decision-making authority, as defined in A.R.S. Section 25-401(6), relating to the minor children common to the parties.

**IT IS FURTHER ORDERED** that the children shall reside with Father.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                                11/9/2020

### *Supervision of Parenting Time*

IT IS FURTHER ORDERED that parenting time for Mother, born 8/29/72, shall be supervised.  Mother and Father must agree on any supervisors, and Father is not required to provide such supervision.  If there are any costs associated with the supervised parenting time, Mother will bear those costs.  Issues relating to the specific parenting schedule, procedure for supervision, and whether supervision continues to be necessary shall be determined in the family court matter, upon petition by either party.

### *Filing of Records*

IT IS ORDERED that within seven (7) calendar days from this order, DCS, through its counsel, shall file in the family court case number and as "confidential" the following records from the dependency proceedings:

1.  A copy of the Dependency Petition
2.  A copy of the first DCS Court Report
3.  A copy of the most recent DCS Court Report;
4.  A copy of Mother's Objection to the most recent DCS Court Report.
5.  A copy of this Minute Entry.

Upon filing, DCS, through its counsel, shall file a Notice of Filing under the family court case number with copies thereof provided to the parties.
These records are confidential and are not public records.  Parties to this litigation, their respective counsel, the court and any court-ordered service provider shall be afforded access to these records for any subsequent proceedings.

### *Notice to Parents*

**THESE ORDERS SHALL REMAIN TEMPORARY ORDERS UNTIL November 9, 2021,** unless an action is initiated and remains pending in the family court case as of this expiration date.  In that event, this order shall remain in effect unless and until modified in the family court case.

Either parent may file the appropriate petition or motion under the family court case number seeking changes to any or all of these orders. Any proceeding conducted in the family court matter will be de novo in nature, as the orders entered herein are without prejudice.  If either party pursues further action in the family court, each party is advised that if financial

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

JD532206                                    11/9/2020

resources are limited, he or she may seek a fee waiver or fee deferral for required filing fees in that action.

**If neither party initiates a family court proceeding by that date seeking further family court order that address or change the terms herein, this temporary order shall expire and shall not longer apply.**

### *Child Support*

The issue of child support is not addressed herein. If either party seeks any orders relating to child support, the appropriate petition/motion shall be filed under the family court case number.

11:19 a.m. Court adjourns.

LATER:

THE COURT FINDS all outstanding Motions are moot in this matter as the case has been dismissed.

Pursuant to Arizona Revised Statutes § 8-543, notice is hereby given that there is a Sibling Information Exchange Program to facilitate contact between a former dependent child and his or her sibling(s). More information on the Program can be obtained by contacting the Arizona Supreme Court at www.azcourts.gov/cld/Confidential-Intermediary-Program.

__11/13/2020_____          / s /    HONORABLE JENNIFER E. GREEN

DATE                                HONORABLE JENNIFER E. GREEN

Docket Code RNRDEPPETDIS              Form JDRNR                    Page 5