# EXHIBIT AC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

JESSICA KAHRAMAN, et al., )
)
Plaintiffs, )
)
)
vs. ) No.
) CV-22-00375-PHX-SRB
)
THE STATE OF ARIZONA, )
et al., )
)
Defendants. )
____________________________ )

VIDEORECORDED DEPOSITION OF MADISON BELL

VOLUME I

Phoenix, Arizona
August 6, 2024
10:20 a.m.

| Prepared by: | CARRIE REPORTING, LLC |
|---|---|
| MICHAELA H. DAVIS | Certified Reporters |
| Registered Professional Reporter | 17505 N. 79th Avenue |
| Certified Realtime Reporter | Suite 301-C |
| Certified Realtime Captioner | Glendale, AZ 85308 |
| AZ CR No. 50574 | (480) 429-7573 |
| NM CCR No. 614 | |

(COPY)

I N D E X

| WITNESS | PAGE |
|---|---|
| MADISON BELL | |
| BY MR. CONNELLY | 6 |

* * *

E X H I B I T S

| EXHIBIT: | DESCRIPTION | PAGE |
|---|---|---|
| 4 | Weight chart | 62 |
| 4-A | Medical record | 232 |
| 5 | E-mail; Bates No. KAHRAMAN-AZ 008469 CONFIDENTIAL | 66 |
| 6 | E-mail; Bates No. KAHRAMAN-AZ 006006 CONFIDENTIAL | 72 |
| 7 | Series of e-mails; Bates Nos. KAHRAMAN-AZ 006247 - 6248 CONFIDENTIAL | 77 |
| 8 | Series of e-mails; Bates Nos. KAHRAMAN-AZ 008053 - 8054 CONFIDENTIAL | 80 |
| 9 | Series of e-mails; Bates Nos. KAHRAMAN-AZ 005216 - 5217 CONFIDENTIAL | 90 |
| 10 | Series of e-mails; Bates Nos. KAHRAMAN-AZ 005380 - 5384 CONFIDENTIAL | 92 |
| 11 | Draft report of Dr. Michael Kelly; Bates Nos. KAHRAMAN-AZ 014926 - 14951 CONFIDENTIAL | 118 |

(Continued.)

E X H I B I T S

| EXHIBIT: | DESCRIPTION | PAGE |
|---|---|---|
| 12 | E-mail; Bates No. KAHRAMAN-AZ 008053 CONFIDENTIAL | 140 |
| 13 | Series of e-mails; Bates Nos. KAHRAMAN-AZ 005648 - 5649 CONFIDENTIAL | 153 |
| 14 | Series of e-mails; Bates Nos. KAHRAMAN-AZ 005684 - 5685 CONFIDENTIAL | 157 |
| 15 | Declaration of Eli H. Newberger, M.D.; Bates Nos. KAHRAMAN 000091 - 177 | 172 |
| 16 | Meal spreadsheet | 182 |

* * *

MARKED PORTIONS OF THE RECORD

| PAGE | LINE |
|---|---|
| 131 | 23 |
| 196 | 10 |

VIDEORECORDED DEPOSITION OF MADISON BELL commenced at 10:20 a.m. on August 6, 2024 at the law offices of GILLESPIE, SHIELDS, & TAYLOR, 7319 NORTH 16TH STREET, PHOENIX, ARIZONA, before MICHAELA HERMAN DAVIS, a Certified Reporter, in and for the County of Maricopa, State of Arizona.

* * *

A P P E A R A N C E S

FOR THE PLAINTIFF:
MILLS + WOODS LAW PLLC
BY: MR. THOMAS A. CONNELLY
5055 NORTH 12TH STREET
SUITE 101
PHOENIX, ARIZONA 85014
tconnelly@millsandwoods.com

GILLESPIE, SHIELDS & TAYLOR
BY: MS. NATALIE NEWELL
7319 NORTH 16TH STREET
PHOENIX, ARIZONA 85020
nnewell@gillaw.com

FOR THE DEFENDANT:
BRUECKNER SPITLER SHELTS, PLC
BY: MR. LARRY J. CROWN
8355 EAST HARTFORD DRIVE
SUITE 200
SCOTTSDALE, ARIZONA 85255
solutions@bss.law

ALSO PRESENT:
BRIAN DOWNEY, VIDEOGRAPHER
JESSICA KAHRAMAN

BY MR. CONNELLY:
Q. I'm just going to mark it as Exhibit 6 so it's in the record.
Do you recognize the e-mail and recall having received it?
A. I mean, I don't remember receiving it, but it would be in align with what I would get, so ...
Q. But at this time you already knew it was a medical neglect case because you had talked to Sarah Kramer about the case; right?
A. Correct.
Q. Did you have a conversation with Mecca Temple about the case at the time of January 2019 when it was assigned to you?
A. I don't recall an exact conversation, but we always discuss every new case that we get. But I don't recall the exact conversation.
Q. And you said earlier that there's a special protocol that's followed in medical neglect cases; right?
A. There's a special protocol for the Munchausen cases you're asking me about, but that's -- I don't know if there's a specific protocol for medical neglect. I don't think there's a specific protocol made exactly for it.
Q. What's the protocol for Munchausen cases?

