# EXHIBIT BD



Phoenix
Family & Forensic
Services, LLC

| EXPERT CONSULTATION RECORD REVIEW |

Case Name: Jessica Kahraman
Retained by: DeeAn Gillespie

Expert: Ann Schroeckenstein, Psy.D.
Date of Report: 8/28/20

**NATURE OF REFERRAL:**

Ms. DeeAn Gillespie retained the services of this expert to review supervised visitation notes of Ms. Jessica Kahraman, "Mother," with her children, K      and I      , and to address the following referral questions:

1. Did you notice any concerns about Mother's ability to safely parent given the feedback forms and monthly reports you have reviewed?
2. Based only on the feedback forms and monthly reports, does Mother exhibit a minimally adequate ability to parent? Please elaborate.
3. Did you see any change in the feedback forms and monthly reports' tone, including how they are written or how Mother is portrayed, either positive or negatively?
4. Did you observe any discrepancies between the feedback forms reviewed with Mother at the visit as compared to the monthly reports?
5. Has Mother demonstrated application of the ACCEPTS goals, based on the feedback forms and monthly reports? If not, what may be lacking?

**BACKGROUND INFORMATION:**

Ms. Gillespie indicated that the Department of Child Safety (DCS) became involved with Mother's family in December 2018 due to concerns of Mother's children being neglected. She explained that Mother consulted with an expert and implemented the Gut and Psychology Syndrome (GAPS) diet for her twin boys due to their medical needs and sensitivities to various foods. Ultimately, the children's health declined while following the GAPS diet and DCS became involved due to concern of neglect during one child's hospitalization. Per Ms. Gillespie, Mother participated in a psychological evaluation and a follow-up evaluation with Dr. Oakley. Dr. Kelly was retained by DCS and completed a record review. Ms. Gillespie noted that Dr. Newberger also reviewed records and prepared a report for this matter. She asserted that Mother has never been diagnosed with Factitious Disorder.

Kahraman
Expert Work Product
Page 1 of 21

Ms. Gillespie reported that throughout the family's involvement with DCS, Mother has participated in supervised visitation through Southwest Human Development. Ms. Gillespie requested that this evaluator review records from Southwest Human Development to address the above-listed referral questions.

**LIMITATIONS:**

This expert was retained strictly for the purpose of reviewing the supervision notes provided to offer an expert opinion as to the above-listed referral questions. This expert has not provided any direct services to Mother and no evaluation of Mother was completed. The opinions formed in this report are based on the data available to this expert.

**EXPERT'S BACKGROUND AND QUALIFICATIONS:**

This expert earned a doctoral degree in Clinical Psychology from Midwestern University in August 2011 and has been licensed as a psychologist in Arizona since January 2012. Since that time, this expert's career has specialized in juvenile and family forensic matters, primarily serving in an evaluative capacity. This expert has completed over 400 Psychological Evaluations, 30 Focused Assessments, and 30 Comprehensive Family Evaluations since being licensed. This expert has also served in an expert capacity for many issue-specific matters in family and juvenile court proceedings. This expert is a member of the Association of Family and Conciliation Courts.

**RECORDS REVIEWED:**

**Southwest Human Development; Supervised Visitation Notes:**

Mother's supervised visitation began on 2/28/19 and visits through 2019 included the participation of Ahmet Kahraman, "Father," and Mother; Mother has participated in separate visits since 2020. The following is an overview of the records included each month from February 2019 through August 2020.

February 2019:

The family had one visit in February 2019 and during this visit, the parents were noted to praise the children regarding their physical accomplishments and new skills. Mother reinforced their diet and the new foods that they had explored. The parents were also described as being prepared for the visit and appropriately addressing the children's questions about their placement and their anticipated return home, including reassuring them that the "adults are working on it." In discussing the children's health with the supervisor, Mother discussed that the children's immune systems declined upon beginning school. She discussed the children experiencing "behavioral reactions" to foods and cited a desire to expand their diets.

March 2019:

Kahraman
Expert Work Product
Page 2 of 21

Records from Mother's visitation from March 2019 suggested Mother was attentive to the children's needs, such as retrieving a tissue for Dylan. She was also depicted as exhibiting excitement for developments in the children's lives and offering praise and reinforcement. A note from 3/12/19 indicated that the parents were attentive to physical and emotional needs. While the note included a caution not to inspect the children for illness, there was no reference or depiction of this occurring within the note. During the visit on 3/26/19, the family reportedly planned Easter activities, which appeared age appropriate. Notes from 3/30/19 suggested that the parents engaged in play with the children, but were cautioned to follow their lead.

Notes from a CFT meeting suggested that Mother identified the need for various interventions and accommodations for the children, such as speech therapy for Dylan; however, the foster mother denied that this had been raised as an issue by the school. Mother had also reportedly requested headphones or occupational therapy for Dylan, but the foster mother denied this was an issue. In discussing Kenan, Mother identified an observation that Kenan was open to disclosing health or physical complaints with her, but withholding or denying the same concerns when speaking to others.

The monthly summary depicted Mother as being disengaged during the mealtime on 3/4/19. It was noted that Kenan asked Mother questions about why she did not return for him at the hospital, and records suggested she handled such questions well. On 3/12/19, records suggested Mother was affectionate with the children, anticipated and was attentive to their needs, and successfully used reinforcement. The note indicated that Mother required a reminder about gifts needing to be approved in advance. The parents were reinforced for their attentiveness to the children's needs, their responses to the children's questions about food, and their reinforcement with the children. The note included a reminder to not inspect the children. It was noted that the parents were "affectionate and emotionally available" to the children and were reminded about focusing on health and wellness.

On 3/19/19, Mother was depicted as establishing limits with the children regarding appropriate behavior. It was noted that Mother needed to focus more on sitting back and observing the children, rather that overseeing and repeatedly asking questions. It was also recommended that the parents focus on establishing the children's independence. On 3/26/19, Mother provided warnings for consequences in response to inappropriate behavior. She also responded appropriately to questions about the family's arrangements and when the children would be returning home. The visit on 3/30/19 was described very positively and it was noted that no interventions were needed; however, there was feedback for the parents to allow the children to lead play.

Overall, the parents were described as being prepared for the visits with diverse activities. During feedback with Mother, she reportedly discussed that the children presented differently for her and others, noting instances when they were playful with Father, but presented as ill to her and believed this was due to their comfort with her as their mother.

    <u>April 2019:</u>

Kahraman
Expert Work Product
Page 3 of 21

On 4/2/19, only Dylan participated due to Kenan having a doctor's appointment. The record depicted the parents as actively involved in play with Dylan. On 4/6/19, Mother was documented as bringing different necessities for the children and activities and toys for the visit. It was noted that the parents recognized and validated the children's feelings and encouraged discussion around this topic. The parents were also reported to provide transition reminders. On 4/9/19, the parents again came prepared with items for the visit. It was noted that the parents had listened to the children's request from a prior visit and followed through and demonstrated empathy. On 4/16/19, the note indicated that Mother assisted Kenan in processing his emotions during homework challenges and that the parents were attentive and empathic. Feedback was provided to ask the children prior to picking them up and to avoid talking about plans upon the children returning home. On 4/20/19, the family planned and executed a special Easter celebration. Mother was documented as exhibiting empathy in response to a child's emotions. Positive notes were also referenced on 4/23/19. On 4/27/19, the parents were described as following the children's leads in play and exhibiting patience. They were cautioned about bringing too many items for visits and suggestions were made to narrow the activities or items available. It was noted that Kenan had asked difficult questions about the children's separation from the parents and the parents were responsive to feedback from the visit supervisor. On 4/30/19, the parents were documented as providing positive reinforcement and engaging in play. The parents were encouraged to continue working on how to address difficult questions and to follow the children's lead regarding play and affection.

