Larry J. Crown (No. 013133)
Elan S. Mizrahi (No. 017388)
**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
Telephone:    480-483-9600
Emails:        lcrown@bss.law
                elan@bss.law

*Attorneys for Defendants The State of Arizona,*
*Arizona Department of Child Safety ("DCS"),*
*Madison Bell, and Mecca Temple*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Jessica Kahraman, an individual; D.K., a
minor, through his parent and guardian
Jessica Kahraman; and K.K., a minor,
through his parent and guardian Jessica
Kahraman,

               Plaintiffs,

     v.

The State of Arizona, a governmental
entity, et al.,

               Defendants.

Case No. 2:22-cv-00375-SRB

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

     The State Defendants hereby reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, and state that Plaintiffs have failed to present a genuine dispute of material fact. It is the compelling, comprehensive Juvenile Court Dependency record provided by the State Defendants that includes the Stipulation by Plaintiffs' parents to evidence of their neglect, and Plaintiffs' admissions to key facts and inconsequential disputes to other facts presented in Defendants' Statement of Facts that compel summary judgment.

## I.    INTRODUCTION

     There are two remaining Plaintiffs, minors KK and DK, and two remaining individual Defendants, Bell and Temple. The remaining federal constitutional claim and six state law tort claims are based on ongoing physical custody of the minor Plaintiffs as wards of the Juvenile Court. The initial removal and resulting court wardship occurred between December 28, 2018 and November 9, 2020. During this time, four Juvenile Court Judges issued repeated Orders that made the Plaintiffs first temporary wards of the Court and then adjudicated Plaintiffs as

wards of the Court. The initial removal and resulting court wardship of Plaintiffs was conducted by persons other than Bell and Temple and was based upon probable cause found by the Court supported by independent medical doctors and healthcare providers at Cardons Children's Medical Center ("Cardons") who called the DCS Hotline. Over the next 22 months, the Plaintiffs' parents failed to attend the initial Team Decision Meeting ("TDM") on 1/3/2019; failed to meaningfully contest the Preliminary Protection Hearing on 1/9/2019; knowingly, intelligently, and voluntarily waived their right to a trial, and stipulated to evidence of their neglect at the Adjudication Hearing held on 1/6/2020, where the Plaintiffs were found to be wards of the Court as dependent children because their parents were found to be unable to parent due to their neglect causing Plaintiffs' malnutrition; lost their Rule 59 Motion to change physical custody in which an extensive evidentiary hearing was held on 5/12/2020; and Juvenile Court Judge Jennifer Green issued an extensive ruling on 6/11/2020 with critical findings against Jessica based in part on her own, non-credible testimony.

While KK was hospitalized with severe malnutrition that presented a potential threat to his life, Jessica offered that exposure to whiteboard markers was the cause of his constellation of medical conditions. Then the issue of mold toxicity was raised by Plaintiffs as a potential cause for the boys' medical condition. Mold toxicity was litigated and rejected by Judge Green. Then Jessica alleged that she was improperly designated a Munchausen by Proxy ("MBP") parent. This is a false narrative as MBP was never alleged in any pleading filed by the Arizona Attorney General ("AG"), nor was it the basis of any Court ruling during the Dependency Proceeding. Plaintiffs continue to heavily assert the false MBP narrative throughout their Response which does not have any merit. Again, on 12/20/2019, Assistant AG Martoncik filed a Response pleading expressly stating that the Department has never alleged Mother has fictitious disorder by proxy or MBP. (SOF ¶ 48, Exhibit 242, pp. 2-3) The Court's finding of neglect and resulting wardship were based on stipulated evidence of malnutrition caused by the parents. (SOF ¶¶ 50-52) Plaintiffs' parents waived their right to a trial at the Adjudication Hearing and accepted the neglect finding against them and consequences.