A. So for Munchausen cases, they automatically do the therapeutic visitation through Southwest Human Development. They handle all of that, and then we do -- contract with a provider to do a medical records review.
Q. Okay. And is that -- are those the only two things procedurally that are specific to Munchausen?
A. Correct. Yes.
Q. Okay. And so for Munchausen cases, therapeutic visitation is always with Southwest Human Development?
A. Correct.
Q. And there's always a psychiatric consultation; right?
A. The medical records review?
Q. Yes.
A. Yes. And I want to clarify that Southwest Human Development is the one that did it at the time. I believe there's another agency now that does them as well.
Q. In addition to Southwest Human Development or in place of Southwest?
A. I'm not sure, because I know that change happened after I left, but I know that there's another agency that does it. So I just -- that's how it was then. I can't speak to what agency is really doing them now.
Q. And it's the case, isn't it, that Southwest Human Development only worked on cases giving therapeutic

intervention in cases that were Munchausen cases; right?
A. No. They did a variety of therapeutic, but they were the only ones who did the Munchausen cases.
Q. So if it was a Munchausen or a factitious disorder case, Southwest Human Development is going to do the therapeutic visitations?
A. Correct.
Q. And Dr. Kelly is going to do the records review; right?
A. It would be Dr. Kelly or Dr. Bursch.
Q. And those were the only two providers at the time that had contracts with the department to do records review and Munchausen cases?
MR. CROWN: Objection to form and foundation.
THE WITNESS: To my knowledge, yes.
BY MR. CONNELLY:
Q. And how do you spell Dr. Bursch?
A. B-U-R-S-C-H, I think.
Q. And is it a he or she?
A. She.
Q. And where is she located?
A. All I know is she's out of California. I haven't worked with her, but I know she's out of California.

Q. So both Dr. Kelly and Dr. Bursch are in California?
A. Correct.
Q. Do you know why the department doesn't have any in state providers for that service?
MR. CROWN: Objection to form and foundation.
THE WITNESS: I do not know. Oh, sorry.
BY MR. CONNELLY:
Q. As the ongoing case manager, do you have discretion on which of those providers you use?
A. I don't. I know with the first case I worked, they had attempted to get Dr. Bursch to do that, but she was at capacity and she actually recommended Dr. Kelly. So I don't know -- all I know is that with the first one, it went with Dr. Kelly, and the second one, service referral said to work with Dr. Kelly. So I don't know how they decide if it's Dr. Kelly or Dr. Bursch now, but that's just the directive we got.
Q. And do Dr. Kelly and Dr. Bursch do medical reviews for other types of cases besides Munchausen?
A. I don't know specifically for Dr. Bursch because I never worked with her. But for Dr. Kelly, he did do the records review here for the medical neglect.
Q. Didn't he do the medical record review here

[Page 221]

Kenan receiving his Levothyroxine until she consulted with Dr. Miga somehow amounted to a pattern of withholding necessary medication. Rather, Dr. Kelly appears to propound the DCS preconceptions and bias against mother. This is a profound lapse of professional objectivity."

Do you see that, where he says that?

A. Yes.

Q. And do you take issue with Dr. Newberger's comment that mother's request to pause the medication until she spoke with Dr. Miga about it is not evidence of a pattern of withholding necessary medication?

MR. CROWN: Objection to form and foundation.

THE WITNESS: I can't really say if there isn't a pattern because there's only one referenced incident here. And from my recollection of the Banner records, that there was more than one incident, so I would have to review back to the records to see if there is a pattern.

BY MR. CONNELLY:

Q. So it's your belief that there were a number of instances in which mother refused medications?

A. Correct.

MR. CROWN: Objection to form and foundation.

[Page 222]

BY MR. CONNELLY:

Q. But you don't remember what the medications were or when those refusals occurred; right?

A. I know it was during the hospitalization in December 2018, but I don't remember the name of the medication.

Q. And so you're saying if we scour through the Banner records, we'll see a pattern of mother refusing medications; right?

A. That's what I recall from the Banner records.

Q. Do you think that Dr. Newberger missed those multiple refusals in the Banner records when he was preparing his report?

MR. CROWN: Objection to form and foundation.

THE WITNESS: I don't know.

BY MR. CONNELLY:

Q. Do you think that if Dr. Newberger identified a pattern in the Banner records, that he would have made his criticism about Dr. Kelly?

MR. CROWN: Objection to form and foundation.

THE WITNESS: I don't know.

BY MR. CONNELLY:

Q. The other thing that Dr. Newberger notes in this

[Page 223]

paragraph is that mother consented to the medication once Dr. Miga answered her question.

Do you remember seeing that in the Banner records?

MR. CROWN: Objection to form and foundation.

THE WITNESS: Not off the top of my head.