The monthly summary indicated that on 4/2/19, Mother had inquired as to whether Kenan was using a white board at school, and reportedly stated that as long as he was doing well with the white board, she did not have to worry. The summary depicted Mother as giving clear and positive directions, setting expectations, and offering the children praise. She was also documented as validating emotions. It was noted that Mother was supportive of the children trying a variety of diverse foods and foods that were previously avoided. Mother was also described as encouraging expression of emotions and communicating about different feelings. Within the visits, Mother was depicted as being empathic when the children expressed different emotions or challenging situations. She was described as labeling the emotions and providing affection to help the children manage these emotions appropriately. The summary indicated there was discussion with Mother on 4/16/19 about the children's comments of their food having been controlled in the past. Mother reportedly became tearful during this discussion and hoped she had addressed it appropriately, which was validated. On 4/20/19, Mother was noted to encourage the children's completion of age-appropriate tasks independently. Additional visits from the month suggested Mother followed the children's lead in play. Mother also fielded more questions from Kenan about being left at the hospital; records suggested she responded appropriately. On 4/30/19, Mother reportedly discussed with the visit supervisor mold being discovered in their home and asked whether this should be shared with the children. Mother reportedly commented, "This is probably what has been making them sick"; she was redirected by the visit supervisor.

Mother's progress on the ACCEPTS model was documented this month. Specifically, the record stated that Mother had not taken responsibility for any abusive behaviors and had not identified coping skills. It was noted that the parents had not demonstrated empathy for what the children

Kahraman
Expert Work Product
Page 4 of 21

had suffered, but had expressed overall empathy and validated the children's emotions. It was noted that the parents exhibited appropriate parenting skills, had taken charge of their lives by maintaining employment and housing, and had used the support of maternal and paternal grandparents.

May 2019:

Notes from 5/7/19 indicated that Mother had inquired about different parenting classes and classes related to the trauma of separation between the parents and children. The parents were reported to reinforce expectations and Mother provided gentle reminders for appropriate behavior. The parents were also described as being attentive to Kenan eating rapidly. Mother appropriately used redirection and allowed the children to lead. Suggestions were provided as to how to phrase redirection with the children. Notes from 5/11/19 indicated that the parents extended the goodbyes with the children, rather than following the program's protocol. Notes indicated the parents acknowledged this and agreed to adhere in the future. It was noted that Mother set an agenda for the visit and provided transition warnings. On 5/14/19, Mother was depicted as being attentive to the children, including choking concerns in Kenan. On 5/18/19, Mother was described as being attentive to the children's feelings and validating their emotions. Mother was criticized for stating that the baby was sick during imaginative play; however, she explained that she did so because Dylan wanted to play doctor. She identified intent to be more mindful of imaginative play themes for the future. Feedback was provided on 5/21/19 to adhere to and follow through on guidelines and expectations. Notes from 5/28/19 were positive in regard to the parents' engagement with the children and their validation of emotions. Feedback was provided as to the children's understanding of time and how non-verbal communication can be used.

The monthly summary report entailed additional details of the visits, including Mother's use of positive redirection and teachable moments. She was depicted as being encouraging of the children trying new things; however, suggestions were provided to portion out meals in appropriate sizes. Mother also provided prompts at mealtimes to slow down and listen to their bodies. The parents were encouraged to use "I wonder" statements to facilitate greater dialogue, rather than simply asking the children questions, and subsequent notes suggested Mother employed this recommendation. Mother was also encouraged to give options for completing tasks, such as using the bathroom, rather than posing questions as yes or no. A recommendation for being consistent with prompts and reminders and administering such instructions to both children was noted. A note from 5/28/19, indicated that Father had mentioned lamb and Kenan made a statement that this caused his heart failure. Mother reportedly told Kenan that the lamb did not cause the heart failure and attempted to change topics. When Kenan asked if he could eat lamb, Mother assured him appropriately that he could but he could have many other foods as well. It was noted that the parents provided affection and loving statements at times when the children were preoccupied with other things, and suggestions were reportedly provided for demonstrating love in different ways. The summary indicated that overall, the parents provided enjoyable activities and exposed the children to a variety of foods, which had resulted in their increased security with food. It was noted that the parents had remained "consistent in their statements that the children's reactions to food have seemingly improved and that their

Kahraman
Expert Work Product
Page 5 of 21

restrictive diet was not the cause of their medical problems." It was noted that Mother discussed participation in parenting classes, nutritional courses, and therapy; Mother believed she had made sufficient progress for unsupervised time. However, concerns were identified that she was continuing to deny medical neglect and this continued to be a concern with regard to the ACCEPTS model.

### June 2019:

A note from 6/1/19 encouraged the parents to allow the children to ask for help, rather than immediately intervening. Mother was described as assisting the children to problem-solve and providing praise and reinforcements. Throughout the month, Mother gave prompts to the children to listen to their bodies and not to rush eating. She also requested input from the children regarding their desired meals. Mother was described as attending to the children's cues and following their lead in determining activities for the visits. When Maternal Grandparents were involved in visits, there was feedback of too many adults providing directions, which could be confusing for the children. The parents were also instructed to use "I wonder" or "tell me about" statements, rather than asking too many questions. On 6/4/19, the children were reportedly not feeling well and the parents made appropriate adjustments in light of their health. Included in the notes were suggestions to frame things as a choice for the children as a means to encourage compliance.

The monthly summary report included descriptions of Mother talking through situations with the children and helping to problem-solve. She was depicted as being attuned with and empathic toward the children's feelings. It was noted that feedback was given to the parents about the importance of labeling these emotions for the children. A note from 6/13/19 indicated that Kenan disclosed being exposed to white board markers in class and Mother appropriately reassured him, stating, "Your bodies are doing so much better now, I don't think you need to worry about that anymore." It was noted that Mother attempted to have a serious conversation with Kenan while he was distracted with play and suggestions were provided to wait until she had his attention before initiating important discussions.

Notes from 6/17/19 indicated that Mother inquired about what was needed to progress to unsupervised visits, noting that her psychological evaluation and observation reports had been positive. At this point, Mother's was directed toward the ACCEPTS protocol and the parents were informed that they needed to acknowledge abusing the children. Mother stated that she "was not admitting to something that she didn't cause as they now know it was their house…Mother reported the boys' illness was caused by the mold in their home." On 6/27/19, the ACCEPTS model was revisited by Mother as she reportedly stated that she did not "intentionally" abuse the children. The parents reportedly discussed their observations of how well the children were doing at the time, but cited ongoing small signs of reactions to food. It was noted that the parents remained "consistent in their statements that the children's restrictive diet was not the cause of their medical problems." Feedback surrounding the remaining components of the ACCEPTS model was fairly positive.

### July 2019:

Kahraman
Expert Work Product
Page 6 of 21

During July 2019, the parents were depicted as opening lines of communication with the children and offering to answer any questions they may have. Feedback was given to implement greater consistency and routines, particularly surrounding mealtimes and bathroom usage. Throughout the month, Mother continued to praise and reinforce the children and provide prompts and gentle reminders for appropriate behaviors. She also provided warnings for transitions.