On 11/9/2020, the Juvenile Dependency Proceeding was terminated with the status that the Plaintiffs were returned to the physical custody of their Father, the Court relieved Plaintiffs from its wardship over them, DCS, Guardian Ad Litem ("GAL"), the CASA, and the Foster Care Review Board ("FCRB") were relieved of their responsibilities and all pending matters were declared to be moot. The Orders in place from prior rulings remained final Orders of the Juvenile Court.

In their Motion, Bell and Temple allege multiple bases which require summary judgment. The evidentiary record presented to the Court is either undisputed or is allegedly disputed by Plaintiffs with insignificant, immaterial, and inadmissible evidence. The record shows that this particular Juvenile Dependency Proceeding was extensively litigated through multiple court hearings, multiple motions, and multiple evidentiary hearings. Judge Green issued critical rulings in which she received testimony from Plaintiffs' witnesses, weighed evidence and made findings of fact and rulings on custody and the reasonableness of DCS' efforts against removal.

Plaintiffs' position that nothing that occurred in the Juvenile Court for 22 months has any significance here is without merit. Plaintiffs' position that the Juvenile Court's multiple statutorily required findings that DCS made reasonable efforts against removal are insignificant "boilerplate" rulings is patently frivolous. Plaintiffs' claim that *Rooker Feldman* does not apply because they are not challenging Orders or alleging legal error by the Juvenile Court. In tandem, this Court dismissed Plaintiffs' judicial deception claim because Plaintiffs do not allege that any misrepresentations by Bell or Temple were material to any judicial decision. (Doc. 45, p. 12, l. 3-18) These tandem positions that *Rooker Feldman* is inapplicable, and that there was no judicial deception material to any judicial decision inescapably leads to summary judgment.

It is the Juvenile Court that solely controlled what is central to Plaintiffs' claim – "ongoing detention" as wards of the Juvenile Court. This is a protective custody case and the Plaintiffs were in the lawful custody of the Arizona Superior Court from 12/28/2018 through 11/9/2020 to protect them from their stipulated neglectful parents.

## II.    PLAINTIFFS' CONTROVERTING STATEMENT OF FACTS

Plaintiffs' Controverting Statement of Facts and Additional Facts do not create a genuine issue of material fact for trial. Rule 56(c), Fed.R.Civ.P. Plaintiffs admit Defendants SOF ¶ 4 that Cardons suspected child abuse and neglect team got involved for KK, admit ¶ 7 that KK had potential threat to life and limb without medical intervention; admit ¶¶ 17 and 18, that the parents did not attend the TDM; admit ¶ 32 regarding the authenticity of Exhibits 201 to 281 from the Juvenile Court records; admit ¶¶ 34 to 43, 45, 49, 53, 55, 57, 59, 60, 73 (which included findings made by Judge Green in her 6/11/2020 Order), and admit ¶¶ 76, 78, 79 and 82 (that Bell followed statutory requirements and had a reasonable basis for all actions taken as an ongoing case worker). Plaintiffs "disputed" or "disputed in part" responses to the remaining paragraphs in the SOF are inconsequential. In general, these disputes whether partial or whole, do not have evi-dentiary merit. For example, Plaintiffs dispute ¶1 which is supported by the medical records from KK's 12/18/2018 hospital admission and the sworn testimony of Dr. Ryan Stewart. The basis for Plaintiffs' dispute is asserting the false claim of mold toxicity as an alternative explana-tion for KK's critical condition that Plaintiffs first injected into the Dependency Proceedings in April 2019. Dr. Stewart opined that malnutrition was the cause of these severe conditions and Mother Jessica was the cause of KK's malnutrition. Mold as an alternative medical explanation was litigated and rejected by Judge Green. (SOF ¶¶ 42 & 45, Exhibits 229 & 236)