BY MR. CONNELLY:

Q. We'll pick up with different parts of Dr. Newberger's report later, so if you want to have some weekend reading.

Now, it's fair to say, isn't it, that during the time that you were the case manager assigned to this case, that you drew conclusions about mother based on your interactions with her?

A. Correct.

Q. And do you know what confirmation bias is? Did you ever have any training on confirmation bias?

MR. CROWN: Objection to form and foundation.

THE WITNESS: I know I had training on it, but it's been a while, and I couldn't tell you a definition.

BY MR. CONNELLY:

Q. Okay. So it would be fair to say that since you

[Page 224]

really don't know what confirmation bias is, you don't know how to recognize it in yourself and prevent yourself from falling prey to confirmation bias; is that fair?

A. I mean I could -- I could tell you that really, my understanding is just really, you know, kind of following along with others and just going along with that. But I can't give you like a formal, like, definition. Like I'm not -- I couldn't give that to you.

Q. Generally it means having a preconceived notion and then searching out or recognizing only information that confirms that preconceived notion.

A. Right.

Q. And you had a preconceived notion about mother in this case, that she was a Munchausen parent, didn't you?

MR. CROWN: Objection to form and foundation.

THE WITNESS: No.

BY MR. CONNELLY:

Q. You had a preconceived notion that she intentionally restricted the diets of her children and then failed to seek medical care knowing that medical care was necessary; right?

MR. CROWN: Objection to form and foundation.

BY MR. CONNELLY:
Q. C-reactive protein and white blood cells normal, and the notation is that that's an indication of no muscle wasting.
Do you see that?
A. Yes.
Q. So, okay. This takes us through November 2nd of 2018. So just a little bit more over a month from when Kenan then ends up in Banner in 2018; right?
A. Correct.
Q. So we've seen that during the two years that the boys were on the GAPS diet -- and we haven't seen Dylan yet, so just for Kenan -- we've seen that during the two years he was on the GAPS diet, when he was seen by doctors at well checks and for other reasons during those two years, he's consistently overall gaining weight, right, including up to 83.8 pounds in November, but he's consistent -- I think they probably meant to say 38 pounds.
A. Uh-huh.
Q. Or that's what I think, but it's not what the record says.
So -- but do you agree with me that during the two years preceding the admission to Banner in December of 2018, while he's on the GAPS diet, that Kenan

is gaining weight?
MR. CROWN: Objection to form and foundation.
THE WITNESS: Yes, he is.
BY MR. CONNELLY:
Q. And all of the examinations, the objective observations of the medical professional who's examining him at these visits described him as being well nourished and hydrated or -- well nourished.
All of the heart examinations are normal; right?
A. Correct.
Q. We didn't see anything that would indicate -- let me ask it this way.
Was there anything that we saw that would indicate to a parent that there was some imminent problem?
MR. CROWN: Objection to form and foundation.
THE WITNESS: Not by what's in the notes. I don't know if anything was said differently during the actual appointments, but not from the notes.
BY MR. CONNELLY:
Q. Okay. And we don't see any doctor in here saying take the kid to the hospital because he's malnourished; right?

A. Correct.
Q. And we don't have -- if you look through your DCS notes, we don't have any of these doctors making a report to the hotline call; right?
A. I mean --
Q. You're unwilling to go there right now because you don't have --
A. Yeah, I don't -- I don't recall, so I can't guarantee it.
MR. CONNELLY: Okay. All right. That's all I have for today. We'll pick it up on the 12th or the 16th.
MR. CROWN: All right. Let the record reflect that this deposition is commenced and continued by agreement of the parties.
THE VIDEOGRAPHER: This concludes today's deposition of Madison Bell. We're off the record at 6:10 p.m.
(WHEREUPON, this deposition adjourned at 6:10 p.m.)

____________________________
MADISON BELL

STATE OF ARIZONA )
) ss.
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing proceedings were taken by me, MICHAELA HERMAN DAVIS, a Certified Reporter, in and for the County of Maricopa, State of Arizona; that the witness before testifying was duly sworn to testify to the whole truth; that the questions propounded to the witness and the answers of the witness thereto were taken down by me in shorthand and thereafter reduced to typewriting under my direction; that the foregoing pages are a true and correct transcript of all proceedings had, all done to the best of my skill and ability.

I CERTIFY that I am in no way related to any of the parties hereto, nor am I in any way interested in the outcome hereof.

[X] Review and signature was requested.
[ ] Review and signature was not requested.
[ ] Review and signature was waived.

I FURTHER CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206(J)(1)(g)(1) and (2). Dated at Phoenix, Arizona, this 27th day of August, 2024.

________________________________________

Michaela H. Davis, RPR, CRR, CRC
Arizona CR No. 50574
New Mexico CCR No. 614

I CERTIFY that Carrie Reporting, LLC, has complied with the ethical obligations set forth in ACJA 7-206. Dated at Phoenix, Arizona, this ______ day of ______________, 2024.

________________________________________

Carrie Reporting, LLC
Arizona RRF No. R1064