The monthly summary depicted Mother's interactions and parenting of the children in a positive manner. There were some reminders to use open-ended questions, be consistent with routines and expectations, and to implement greater boundaries surrounding mealtime, but the overarching feedback appeared positive. Notes indicated that the parents were provided feedback that both children appeared to have positive and bonded relationships with the parents. The summary noted that the parents maintained their belief that the children's medical problems were not caused by their restrictive diets, but acknowledged that their reactions to food had improved.

    August 2019:

August 2019 notes indicated that the parents continued to arrive to visits prepared with activities and were responsive to the children's requests for certain items, such as school supplies. It was noted that Mother encouraged the children's independence and attempts at new skills before assisting. The parents were described as engaging in teachable moments based on the events of the visits. They were described as implementing age-appropriate expectations and routines and were depicted as being attuned with the children. Feedback was again provided for the parents to be consistent with the children. At one point, it was suggested the parents attempt different redirection approaches if a child is unresponsive.

The monthly report suggested that on 8/10/19 Mother asked for feedback regarding progress made during supervised visits and the parents were reportedly informed that they had taken "positive steps" and were implementing the strategies introduced by the supervisors; however, it was noted that Mother was hesitant in what she said within their work due to the ongoing DCS case. A note from the feedback session on 8/24/19 indicated that Mother acknowledged that she looked "like a monster" in the medical records, and was willing to discuss the records in greater detail with the supervisor. Mother was reportedly focused on attributing the children's hospitalizations to the presence of mold in the home.

    September 2019:

September 2019 visit notes suggested that the parents continued to be prepared for the visits. Throughout the month, the parents were noted to give praise. Mother assisted the children in managing and problem-solving sibling disputes, listening to the children, and validating feelings. Unconditional love was also discussed. There were documented teaching moments, such as discussion with the children about what they should do in case of emergency. Areas for improvement including balancing expectations between the children and following through with prompts.

Kahraman
Expert Work Product
Page 7 of 21

The monthly summary indicated that Mother appropriately participated in a cardiac appointment for Kenan and attended and participated in a CFT meeting with the DCS team. The visit summaries indicated that Mother shared in the children's positive emotions, comforted their negative emotions, and was verbally and physically affectionate. Mother was also noted to share situations that made her feel similarly to an emotion experienced by the children and identified ways that have helped her. She was also documented as using open-ended questions or statements to prompt dialogue with the children.

Areas for growth included using logical consequences as a disciplinary intervention and to provide choices for the children. In assessing the ACCEPTS model, it was noted that Mother was not viewing her actions as abusive and did not acknowledge her responsibility in the children's experiences.

October 2019:

Records from visits in October 2019 suggested that Mother provided notice to the children of anticipated changes and plans. She was described as being attentive to the children's emotional experiences and helping them to problem-solve. Mother continued to engage in natural teaching lessons as they arose during the visits. She used praise, provided prompts and reminders, and reinforced positive behaviors. The parents continued to offer the children a variety of different foods, and provided reminders for the children to listen to their bodies and eat slowly. It was noted that the parents did a good job balancing individual time with each child and time together as a family. Feedback was minimal throughout the month. The parents were encouraged to continue implementing feedback, following the children's lead, setting limits, and praising the children. The parents were also given feedback about the children's developmental ages as related to their understanding of times and dates for visits. It was noted at times that the parents talked over each other in their discussions with the children, which could be confusing for them.

The monthly summary indicated that the parents expressed some confusion as to instructions for how they should structure the children's access to food, as different supervisors had given different instructions (i.e. allowing as much food as desired verses limiting food). The summary indicated that the parents' transition to handling the children's food, rather than the supervisors managing the food, had been smooth. The parents were described as following the children's leads in play and responding with enthusiasm to their excitement. Mother was cautioned against labeling the children's behaviors, with an example of Mother referencing "stimming" behavior; feedback was provided that use of such labels could impact the children's self-image and self-esteem. In assessing the ACCEPTS model, it was noted that the parents continued to not view their actions as abusive and had not taken responsibility for the negative impact on the children.

November 2019:

Mother was described as being actively involved in conversation with the children and attentive to their emotional and physical needs. She was noted to help the children problem-solve issues

Kahraman
Expert Work Product
Page 8 of 21

in their lives and use open-ended phrases to facilitate dialogue. Feedback was minimal during the month, with broad statements to continue "following expectations and feedback."

The monthly summary indicated that Mother was attentive to the children, helped them through situations, and implemented teaching exercises. She was also noted to set expectations, such as times for transition. During a feedback session on 11/19/19 the parents discussed with the supervisor their perception of the children's development and Mother's opinion that they were behind their peers although they had progressed and overcome challenges. She also referenced the children's problem-solving abilities and discussed differences between the children regarding socialization and preferences. The monthly summary indicated that Mother inquired about feeding and eating restrictions associated with visitation and during this discussion, the parents were praised about their attempts to enforce appropriate portion sizes and intuitive eating. It was noted that the parents continued not to acknowledge or take responsibility for their alleged abuse of the children and repercussions the children had faced.

### December 2019:

The visitation notes from December 2019 suggested Mother provided praise and comfort to the children. She also engaged in teaching exercises, established boundaries, and gave prompts to the children for appropriate behavior. Instances were referenced wherein Mother anticipated the children's needs, such as proper dress for the weather and attentiveness to their nails. During a craft activity, Mother provided reminders for appropriate behavior to prevent the children from being poked by pins. She was also depicted as dividing attention between each of the children.

The monthly report included feedback about the need for the parents to implement similar expectations as to appropriate verses inappropriate activities and topics so as to avoid displaying conflicting opinions in front of the children. The monthly summary indicated that the parents continued to attend visits prepared and the children were excited for their time with their parents. It was noted that the parents provided structure and offered choices to the children. The summary noted that the visitation center was informed that Mother intended to file an Order of Protection (OOP) against Father and Mother inquired with staff as to the best way to discuss the changes in the family to the children. In assessing the ACCEPTS model, it was noted that the parents continued to deny that their actions were abusive and did not acknowledge responsibility for the impact on the children. In regard to coping, it was noted that the parents had disagreements and exhibited frustration in front of the children and recommendations were provided to avoid these interactions in the presence of the children.

### January 2020:

Only two visitation notes were provided for January 2020. The notes indicated that Mother established expectations, gave prompts for safety, and was attentive to the children's needs.

The monthly summary indicated that Mother participated in DDD meetings for each of the children and contributed information as to her observations and concerns. During these meetings, Mother reportedly requested assistance in communicating the plans for the divorce to

Kahraman
Expert Work Product
Page 9 of 21

the children. The notes indicated that Mother had Father served with the OOP after his visitation, which violated the visitation guidelines. Mother reportedly apologized and stated that she thought the policy related to being served in the center rather than on the property.

February 2020:

Visitation notes were only provided for 2/10/20, but suggested Mother was prepared for the visit, had planned activities, and actively engaged with the children. She was attentive to their physical and emotional needs and provided verbal affection and praise.