Plaintiffs also dispute facts under the false position that DCS and the Arizona Attorney General's Office proceeded on a child abuse theory claiming that Jessica Kahraman was hurting her children because she was a MBP parent. There were no pleadings filed by the AG and no court orders that were based on Jessica being alleged as a MBP parent. To the contrary, the AAG stated DCS has never alleged Jessica has MBP (SOF ¶ 48, Exhibit 242) and the parents stipulated to evidence of their neglect. (SOF ¶ 51, Exhibit 247) Plaintiffs allege that Bell and Temple are responsible for Southwest Human Development's ("SWHD") policy to use an ACCEPTS model in cases. This again is false as SWHD Supervisor Carla White testified that SWHD's policy is to use the ACCEPTS model for all cases. This is SWHD's

policy, and it is not done at the request of DCS. *See* Carla White deposition testimony attached hereto as Defendants' **Exhibit A** (pages 78, 79, 132, and 194)**.** The remainder of Plaintiffs' alleged factual disputes involve matters that were presented to, and resolved by, the Juvenile Court. Plaintiffs fail to establish through admissible evidence genuine material factual disputes pursuant to Rule 56(c), Fed.R.Civ.P.

## III.    LAW OF THE CASE DOCTRINE

Plaintiffs claim that the law of the case bars this Motion for Summary Judgment because the Court denied in part the State's earlier Motion to Dismiss is without merit. The denial of motions to dismiss do not constitute law of the case for purposes of summary judgment. *Goff v. Arizona,* 526 F.Supp.3d 551 (2020). Law of the case does not apply because motions to dismiss and motions for summary judgment do not raise the same issues and are analyzed under different standards. A Motion to Dismiss filed pursuant to Rule 12(b)(6) Fed.R.Civ.P. is based on the factual allegations set forth in the Complaint. All properly alleged facts are construed as true for purposes of such motion. It is not a decision on the merits. Denials of motions to dismiss do not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial Order that decides one thing: whether portions of Plaintiffs' Second Amended Complaint survive the initial pleadings stage. Rule 56 Motions for Summary Judgment are decided on evidence established through a Statement of Facts supported by admissible evidence taken from material portions of the record.

## IV.    ISSUE PRECLUSION

Issue preclusion precludes relitigating an issue of fact in a later case when in a previous case, the same issue was actually litigated, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full and fair opportunity to litigate. *Crosby-Garbotz v. Fell,* 246 Ariz. 54, 434 P.3d 143 (2019) (holding that a finding of non-parental abuse in a dependency adjudication can have a preclusive effect in a later criminal prosecution of such parent). In *Lindsey M. v. Arizona Dept. Economic Security,* 212 Ariz. 43, 127 P.3d 59 (App. 2006), the Court held that Arizona statutes provide that an aggrieved party may appeal from a final order of the Juvenile Court. Examples of orders in dependency proceedings that are

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

final and appealable are orders declaring children dependent and orders reaffirming findings that children are dependent, and orders issued pursuant to the Juvenile Court's periodic review of a determination of dependency or of a custodial arrangement, and orders terminating a parent's visitation rights. Both the dependency adjudication order and the disposition order awarding custody of the dependent child are separately appealable orders as are subsequent orders reaffirming a child's dependent status and ratifying or changing the child's placement are likewise final and appealable. *Id.* ¶ 9.

*In re Yavapai County Juvenile Action No. J-8545,* 140 Ariz. 10, 680 P.2d 146 (1984), the Arizona Supreme Court held that in a dependency proceeding there typically will be more than one "final" order subject to appeal by an aggrieved party. A parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials. *Id.* The Supreme Court held that the Order of 1/26/1981, declaring the children to be dependent wards of the Yavapai County Juvenile Court, was a final Order, notwithstanding the fact that the determination of dependency does not dispose of all matters correlated to that determination such as assignment of legal custody. What is important is the practical reality that an order declaring a child dependent affects a fundamental right and an order dismissing a pending award of child custody precludes further action in the dismissing court. An order that disposes of an issue such that it conclusively defines the rights and/or duties of a party in a dependency proceeding in the Juvenile Court of this State such as an order declaring children dependent and an order dismissing a dependency proceeding in toto is a final order subject to appeal by an aggrieved party. *Id.*

In *Rita v. Arizona Dept. of Economic Security,* 196 Ariz. 512, 1 P.3d 155 (2000), the Court held that orders declaring a child dependent, reaffirming a finding of dependency or dismissing a dependency proceeding are all final appealable orders. A Juvenile Court's order terminating visitation is a final order because it conclusively defines appellant's rights regarding visitation of her children. *In the Matter of the Appeal in Maricopa County Juvenile Action No. JD-5312,* 178 Ariz. 372, 873 P.2d 710 (1994).