The monthly report summarized all of Mother's visits with the children during February 2020, including the parents' meeting with the children to discuss their plan to divorce. The note from this meeting suggested that Mother spoke in an age-appropriate manner with the children and answered questions. The visitation summaries suggested Mother was attuned with the children's emotional states and checked in regarding their wellbeing. She also provided appropriate prompts during meals for the children to listen to their bodies and reinforced that their bodies were strong when Kenan referenced his hospitalization. A summary note from 2/10/20 suggested that Kenan engaged in imaginary play with Maternal Grandfather and Mother suggested "that the gameplay end and appeared irritated by the interaction as evidenced by scowling." During the feedback session on this date Mother discussed her coping mechanisms for managing stress including going to the gym and talking to friends, and cited a plan to prompt the children to share when they appeared upset.

Additional visits from the month suggested Mother assisted with problem-solving, encouraged independent completion of tasks within the children's capabilities, and used open-ended phrases to facilitate discussion. She was noted to kneel down and speak on the children's level. Mother successfully navigated sibling disputes and helped the children to communicate their feelings. When the children referenced Father, Mother reinforced this relationship. For example, when the children shared their visitation schedule with Father, Mother reportedly stated that it made her happy for them to have lots of family time. During the feedback session, Mother reportedly discussed concern that she was in a "holding pattern" and hoped to progress to visitation in the community.

The summary indicated that Mother had "provided little insight as to the role she played in the children coming into DCS care" and recommended Mother explore her feelings surrounding the children's heath and development and need for therapy. It was also recommended she develop coping tools for managing her emotions.

March 2020:

Notes from March 2020 suggested Mother continued to attend visits prepared and with various activities for the children. She used open-ended questions, reinforced safe behaviors, and prompted appropriate eating. Mother also prompted appropriate behaviors between the siblings. Feedback from 3/17/20 included a recommendation for Mother to consolidate her explanations about transitions to the children. Mother completed a feedback form and discussed that she felt

Kahraman
Expert Work Product
Page 10 of 21

it was necessary to correct Kenan's misunderstanding of Covid-19. On 3/18/19, the family transitioned to video-visits and Mother was described as preparing appropriate activities for this forum. She was depicted as reinforcing Kenan when he made negative comments about his abilities and mitigated different preferences expressed between the children. It was noted that Mother appropriately offered the children the option of ending the video-visit early due to challenges maintaining attention and engagement. She also provided teaching lessons related to hygiene during the pandemic. External to the suggestion to condense explanations to the children, the notes did not identify any other concerns or areas for growth.

The monthly summary included a depiction of the supervisor's feedback session on 3/4/20. Within this discussion, Mother reportedly expressed a perception that there was a "stuck point with her therapist" regarding the first treatment goal. Mother subsequently discussed the progression of the children's medical treatment. She reportedly communicated a perspective that the children were doing fine on the GAPS diet until beginning school; however, the supervisor challenged Mother on the children's ability to tolerate a normal diet within 30 days of being removed. Mother attributed the children's lack of food sensitivities while in foster care to possibly having "healed with the break from eating those foods." They also discussed the children's use of wheelchairs, which Mother attributed to Kenan experiencing a fracture and being fearful of pain. Per Mother, both children were fearful of walking due to pain. The note indicated that Mother became emotional during the discussion and expressed a desire for the children "to experience activities as a family again." Mother reported being "completely misdirected by the doctors" and reported directing her attention to the children's challenges with food as a distraction from other issues in her life. She identified coping skills as including practicing yoga, going to the gym, talking to a friend, and attending therapy.

A visit note from 3/11/20 indicated that Mother was attentive to the children's emotional experiences and talked through a challenging situation with Kenan. She also helped the children in developing empathy by considering the other sibling's perspective during a sibling dispute. Mother was encouraged to prompt "why" questions to understand the children's underlying feeling.

During a feedback session on 3/17/20, Mother discussed her participation in therapy and her therapist being "thrilled" with her progress. She reportedly revisited discussion about the children's health. When asked if she would return the children to the GAPS diet, Mother reportedly stated that she "hasn't observed the boys to have difficulty with any foods since DCS involvement. Mrs. Kahraman reported she didn't foresee any future challenges based upon the boys [sic] current responses to food." Mother reflected on the fact that she was driven by her fear with the children's health, which "lead her down several 'rabbit holes,' and if she could start over she would have stopped the GAPS diet." She discussed recognition for mistakes she had made and reported having forgiven herself.

During a feedback session on 3/24/20, Mother reportedly discussed her observation that DCS wanted her to admit to "over medicalization," but her therapist informed her that there was not a formal definition of such a term. Mother reportedly acknowledged that the children's diet "was a large contributor to their decline and that she should've done more." She stated that she should

have sought emergency care sooner. Mother reportedly shared a perception that she was being ignored.

The overall summary indicated that Mother communicated greater insight into her role in the situation contributing to the children entering DCS care. Mother reportedly discussed being misguided, but having full trust in the children's current doctor, Dr. Miga. It was noted that Mother had not identified "specific acquired coping skills that can be implemented to avoid any past behaviors from occurring. Thus, continued evaluation is still needed to identify Mrs. Kahraman's healthy coping skills and if she is capable of making appropriate medical decisions in the future."

### April 2020:

Mother's visits with the children continued to occur virtually through the month of April 2020. The majority of visits ended early upon the children's requests. On 4/1/20, Mother completed a feedback form and discussed her intent to increase self-care and coping strategies, such as yoga meditation, and exercise. She also cited a plan to consult with the children's pediatrician if she were to observe rashes on the children in the future. Mother's homework from that session included a reflection on her past parenting and inadvertently casting each of the children into different boxes based on their perceived strengths. Homework from 4/8/20 indicated that Mother was verbally and non-verbally modeling that the children's bodies were safe and that they could eat a variety of foods by providing them diverse food options during visits. She noted that it was not intentional, but she "did not provide the macronutrient diversity that was necessary for their optimal growth" and that she relied on naturopaths, rather than their pediatrician. Additional homework completed that month included Mother's reflection on her emphasis on the process of completing a task, rather than the final product, and communicating when mistakes have been made.

No monthly summary was included for April 2020.

### May 2020:

Mother's visits with the children continued to be virtual during the month of May 2020. Of note, the children had access to computers during some of these visits, which seemed to interfere with the visits as Mother perceived the children as disengaged and hyper-focused on their electronics. At times, Mother offered to end visits early due to the children's engagement in their computers, but this was met with resistance. On 5/5/20, Mother told the children, "I love your games, but I feel frustrated, when I can't hear or see you guys." A note from 5/6/20 included feedback that Mother could have exhibited increased patience in response to the children's computer usage. In Mother's response form, she discussed her belief that computer usage should be limited or done outside of visits as it was a distraction. A note from 5/15/20 indicated that Mother discussed receiving flowers and card at her work. In response to the children sharing that Father had done this gesture, Mother told the children to thank Father. Mother was subsequently given feedback not to have the children pass messages to Father.