Plaintiffs argue that the Juvenile Court here never issued a final and appealable Order.

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

This is clearly wrong as there are several final and appealable Orders in the record. Judge Udall's 1/9/2019 Order continuing the children as temporary wards of the court (SOF ¶ 25, Exhibit 208), the 1/6/2020 Adjudication Hearing Order making the children wards of the court as dependent children (SOF ¶¶ 50, 51 Exhibit 247), the 6/11/ 2020 Order issued by Judge Green from the Rule 59 Evidentiary Hearing denying Jessica' Motion to Change Physical Custody (SOF ¶ 63 through 73, Exhibit 263), the 8/31/2020 ruling on the second Rule 59 Evidentiary Hearing granting DCS's Motion for Change of Physical Custody to Father (SOF ¶ 77, Exhibit 275), and the 11/9/2020 Order of Dismissal (SOF ¶ 80, Exhibit 281), are all final and appealable Orders. The Plaintiffs did not appeal these Orders and each of them represent final Judgments for purposes of issue preclusion.

Plaintiffs claim that Jessica's second Rule 59 Motion to Change Physical Custody reopened the ruling deciding her first Rule 59 Motion is without legal basis. As established in the above cases, each Order that affected her rights was a final and appealable Order. The mere filing of a subsequent Rule 59 Motion to Change Physical Custody does not open or magically render the prior Order not final. A subsequent Rule 59 Motion to Change Physical Custody is simply a new Motion that would address evidence and circumstances at a subsequent point in time. Likewise, the dismissal of the dependency position on 11/9/2020, does not support an argument that physical custody was never determined as a prior final appealable Order. To the contrary, it means that the Juvenile Dependency Proceedings involving Plaintiffs terminated with physical custody having been awarded to the Father, and the Court's wardship over the Plaintiffs ended. At that point in time, the two avenues for Jessica to pursue physical custody were: (1) to appeal the dismissal; or (2) to proceed in the pending Family Court case which now had jurisdiction over the Plaintiffs' custody. Jessica chose not to appeal. Thus, the Orders of Judge Green for purposes of issue preclusion stand as final Orders and Plaintiffs are barred from relitigating them here.

Plaintiffs argue that Bell and Temple ignored exculpatory evidence and opinions from their litigation experts Dr. Newberger and Ann Schroekenstein. Dr. Newberger did not issue a report until 5/7/2020. Judge Green barred Dr. Newberger from testifying at the 5/12/2020

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

hearing due to the extraordinarily late disclosure, non-response for a pre-hearing interview request by the AG, and the unprofessional conduct of Dr. Newberger and Jessica's attorneys (SOF ¶ 58, Exhibit 255). Ann Schroekenstein hired by Plaintiffs did not issue a report until 8/28/2020. Both of these reports came late in the 22-month court wardship.

The alleged exculpatory evidence was presented to the Juvenile Court by Plaintiffs and they had the opportunity to obtain and present same to the Juvenile Court earlier in the Dependency Proceedings. Instead, Plaintiffs' parents defiant responses to the Dependency Proceedings were to not attend the TDM, not challenge the Preliminary Protective Hearing, challenge jurisdiction of the Juvenile Court by filing 12 bizarre Affidavits seeking return of their "biological property", raise mold toxicity as a cause of the children's medical condition, waive their right to a trial, stipulate to evidence of their neglect, and accept adverse findings of neglect and permanent wardship at the Adjudication Hearing, and then unsuccessfully challenge physical custody at a Rule 59 Evidentiary Hearing. Plaintiffs claim that on 11/9/2020, that "Bell and DCS" moved to dismiss the Defendants' proceedings is false as applied to Bell because the Motion was filed by the AG. The material physical custody issues that control this lawsuit were fully litigated and ruled upon by the Juvenile Court.