Kahraman
Expert Work Product
Page 12 of 21

The monthly summary included more detailed notes from Mother's visits with the children, wherein she made attempts to have the children choose between their computer games or the visit. Feedback addressed this issue, with the supervisor suggesting that Mother consider how it would feel to "just 'be with' the children while they engaged in their own play." Mother reportedly shared that she had limited technology in her home and encouraged more hands-on play. Feedback also criticized that Mother continued to ask the children if they wanted to end the visit early despite the children not requesting a shortened visit. At the next visit, Mother again attempted to implement boundaries with electronics, and ultimately engaged in a game with Dylan while Kenan played on the computer. It was noted that Mother attempted to end the call early and expressed frustration with not being able to see the children due to their computer usage; however, the children protested and the family subsequently engaged in other activities. The feedback note again indicated that Mother could have exhibited increased patience with regard to the children's computer usage. During this discussion, Mother discussed her perception that different supervisors viewed the situation differently and suggested that it may be better to have one supervisor. A visit note from 5/15/20 suggested that Mother appropriately engaged in discussion with the children when they referenced experiences with Father. She also discussed receiving a card and flowers for Mother's Day. When the children shared that Father was responsible for this gesture, Mother asked the children, "Can you tell Baba [Father] that was very nice?" A prompt was subsequently given to Mother not to talk about Father. During the video-visits, Mother was described as effectively managing the children's conflicting requests for activities. She also continued to help the children engage in problem-solving and communication about their feelings.

The summary from this month indicated that Mother missed three visits due to her desire to record visits. Visits reportedly resumed when Mother agreed she would not record and that feedback would be limited to the visit, rather than the ACCEPTS model. It was recommended that Mother work with her therapist to identify coping mechanism, her "needs that contributed to the actions that lead to the dietary and medical decisions she made," the reasons leading to the children's removal from the home, and the appropriateness of Mother participating in therapy with the children. It was also recommended she establish an "objective support system" to offer input about medical care and that she develops co-parenting skills. In regard to the ACCEPTS model, the May 2020 summary report indicated that Mother reported having been "misguided and misdirected because there were too many doctors involved and not enough communication." It was noted, "It is unclear as to how she can be misguided when she reported concerns to the doctors which led them to make decisions and diagnoses based upon her statements." Additionally, the supervisor questioned how there could be a lack of communication when Mother was responsible for communicating. The summary indicated that Mother's decision to suspend visits due to a desire to record demonstrated a lack of empathy due to it resulting in a sudden change for the children. The report also referenced concern about Mother's frustration with the children's distraction due to using electronics during the virtual visitation, noting that Mother "displays difficulty to 'be with' the children if they are not giving her direct engagement." In regard to future plans, Mother acknowledged "the children's progress in relation to their diet" and indicated she would no longer use the GAPS diet. She reportedly identified a desire to integrate allopathic doctors, rather than naturopathic doctors, and minimize the use of doctors.

Kahraman
Expert Work Product
Page 13 of 21

<u>June 2020:</u>

In-person visits resumed in June 2020. During the visits, Mother connected with the children by discussing and engaging in their interests. She followed the children's lead, offered choices, and encouraged their independence in age-appropriate tasks. There were also instances wherein Mother helped the children communicate about their emotional experiences.

The June 2020 monthly summary indicated that Mother navigated sibling disputes and attended to safety concerns. The summary from 6/2/20 indicated that Dylan found a piece of glass on the ground and Mother moved the glass and discussed that the children should alert an adult if this happened in the future. During the feedback session from this appointment, Mother reportedly discussed her belief she had achieved the ACCEPTS model goals, and was confused as to communication she had received about unmet goals. On 6/3/20 there was reportedly an incident when Kenan held a fork toward his face and Mother responded by reaching her hand toward the fork and discussed not jumping with a fork in his hand. The feedback from this visit indicated that Mother appeared "hypervigilant regarding safety hazards" and exhibited a level of tension. At times when the children engaged in play with more aggressive themes, Mother redirected them to another activity. Mother was depicted as being perceptive to the children's nonverbal cues and aware of developmental tasks the children were attempting to master, such as shoe tying. The feedback summary from a visit on 6/10/20 indicated that Mother exhibited frustration with the supervisor's narration of the visit and comments of Dylan exhibiting "waning attention" while engaged with Mother.

On 6/10/20, Mother's progress in meeting treatment goals was revisited. During this discussion, the supervisor discussed Mother believing she was misguided by the doctors, but questioned who besides Mother was providing the information to the physicians. Mother reportedly responded that she had provided information but the doctors also had observations. Mother was reportedly questioned as to who had directed Mother to consult with the provider about the GAPS diet and Mother reported that this arose from discussion about the children's sensitivities and reactions to food. Mother opined that the children's food sensitivities were not resolved properly, but that her goal was not to have food restricted. Mother opined that it appeared the supervisors did not have all the information. Feedback was provided that the children would benefit from Mother being less reactive to potential safety concerns. Two incidents were referenced during the discussion, including Dylan holding a pencil near his face and finding a piece of glass outside; Mother denied that she had panicked during these situations. The children's use of computers was revisited and Mother provided feedback that it was not supportive of their interaction.

Another lengthy feedback session occurred on 6/17/20 during which there was discussion of providing the children with gifts and the importance of Mother differentiating the children's needs from wants. The ACCEPTS model was revisited with regard to social support and Mother discussed that Maternal Grandmother could offer assistance and discussed her participation the Stanford feeding class. During the discussion, Moher reportedly "demanded" clarification as to why she was not able to feed the children food from her home, and the supervisors indicated this

recommendation was made in collaboration with others. Mother noted that her therapist had recommended she begin to feed the children.

The overarching summary included the same goals for Mother as detailed in May 2020.

> July 2020:

Notes from the family's July 2020 visits suggested that Mother was attentive to the children's requests for help, and asked for permission to observe when they engaged in independent play. Mother also engaged in teaching exercises, with feedback that Mother may wish to adjust her teaching approaches with the children as they mature. Mother was described as providing transitional reminders for the children and engaging in discussion to demonstrate her attunement. On 7/28/20 it was noted that Mother revisited prior feedback about Mother over-reacting to safety concerns and discussed her intent to incorporate feedback with a calm tone and response. During the visit that day, it was noted that Dylan became upset near the conclusion of their time and Mother was appropriately comforting in response to his distress. Additional visits from the month suggested that Mother engaged in active play, provided choices, and gave transitional reminders. On 7/29/20, it was noted that Mother exhibited a neutral reaction when Kenan tripped.

No monthly summary was provided for July 2020.

> August 2020:

A visit note from 8/4/20 indicated that Mother engaged in play with the children, encouraged their use of words to communicate their needs, and involved them in the decision process for meal planning. It was noted that Mother assisted the children in navigating a sibling dispute and used her own experiences to teach the children. In regard to the ACCEPTS model, Mother stated that she understood "they were malnourished because of my decision to work with an out-of-state practitioner that I should not have trusted." She reported using meditation, exercise, and social outings as coping mechanisms and identified ongoing development in this regard. Mother reported having "expressed empathy, sadness, and regret for the pain and dysfunction my children have suffered." She discussed Maternal Grandmother as someone to use to ensure that she has time for self-care and identified family members with whom she can discuss the children's medical care.

On 8/5/20, Mother assisted Dylan in response to his emotional upset. Specifically, Mother attempted to assist Dylan in accepting Kenan's boundaries, offered alternatives, reframed the situation, and physically comforted him as he became emotional. It was noted that Dylan's upset seemed to increase and the supervisor ultimately assisted due to concern about the duration of Dylan's distress. It was noted that Mother provided transitional reminders for the children and offered choices of activities. Feedback indicated that Mother followed the children's lead but appeared unaware of how to help Dylan in minimizing his distress. Mother provided a response to the visit and discussed her self-reflection that she has a tendency to intervene too quickly, and

Kahraman
Expert Work Product
Page 15 of 21

instead attempted to help the children in labeling feelings, exhibiting empathy, and providing emotional support. She noted that she attempted to ask questions to facilitate problem-solving.