## V.    CLAIM PRECLUSION

At the core of Plaintiffs remaining claims is the issue of physical custody during the period of time between 12/28/2018 and 11/9/2020. The Juvenile Proceedings involved full, complete litigation over the issues of wardship, physical custody and parent visitation all controlled by the Juvenile Court. As noted above with Issue Preclusion, the Orders of 1/9/2019, 1/6/2020, 6/11/ 2020, 8/28/2020, and 11/9/2020 were final and appealable Orders. Plaintiffs did not appeal these Orders and they represent final judgments for purposes of claim preclusion.

Plaintiffs state that the evidence needed to prove the allegations in Count II includes evidence of the standard of care applicable to ongoing case workers. This is incorrect. Count II involves a constitutional claim under the Fourteenth Amendment for interference with the family relationship. Plaintiffs have the burden to prove that the conduct shocked the

conscience, was unwarranted, vexatious and unnecessary, harassing, unfounded, arbitrary, discriminatory, or demonstratively irrelevant. Constitutional claims require proof of a deliberate mental state that is more than basic breach of the standard of care associated with State negligence claims. Claim preclusion including Plaintiffs' parents' Stipulation to evidence of their neglect bar these claims.

## VI.    ROOKER FELDMAN DOCTRINE

Plaintiffs claim that they are not challenging any of the adverse rulings made by the Juvenile Court against their parents. Plaintiffs concede that as courts of original jurisdiction, a Federal District Court lacks jurisdiction to review the final determinations of the State Court in judicial proceedings. *Doe Associates Law Office v. Napolitano,* 252 F.3d 1026 (9th Cir. 2001). Where the District Court must hold that the State Court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined. Throughout their Response, Plaintiffs criticize the Juvenile Court rulings and other persons (some of whom are former parties) beyond Bell and Temple, including the conduct of initial DCS investigator Sarah Kramer and her supervisor Sarah Mendez, the SCAN Team at Banner, including Dr. Ryan Stewart, SWHD, and the AAGs who represented DCS in the Juvenile Proceedings. The conduct of all these parties, plus the GAL, the CASA, and the FCRB, all performed their court-appointed roles that contributed to the Juvenile Court's multiple rulings regarding wardship, physical custody, and parent visitation. There can be no causally-related civil claims without challenging the removal and custody Orders of the four Juvenile Court Judges.

Plaintiffs state that the relief sought are money damages and injunctive relief to improve the policies and procedures of the Department and not return of custody of the boys to Mother. The money damages sought are based on the physical custody and wardship in the Juvenile Court from 12/28/2018 through 11/9/2020. There certainly is no merit to a claim for undescribed, prospective injunctive relief aimed at improving the policies and procedures of the Department in this private civil action. As noted above, if *Rooker Feldman* does not apply, that position, coupled with this Court's dismissal of the judicial deception claim, supports summary judgment.

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

BRUECKNER SPITLER SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

## VII.  LACK OF CAUSATION

Lack of causation warrants summary judgment and is a central argument made throughout Defendants' Motion and Reply. For a person to be liable to another, they must cause damages to such person. When a party does not have the legal power to cause the damages claimed, they cannot be liable as a matter of law.

Here, Juvenile Court Judge Zabor, Commissioner Smith, Judge Udall, and Judge Green exercised their legal power to control the physical custody of Plaintiffs from 12/28/2018 through 11/9/2020. Bell and Temple were not involved in the initial removal on 12/28/2018. Once involved in January 2019, Bell and Temple were two of a number of independent persons providing reports. The attorneys for both sides submitted pleadings and litigated motions and hearings before the Juvenile Court. It was the Juvenile Court Judges who made all the rulings regarding wardship and physical custody.