On 8/11/20, the children reportedly discussed their overnight visits with Father. Mother acknowledged this by stating, "That's nice. You know I miss you too and love you lots and lots." During the visit, Mother asked open-ended questions and prompted the children to engage in perspective-taking. In response to questions about visits at her home, Mother appropriately responded and reinforced that she liked seeing the children wherever they were.

On 8/12/20, Mother was described as offering choices to the children, checking-in in response to nonverbal cues from the children, and suggesting problem-solving strategies. Notes from 8/18/20 suggested that Mother inquired about feedback from her visits and the supervisor shared that Mother could facilitate more independence with the children by allowing them to determine the activity rather than providing suggestions. It was also noted that Mother had been observed to sit back and observe more until the children invited her into play. During the visit that day, Mother was described as being attentive to the children's needs, such as suggesting Dylan use a tissue in response to sniffing. Mother appropriately comforted the children and enforced age-appropriate expectations. When Kenan reportedly discussed swimming at Mother's home, she provided feedback for Kenan to keep practicing at Father's home and informed him that she would see him at the visitation center. During feedback, it was reportedly shared that it may prove beneficial for Mother to echo the children's feelings, without providing inferences.

The final visitation note provided was dated 8/25/20. The note suggested Mother engaged in conversation with the children and used open-ended questions. She provided a positive response when the children mentioned Father and Father's home. It was noted that Mother allowed the children to choose the activities for their visit. She was described as setting limits.

There was no monthly summary provided for August 2020.

**EXPERT'S RESPONSES TO REFERRAL QUESTIONS:**

This expert did not evaluate Mother nor has this expert directly observed Mother's parenting. The below opinions and responses were generated strictly upon the records reviewed.

1. **Did you notice any concerns about Mother's ability to safely parent given the feedback forms and monthly reports you have reviewed?**

Based on the notes and summaries from the visits, this expert did not identify any concerns regarding Mother's ability to safely execute parental responsibilities.

The visitation notes and monthly summaries were reviewed in great detail. These records depicted Mother as being an actively involved and attentive parent. She was noted to be attuned with the children's physical needs as evidenced by inquiring about the need to use the restroom, assessing the fit of the children's clothing and shoes, trimming the children's nails, and providing tissues in response to the children sniffing.

Kahraman
Expert Work Product
Page 16 of 21

Mother was also depicted as attending to the children's emotional needs, including verbal and nonverbal cues exhibited by the children that something was upsetting to them. These observations resulted in Mother checking in with the children about their emotions and empathizing with them. She offered physical comfort, helped the children to process their emotional experiences, and discussed ways they could communicate their needs to others. Mother was also noted to share personal reflections of similar situations and things that have helped her in managing these feelings; these examples were age-appropriate. There were numerous examples of Mother implementing such skills during visits. For example, on 2/26/20, Mother mitigated a conflict between the children during a card game when Dylan became upset about the rules. Mother was attentive to Dylan's shifting emotions, offered him a hug and physical affection as he cried, and shared that these were the rules of the game, but at times she felt frustrated about game rules as well.

Mother's parenting was developmentally appropriate. She was noted to provide choices for the children, transitional reminders and prompts, implementation of age-appropriate tasks and responsibilities, and boundaries and limit-setting. The children were depicted as being responsive to these parenting interventions.

In regard to dietary needs, throughout the visits Mother was documented as offering the children a wide variety of nutritional options and encouraging their exploration of new cuisines. She provided appropriate reminders to the children to slow down in their eating and to engage in intuitive eating ("listen to your bodies"). Mother reinforced messages that the children were strong and able to tolerate a wide variety of foods. Within her feedback sessions, Mother clearly communicated that she would not follow the GAPS diet with the children in the future and discussed her recognition that the children have successfully adapted to a varied diet. Specifically, in March 2020 she communicated that she should have stopped the GAPS diet and that it was a large contributor to the children's declining health. In May 2020, Mother provided a more definitive statement, noting that she would not employ the GAPS diet in the future and instead identified allopathic and medical doctors that she wanted to rely upon.

Additionally, this expert noted that Mother reported having involved herself in approximately eight parenting classes and two support groups throughout her involvement in supervised visits. This suggests that Mother is motivated to seek additional resources and services to address concerns in her life and improve her parenting and overall wellbeing.

This expert also noted that Mother was criticized for her handling of the children's computer usage during video-visits in May 2020. Mother was described by the supervisor as lacking patience and struggling to "be with" the children as they played and explored their games. It is this expert's opinion that Mother handled the situation fairly well. Electronics can be highly distracting and all-consuming for elementary-aged children and the notes from these visits suggested that the children were focused on these games rather than directing attention toward engaging with Mother, which is already challenging during virtual visits. This evaluator believes Mother's communication with the children about this concern was appropriate, wherein she discussed feeling frustrated, as this normalizes that people experience a wide range of emotions

Kahraman
Expert Work Product
Page 17 of 21

and it is important to communicate when these feelings arise. It is possible that use of electronics during an in-person visit would be different as Mother would be able to actively engage with the children; however, the virtual nature of these visits and the distraction of the electronics impeded meaningful interaction between Mother and the children.

Throughout the family's involvement in supervised visitation, Mother and Father separated and are now in the process of divorcing. Notes from a session informing the children of this change suggested that Mother was nurturing and patient in addressing the children's questions and spoke to them in an age-appropriate manner. Since that time, notes suggested that the children have discussed Father during Mother's visitation and Mother has provided positive or neutral responses. She also discussed with the children the kindness in Father's gesture to leave a card and flowers at her clinic for Mother's Day and reciprocated by planning an activity to make Father's Day cards for Father during her visitation. Such responses help to facilitate the children's security in feeling able to have loving and positive relationships with both parents. There was one incident that raised some concern, wherein the children discussed their excitement in staying overnight with Father and Mother responded, stating, "That's nice. You know I miss you too and love you lots and lots." There is potential for the children to feel unnecessarily bad or guilty in response to such a comment. For the future, Mother is encouraged to focus on reinforcing the children's relationships with Father by reflecting their positive experiences and redirecting the children to discuss any of their concerns about Father directly with Father. It is important to emphasize that this was one notable comment that has not been replicated or pervasive; however, Mother should be attentive to his potential concern.

Feedback provided to Mother throughout the supervised visits has been minimal. Some comments and corrections were made, such as feedback for Mother to limit portion sizes with the children or to allow the children to select activities rather than providing choices; at times, this feedback contradicted what Mother had been previously instructed to do. There were also notes of Mother being overly cautious of potential safety concerns, such as reacting in response to sharp objects near a child's face or discovering broken glass on the ground. It is this expert's opinion that these comments were small, fairly insignificant, and not recurrent issues. While notes from June 2020 labeled Mother as "hypervigilant regarding safety concerns," this expert disagrees. If this were a repetitive pattern occurring in each visit, there may be concerns; however, there were only a few incidents throughout the 19 months of supervision and these incidents seemed more indicative of protective parenting. Additionally, it is this expert's opinion that it is appropriate to use natural situations within parenting to teach learning lessons, such as appropriate handling of sharp objects or how to manage situations.