Instead, Plaintiffs claim that Bell and Temple are responsible in a vacuum for the ongoing, unwarranted detention of the Plaintiffs based on a false assertion that Temple and Bell treated this as a MBP case. *See* Plaintiff's Response, p. 21, l.11, through p. 23, l. 16. This contradicts the parents' stipulation to evidence of their neglect on 1/6/2020. This dependency case is based on neglect that led to malnutrition and not a parent being MBP. Judge Green's extensive findings in her 6/11/2020 Order involved neglect. (SOF ¶¶ 51, 52, 63 to 73)

## VIII.  INSUFFIENCY OF EVIDENCE

### A.    Count II – Constitutional Familial Association Claim

Plaintiffs responded to the insufficiency of evidence by again stating this is a MBP case, which it was not. Plaintiffs also cite to standard of care opinions of their litigation standard of care expert Tim Turner, which are misplaced in response to the constitutional claim. Also, Turner did not review nor does he question the Juvenile Court Orders issued by the four Juvenile Court Judges. Turner does not have causation opinions against Bell and Temple. The evidentiary record taken as a whole shows that Plaintiffs have failed to present sufficient controverting material admissible evidence to support the constitutional claim in Count II.

**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

### B.    Negligence Claims – Counts VIII, IX, X, and XI.

The evidentiary record before the Court supports summary judgment on the four state tort negligence claims. Plaintiffs' reliance on their litigation standard of care expert Tim Turner is misplaced. Plaintiffs present a portion of Turner's deposition testimony as Exhibit X. Turner states that "he won't overstep the court rulings and wouldn't even try." In Turner's Declaration presented as Exhibit Q, Turner discusses toxic mold and MBP without basis. Turner's opinions are not based upon the extensive proceedings that took place in Juvenile Court which controlled this issue. Turner does not present opinions regarding causation which is an essential element of the negligence claims.

On the negligence *per se* claim Plaintiffs cite general statutes which are not sufficient to establish negligence *per se. Reyes v. Frank's Service & Trucking, LLC,* 235 Ariz. 605 (App. 2014). The statutes Plaintiffs cite do not require specific conduct to be performed by Bell or Temple. These statutes fail to establish a negligence *per se* claim. Again, all negligent theories lack the essential causation.

### C.    Abuse of Process

Plaintiffs' Response again presents the false narrative that Jessica was considered a MBP parent and that was the basis for DCS to move to sever her rights. DCS' request to change the case plan to termination and adoption was litigated at the 6/12/2020 Evidentiary Hearing and denied by Judge Green. The basis for DCS' position is set forth in Judge Green's Order (Exhibit 263, SOF ¶¶ 63 to 73). MBP is not discussed by the Juvenile Court.  Bell and Temple did not commit abuse of process. The AAGs assigned to this matter independently prepared and filed all Motions and represented DCS at the court hearings. The abuse of process claim fails as a matter of law.

### D.    Intentional Infliction of Emotional Distress.

Plaintiffs' Response is again based on the false narrative regarding MBP. The State expressly filed a pleading advising the Court that this was not a MBP case and a Second Amended Petition. (Exhibits 244, 246, SOF ¶¶ 48, 50). No Juvenile Court Order was based on MBP. This false narrative fails to save the IIED claim as a matter of law.

## IX.    CONCLUSION

Defendants' SOF and supporting Exhibits establish multiple bases to grant summary judgment. Plaintiffs' parents stipulated to evidence of their neglect and they are bound by their Stipulation. MPB was never an issue before the Juvenile Court, and whiteboard erasers and mold were rejected. The power to remove the boys from their admittedly neglectful parents, make them wards of the Court and control physical custody between 12/28/2018 and 11/9/2020 rested with the Juvenile Court. On this record Bell and Temple are entitled to summary judgment on all remaining claims.

RESPECTFULLY SUBMITTED this _13 th_ day of March, 2025.