2. **Based only on the feedback forms and monthly reports, does Mother exhibit a minimally adequate ability to parent? Please elaborate.**

The records depicted Mother as being a competent, warm, affectionate, and attuned parent. She has been committed to her visits as evidenced by preparing for visits with toys, crafts, and games, and ordering a diversity of foods in advance. Mother has listened to the children's requests and attempted to implement these requests into visits, demonstrating that what the children tell her is important. This expert noted that the feedback throughout the 19 months of

Kahraman
Expert Work Product
Page 18 of 21

supervision has been minimal and has not suggested any impairments that would impede her ability to be a minimally adequate parent. There have been no notes suggesting that Mother is inattentive to the children, dismissive of their physical or emotional needs, or unable to keep them safe. There have been no notes to suggest any recurrent parenting concerns. Instead, Mother appears to have implemented changes based on the limited feedback provided and has inquired about feedback as she has continued with visits. This suggests that Mother has been receptive to the services provided and willing to make adjustments to improve any weaknesses in her parenting. As described above, this expert's review of the notes and summaries suggested that Mother is very capable in her caregiving. This evaluator found it notable that Mother has not been provided the opportunity to expand her parenting or interactions with the children since February 2019 despite the feedback being so minimal.

3. **Did you see any change in the feedback forms and monthly reports' tone, including how they are written or how Mother is portrayed, either positive or negatively?**

This evaluator observed a noticeable shift in the supervisory reports beginning in March 2020. At this time, despite Mother's parenting continuing to be warm, attentive, protective, and interactive, the feedback sessions have focused on the ACCEPTS model and a perception that Mother was not acknowledging responsibility for abusing the children and the ways that they have been impacted.

4. **Did you observe any discrepancies between the feedback forms reviewed with Mother at the visit as compared to the monthly reports?**

This expert noted that the visitation notes were often much more limited and brief than the monthly reports. Often, the notes indicated that no interventions were need and there were no areas for growth. Alternatively, there were broad and unspecific comments that Mother should continue to implement expectations. In contrast, the monthly reports, particularly since the spring of 2020, have included more specific feedback of Mother and incidents that have occurred. For example, the visit note from 6/2/20 discussed an incident of the children locating broken glass on the ground, and Mother removing the glass and providing instructions of how to handle the situation in the future. The note indicated there were no areas for growth or intervention in the session and Mother discussed that she liked having the opportunity to talk about safety around glass. However, the monthly summary indicated that on the following day and again on 6/10/20, the supervisor shared feedback of Mother over-reacting and exhibiting "heightened behavior" during this incident and another situation, which could cause the children to be more fearful. Notably, these discussions were not documented in the actual visitation notes. The delay in communicating such information is concerning as it does not allow Mother to make immediate corrections. Another example was noted from the June 2020 monthly summary wherein it was noted that Mother was providing prompts for slower and intuitive eating to Dylan, despite Kenan eating more rapidly; however, this expert did not observe this noted in any feedback throughout the month. Instead, visitation notes from 6/3/20 and 6/9/20 provided praise that Mother prompted both children surrounding their eating. Overall, this expert has concern that issues identified by the supervisors have not been communicated to Mother after visits and at times were contradictory to the actual notes from the visitation.

Kahraman
Expert Work Product
Page 19 of 21

**5. Has Mother demonstrated application of the ACCEPTS goals, based on the feedback forms and monthly reports? If not, what may be lacking?**

As stated previously, this expert did not evaluate Mother and all opinions are generated based on the information included in the visitation notes.

AC- The Southwest Human Development records included feedback that Mother was exhibiting a lack of progress in meeting the ACCEPTS goals; however, the actual content of these notes suggested otherwise. Specifically, in regard to the first tenet, acknowledge, this expert noted that in March 2020 Mother acknowledged that the GAPS diet was a large contributor to the children's declining health. Per the notes, Mother discussed that she was driven by fear and became hyper-focused on this aspect of the children's lives due to other stressors in her life. This is a notable shift from Mother's prior comments attributing the children's deteriorated health to mold in the home. Mother's perspective in May 2020 became clearer wherein she acknowledged the children's progress since having a diverse diet and asserted that she would not use the GAPS diet in the future. She also identified an appropriate plan to help mitigate any medical related concerns in the future, including relying on medical doctors and allopathic physicians to treat the children and limiting the number of providers involved in their care. In August 2020, Mother again discussed that the children were malnourished due to her desire to work with an out-of-state provider and expressed empathy, sadness, and regret for what the children had suffered. These responses suggest that Mother has acknowledged that the GAPS diet and Mother's desire to adhere to this diet was a primary factor contributing to the children's health declining. Additionally, the notes suggested that Mother communicated empathy and regret for the impact of these decisions on the children. While these statements were documented within the monthly summaries, the supervisors have continued to cite concerns related to Mother's accountability for the children's deteriorating health. This expert agrees that there is area for further growth surrounding Mother's accountability, but her positive and fairly significant steps forward should not be dismissed.

C- Mother has also been critiqued as not having enough coping skills to prevent similar situations from replicating in the future. However, in March 2020 Mother identified four things she used for coping, including practicing yoga, going to the gym, talking to friends, and attending therapy. In regard to the children's health, it was documented that Mother identified trust in the children's pediatrician, Dr. Miga, and had a plan to consult with the pediatrician if she observed rashes on the children. She also identified Maternal Grandmother as a support person who attended a nutritional class with her and could offer assistance. Mother's coping tools and her plans to utilize specific professionals and her supports suggests that she has coping tools and a blueprint to help manage concerns for the future. There was no information reviewed to suggest that Mother has implemented unhealthy coping mechanisms.

E- The records reviewed suggested that Mother has communicated empathy to the children. Specifically, she was described as having exhibited general empathy in her interactions with the children and in helping them to process emotions. In addition, she has communicated feelings of empathy, sadness, and regret for the children's suffering in response to their nutritional deficits.

Kahraman
Expert Work Product
Page 20 of 21

P-Based on the notes reviewed, Mother's parenting has been appropriate. The notes suggested she has a developmentally-appropriate understanding of the children's needs and is attentive to these needs while facilitating the children's increased independence. The visitation notes depicted Mother as establishing expectations and limits and being appropriately attentive to potential safety concerns.

T- Mother has also exhibited taking charge of her life by maintaining employment and housing.

S- Maternal Grandparents seem to be significantly involved in the children's lives as evidenced by their participation in visits and Maternal Grandmother's attendance at a nutritional course. Additionally, visitation notes suggested that Mother self-enrolled in support groups to help increase her social network while receiving supportive therapy.

This expert is concerned that the Southwest Human Development's supervisory role has become blurred within this matter. In particular, the tenets of the ACCEPTS model appear to be therapeutic goals and seem best addressed by a therapist working directly with Mother, rather than a professional appointed to supervise parenting interactions. As such, it may be helpful to consider the input of Mother's past and present therapists in assessing her progress in achieving the tenets of the ACCEPTS model.

I appreciate the opportunity to assist with this matter.