**BRUECKNER SPITLER SHELTS PLC**

By: /s/ *Larry J. Crown*
Larry J. Crown
Elan S. Mizrahi
*Attorneys for Defendants The State of Arizona, Arizona Department of Child Safety ("DCS"), Madison Bell, and Mecca Temple*

## CERTIFICATE OF SERVICE

I hereby certify that on this __13th__ day of March, 2025, I electronically transmitted the foregoing document to be filed electronically with the Clerk's Office through the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *Karin S. Meister*

**BRUECKNER SPITLER SHELTS PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

# Exhibit A

Deposition of Carla White                                    November 8, 2024

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Jessica Kahraman, et al.,    )
                             )
        Plaintiffs,          )
                             )
vs.                          ) Case No.:
                             ) CV-22-00375-PHX-SRB
The State of Arizona,        )
et al.,                      )
                             )
        Defendants.          )
                             )

DEPOSITION OF CARLA WHITE

Phoenix, Arizona
November 8, 2024
10:21 a.m.

REPORTED BY:                 CARRIE REPORTING, LLC
Kristy A. Ceton, RPR, CRR    Certified Reporters
AZ CR No. 50200              17505 N. 79th Avenue
                             Suite 301-C
                             Glendale, AZ 85308
                             (480) 429-7573

2

```
 1                    DEPOSITION OF CARLA WHITE

 2     commenced at 10:21 a.m., on November 8, 2024, at

 3     Gillespie Shields & Taylor, 7319 North 16th Street,

 4     Phoenix, Arizona, before Kristy A. Ceton, RPR, CRR,

 5     Arizona Certified Court Reporter No. 50200.

 6

 7                            *  *  *

 8

 9     APPEARANCES:

10         For the Plaintiffs:

11             MILLS & WOODS LAW, PLLC
               By:  Thomas A. Connelly, Esq.
12             5055 North 12th Street
               Suite 101
13             Phoenix, Arizona 85014

14         For the Defendants:

15             BRUECKNER SPITLER SHELTS, PLC
               By:  Larry Crown, Esq.
16             8355 East Hartford Drive
               Suite 200
17             Scottsdale, Arizona 85255

18         For the Witness:

19             GRASSO LAW FIRM, P.C.
               By:  Susan Purtill, Esq.
20             3075 West Ray Road
               Suite 110
21             Chandler, Arizona 85226
               spurtill@grassolawfirm.com
22

23

24

25
```

Deposition of Carla White                                    November 8, 2024

3

1                          I N D E X

2

3    EXAMINATION BY                               PAGE

4

5    Mr. Connelly..............................    5

6

7

8

9

10   EXHIBITS              DESCRIPTION            PAGE

11   Exhibit 90    ACCEPTS Model of Abuser        58
                   Therapy Progress

12

13   Exhibit 91    Bates SWHD000746 through       102
                   000751, Southwest Human
                   Development, Inc., Therapeutic

14                 Supervised Visitation Report,
                   January 2019

15

16   Exhibit 92    Bates SWHD001201 through       110
                   001204, Clinically Supervised

17                 Parenting Time Monthly Report

18   Exhibit 93    Southwest Human Development,   130
                   Inc., Therapeutic Supervised

19                 Visitation Report, December
                   2019

20   Exhibit 94    Bates SWHD000947 through       142
                   000963, Southwest Human

21                 Development, Inc., Therapeutic
                   Supervised Visitation Report,

22                 January 2020

23   Exhibit 95    Arizona Department of Child    152
                   Safety, different types of

24                 visits: therapeutic,
                   supervised, and unsupervised

25

Deposition of Carla White                                    November 8, 2024

4

1  EXHIBIT                DESCRIPTION                  PAGE

2  Exhibit 96    Southwest Human Development,          155
                 Inc., Notes to Consolidated
3                Financial Statements,
                 June 20, 2023
4
   Exhibit 97    Southwest Human Development           158
5                article

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition of Carla White                                    November 8, 2024