_Ann Schroeckenstein Psy.D_                    _8/28/20_
Ann Schroeckenstein, Psy.D.                     Date
Psychologist

# ANN SCHROECKENSTEIN, PSY.D.

PHXFAMILYFORENSIC@OUTLOOK.COM
11201 NORTH TATUM BLVD, SUITE 300
PHOENIX, ARIZONA 85028
(480)744-4171

## LICENSURE

**ARIZONA LICENSED PSYCHOLOGIST**                              Issued: January 10, 2012

## EDUCATION

**MIDWESTERN UNIVERSITY**                              August 2007-August 2011
*Doctorate in Clinical Psychology*                        Glendale, AZ
*Degree conferred August 26, 2011*
*Grade Point Average: 3.996 on a 4.0 scale*
*Doctoral Project: "The Anorectic Family: Role of Attachment and Separation Processes in Female Adolescents with Anorexia Nervosa"*

**UNIVERSITY OF COLORADO AT BOULDER**                 August 2001- May 2005
*Bachelor of Arts in Psychology*                          Boulder, CO

## PROFESSIONAL EXPERIENCE

**PHOENIX FAMILY AND FORENSIC SERVICES, LLC**         January 2018-Present
*Executive Director/Clinical Psychologist*                Phoenix, AZ

Specialization and focus in forensic work, including Comprehensive Family Evaluations, Focused Assessments, Psychological Evaluations, Expert Consultations, and Court-ordered therapeutic services, consisting of Therapeutic Interventions, Co-parenting Therapy, and Parenting Coaching.  Assess parental competency and concerns related to mental health, personality disorders, domestic violence, child abuse and neglect, and substance abuse.  In addition, professional services include clinical interventions with children (ages 12 and older), adolescents, adults, couples, and families.

KAHRAMAN 000066

**FORENSIC COUNSELING AND EVALUATIONS, PLLC**                January 2012-December 2017
*Clinical Psychologist*                                                   Scottsdale, AZ

Conduct Comprehensive Family Evaluations, Focused Assessments, Psychological Evaluations, Bonding Assessments, and Expert Consultations.  Provide expert testimony.  Assess parental competency and concerns related to mental health, personality disorders, domestic violence, child abuse and neglect, and substance abuse.  Act as a Therapeutic Interventionist for individuals and families.  Provide individual, couples, family, and safe-haven therapy for private and forensic referrals.

**KATZ & LOIZEAUX FORENSIC SERVICES, LLC**                June 2013-March 2014
*Forensic Associate*                                                        Denver, CO

Serve as evaluator conducting Child Custody Evaluations.  Participate in weekly training seminars regarding custody evaluations, reunification family court and services involving high conflict families.

**SCOTTSDALE BEHAVIORAL HEALTH**                              October 2011-February 2012
*Substance Abuse Counselor*                                          Scottsdale, AZ
*Primary Supervisor: Saif Jaffery, M.D.*

Provide group Intensive Outpatient (IOP) counseling for individuals with substance addictions.  Utilize the Matrix Model to guide sessions, facilitate discussions, and process psychosocial stressors related to addictions.  Provide psychoeducation to clientele and support systems. Conduct random urinalyses to ensure treatment compliance.

**DEBORAH J. LEWIS, PH.D. ABPP**                               October 2011-December 2011
*Forensic Research Assistant-As Needed*                        Scottsdale, AZ
*Primary Supervisor: Deborah Lewis, Ph.D.*

Act as a primary research assistant to solidify and support clinical impressions for forensic evaluations.  Assist in preparation for testimony.

KAHRAMAN 000067

**FAMILY INSTITUTE OF RICHMOND**                                    August 2010-August 2011
*APPIC Internship*                                                  Pinole, CA
*Primary Supervisor: Galia Schechter, Psy.D.*

Provide individual, couples, and family therapy for victims of crime in urban locations, treating underserved populations.  Provide specialized treatment for diverse crimes, including: assault, rape, murder, burglary, domestic violence, and child abuse. Act as an advocate for clients within the community.  Utilize trauma specific interventions including Eye Movement Desensitization and Reprocessing, Prolonged Exposure, and Narrative techniques.  Training and implementation of Parent-Child Interaction Therapy interventions to assist parents in developing emotional attunement and parenting skills through instruction, modeling, and rehearsal.  Participate in extensive trauma-related training utilizing "live" supervision and reflection teams.  Didactic training seminars include: adult trauma work, child trauma work, family therapy, and narrative therapy, totaling 9 hours weekly.  Engage in peer supervision and consultation with doctoral candidates.

**ARIZONA DEPARTMENT OF CORRECTIONS: THE GEO GROUP**    December 2009-June 2010
*Psychology Practicum Student*                                      Florence, AZ
*Primary Supervisor: Thomas Selby, Ph.D.*

Provide individual cognitive-behavioral psychotherapy for sexual offenders.  Serve as group co-facilitator for therapeutic groups in all phases of treatment.  Assist in completion of therapy progress reports for group members.  Conduct individual therapy for victims of sexual abuse.  Participate in program development of treatment procedures to make sexual offender treatment more conducive for the prison setting.  Participate in staffing conferences to consult with mental health professionals and promote continuity of care.

**FAMILY TRANSITIONS**                                              September 2009-June 2010
*Psychology Practicum Student*                                      Phoenix, AZ
*Primary Supervisor: Thomas Selby, Ph.D.*

Provide individual court-ordered cognitive-behavioral psychotherapy to convicted sexual offenders.  Serve as group co-facilitator for 6 treatment groups, including: female offenders; and low-, medium-, and high-risk male offenders in all phases of treatment. Assist in the administration and interpretation of psychosexual assessments to determine client's presenting concerns, areas of focus for treatment, and current level of accountability for assault behaviors.  Conduct individual therapy with victims of sexual

KAHRAMAN 000068

abuse. Engage in program development and refinement of treatment procedures according to latest research findings and individual client needs. Participate in staffing conferences with Probation and Surveillance Officers to ensure coordination of care.

**MIDWESTERN UNIVERSITY CLINIC**                                  September 2008-June 2010
*Psychology Practicum Student*                                   Glendale, AZ
*Primary Supervisors: M. Elicia Nademin, Ph.D.; Ruchi Bhargava, Ph.D.*

Provide individual, couples, and family psychotherapy. Intervene with children, adolescents, adults, couples, and families with a range of diagnoses, presenting concerns, ethnicities, and religious affiliations. Utilize research and empirically supported treatments to direct therapy. Administer, score, interpret, and integrate assessment data into diagnostic formulations. Manage crisis situations, including: suicidal ideation, domestic violence, child abuse, and orders of protection.

Conduct behavioral weight management program for client's looking to undergo bariatric surgery or implement a healthier lifestyle. Engage in program development and modification to integrate and adhere to latest research. Adapt program to meet the diverse disabilities, dietary, and/or limitations of clients while adhering to current literature.

Conduct behavioral health consultations with the Family Medicine Clinic as a means to provide comprehensive and integrated care to primary care patients. Actively participate in medical rotations and provide therapeutic and behavioral recommendations and interventions to medical clients presenting with psychosocial concerns.

**SHANNON TROMP, PH.D.**                                          August 2008-August 2009
*Psychology Practicum Student*                                   Phoenix, AZ
*Primary Supervisor: Shannon Tromp, Ph.D.*

Administer, score, and interpret psychological test batteries. Engage in client interviews, case conceptualization, and diagnostic formulations. Prepare reports and conduct comprehensive record reviews to contrast and integrate multiple sources of information. Coordinate with the disability office regarding scheduling, claimant concerns, and necessary assessments. Manage crisis situations with the seriously mentally ill population. Act as liaison and oversee 3 doctoral level practicum students. Provide training and supervision for incoming students.