78

```
 1        Q.    Okay.  And then you would take that and
 2   you would assign a visitation supervisor?
 3        A.    Yes.
 4        Q.    And then you would reach out and -- reach
 5   out to the parents and try to set up a visitation
 6   schedule?
 7        A.    Yes.
 8        Q.    And that visitation schedule would be at
 9   the frequency directed by DCS; is that right?
10             MS. PURTILL:  Foundation.
11             THE WITNESS:  Yes.
12        Q.    BY MR. CONNELLY:  So if DCS said once a
13   week or twice a week for X number of hours, that's
14   what you would set up?
15        A.    Yes.
16        Q.    And was it -- and is that how it happened
17   in this case where the referrals gave a number of
18   visits and a duration for the visits?  And strike
19   that.  I don't mean number.  I mean frequency.
20             Was it your recollection that in this
21   case, it was DCS who said what the frequency of and
22   the length of the visits was to be?
23        A.    Based upon the standard, yes.
24        Q.    Okay.  And when DCS makes that referral,
25   do they say that they want you to employ the ACCEPTS
```

79

```
 1   model --
 2              MS. PURTILL:  Form.
 3         Q.   BY MR. CONNELLY:  -- with the parent?
 4         A.   No.  Not from what I recall.
 5         Q.   And so after you assigned the case to a
 6   visitation supervisor and reach out to the parents
 7   and get a visitation schedule established, is there
 8   anything else that you do?
 9              For instance, what I'm wondering, I'll
10   just come right out and ask.
11              Do you identify goals to be achieved as
12   part of the therapeutic visitation process?
13         A.   The goals to be achieved are associated
14   with the ACCEPTS model.
15         Q.   And so that's for every case that comes
16   to you regardless of whether or not a parent has been
17   diagnosed with Munchausen?
18              MS. PURTILL:  Form.
19              THE WITNESS:  Yes.
20         Q.   BY MR. CONNELLY:  And DCS is aware that
21   you apply the ACCEPTS model to every case that's
22   referred to the special cases unit, right?
23              MS. PURTILL:  Form.  Foundation.
24              THE WITNESS:  I'm not certain what DCS is
25   aware of.
```

133

1          A.    Yes.

2          Q.    And then following section 4.  In this

3     case, there appears to be another section 4 that says

4     "monthly summary/recommendations."  The second to

5     last page.

6                Do you see that?  It ends in 944 as the

7     Bates label down at the bottom of the page.

8          A.    Yes.

9          Q.    And then, on the next page, we get to the

10    treatment protocol for child abuse, right?

11         A.    Yes.

12         Q.    And, again, this is where there is a

13    discussion of each of the categories for the ACCEPTS

14    model, right?

15         A.    Yes.

16         Q.    And that's the model that Southwest was

17    using, even though this was a child neglect case, not

18    abuse, right?

19                MS. PURTILL:  Form.  Foundation.

20                THE WITNESS:  Yes.

21         Q.    BY MR. CONNELLY:  And what I want to

22    direct your attention to in this section is that for

23    the acknowledgment category, the AC category, it says

24    that, "Mr. and Mrs. Kahraman do not view their

25    actions as abusive, nor have they acknowledged their

Deposition of Carla White Vol. II                    November 18, 2024

194

1    the case, then, is my question?

2          A.    For all -- for all cases?

3          Q.    Yeah.

4          A.    I can't speak on all cases.

5          Q.    For the cases that you had, was the

6    ACCEPTS model something that was implemented in the

7    reporting process?

8          A.    For the cases under which program?

9          Q.    The -- was it special care or special

10   needs?  The program which this case was -- special

11   cases family reunification program.

12         A.    Yes.

13         Q.    So for all the cases in the special cases

14   family reunification program, the ACCEPTS model is

15   utilized in reporting progress made during

16   therapeutic visitations, correct?

17         A.    During my time.  That I --

18         Q.    During your time?

19         A.    Yes.

20         Q.    And this case was one of the cases within

21   the special cases family reunification project,

22   right?

23         A.    Program.

24         Q.    Program?

25         A.    Yes.